UNTED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

Teachers4Action,
     On behalf of its Members
     And By Florian Lewenstein,
     Its President and Spokesperson,
Twana Adams;
Marie Addoo;
Ming Bell;
David Berkowitz;
Jonathan Berlyne;
James J. Cullen;
Diane Daniels
Boubakar Fofana;
Alena Radtke-Gabriel;

Diana Gonzalez;
Robert H. Grant;
Wendy Hazen;
Michael Hollander;
Rafal Robert Kowal;
Michael McLoughlin
Raymond Nunge;
Karen Ornstein;

Beverly Zimler-Rosenfeld;
Sidney Rubinfeld;
Denise Russo;
Jennifer Saunders;
Alex Schreiber;
Linda L. Seiffert;
Barbara Segall;
Eustoquio Torres-Nogueras;
Nahid Wakili;
Michael Westbay; and
Mauricio Zapata,
                Plaintiffs,

     - vs -

Michael G. Bloomberg,
   Mayor of New York City;
City of New York;
Joel Klein,
     Individually and in his capacity as
     Chancellor of New York City

CIVIL ACTION
08-cv-548 (VM)

AMENDED COMPLAINT
(WITH JURY DEMAND)

Department of Education;                                  :
New York City Department of Education;    :
Randi Weingarten;                                          :
    Individually and as President of        :
    United Federation of DOE staff;          :
United Federation of DOE staff;               :
Betsy Combier,                                             :
    Individually and as agent / representative :
    Of United Federation of DOE staff,       :
                      Defendants.   :
-------------------------------------------------------X

## INTRODUCTION

This action is predicated upon a wrongful course of action that was designed to

unlawfully reduce the budget for New York City Public Schools by reducing the number of

tenured teachers, including Plaintiffs. To accomplish that goal, Defendants individually and/or

jointly (i) violated Plaintiffs' Speech, Association, Due Process, Equal Protections – 1st, 5th & 14th

Amendments and Other Constitutionally Protected Rights & Freedoms; (ii) harassed plaintiffs

and created a hostile work environment; (iii) discriminated against Plaintiffs because of age; (iv)

retaliated against Plaintiffs when they attempted to speak out to report these violations; (v)

constructively discharged certain Plaintiffs; (vi) breached contracts with Plaintiffs; (vii) breached

their fiduciary duties to Plaintiffs, including the Duty of Fair Representation; (viii) aided &

abetted others in the breach of contract or breach of fiduciary duties or negligent acts against

Plaintiffs; (ix) failed to properly supervise its/their employees, agents, consultants and others

who caused damages to Plaintiffs; (x) conspired to defraud, interfere with claims and rights

and/or cause other damages to Plaintiffs; (xi) caused Plaintiffs to be falsely confined and (xii) for

Injunctive Relief. These wrongful acts violated, and the injunctive relief is necessary to address,

the violations of Plaintiffs' constitutional, statutory and contractual rights.

---

## COMPLAINT

## JURISDICTION

1)      The Court has original jurisdiction over Plaintiffs' claims based upon alleged

violations of the 1st, 5th and 14th Amendments, 29 U.S.C. § 621 ("Age Discrimination in

Employment Act of 1967"), 29 U.S.C. §§ 623(a)(1) and (2), 42 U.S.C. § 1981 ("Civil Rights Act

of 1991"), 42 U.S.C. § 1983 and the Anti-Relation Provisions of Title VII and other laws.

2)      The Court has ancillary and/or supplemental jurisdiction of all Plaintiffs' state law

claims pursuant to 28 U.S.C. § 1367.

3)      The claims of each named Plaintiff exceeds the statutory limit of this Court,

exclusive of attorneys' fees, costs and interest.

## VENUE

4)      Venue is proper in this Court because one or more of the Plaintiffs live in this

judicial district and one of more of the Defendants live and/or do business in this district, and/or

the Defendants' unlawful acts occurred within this judicial district.

## PARTIES

### Plaintiffs

5)      Plaintiff Teachers4Action[1] is an unincorporated association pursuant to Gen.

Association Laws Art. 3.

6)      Plaintiff Florian Lewenstein (hereinafter "Lewenstein") is the President and

Spokesperson of Plaintiff Teachers4Action and is authorized and has standing to commence and

prosecute this action, individually and on behalf of Plaintiff Teachers4Action.

---

[1] Teachers4Action™® are in the process of obtaining formal clearance by the New York State Department of
Education as a Not-For-Profit Corporation and is seeking similar status under the IRS Code Section 501(c)(3).

--------------------------

7)      Plaintiffs are Florian Lewenstein (hereinafter "Plaintiff Lewenstein"), Twana Adams (hereinafter "Plaintiff Adams"), Marie Addoo (hereinafter "Plaintiff Addoo"), Ming Bell (hereinafter "Plaintiff Bell"), David Berkowitz (hereinafter "Plaintiff Berkowitz"), Jonathan Berlyne (hereinafter "Plaintiff Berlyne"), James J. Cullen (hereinafter "Plaintiff Cullen"), Diane Daniels (hereinafter "Plaintiff Daniels"), Boubakar Fofana (hereinafter "Plaintiff Fofana"), Alena  Radtke-Gabrile (hereinafter "Plaintiff Gabriel"),

, Diana Gonzalez (hereinafter "Plaintiff Gonzalez"), Robert H. Grant (hereinafter "Plaintiff Grant"), Wendy Hazen (hereinafter "Plaintiff Hazen"), Michael Hollander (hereinafter "Plaintiff Hollander"), Rafal Robert Kowal (hereinafter Plaintiff Kowal"), Michael McLoughlin (hereinafter "Plaintiff McLoughlin"), Raymond Nunge (hereinafter "Plaintiff Nunge"), Karen Ornstein (hereinafter "Plaintiff Ornstein"),

Beverly Zimler-Rosenfeld (hereinafter "Plaintiff Zimler-Rosenfeld"), Sidney Rubinfeld (hereinafter "Plaintiff Rubinfeld"), Denise Russo (hereinafter "Plaintiff Russo"), Jennifer Saunders (hereinafter "Plaintiff Saunders"), Alex Schreiber (hereinafter "Plaintiff Schreiber"), Linda L. Seiffert (hereinafter "Plaintiff Seiffert"), Barbara Segall (hereinafter "Plaintiff Segall"), Eustoquio Torres-Nogueras (hereinafter "Plaintiff Torres-Nogueras"), Nahid Wakili (hereinafter "Plaintiff Wakili"), Michael Westbay (hereinafter "Plaintiff Westbay"), and Mauricio Zapata (hereinafter "Plaintiff Zapata").  *See Exhibit 1 with specific descriptions of each Plaintiff.*

8)      Plaintiff Teachers4Action also represents additional persons[2] who fall into certain categories, including but not limited to (i) DOE staff who are presently re-assigned to Rubber Rooms; (ii) DOE staff in the midst of the administrative disciplinary process and against whom charges have been brought; (iii) DOE staff who were forced, harassed, intimidated and/or

---

[2] Plaintiff Teachers4Action reserves the rights to amend the Complaint in the future to name additional plaintiff members and to conform the complaint to the facts as they continue to be discovered.
------------------------

coerced to accept onerous or unfair deals; (iv) teacher who suffer loss of property, loss of pay and other monetary losses; (v) DOE staff who suffer physical or emotional injuries from being forced into Rubber Rooms; (vi) DOE staff who cannot get other jobs; (vii) DOE staff who are otherwise being targeted and victimized as part of the wrongful course of action.

## Defendants

9)    Defendant Michael G. Bloomberg ("Bloomberg") is the Mayor of New York City and in that capacity has direct control over the New York City Public Schools.

10)    Defendant City of New York  ("City") is a municipal corporation that is responsible for the conditions in the New York City Public Schools.

11)    Defendant Joel Klein ("Klein") is the Chancellor of the New York City Department of Education and together with Bloomberg has control over the New York City Public Schools.

12)    Defendant New York City Department of Education ("DOE") is Plaintiffs' employer.

13)    Defendant Randi Weingarten ("Weingarten") is the President of the United Federation of DOE staff.

14)    Defendant United Federation of DOE staff ("UFT") is the bargaining agent for and maintains a fiduciary relationship with Plaintiffs.

15)    Defendant Betsy Combier ("Combier") is a representative of Defendant UFT.

## GENERAL FACTS

16)    Starting in or about 2002, Defendants Bloomberg, City, Klein and DOE determined and agreed that it would be in the best interests of the City public schools, including all students and educators involved for the office of the Mayor of New York City to assume

direct control over the New York City Public Schools and Defendant DOE. In June 2002, the NYS legislature authorized the NYC Mayor to assume direct control of the NYC public schools.

17)     In or about 2003, in furtherance of this agreement, Defendants Klein and DOE agreed to the complete reorganization of the DOE so that it came under the control of Defendant Bloomberg.

18)     Defendants Bloomberg and Klein were not motivated to enact this reorganization out of the best interests of the City public schools, including all students and educators; instead the motive was primarily financial.

19)     Defendants Bloomberg and Klein sought to use the reorganization as a way to achieve drastic budget reductions.

20)     The budget reductions were to be achieved in part by a series of actions that were intended to get rid of certain tenured DOE staff, such as Plaintiffs, who had committed no offense for which they could be fired or suspended without pay.

21)     Defendants Bloomberg and Klein and others in Defendant DOE conceived a plan through which tenured DOE staff such as Plaintiffs:

      a)     would be accused of a variety of allegations that rise to the level of an offense for which they could be fired or suspended;

      b)     would be harassed and placed in hostile work environments;

      c)     would be sent to "Temporary Reassignment Centers" where they would be further subjected to harassment and hostile work environment;  *See Exhibit 2;*

      d)     would be deprived of their constitutional and due process rights;

      e)     would be deprived of their rights and the protections afforded them pursuant to NYS Education Law §§ 3020 and 3020(a);

f)     would be forced to resign, quit or be subjected to ruinous fines and other financial consequences.

22)     Defendants Bloomberg and Klein used the Temporary Reassignment Centers (commonly known as "Rubber Rooms") in furtherance of wrongful acts against Plaintiffs.

23)     Defendants Bloomberg, City, Klein and DOE determined that if their plan to undermine the rights and violate the contracts of tenured DOE staff such as Plaintiffs, was to succeed, they needed to adopt a position that the Rubber Rooms were being used as a place to "keep" DOE staff accused of *"serious misconduct and crimes . . . who (Defendant DOE would) not keep . . . with kids in schools simply because their contract says they must continue to be paid."*

24)     At the time Defendants Bloomberg, City, Klein and DOE adopted this policy, they knew that their statements about the Rubber Rooms and the DOE staff "reassigned" to the Rubber Rooms were false and misleading.

25)     Defendants Bloomberg, City, Klein and DOE also agreed and determined to implement a plan through which tenured DOE staff such as Plaintiffs would be subjected to administrative procedures and/or hearings processes that were designed to violate Plaintiffs' constitutional, statutory and contractual rights and through which Plaintiffs would be further subjected to harassment, intimidation and/or forced into making deals that lead to their resignation, termination and/or ruinous fines.

26)     Defendants Bloomberg, City, Klein and DOE knew that Plaintiffs were entitled to the protection of New York State Law § 3020 that provides in pertinent part as follows: . . .

> *1.     No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand*

*twenty-a of this article or . . . or in accordance with alternative
disciplinary procedures contained in a collective bargaining agreement
covering his or her terms and conditions of employment that becomes
effective on or after September first, nineteen hundred ninety-four;
provided, however, that any such alternate disciplinary procedures
contained in a collective bargaining agreement that becomes effective on
or after September first, nineteen hundred ninety-four, must provide for
the <u>written election by the employee</u> of either the procedures specified in
such section three thousand twenty-a or the alternative disciplinary
procedures contained in the collective bargaining agreement . . . and must
result in a disposition of the disciplinary charge within the amount of time
allowed therefore under such section three thousand twenty-a. (emphasis
added).*

27)     Defendants Bloomberg, City, Klein and DOE knew that Plaintiffs were entitled to

the protections provided by New York State Education Law § 3020(a) and that before

disciplinary procedures could be commenced and/or before the imposition of any penalties

against Plaintiffs, the following procedures must be followed:

*. . . All charges against a person enjoying the benefits of tenure . . . . <u>shall be
in writing and filed with the clerk or secretary of the school district or
employing board</u> . . .
. . . . 2. (a) Upon receipt of the charges, the clerk or secretary of the school
district or employing board shall immediately notify said board thereof.
<u>Within five days after receipt of charges, the employing board, in executive
session, shall determine, by a vote of a majority of all the members of such
board, whether probable cause exists</u> to bring a disciplinary proceeding
against an employee pursuant to this section. If such determination is
affirmative, a <u>written statement specifying the charges in detail, the maximum
penalty which will be imposed by the board if the employee does not request a
hearing or that will be sought by the board if the employee is found guilty of*</u>

*the charges after a hearing and outlining the employee's rights under this*
*section, shall be immediately forwarded to the accused employee by certified*
*or registered mail, return receipt requested or by personal delivery to the*
*employee.*

*. . . 2. (b) The employee may be suspended pending a hearing on the charges*
*and the final determination thereof. The suspension shall be with pay . . .*

*. . . 2. (c) Within ten days of receipt of the statement of charges, the employee*
*shall notify the clerk or secretary of the employing board in writing whether*
*he or she desires a hearing on the charges and when the charges concern*
*pedagogical incompetence or issues involving pedagogical judgment, his or*
*her choice of either a single hearing officer or a three member panel . . .*
*Where an employee requests a hearing in the manner provided for by this*
*section, the clerk or secretary of the board shall, within three working days of*
*receipt of the employee's notice or request for a hearing, notify the*
*commissioner of education of the need for a hearing . . .*

*. . . 3. Hearings. a. Notice of hearing. Upon receipt of a request for a hearing*
*in accordance with subdivision two of this section, the commissioner of*
*education shall forthwith notify the American Arbitration Association*
*(hereinafter "Association") of the need for a hearing and shall request the*
*association to provide to the commissioner forthwith a list of names of*
*persons chosen by the association from the association's panel of labor*
*arbitrators to potentially serve as hearing officers together with relevant*
*biographical information on each arbitrator. Upon receipt of said list and*
*biographical information, the commissioner of education shall forthwith send*
*a copy of both simultaneously to the employing board and the employee . . . .*

*. . . 3/ b. (i) Hearing officers. . . A hearing officer shall not be eligible to serve*
*as such if he or she is a resident of the school district . . . an employee, agent*
*or representative of the employing board or of any labor organization*
*representing employees of such employing board, has served as such agent or*
*representative within two years of the date of the scheduled hearing, or if he /*
*she is then serving as a mediator or fact finder in the same school district . . .*

. . . *3 b. (ii)* <u>*Not later than ten days after the date the commissioner mails to*</u>
<u>*the employing board and employee the list of potential hearing officers and*</u>
<u>*biographies*</u> *provided to the commissioner by the association, the employing*
*board* . . . *employee, individually or through their agents or representatives,*
*shall by mutual agreement select a hearing officer from said list to conduct*
*the hearing and shall notify the commissioner of their selection* . . .

. . . *3. b. (iv) In those cases in which the employee elects to have the charges*
*heard by a hearing panel, the* <u>*hearing panel shall consist of the hearing*</u>
<u>*officer, selected in accordance with this subdivision, and two additional*</u>
<u>*persons, one selected by the employee and one selected by the employing*</u>
<u>*board, from a list maintained for such purpose by the commissioner of*</u>
<u>*education.*</u> *The list shall be composed of professional personnel with*
*administrative or supervisory responsibility, professional personnel without*
*administrative or supervisory responsibility, chief school administrators,*
*members of employing boards and others selected from lists of nominees*
*submitted to the commissioner by statewide organizations representing DOE*
*staff, school administrators and supervisors and the employing boards* . .

. . *3 c. Hearing procedures.* . . . *The* <u>*employee shall have a reasonable*</u>
<u>*opportunity to defend himself or herself*</u> *and an opportunity to testify in his or*
*her own behalf* . . . *(i)* <u>*The hearing officer selected to conduct a hearing*</u>
<u>*under this section shall, within ten to fifteen days of agreeing to serve as such,*</u>
<u>*hold a pre-hearing conference*</u> *which shall be held in the school district or*
*county seat of the county, or any county, wherein the employing school board*
*is located.* . . . *(iii) At the pre-hearing conference the hearing officer shall*
*have the power to: (A) issue subpoenas; (B) hear and decide all motions,*
*including but not limited to motions to dismiss the charges; (C) hear and*
*decide all applications for bills of particular or requests for production of*
*materials or information, including, but not limited to, any witness statement*
*(or statements), investigatory statement (or statements) or note (notes),*
*exculpatory evidence or any other evidence, including district or student*
*records, relevant and material to the employee's defense.* . . . *(iv) Any pre-*

*hearing motion or application relative to the sufficiency of the charges, application or amendment thereof, or any preliminary matters shall be made upon written notice to the hearing officer and the adverse party no less than five days prior to the date of the pre-hearing conference. Any pre-hearing motions or applications not made as provided for herein shall be deemed waived except for good cause as determined by the hearing officer . . . (vi) During the pre-hearing conference, the hearing officer shall determine the reasonable amount of time necessary for a final hearing on the charge or charges and shall schedule the location, time(s) and date(s) for the final hearing. . . . <u>The day or days scheduled for the final hearing shall not be postponed except upon the request of a party and then only for good cause shown</u> as determined by the hearing officer . . . <u>In all cases, the final hearing shall be completed no later than sixty days after the pre-hearing conference unless the hearing officer determines that extraordinary circumstances warrant a limited extension.</u>*

*. . . 4. Post hearing procedures. (a) <u>The hearing officer shall render a written decision within thirty days of the last day of the final hearing,</u> or in the case of an expedited hearing within ten days of such expedited hearing, and shall forthwith forward a copy thereof to the commissioner of education who shall immediately forward copies of the decision to the employee and to the clerk or secretary of the employing board. <u>The written decision shall include the hearing officer's findings of fact on each charge, his or her conclusions with regard to each charge based on said findings and shall state what penalty or other action, if any, shall be taken by the employing board</u> . . . If the employee is acquitted he or she shall be restored to his or her position with full pay for any period of suspension without pay and the charges expunged from the employment record . . . <u>The hearing officer shall indicate in the decision whether any of the charges brought by the employing board were frivolous as defined in section eight thousand three hundred three-a of the civil practice law and rules.</u>*

*(emphasis added)*

------------------------

*Teachers4Action et al v. Bloomberg et al. 08-cv-548 (VM)(AJP) – Feb. 22, 2008 Amended Complaint – Page 11*

28)    Defendants Bloomberg, City, Klein and DOE knew that NYS Education Laws §§ 3020 and 3020(a) provided safeguards for the investigation, prosecution and discipline of tenured DOE staff, such as Plaintiffs [3].

29)    Defendants Bloomberg, City, Klein and DOE also knew that if they afforded the Plaintiffs and others the protections of NYS Education Laws §§ 3020 and 3020(a), they would not be able to accomplish the goal of payroll reduction through termination of Plaintiffs and other tenured DOE staff

30)    To achieve their goals, Defendants Bloomberg, City, Klein and DOE, communicated their goals and intentions to Defendant Weingarten and UFT and sought the assistance and/or cooperation of Defendant Weingarten and UFT.

31)    Defendant Weingarten is an educated and licensed attorney who should have immediately realized that what Defendants Bloomberg, City, Klein and DOE sought to do was a violation of the constitutional, statutory and contractual rights of Plaintiffs and other tenured DOE staff.

32)    As part of its obligations to Plaintiffs, Defendant UFT provides lawyers for Plaintiffs against whom accusations were made which subjected them to the administrative hearings and process pursuant to NYS Education Law §§ 3020 and 3020(a).

33)    The assistance that Defendants Bloomberg, City, Klein and DOE sought from Defendants Weingarten and UFT was that Defendants Weingarten and UFT in essence do

---

[3] Plaintiffs' claims herein should not be construed as to suggest that Defendant DOE does not and should not have the authority to properly and legally investigate, prosecute and discipline tenured DOE staff. The issues presented in this lawsuit do not address the merits of any claims and/or charges that have been filed against the named Plaintiffs. Those issues are not before the Court. Plaintiffs claims are that Defendants violated, failed to comply with or chose to attempt to implement in an unlawful manner, the provisions of NYS Education Law 3020 and 3020(a) that were designed and/or enacted to provide Plaintiffs and others with due process and other constitutional safeguards.

------------------------

nothing and sit idlely as Defendants Bloomberg, City, Klein and DOE subjected Plaintiffs to harassment, discrimination and violation of their constitutional and contractual rights.

34)     The assistance that Defendants Bloomberg, City, Klein and DOE also needed was that the lawyers who were appointed by Defendant UFT to represent Plaintiffs in response to whatever charges and/or allegations were made against them would not attempt to assert Plaintiffs due process and/or constitutional rights or adherence to the procedures and requirements of NYS Education Law §§ 3020 and 3020(a).

35)     As a result of the agreement reached between Defendants Bloomberg, City, Klein and DOE on the one hand and Defendants Weingarten and UFT on the other hand the following occurred, among other things:

        a)      Prior to Plaintiffs being charged, Defendant DOE did not properly and timely follow the notice and probable cause provisions of NYS Education Law §§3020 and 3020(a);

        b)      After Plaintiffs were charged, Defendant DOE did not properly and timely follow the procedures of NYS Education Law §§3020 and 3020(a) with regard to election of remedies;

        c)      After Plaintiffs were charged, Defendant DOE did not follow the procedures of NYS Educations Law §§ 3020(a) with regard to affording Plaintiffs charged with incompetence the right to a three member panel;

        d)      After Plaintiffs were charged, Defendant DOE did not follow the procedures of NYS Educations Law §§ 3020(a) with regard to affording Plaintiffs the right to impartial arbitrators selected from an AAA list of arbitrators from outside the City of New York;

e)     After Plaintiffs were charged, Defendant DOE did not follow the

procedures of NYS Educations Law §§ 3020(a) with regard to affording Plaintiffs the

right to arbitrators who had not served within the last two years;

f)     After Plaintiffs were charged, Defendant DOE did not follow the

procedures for adequate representation, subpoenaed testimony, introduction of evidence

and reasonable adjournments for good cause.

*See Exhibits 3 – 8.*

36)     The lawyers who Defendant UFT paid to represent Plaintiffs during the 3020(a)

process were given instructions, either orally or in writing, that they were not to advise Plaintiffs

of their rights and were not to challenged Defendant DOE on the issues of NYS Education Law

§§ 3020 and 3020(a) requirements such as (i) notification and probable cause; (ii) election of

remedies; (iii) right to a three member panel of arbitrators; (iv) right to impartial arbitrators

selected from an AAA list of arbitrators from outside the City of New York; (v) right to

arbitrators who had not served within the last two years; and (vi) right to adequate representation,

subpoenaed testimony, introduction of evidence and reasonable adjournments for good cause.

37)     The lawyers paid by Defendant UFT to represent Plaintiffs during the 3020(a)

process were given additional instructions, either orally or in writing, that they were to explain to

the Plaintiffs that instead of fighting the charges, they should make deals to accept as little

punishment as was possible to get the procedures over as quickly as possible and so they could

be returned to their jobs.

38)     In fact it was never the plan of Defendants Bloomberg, City, Klein and DOE, or

Defendants Weingarten and UFT, to have Plaintiffs returned to their jobs.

---------------------------

39)    The plan was to (i) keep Plaintiffs in the Rubber Rooms; (ii) violate and/or allow

the violation of NYS Education Laws §§ 3020 and 3020(a); (iii) deprive Plaintiffs of their rights;

(iv) create a hostile work environment that would compel Plaintiffs to quit, be terminated and/or

be subjected to ruinous fines; (v) mislead Plaintiffs and the public about the true motives behind

Defendants Bloomberg, City, Klein and DOE's failure to comply with NYS Education Law §§

3020 and 3020(a) and use of the Rubber Rooms and (vi) retaliate against any Plaintiff who

objected and sought to speak out against and/or enforce his/her rights.

40)    As a result of the actions of Defendants Bloomberg, Klein, DOE, Weingarten and

UFT,

a)    Plaintiffs were deprived of the notice and probable cause provisions of

NYS Education Law §§3020 and 3020(a);

b)    Plaintiffs were not given the election of remedies choices as provide by

NYS Education Law §§ 3020 and 3020(a);

c)    Plaintiffs were not provided with the choice of a three member panel,

pursuant to NYS Educations Law §§ 3020(a);

d)    Plaintiffs were not provided with the choice of impartial arbitrators from

outside the City of New York, pursuant to NYS Educations Law §§ 3020(a);

e)    Plaintiffs were not given a choice of arbitrators who had not served within

the last two years as required by NYS Educations Law §§ 3020(a); and

f)    Plaintiffs were not allowed the rights to adequate representation,

subpoenaed testimony, introduction of evidence and reasonable adjournments for good

cause, as required by NYS Educations Law §§ 3020(a).

41)    Defendants Bloomberg, City, Klein and DOE also sought to harass Plaintiffs and to make the conditions within their "workplace" and the terms of Plaintiffs' employment untenable, so as to:

a)    retaliate against Plaintiffs for seeking to enforce their constitutional and contractual rights;

b)    retaliate against Plaintiffs for speaking out against the deplorable conditions in the workplace and/or in the Rubber Rooms;

c)    retaliate against Plaintiffs for attempting to expose the Defendants wrongful acts and/or conditions within the NYC public school system;

d)    intimidate others from coming forward to support and/or join in Plaintiffs' allegations of Defendants' wrongful acts and/or conditions within the NYC public school system;

e)    intimidate others from coming forward to and/or in defense of the charges against Plaintiffs.

42)    To accomplish this goal, Plaintiffs were:

a)    forced to endure verbal and physical harassment and intimidation in their schools and in the Rubber Rooms;

b)    subjected to dangerous physical conditions in their schools and in the Rubber Rooms;

c)    removed from classrooms and subjected to solitary confinement in closets, empty windowless offices or other small spaces;

e)    subjected to ridicule, insults and abusive attacks by principals and other administrators;

f)    intimidated and made to be fearful of speaking out against the abuses, conditions and wrongful acts;

g)    intimidated, harassed and prevented from speaking out against the abuses, unlawful conduct and/or other improper acts that Defendants should have prevented and which Defendants did not want to become public or for which Defendants did not want to be held accountable; and

h) were otherwise retaliated against.

43)    The hostile work environment and other acts by Defendants Bloomberg, City, Klein and DOE against Plaintiffs were designed to and did in fact:

a)    discourage other DOE staff from coming forward to assert their constitutionally protected rights including but not limited to freedom of speech and freedom of association; and

b)    discourage other DOE staff, similarly situated to Plaintiffs, from coming forward to speak out and/or "blow the whistle" and attempt to prevent or stop the abuses of and/or wrongful acts of which Plaintiffs were aware and sought to report;

44)    The hostile work environment and other acts by Defendants Bloomberg, City, Klein and DOE against Plaintiffs resulted in termination, demotion, decrease in salary or wage, less distinguished titles, material loss in benefits, prevention of and/or interference with Plaintiffs ability to compete for and secure positions and assignments to which they were entitled, significantly diminished responsibilities, or other acts designed to humiliate Plaintiffs and subject them to particular situations that were embarrassing and not consistent with their status, positions and/or experience.

45)    The hostile work environment and other wrongful acts by Defendants Bloomberg, City, Klein and DOE against Plaintiffs were not mere inconvenience to Plaintiffs and were not alteration of Plaintiffs' job responsibilities. They were instead a complete change in the terms and conditions of Plaintiffs' employment and tenure that were designed to force Plaintiffs to quit or to create excuses through which Plaintiffs could be fired, albeit unlawfully and improperly.

46)    In addition, the wrongful acts by Defendants Bloomberg, City, Klein and DOE against Plaintiffs were intended to interfere with Plaintiff's current or future employment as tenured DOE staff.

47)    In addition to the hostile work environment and other wrongful acts by Defendants Bloomberg, City, Klein and DOE against Plaintiffs, some Plaintiffs were also subjected to involuntary transfers to locations and/or facilities at which Plaintiffs (i) were not permitted to engage in their normal work activities, (ii) were not permitted to perform and/or engage in the duties and assignments for which they were hired, (iii) were not allowed to participate in, compete for and/or benefit from additional work and/or assignments to which they would have otherwise been permitted but for the transfer or "reassignment", (iv) were limited in their freedoms to move about, communicate and/or associate with others, (v) were forced to sit in assigned seats, in uncomfortable work locations and deprived of the normal equipment, access to resources and/or other support to which they would normally be entitled, (vi) were guarded by professional security personnel, and (vii) otherwise forced to remain in locations not of their choosing and not within the scope of the duties for which they were hired.

48)    Defendants Bloomberg, City, Klein and DOE intended and Defendants Weingarten and UFT allowed, Plaintiffs to be transferred to and remain in Rubber Room locations (i) were they were subjected to harassment, threats and/or intimidation, and (ii) that

Defendants Bloomberg, City, Klein and DOE knew were unsafe and/or inappropriate for

Plaintiffs "reassignment".

49)     Defendants Bloomberg, City, Klein and DOE intended, and Defendants

Weingarten and UFT allowed, some Plaintiffs to be "reassigned" out of their schools and to

remain in Rubber Rooms on the basis of charges for which such "reassignment" was not

warranted, including but not limited to their (i) alleged insubordination, (ii) work allegedly being

substandard, or (iii) other allegedly improper conduct, which did not rise to the level of "serious

misconduct" that endangered the welfare of the students or other persons in their schools.

50)     Defendants Bloomberg, City, Klein and DOE intended, and Defendants

Weingarten allowed, Plaintiffs to be transferred to and kept in Rubber Rooms because they (i)

are/were over a certain minimum age, (ii) had achieved a high pay and benefits level and who

had been employees of the DOE for more than a dozen years, (iii) dared to challenge and/or

question DOE practices and / or the "Rubber Room" procedures, (iv) are whistle blowers and/or

(v) who dared to demand their rights, including seniority transfers and/or due process rights.

51)     Defendants Bloomberg, City, Klein and DOE intended, and Defendants

Weingarten and UFT allowed, Plaintiffs to be transferred to and kept in Rubber Rooms so that (i)

they would not interfere with the plans to achieve the budget reductions; (ii) they would not

expose the constitutional and contractual and due process violations, (iii) they would not expose

the hostile work environment and (iv) they would not expose the other wrongful acts going on in

the NYC Public Schools.

52)     Defendants Bloomberg, City, Klein and DOE intended, and Defendants

Weingarten and UFT allowed, Plaintiffs to become unacceptable pawns or sacrifices in

Defendant Bloomberg, City, Klein and DOE's efforts to reduce the budget by terminating or reducing the number of tenured DOE staff.

53)    Defendants Bloomberg, City, Klein and DOE intended and Defendants Weingarten and UFT allowed, Plaintiffs to be:

a)    confined in Rubber Rooms for weeks, months and/or years in direct violation of NYS Education Laws §§ 3020 and 3020(a);

b)    deprived of their constitutional and contractual rights to expeditiously clear their names so that they could be returned to their responsibilities in the schools and to their privileges, status and/or assignments.

54)    As a result of Defendants Bloomberg's, City's, Klein's and DOE's actions against Plaintiffs and other tenured DOE staff, and Defendants Weingarten's and UFT's actions and/or refusals to act to protect the rights of Plaintiffs and other tenured DOE staff, the instances of (i) failure to comply with provisions of NYS Education Law §§ 3020 and 3020(a), (ii) unlawful use of and confinement to Rubber Rooms, (iii) violation of due process, (iv) age discrimination, (v) harassment and hostile work environment, and (vi) retaliation have increased and worsened[4].

55)    As of mid – 2006, Defendants Bloomberg, City, Klein and DOE, and Defendants Weingarten and UFT, knew that their actions directed at Plaintiffs and/or violations of the constitutional and/or contractual rights of Plaintiffs, and other tenured DOE staff, were wrong and the charges were unsubstantiated; however the charges stayed on file.

---

[4] In 2000, approximately 300 DOE staff reportedly accused of "misconduct" and/or "incompetence" had been banished to Rubber Rooms. *NY Times, March 1, 2000.* By mid 2005, over four hundred DOE staff were in Rubber Rooms. *National Council of Teacher Equality Bulletin dated June 8, 2005.* By mid 2006, approximately 600 DOE staff were in Rubber Rooms. *April 24, 2007 Village Voice Article.* DOE staffso that by the end of 2007, there were over 700 DOE staff banished to Rubber Rooms. *Oct. 15, 2007 New York Sun Article and Sept. 25, 2007 New York Post Article.*

56)   Despite this knowledge, from 2006 to the present, Defendants Bloomberg, City, Klein and DOE, with the full knowledge of Defendant UFT and Weingarten, increased their wrongful acts against Plaintiffs and other tenured DOE staff so that the situation has become urgent. *See Exhibits 10, 18, 19, 21, 22 & 23.*

57)   In 2004, the crisis became more urgent, with (i) violation of tenured DOE staff contractual and due process rights, (ii) dangerous and hostile work environment, (iii) retaliation against DOE staff who sought to speak out against the violations, and in support of their rights and to expose the problems in the NYC public school system, and (iv) Rubber Room violations were known to Defendants Weingarten and UFT but they took no legal action to protect Plaintiffs or to fix the abuses.

58)   In early 2007 Defendants Weingarten and the UFT refused to help Plaintiffs and other DOE staff trapped in Rubber Rooms by refusing to recognize the Rubber Room locations as UFT chapters and appointing UFT representatives to protect them. *See Exhibit 18.*

59)   In September 2007 Defendants Weingarten and UFT took no legal action after they received the EEOC right to sue letter to protect Plaintiffs and others from the ongoing age discrimination. *See Exhibit 9.*

60)   In September 2007 Defendant Combier solicited Defendants Weingarten and UFT to hire her and appoint her as their representative.

61)   In October 2007 the situation with Plaintiffs and other tenured DOE staff became embarrassing for Defendants Weingarten and UFT, and Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT sought to mollify and/or mislead the public into thinking that something was going to be done to protect Plaintiffs or other tenured DOE staff.

62)     In October 2007 Defendants Weingarten and UFT appointed a "Rubber Room Task Force" with Defendant Combier as Defendant UFT's official representative. *See Exhibits 20 & 21.*

63)     As explained below, Defendant Weingarten and UFT had no intention to allow its "Rubber Room Task Force" to take any meaningful action on behalf of Plaintiffs or other tenured DOE staff.

64)     The October 2007 appointment of the UFT "Rubber Room Task Force" by Defendants Weingarten and UFT was nothing more than a public relations move that was supported by Defendants Bloomberg, City, Klein and DOE.

65)     In November 2007 Defendants Weingarten, UFT and/or Combier claimed to have evidence related to (i) violations of Plaintiffs' and other DOE staff's constitutional, due process and contractual rights, (ii) harassment and hostile work environment, (iii) age discrimination, (iv) contract violations, (v) abuses in the NYC public School system, and (vi) dangerous conditions and improper use of Rubber Rooms Room.  Again, Defendants Weingarten, UFT and/or Combier took no action.

66)     It became apparent that Defendants Weingarten, UFT and/or Combier were not acting in the best interests of Plaintiffs and were doing nothing more than using public relations "gimmicks" to try to make it appear as if they were actually taking action to protect Plaintiffs and other DOE staff, when they took no legal action and failed to act, as Plaintiffs and other DOE staff were forced to remain in Rubber Rooms and forced into 3020(a) hearings or post hearing processes that violated their due process, constitutional and contractual rights.

67)    Defendants Weingarten, UFT and Combier put their personal interests ahead of the interests of the Plaintiffs to whom they owed duties and on whose behalf they claimed they were taking action to protect Plaintiffs' rights.

68)    After Defendants Weingarten, UFT, Combier or the so called "Rubber Room Task Force" failed to take any action to protect DOE staff, Plaintiff Teachers4Action was formed and sought to take the actions to protect Plaintiffs and tenured DOE staff.

69)    On January 15, 2008, Plaintiff Teachers4Action notified Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT of their demands that Defendant DOE comply with Plaintiffs' constitutional and contractual rights. *See Exhibit 11.* The notification was circulated to the media and area politicians, who had previously been asked for assistance. *See Exhibit 12.*

70)    In response to Plaintiff Lewenstein's January 15, 2008 notification on behalf of Plaintiff Teachers4Action and its members, Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT retaliated against Plaintiff Teachers4Action and its members. Defendant DOE reassigned Plaintiff Lewenstein to the Rubber Room on that day with new allegations of verbal abuse. Defendant Weingarten wrote a letter on that day to the media and area politicians refuting Teachers4Action's allegations and stating that Defendant UFT is in negotiations with Defendant DOE to resolve the Rubber Room problem. *See Exhibits 13, 14 & 17.*

71)    On January 21, 2008, Plaintiffs Teachers4Action and Florian Lewenstein filed the instant lawsuit.

72)    Immediately after the filing, Defendants Bloomberg, City, Klein, DOE, Weingarten, UFT and Combier, jointly and/or individually looked for ways to interfere with Plaintiffs' ability to prosecute this action.

---

73)    As an example of Defendants' interference with Plaintiffs' rights and Plaintiffs' rights to prosecute this action Defendant DOE, through its agent Lorraine Haynes, further restricted Plaintiffs' ability to speak with one another, meet and associate with one another, to respond to the increased inquiries by other tenured DOE staff who sought to join Plaintiff Teachers4Action and to prepare their claims in this case. *See Exhibit 15 & 16.*

74)    At all times relevant hereto, Defendants Weingarten and UFT remained silent and did nothing to support Plaintiffs' rights or to stop the violation of their rights and the unlawful use of the Rubber Rooms.

75)    On February 8, 2008, Defendant UFT 's Representative Defendant Combier attended the Court Conference at which it was announced by Plaintiffs that Defendant UFT would be made a party to this litigation.   After the hearing and continuing to the present, Defendant Combier sought to intimidate and/or threaten Plaintiffs and their attorney, and to interfere with the Plaintiffs' rights to prosecute this lawsuit with representation of their choosing.

76)    Defendants Weingarten, UFT and Combier sought to interfere with Plaintiffs' claims and sought to use one websites, over which Defendant Combier had control or with which she could guarantee placement, other publications, emails and phone calls, to promote the interests of Defendants Weingarten, UFT and Combier at the expense of Plaintiffs' claims.

77)    Defendants Weingarten, UFT and Combier's actions were and continue to be prejudicial to Plaintiffs' claims, violated their duty of fair representation and demonstrated a conflict of interest between them and the Plaintiffs.

78)    In addition to the above referenced direct actions by Defendants DOE, Defendants Weingarten, Combier and UFT have retaliated against Plaintiffs by telling them that if they continue to be part of this complaint, they would be in serious trouble, could lose their jobs, and

that lawyers who were appointed and are paid by Defendant UFT will not represent Plaintiffs in

the NYS Education Law § 3020(a) hearings.

**First Cause of Action -**
**Violation / Interference with Constitutionally Protected Rights – 1st, 5th & 14th Amendment**
**Freedom of Speech & Association and Due Process & Equal Protection Rights**
**(against Defendants Bloomberg, City, Klein, DOE, Weingarten & UFT)**

79)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to

78 as if the same were repeated fully and at length herein.

80)    Plaintiffs have the following constitutional and contractual rights:

a)    Prior to being charged, Plaintiffs are entitled to notice and probable cause

hearings and provisions of NYS Education Law §§3020 and 3020(a);

b)    After being charged, Plaintiffs are entitled to the election of remedies of

provisions of NYS Education Law §§ 3020 and 3020(a);

c)    After being charged, Plaintiffs charged with incompetence are entitled to a

three member panel to hear their charges pursuant to NYS Educations Law § 3020(a);

d)    After being charged, Plaintiffs are entitled to impartial arbitrators to be

chosen from an AAA list of arbitrators from outside NYC, pursuant to procedures of

NYS Educations Law § 3020(a);

e)    After being charged, Plaintiffs are entitled to arbitrators who had not

served within the last two years, pursuant to the procedures of NYS Educations Law §

3020(a);

f)    After being charged, Plaintiffs were entitled to adequate representation,

subpoenaed testimony, introduction of evidence and reasonable adjournments for good

cause.

81)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT sought to mislead Plaintiffs and to interfere with their enforcing their rights pursuant to NYS Education Law §§ 3020 and 3020(a) related to (i) notification and probable cause; (ii) election of remedies; (iii) right to a three member panel of arbitrators if charged with incompetence; (iv) right to impartial arbitrators selected from an AAA list of arbitrators from outside the City of New York; (v) right to arbitrators who had not served within the last two years; and (vi) right to adequate representation, subpoenaed testimony, introduction of evidence and reasonable adjournments for good cause.

82)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT:

a)    deprived Plaintiffs of the notice and probable cause provisions of NYS Education Law §§ 3020 and 3020(a);

b)    deprived Plaintiffs of the election of remedies choices as provide by NYS Education Law §§ 3020 and 3020(a);

c)    deprived Plaintiffs charged with incompetence of the choice of a three member panel, pursuant to NYS Educations Law § 3020(a);

d)    deprived Plaintiffs of the choice of impartial arbitrators from outside the City of New York, pursuant to NYS Educations Law § 3020(a);

e)    deprived Plaintiffs of their choice of arbitrators who had not served within the last two years as required by NYS Educations Law § 3020(a); and

f)    deprived Plaintiffs of their rights to adequate representation, subpoenaed testimony, introduction of evidence and reasonable adjournments for good cause, as required by NYS Educations Law § 3020(a).

83)    Defendants Bloomberg, City, Klein and DOE harassed Plaintiffs and made the conditions within their "workplace" and the terms of Plaintiffs' employment intolerable by:

    a)    retaliating against Plaintiffs to try to prevent them from seeking to enforce their constitutional and contractual rights;

    b)    retaliating against Plaintiffs for speaking out against the deplorable conditions in the workplace and/or in the Rubber Rooms;

    c)    retaliating against Plaintiffs for attempting to expose the Defendants wrongful acts and/or conditions within the NYC public school system;

    d)    intimidating others from coming forward to support and/or join in Plaintiffs' allegations of Defendants wrongful acts and/or conditions within the NYC public school systems;

    e)    intimidating others from coming forward to and/or in defense of the charges against Plaintiffs.

84)    Defendants Bloomberg, City, Klein and DOE:

    a)    subjected Plaintiffs to endure verbal and physical harassment and intimidation in their schools and in the Rubber Rooms;

    b)    subjected Plaintiffs to dangerous physical conditions in their schools and in the Rubber Rooms;

    c)    removed Plaintiffs from classrooms and subjected them to solitary confinement in closets, empty windowless offices or other small spaces;

    e)    subjected Plaintiffs to ridicule, insults and abusive attacks by principals and other administrators;

f)    intimidated Plaintiffs and made them to be fearful of speaking out against the abuses, conditions and wrongful acts;  and

g)    intimidated, harassed and prevented Plaintiffs from speaking out against the abuses, unlawful conduct and/or other improper acts that Defendants should have prevented and which Defendants did not want to become public or for which Defendants did not want to be held accountable.

85)    When Plaintiffs sought to enforce and attempted to speak out in support of and to demand their due process, constitutional and/or statutory rights, Defendants Bloomberg, City, Klein and DOE sought to stop Plaintiffs from speaking and/or associating with others with similar interests and/or rights. *See Exhibit 27.*

86)    Defendants Bloomberg's, Klein's and DOE's wrongful conduct was designed to interfere with Plaintiffs and other tenured DOE staff, to interfere with Plaintiffs "certifications and licenses", to interfere with Plaintiffs' salaries and due process rights and to interfere with Plaintiffs rights as guaranteed by NYS Education Law §§ 3020 and 3020(a) and to have the charges expeditiously investigated and adjudicated through fair and impartial hearings.

87)    Defendants Bloomberg, City, Klein and DOE caused Plaintiffs to be subjected to, and Defendant Weingarten and UFT allowed Plaintiffs to be subjected to, charges, that caused them to be improperly "re-assigned" and confined to the Rubber Rooms, where they waited for months and years without a chance to clear their names and protect their salaries, licenses and property rights. *See Exhibit 28.*

88)    While in the Rubber Rooms, Plaintiffs were deprived of their due process rights and/or the chance to clear their names and be restored to their classrooms.

---------------------------

89)    While in the Rubber Rooms, Plaintiffs were coerced, harassed, intimidated and

terrorized so that they would be fearful for their personal and professional well-being, so that

they would be "forced" to retire, resign or accept deals involving ruinous fines or termination.

*See Exhibit 29.*

90)    Defendants Bloomberg, City, Klein and DOE implemented, caused and/or

enforced, and Defendant Weingarten and UFT allowed Defendant Bloomberg, City, Klein and

DOE, to implement, cause and/or enforce laws, legislation, statutes and/or administrative

procedures[5] against Plaintiffs which were intended to interfere with Plaintiffs and other tenured

DOE staff, "certifications and licenses", salaries and due process rights.

91)    Defendants Bloomberg, City, Klein and DOE implemented, caused and/or

enforced, and Defendant Weingarten and UFT allowed Defendant Bloomberg, City, Klein and

DOE, to implement, cause and/or enforce laws, legislation, statutes and/or administrative

procedures that were designed to frustrate Plaintiffs' ability to expeditiously defend themselves

against the charges that caused them to be placed in the Rubber Rooms, where they waited for

months and years without a chance to clear their names and protect their salaries, certifications,

licenses and property rights.

92)    Defendants Bloomberg's, Klein's and DOE's aforesaid acts, violate the 5th and

14th Amendments to the Constitution by depriving Plaintiffs of their due process rights and were

otherwise unlawful.

93)    Defendants Bloomberg's, Klein's and DOE's actions also violate 42 U.S.C.

§1983 which states:

---

[5] The laws, legislations, statutes and administrative regulations include and are not limited to those which
regulate the "3020(a)" hearings process, which are the only means by which Plaintiffs can defend
themselves, and which are little more than "Kangaroo Courts" where the DOE staff do not have a chance
to be exonerated and must ultimately accept deals or administrative rulings that include ruinous fines or
termination.

------------------------

*"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, and citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress".*

94)    Defendants Bloomberg's, Klein's and DOE's acts were designed to interfere with and/or deprive Plaintiffs of their property rights.

95)    Defendants Bloomberg's, Klein's and DOE's acts were designed to interfere with and/or deprive Plaintiffs of their due process, statutory, constitutional and/or contractual rights.

96)    Defendants Bloomberg's, Klein's and DOE's use of Rubber Rooms, age discrimination, harassment, hostile work environment, retaliation and failure to provide Plaintiffs with the protections afforded by the provisions of NYS Education Law §§ 3020 and 3020(a) violates 42 U.S.C. § 1983.

97)    Defendants Bloomberg's, Klein's and DOE's attempts to prevent Plaintiffs from speaking out against violations of their rights, speaking out about the conditions and abuses in the NYC public school systems, and attempting to speak out against the use of Rubber Rooms, attempt to prevent plaintiffs from getting others to support and provide evidence to them, to defend themselves.

98)    Defendants Bloomberg's, Klein's and DOE's attempts to prevent Plaintiffs from associating with others to discuss the violations of their rights, speaking out about the conditions and abuses in the NYC public school system, and attempting to speak out against the use of Rubber Rooms, attempt to prevent plaintiffs from getting others to support and provide evidence to them, to defend themselves.

99)    Defendants Bloomberg's, Klein's and DOE's attempts to prevent Plaintiffs from speaking to and associating with others violated Plaintiffs First Amendment rights.

100)    As a direct and proximate result of Defendants Bloomberg's, Klein's and DOE's

aforesaid acts, Plaintiffs suffered monetary and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly severally and/or

in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their

individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii)

exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier

of fact; and (iii) attorneys' fees, interest and costs of suit.

### Second Cause of Action –
### Harassment & Hostile Work Environment
### (against Defendants Bloomberg, City, Klein & DOE)

101)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to

78 as if the same were repeated fully and at length herein.

102)    Defendants Bloomberg, City, Klein  and DOE subjected Plaintiffs to be confined

in and/or allowed Plaintiffs to remain in locations where they were subjected to emotional and

psychological dangers and/or intimidation and in some instances solitary confinement in closets,

empty windowless offices or other small spaces.

103)    Defendants Bloomberg, City, Klein and DOE subjected Plaintiffs to (i) ridicule,

insults and abusive verbal attacks and/or assaults and (ii) intimidation and fear of speaking out

against the abuses, conditions and wrongful acts.

104)    Defendants Bloomberg, City, Klein and DOE transferred Plaintiffs from locations

and conditions where, as a result of the experience, credentials, skills and status that they had

achieved and earned, Plaintiffs were recognized as elite or privileged, to locations where they

were less prestigious and where they were subjected to further verbal and physical harassment

and intimidation.

------------------------

105)    Defendants Bloomberg, City, Klein and DOE subjected Plaintiffs to radical changes in the nature and quality of the work given to them and in most instances Plaintiffs were completely deprived of any work responsibilities whatsoever.

106)    Defendants Bloomberg, City, Klein and DOE caused Plaintiffs to be transferred to locations where they were not allowed to perform the discretionary and/or managerial functions of the positions for which they were hired, to positions where the work, if any, was that which could be performed by clerical and lower-level personnel.

107)    Defendants Bloomberg, City, Klein and DOE used the Rubber Rooms to:

    a)    discriminate against Plaintiffs because of their age or positions;

    b)    subject Plaintiffs to verbal and physical harassment and intimidation;

    c)    subject Plaintiffs to dangerous physical conditions; *See Exhibit 24* ; and

    d)    subject Plaintiffs to emotional and psychological dangers and/or intimidation by keeping Plaintiffs like prisoners. *See Exhibit 25.*

108)    Defendants Bloomberg, City, Klein and DOE caused Plaintiffs to be subjected to solitary confinement in closets, empty windowless offices or other small spaces.

109)    The Rubber Rooms were used by Defendant Bloomberg, City, Klein and DOE to subject Plaintiffs to (i) ridicule, insults and abusive verbal attacks and/or assaults and (ii) intimidation, and fear of speaking out against the abuses, conditions and wrongful acts.

110)    Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was part of their efforts to (i) retaliate against Plaintiffs; (ii) dissuade and/or discourage Plaintiffs and other tenured DOE staff from coming forward to assert their constitutionally protected rights, including, but not limited to, freedom of speech and freedom of association; and (iii) dissuade and/or discourage Plaintiffs and other tenured DOE staff from coming forward to speak out

and/or "blow the whistle" and attempt to prevent or stop them from reporting abuses and/or other wrongful acts within the NYC public school system.

111)    Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms and abuse of the New York State Education Law §§ 3020 and 3020(a) disciplinary process is adverse to, and a material change in, the terms and conditions of Plaintiffs' employment through termination, demotion, decrease in salary or wage, less distinguished titles, material loss in benefits, prevention of and/or interference with Plaintiffs' ability to compete for and secure positions and assignments to which they are entitled, significantly diminished responsibilities, or other acts designed to humiliate Plaintiffs and subject them to particular situations that are embarrassing and not consistent with their status, positions and/or experience.

112)    Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms are not mere inconveniences or alterations of job responsibilities but are rather a complete change in the terms and conditions of Plaintiffs' employment and tenure designed to force Plaintiffs to quit or to create excuses through which Plaintiffs could be fired, albeit unlawfully and improperly.

113)    Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was part of their efforts to interfere with Plaintiff's current or future employment as tenured DOE staff.

114)    Defendants Bloomberg, City, Klein and DOE use the Rubber Rooms as a means to involuntarily transfer Plaintiffs to locations and/or facilities at which Plaintiffs (i) are not permitted to engage in their normal work activities, (ii) are not permitted to perform and/or engage in the duties and assignments for which they were hired, (iii) are not allowed to participate in, compete for and/or benefit from additional work and/or assignments to which they would have otherwise been permitted but for the transfer or "reassignment", (iv) are limited in

their freedoms to move about, communicate and/or associate with others, (v) are forced to sit in assigned seats, in uncomfortable work locations and deprived of the normal equipment, access to resources and/or other support to which they would normally be entitled, (vi) are guarded by professional security personnel, and (vii) are otherwise forced to remain in locations not of their choosing and not within the scope of the duties for which they were hired.  *See Exhibits 24 & 25.*

115) Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was intended to subject Plaintiffs to conditions, assignment, relocation, denigration of responsibility, status and duties that caused a setback to their careers as tenured DOE staff.

116) Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was part of their efforts to transfer Plaintiffs to locations and subject them to conditions where, as a result of the experience, credentials, skills and status that they had achieved and earned, and where Plaintiffs were recognized as elite or privileged, to locations that were less prestigious and where Plaintiffs were subjected to radical changes in nature and quality of the work given to them, and in most instances Plaintiffs were completely deprived of any work responsibilities whatsoever.

117) Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was part of efforts to transfer Plaintiffs to locations where they were not allowed to perform the discretionary and/or managerial functions of the positions for which they were hired, to positions where the work, if any, was that which could be performed by clerical and lower-level personnel.

118) The conditions that Defendants Bloomberg, City, Klein and DOE created in the schools before Plaintiffs were transferred to the Rubber Rooms, and the conditions that

124)    29 U.S.C. § 621 (The Age Discrimination in Employment Act of 1967 - "ADEA") provides in pertinent part that it is unlawful to implement "arbitrary age limits" and to implement practices that "may work to the disadvantage of older persons;" to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

125)    Defendants Bloomberg, City, Klein and DOE knew that their actions against Plaintiffs were unlawful and violated the ADEA.

126)    Prior to the filing of this lawsuit, Plaintiffs claims related to age discrimination were made against Defendant DOE and their age discrimination claim was denied by the Equal Employment Opportunity Commission ("EEOC").  *See Exhibit 9 & 10.*

127)    Defendants Weingarten and UFT were aware of the age discrimination by Defendants Bloomberg, City, Klein and DOE but after receiving the right to sue letter from the EEOC, Defendants Weingarten and UFT took no action.

128)    Plaintiff Rubinfeld was a Plaintiff involved and/or included in the age discrimination claim that Defendant UFT made but failed to pursue.

129)    Plainitff Westbay also filed an age discrimination complaint with and was denied by the EEOC.

130)    Plaintiffs Rubinfeld and Westbay have standing to initiate and prosecute theirs and the other age discrimination claims of members of Teachers4Actions against Defendant DOE. *See Exhibit 9.*

131)    At the time Defendants Bloomberg, City, Klein and DOE discriminated against

Plaintiffs on the basis of their age, Defendants Bloomberg, City, Klein and DOE knew that their

actions were discriminatory and unlawful.

132)    As a direct and proximate result of Defendant Bloomberg's, City's, Klein's and

DOE's aforesaid age discrimination, Plaintiffs suffered monetary and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly severally and/or

in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their

individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii)

exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier

of fact; and (iii) attorneys' fees, interest and costs of suit.

**Fourth Cause of Action –**
**Retaliation (against Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT)**

133)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to

78 as if the same were repeated fully and at length herein.

134)    The specific acts of retaliation as they relate to each Plaintiff are set forth in

Exhibit 1.

135)    Defendants Bloomberg, City, Klein and DOE retaliated against Plaintiffs (i) by

filing administrative charges against them; (ii) by causing Plaintiffs to be subjected to

disciplinary hearings and procedures pursuant to NYS Education Law §§ 3020 and 3020(a); (iii)

by causing Plaintiffs to be re-assigned to the Rubber Rooms; (iv) by interfering with Plaintiffs'

freedom of speech and freedom of association; and (v) by intimidating Plaintiffs and others from

speaking out about the due process violations and the wrongs within the NYC public school

system.

---

136)   Defendants Bloomberg, City, Klein and DOE threatened Plaintiffs that if they did not agree to some form of punishment and/or fine, they would be subjected to potentially ruinous fines , suspension without pay and/or termination and loss of certifications and/or licenses.

137)   Defendants Bloomberg, City, Klein and DOE threatened Plaintiffs that if they attempted to object to the manner in which Defendants Bloomberg, City, Klein and DOE were conducting the administrative hearings pursuant to NYS Education Law §§ 3020 and 3020(a), Plaintiffs would be subjected to additional punishment, including potentially ruinous fines, suspension without pay and/or termination and loss of certifications and/or licenses.

138)   After the filing of the instant lawsuit, Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT threatened Plaintiffs that if they did not agree to some form of punishment and/or fine, they would be subjected to potentially ruinous fines, suspension without pay and/or termination and loss of certifications and/or licenses.

139)   After the January 15, 2008 letter by Plaintiffs Teachers4Action and Lewenstein to Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT protesting (i) Defendants' violation of Plaintiffs' due process rights, (ii) Defendants' violations of Plaintiffs' constitutional and contractual rights, (iii) Defendants' age discrimination, and (iv) the other wrongful conduct and/or abuses that occurred within the NYC public school system, Defendants Bloomberg, City, Klein, DOE, Weingarten and DOE retaliated against and/or caused the retaliation against Plaintiff Lewenstein by filing new charges against him and by sending him back to the Rubber Room. *See Exhibit 13.*

140)   After the January 25, 2008 letter to Defendant DOE's representative Lorraine Haynes and Defendants Klein, DOE, Weingarten and UFT  protesting (i) Defendants' violation of Plaintiffs' due process rights, (ii) Defendants' violations of Plaintiffs' constitutional and

contractual rights, and (iii) the other wrongful conduct and/or abuses that occurred within the Rubber Rooms, Defendants Bloomberg, City, Klein, and DOE retaliated against and/or caused the retaliation against Plaintiff Lewenstein by filing new charges. *See Exhibit 16*

141)    After the filing of the instant lawsuit, Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT threatened Plaintiffs that if they did not withdraw from the instant lawsuit, or if they insisted on pursuing claims, they would be deprived of the lawyers who were representing Plaintiffs in the 3020(a) Administrative Hearings, and who were provided and paid for by Defendant UFT.

142)    Defendants Bloomberg's, City's, Klein's, DOE's, Weingarten's and UFT's retaliation against and/or causing the retaliation of Plaintiffs was designed to dissuade others from asserting his/her/their First Amendment and other constitutional rights.

143)    As a direct and proximate result of Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT retaliating against and/or causing the retaliation of Plaintiffs, their First Amendment and other constitutionally protected rights have been prejudiced and Plaintiffs suffered monetary and other damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

**Fifth Cause of Action**
**– Constructive Discharge (against Defendants Bloomberg, City, Klein and DOE)**

144)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to 78 as if the same were repeated fully and at length herein.

--------------------------

145)    Defendants Bloomberg, City, Klein and DOE knew that they could not get Plaintiffs to quit.

146)    Since Defendants Bloomberg, City, Klein and DOE knew that they could not get Plaintiffs to quit, Defendants Bloomberg, City, Klein and DOE determined to harass Plaintiffs and to create a hostile work environment through which Plaintiffs would quit or would agree to early retirement and/or deals that led to their dismissal.

147)    Defendants Bloomberg, City, Klein and DOE made Plaintiffs' working conditions intolerable with the intention of causing Plaintiffs to involuntarily resign or give up some of their benefits.

148)    Defendants Bloomberg, City, Klein and DOE deliberately and/or intentionally created an intolerable workplace environment so that Plaintiffs would be forced to resign and/or give up some of their benefits.

149)    Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms and failure to provide Plaintiffs with the protections afforded by the provisions of NYS Education Law §§ 3020 and 3020(a) was part of Defendants deliberate and/or intentional creation of an intolerable workplace environment.

150)    Defendants Bloomberg's, City's, Klein's and DOE's creation of a hostile work environment constitutes constructive termination of Plaintiffs or deprivation of other benefits.

151)    As a direct and proximate result of Defendants Bloomberg's, City's, Klein's and DOE's constructive discharge, Plaintiffs suffered monetary and other damages

WHEREFORE, Plaintiffs demand judgment against Defendants jointly severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court,

(ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate

trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Sixth Cause of Action –
### Breach of Contract (against Defendants Bloomberg, City, Klein and DOE)

152)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to

78 as if the same were repeated fully and at length herein.

153)    Defendant DOE and Plaintiffs have a valid and binding contract.

154)    The terms of the contract guaranteed Plaintiffs rights to a safe and non hostile

work environment, a salary, rights to per session work, benefits, other rights related to their work

status as tenured DOE staff, as well as due process rights related to the NYS Education Law §§

3020 and 3020a hearing procedures.

155)    Defendants Bloomberg, City, DOE and Klein did not want to honor the terms of

the contract with Plaintiffs.

156)    Defendants Bloomberg, City, DOE and Klein sought to break the terms of the

contract with Plaintiffs so that they could reduce the budget of the NYC school system.

157)    The terms of the contract between Plaintiffs and Defendant DOE, prohibited

Defendants Bloomberg, City, DOE and Klein from targeting Plaintiffs and other tenured DOE

staff (i) who were over a certain minimum age; (ii) who had achieved a high pay and benefits

level; (iii) who had been employees for more than a minimum number of years; (iv) who dared

to challenge and/or question the "Rubber Room" procedures; (v) who acted as "whistle blowers"

regarding DOE misconduct (vi) who dared to demand or insist upon their due process rights,

(vii) by forcing Plaintiffs to wait in the Rubber Rooms without due process and the chance to

clear their names and be restored to their classrooms and (viii) by coercing, intimidating and

terrorizing Plaintiffs so that they would be fearful for their personal and professional well-being

so that they would retire, resign or be "forced" to accept deals involving ruinous fines or termination.

158)    Defendants Bloomberg, City, Klein and DOE breached the terms of the contract with Plaintiffs by Defendants Bloomberg's, City's, Klein's and DOE's targeting of Plaintiffs and other tenured DOE staff (i) who were over a certain minimum age; (ii) who had achieved a high pay and benefits level; (iii) who had been employees for more than a minimum number of years; (iv) who dared to challenge and/or question the "Rubber Room" procedures; (v) who acted as "whistle blowers" regarding DOE misconduct (vi) who dared to demand or insist upon their due process rights, (vii) by forcing Plaintiffs to wait in the Rubber Rooms without due process and the chance to clear their names and be restored to their classrooms and (viii) by coercing, intimidating and terrorizing Plaintiffs so that they would be fearful for their personal and professional well-being so that they would retire, resign or be "forced" to accept deals involving ruinous fines or termination.

159)    Defendants Bloomberg's, City's, DOE's and Klein's breach of contract was intentional, malicious, reckless, careless, negligent, unlawful and/or improper and was also designed to interfere with Plaintiffs' due process, licenses and property rights.

160)    As a direct and proximate result of Defendants Bloomberg's, City's, DOE's and Klein's breach of contract, Plaintiffs suffered monetary and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

------------------------

**Seventh Cause of Action – Breach of Fiduciary Duty and Duty of Fair Representation**
**(against Defendants Weingarten and UFT)**

161)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to 78 as if the same were repeated fully and at length herein.

162)    Defendants UFT and Weingarten are agents for Plaintiffs with regard to certain matters, including certain matters related to Plaintiffs' contract with Defendant DOE.

163)    Defendants UFT and Weingarten also assumed certain responsibilities and claim to protect the constitutional and contractual rights of Plaintiffs and other DOE staff.

164)    Defendants UFT and Weingarten hold themselves out as *"fighting to make sure DOE staff are treated with respect and dignity, have a voice in the education of their students and are given the resources they need to succeed in the classroom".*

165)    Defendants UFT and Weingarten hold themselves out as advocates for union members, including Plaintiffs.

166)    Defendants UFT and Weingarten are aware that Defendants Bloomberg, City, Klein and DOE were engaged in efforts to interfere with and/or deprive Plaintiffs of their due process, statutory, constitutional and/or contractual rights.

167)    Defendants UFT and Weingarten have been on notice and aware that Defendants Bloomberg, City, Klein and DOE were (i) violating Plaintiffs 1st, 5th and 14th Amendment Rights, (ii) discriminating against Plaintiffs on the basis of age, (iii) harassing Plaintiffs and subjecting Plaintiffs to hostile work environments, (iv) retaliating against Plaintiffs and otherwise violating Plaintiffs' due process, constitutional and/or contractual rights.

168)    Defendants UFT and Weingarten were on notice and aware that Defendants Bloomberg's, City's, Klein's and DOE's actions were intended and/or designed to get Plaintiffs to quit, be fired and/or otherwise be subjected to ruinous fines.

------------------------

169)   Defendants UFT and Weingarten were on notice and aware:

(a) Of the hostile work environment and dangerous conditions in the Rubber Rooms and have done nothing about them;

(b) That Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms and failure to provide Plaintiffs with the protections afforded by the provisions of NYS Education Law 3020 and 3020(a) violates Plaintiffs' due process, statutory, constitutional and/or contractual rights and have done nothing about them;

(c) That Defendants Bloomberg, City, Klein and DOE have discriminated against Plaintiffs on the basis of their age and failed to take any actions;

(d) That Defendants Bloomberg, City, Klein and DOE have discriminated against Plaintiffs in an effort to get them to quit, be fired and/or otherwise be subject to ruinous fines and have done nothing about them; and

(e) That Defendants Bloomberg, City, Klein and DOE have created a hostile work environment and have done nothing about it.

170)   Defendants UFT and Weingarten owe and owed Plaintiffs a duty of fair representation in dealings with Defendants Bloomberg, City, Klein and DOE.

171)   Despite their knowledge of Defendant Bloomberg's, City's, Klein's and DOE's wrongful acts, Defendants UFT and Weingarten did nothing. *See Exhibit 30.*

172)   Defendants UFT and Weingarten's failure to act to protect Plaintiffs' rights violated their duty of fair representation to Plaintiffs.

173)   Defendants UFT and Weingarten's discrimination and retaliation against and/or harassment of Plaintiffs violate their duty of fair representation to Plaintiffs.

---------------------------

174)    Defendants UFT's and Weingarten's failure to act, and discrimination and

retaliation against and/or harassment of Plaintiffs, violate their duty of fair representation to

Plaintiffs.

175)    Defendants UFT's and Weingarten's aforesaid breach of their duty of fair

representation constituted bad faith and was in reckless disregard for Plaintiffs' rights.

176)    As a direct and proximate result of Defendants Weingarten's and UFT's breach of

fair representation, Plaintiffs suffered monetary damages and emotional injuries, trauma and

other related damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly severally and/or

in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their

individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii)

exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier

of fact; and (iii) attorneys' fees, interest and costs of suit.

### Eighth Cause of Action – Aiding & Abetting Breach of Fiduciary Duty (against Defendants Weingarten and UFT)

177)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to

78 as if the same were repeated fully and at length herein.

178)    Defendants Weingarten and UFT were aware of their contractual and fiduciary

duties to Plaintiffs.

179)    Defendants Weingarten and UFT were aware that Defendants Bloomberg, City,

Klein and DOE were engaged in the above mentioned wrongful acts, including but not limited to

(i) violating Plaintiffs 1st, 5th and 14th Amendment Rights, (ii) discriminating against Plaintiffs on

the basis of age, (iii) harassing Plaintiffs and subjecting Plaintiffs to a hostile work environment,,

(iv) retaliating against Plaintiffs and (v) otherwise violating Plaintiffs' due process, constitutional and/or contractual rights.

180)    Defendants Weingarten and UFT were aware that Defendants Bloomberg, City, Klein and DOE required the assistance of Defendants Weingarten and UFT to (i) violate Plaintiffs 1st, 5th and 14th Amendment Rights, (ii) discriminate against Plaintiffs on the basis of age, (iii) harass Plaintiffs and subject Plaintiffs to a hostile work environment, (iv) retaliate against Plaintiffs and (v) otherwise violate Plaintiffs' due process, constitutional and/or contractual rights.

181)    Defendants Weingarten and UFT provided assistance to Defendants Bloomberg, City, Klein and DOE through Defendants Weingarten's and UFT's failure and/or refusal to act to protect Plaintiffs from (i) violation of their 1st, 5th and 14th Amendment Rights, (ii) discrimination on the basis of age, (iii) harassment and a hostile work environment, (iv) retaliation and (v) other violation of Plaintiffs' due process, constitutional and/or contractual rights.

182)    The assistance that Defendants Weingarten and UFT provided to Defendants Bloomberg, City, Klein and DOE was through Defendants Weingarten's and UFT's refusal to act and Defendants Weingarten's and UFT's directions to the lawyers representing Plaintiffs who were paid for by UFT.

183)    The assistance that Defendants Weingarten and UFT provided to Defendants Bloomberg, City, Klein and DOE was (i) to make announcements that they would take action but then take no action, (ii) to fail to pursue the age discrimination claim after receiving the EEOC right to sue letter, (iii) to intentionally appoint unqualified and/or inexperienced persons such as Defendant Combier to serve on its "Rubber Room Task Force" and (iv) cause Plaintiffs to be

------------------------

threatened that if they continued to participate in the instant lawsuit, they would be terminated or

they would lose the lawyers that the UFT was paying for to represent Plaintiffs in the 3020(a)

administrative hearings.

184)    As a direct and proximate result of Defendants Weingarten's and UFT's aiding

and abetting breach of fiduciary duty and breach of fair representation, Plaintiffs suffered

monetary damages and emotional injuries, trauma and other related damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly severally and/or

in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their

individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii)

exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier

of fact; and (iii) attorneys' fees, interest and costs of suit.

### Ninth Cause of Action – Negligence Hiring, Retention & Supervision (against Defendants Bloomberg, City, Klein and DOE)

185)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to

78 as if the same were repeated fully and at length herein.

186)    Defendants Bloomberg, City, Klein and DOE, hired and retained principals and

other administrators who they knew, or should have known, would carry out the Defendants plan

to target Plaintiffs and other tenured DOE staff.

187)    Defendants Bloomberg, City, Klein and DOE, hired and retained principals and

other administrators who they knew, or should have known, had a hatred and/or dislike of

tenured DOE staff, were envious of tenured DOE staff positions, status and privileges and who

had a propensity for the type of harassment, retaliation and conduct that were designed to cause

Plaintiffs to be charged and sent to Rubber Rooms.

------------------------

188)    Defendants Bloomberg, City, Klein and DOE knew or should have known that the Plaintiffs' supervisors had a propensity for anger, belligerence, violence, jealousy, discrimination, hostility and retaliation.

189)    As a direct result of Defendants Bloomberg's, City's, Klein's and DOE's negligent hiring, retention and supervision of Plaintiffs' supervisors with their propensity for anger, belligerence, violence, jealousy, discrimination, hostility and retaliation, Plaintiffs suffered monetary damages and emotional injuries, trauma and other related damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Tenth Cause of Action – Negligence Hiring, Retention & Supervision (against Defendants Weingarten and UFT)

190)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to 78 as if the same were repeated fully and at length herein.

191)    Defendants Weingarten and UFT hired and retained lawyers to represent Plaintiffs who, Defendants Weingarten knew, or should have known, would not advise Plaintiffs of their rights and were not to challenge Defendant DOE on the issues of NYS Education Law §§ 3020 and 3020(a) requirements such as (i) notification and probable cause; (ii) election of remedies; (iii) right to a three member panel of arbitrators when charged with incompetence; (iv) right to impartial arbitrators selected from an AAA list of arbitrators from outside the City of New York; (v) right to arbitrators who had not served within the last two years; and (vi) right to adequate

representation, subpoenaed testimony, introduction of evidence and reasonable adjournments for

good cause.

192)    Defendants Weingarten and UFT knew that the lawyers they paid for had a

propensity and personality that they would intimidate or frighten Plaintiffs into believing that

instead of fighting the charges, they should make deals to accept as little punishment as was

possible to get the procedures over as quickly as possible and so they could be returned to their

jobs.

193)    Defendants Weingarten and UFT hired and retained Defendant Betsy Combier to

be its representative on the "Rubber Room Task Force".

194)    At the time Defendants Weingarten and UFT hired and retained Betsy Combier,

they knew or should have known of (i) her lack of experience, (ii) her animosity toward others,

(iii) her propensity to allow her ego and emotions to guide whatever actions she took or would

take as their representative, (iv) her inexperience with regard to legal claims that she had made

and lost against the Defendants City, Klein, DOE and others, (v) her propensity for use of her

websites to further her personal goals rather than for legitimate and lawful purposes in

furtherance of the interests of Plaintiffs, other tenured DOE staff and other DOE staff to whom

Defendants Weingarten, Combier and UFT owed fiduciary duties and/or duty of fair

representation.

195)    As a direct result of Defendants Weingarten's and UFT's negligent hiring,

retention and supervision of Defendant Combier, Plaintiffs were threatened, harassed and the

instant claims were damaged, thereby causing Plaintiffs to suffer monetary damages and

emotional injuries, trauma and other related damages.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Eleventh Cause of Action – Misrepresentation, Conspiracy & Fraud[6]

196)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to 78 as if the same were repeated fully and at length herein.

197)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT had the duty to (i) protect the Plaintiffs' due process, statutory, constitutional and/or contractual rights, (ii) comply with NYS Education law 3020 and 3020(a), (iii) notify Plaintiffs of their right to a three person panel to consider any allegations of alleged incompetence upon which or for which Defendants sought to discipline Plaintiffs, (iv) provide impartial arbitrators to consider allegations of alleged misconduct upon which or for which Defendants sought to discipline Plaintiffs and (v) provide prompt hearings related to allegations of alleged misconduct upon which or for which Defendants sought to discipline Plaintiffs.  Defendants made statements and omissions regarding these duties which they knew were false at the time they were made. Defendants made these misrepresentations for the purpose of inducing Plaintiffs to rely on the statements.  Plaintiffs relied on the statements to their detriment and as a result suffered injuries including but not limited to being forced into 3020(a) hearings in which the did not have a three

---

[6] In response to the comments by the Hon. Andrew J. Peck at the January 28, 2008 Conference, Plaintiffs have, for the time being, omitted the RICO cause of action.  However, pursuant to FRCP 15 and subject to future discovery, Plaintiffs reserve their right to amend the complaint to include a RICO cause of action to conform to the facts and evidence.

member panel, did not have impartial arbitrators, were forced to await hearing for months and years and suffered other damages.

198)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT sought to deprive Plaintiffs, or allowed Plaintiffs to be deprived, of their due process, statutory, constitutional and/or contractual rights.

199)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT sought to misrepresent to Plaintiffs what were their due process, statutory, constitutional and/or contractual rights.

200)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to deprive Plaintiffs of their due process, statutory, constitutional and/or contractual rights.

201)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to interfere with and/or defraud Plaintiffs out of their due process, statutory, constitutional and/or contractual rights to the safeguards provided by and compliance with NYS Education law 3020 and 3020(a).

202)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to interfere with and/or deprive Plaintiffs out of their right to a three person panel to consider any allegations of alleged incompetence upon which or for which Defendant DOE sought to discipline Plaintiffs.

203)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to interfere with and/or deprive Plaintiffs out of their right to proper probable cause considerations related to allegations of alleged misconduct upon which or for which Defendant DOE sought to discipline Plaintiffs.

------------------------

204)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to interfere with and/or deprive Plaintiffs out of their right to impartial arbitrators to consider allegations of alleged incompetence or misconduct upon which or for which Defendant DOE sought to discipline Plaintiffs.

205)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to interfere with and/or deprive Plaintiffs out of their right to prompt hearings related to allegations of alleged incompetence or misconduct upon which or for which Defendant DOE sought to discipline Plaintiffs.

206)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to interfere with and/or deprive Plaintiffs out of their right to fair and impartial consideration of applications, subpoenaed testimony, requests for extensions of time, representation by or substitution of counsel and fair hearings related to allegations of alleged incompetence or misconduct upon which or for which Defendant DOE sought to discipline Plaintiffs.

207)    Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to violate Plaintiffs' and other tenured DOE staff's due process and contractual rights, to facilitate the "reassignment" of Plaintiffs and other tenured DOE staff to the Rubber Rooms and/or to facilitate disciplinary letters to be placed in Plaintiffs files without fair and impartial review and/or investigation of the allegations. *See Exhibit 26.*

208)    At the time Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to place and/or make charges against Plaintiffs, they knew they were violating Plaintiffs' due process and contractual rights, to facilitate the "reassignment" of Plaintiffs and other tenured DOE staff to the Rubbers Rooms and/or to facilitate disciplinary

letters to be placed in Plaintiffs files without fair and impartial review and/or investigation of the allegations.

209)    The fraud and conspiracy to defraud Plaintiffs was done with actual and/or constructive knowledge that Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT were depriving Plaintiffs of their due process, statutory, constitutional and/or contractual rights.

210)    At the time Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another, they did so knowing that they were not entitled to deprive Plaintiffs of the aforesaid due process, statutory, constitutional and/or contractual rights.

211)    The making and/or filing of the aforesaid charges against Plaintiffs was in furtherance of the fraud and/or conspiracy to defraud Plaintiffs.

212)    As a direct and proximate result of Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT misrepresentations, conspiracy and fraud, Plaintiffs suffered monetary and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Twelfth Cause of Action – False Confinement
### (against Defendants Bloomberg, City, Klein and DOE)

213)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to 78 as if the same were repeated fully and at length herein.

214)    The Rubber Rooms, closets, empty windowless offices or other small spaces are not workplaces.

215)    The Rubber Rooms, closets, empty windowless offices or other small spaces are locations where Plaintiffs are confined, guarded and their movements restricted.

216)    Plaintiffs are not permitted to come and go from the Rubber Rooms, closets, empty windowless offices or other small spaces as they please.

217)    Plaintiffs are not permitted to meet and/or freely move about the Rubber Rooms, closets, empty windowless offices or other small spaces .

218)    Defendants Bloomberg's, City's, Klein's and DOE's use of the Rubber Rooms, closets, empty windowless offices or other small spaces to confine Plaintiffs is/was improper.

219)    Plaintiffs' relocation and reassignment to the Rubber Rooms, closets, empty windowless offices or other small spaces constitutes unlawful confinement and/or false imprisonment.

220)    As a direct and proximate result of confinement in the Rubber Rooms, closets, empty windowless offices or other small spaces Plaintiffs suffered monetary and other damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Thirteenth Cause of Action - Injunctive & Equitable Relief

221)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 16 to 78 as if the same were repeated fully and at length herein.

222)    As a result of Defendants' Bloomberg's, City's, Klein's, DOE's, Weingarten's, UFT's and Combier's actions, Plaintiffs are being subjected to among other things:

--------------------------

a)      hearings that have been convened in violation of NYS Education Law

§3020(a);

b)      imposition of decisions, fines, suspension without pay, termination and/or

other penalties resulting from hearings that were convened in violation of NYS Education

Law § 3020(a);

c)      retaliation for attempting to exercise their 1st Amendment rights and

freedoms related to informing others, assisting others and getting assistance from others

in relation to the violation of their constitutional and contractual rights, the age

discrimination, hostile work environment, false confinement, and other abuses within the

NYC public school system, which are having a chilling affect on Plaintiffs freedom of

speech and association; and

d)      threats that if they do not withdraw from this lawsuit they will be

subjected to further damages, including firing and loss of their legal representation.

223)    As a result of Defendants' Bloomberg's, City's, Klein's, DOE's, Weingarten's

and UFT's actions, Plaintiffs are also being deprived of their contractual rights which require

that certain Plaintiffs be restored to service for violation of the provisions of their contract with

Defendant DOE relating to their due process rights, investigations, reassignments to Rubber

Rooms and preferring of charges.

224)    Defendants' actions are having a chilling affect on the Plaintiffs' ability to speak

out about the abuses and are causing others to be frightened of coming forward to corroborate

Plaintiffs' allegations or participate in this lawsuit. Some Plaintiffs have been intimidated or

coerced into withdrawing from this lawsuit.

225)    Defendants' actions are prejudicing and adversely affecting the public's interest

---

related to the NYC public schools and the over-arching interest in insuring that competent – rather than the least expensive - teachers are available and part of the education pool.

226)    Defendants' Bloomberg's, City's, Klein's, DOE's, Weingarten's and UFT's wrongful conduct which has caused and/or allowed Plaintiffs to be confined, or continue to be confined, in the Rubber Rooms interferes with Plaintiffs' ability, constitutional and contractual rights, to quickly defend themselves against the preferred charges so that they can clear their names, have the charges and all references thereto removed from their files and be restored to their class rooms and teaching responsibilities.

227)    Every day that Plaintiffs are required to participate in or subjected to the processes which violate NYS Education Law § 3020 and 3020(a), and every day that Plaintiffs are confined to the Rubber Rooms, they suffer additional damages for which monetary relief is inadequate.

228)    Defendants' Bloomberg, City, Klein, DOE, Weingarten and UFT's practices of keeping certain Plaintiffs, such as Plaintiff Hazen, in solitary confinement and/or subjecting other Plaintiffs to other intolerable and unconscionable punishment, causes Plaintiffs to suffer additional damages for which monetary relief is inadequate.

229)    Defendants' Bloomberg's, City's, Klein's, DOE's, Weingarten's and UFT's practices of forcing certain Plaintiffs, such as Plaintiffs Gonzalez or Goebel, to travel 2 – 3 hours in each direction every day or to incur hundreds of dollars per month in extra traveling expenses just to attend the Rubber Room center to which they were arbitrarily re-assigned, causes Plaintiffs to suffer additional damages for which monetary relief is inadequate.

230)    Defendants' practices of retaliation and threats of imposition or enforcement of onerous findings, termination, threatened fines, constructive discharge and withdrawal of

counsel, as against certain plaintiffs such as Plaintiffs Berkowitz, Goebel, McLoughlin and Saunders, causes Plaintiffs to suffer additional damages for which monetary relief is inadequate.

231)    Defendants' Bloomberg's, City's, Klein's, DOE's, Weingarten's and UFT's practices of confining Plaintiffs (i) to dangerous Rubber Rooms – such as the 333 Seventh Avenue and the 125th Street Rubbers Room (at which representative Plaintiffs Saunders and Adams are confined) or (ii) to hostile environment Rubber Rooms in Queens and Brooklyn (at which representative Plaintiffs Hollander and Torres-Nogueras are confined), causes Plaintiffs to suffer additional damages for which monetary relief is inadequate.

232)    Defendants' Bloomberg's, City's, Klein's, DOE's, Weingarten's and UFT's practices of retaliation and interference with freedoms of speech for attempts to speak out against the due process violations and other wrongs in the NYC public school system, as against certain plaintiffs such as Plaintiffs Lewenstein and Fofana, causes Plaintiffs to suffer additional damages for which monetary relief is inadequate.

233)    Defendants' Bloomberg's, City's, Klein's, DOE's, Weingarten's, UFT's and Combier's practices of attempting to interfere with Plaintiffs' prosecution of, and participation in, this lawsuit, causes Plaintiffs to suffer additional damages for which monetary relief is inadequate.

WHEREFORE, Plaintiffs demand judgment for the following injunctive and equitable relief;

(i)    directing that the 3020(a) hearings be immediately enjoined and Plaintiffs not be required to participate in the 3020(a) hearings as Defendants are attempting to enforce them;

(ii)    enjoining Defendant DOE from issuing any findings or judgments against

Plaintiffs resulting from pending or concluded 3020(a) hearings;

(iii)   enjoining Defendant DOE from attempting to enforce any previously issued

findings and/or judgments against Plaintiffs resulting from the 3020(a) Hearings

dating back to 2000;

(iv)    enjoining Defendant DOE from further retaliation against Plaintiffs for attempting

to exercise their 1st Amendment rights and freedoms related to informing others,

assisting others and getting assistance from others in relation to the violations of

their constitutional and contractual rights, the age discrimination, hostile work

environment, false confinement, and other abuses within the NYC public school

system;

(v)     closing the dangerous and hostile environment Rubber Rooms and returning

Plaintiffs to administrative assignments in their schools, or in the alternative

establishing adequate, safe and non-hostile alternate locations and/or workplaces;

(vi)    enjoining all Defendants from further threats that if Plaintiffs do not withdraw

from this lawsuit they will be subjected to further damages, including firing and

loss of their legal representation;

(vii)   for attorneys' fees, interest and costs associated with this application; and

(viii)  such other and further relief as is equitable.

Dated: February 22, 2008        /s/ Edward D. Fagan (electronically signed)
       New York, NY             Edward D. Fagan Esq. (EF-4125)
                                5 Penn Plaza, 23rd Floor
                                New York, NY  10001
                                Tel. (646) 378-2225
                                Fax (646) 304-6446
                                Email: faganlawintl@aim.com