UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

| | | |
|---|---|---|
| **Teachers4Action et al,** | : | Civil Action # |
| Plaintiffs | : | 08-cv-548 (VM)(AJP) |
| v. | : | |
| | : | |
| **Bloomberg et al,** | : | |
| Defendants. | : | |

---------------------------------------------------------------- X

================================================================

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (i) ORDER RELIEVING ED FAGAN AS COUNSEL FOR PLAINTIFFS/FORMER TEACHERS4ACTION MEMBERS, (ii) ORDER GRANTING CHARGING LIEN PURSUANT TO NY JUDICIARY LAW § 475, (iii) ORDER PURSUANT TO FRCP 42 (b) SEVERING FORMER TEACHERS4ACTION MEMBER CLAIMS AND (iv) FOR OTHER RELIEF**

================================================================

## INTRODUCTION

This Motion is necessary because of certain actions by former members of Plaintiff Teachers4Action, which actions were in breach of membership and contractual obligations to Teachers4Action, its other members and counsel.  The Motion simply seeks to (i) relief Ed Fagan as counsel or record for the former members of Teachers4Action, (ii) impose a charging lien as recognized by NY Judiciary Law to insure for the reimbursement of pro-rated share of out of pocket expenses and to compensation for services and/or other benefits provided.

## FACTS

The facts are more fully set forth in the accompanying Joint Declaration of Teachers4Action Executive Committee and Edward Fagan, which statements are incorporated

herein by reference. For ease of reference, the relevant facts are:

- Marie Addoo and Karen Ornstein joined Teachers4Action in or about January/February 2008. *See Teachers4Action Decl. ¶ 2 and Fagan Decl. ¶ 2.*

- At the time they joined Teachers4Action, Marie Addoo and Karen Ornstein sought to benefit from among other things, (a) actions being taken by Teachers4Action itself and on behalf of its members in US Federal Courts; (b) actions being taken by Teachers4Action itself and on behalf of its members in NY State Courts; and (c) actions being taken by Teachers4Action itself and on behalf of its members in or in relation to 3020-a administrative / disciplinary hearings. *See Teachers4Action Decl. ¶ 3 and Fagan Decl. ¶ 3.*

- As part of their obligations of ongoing membership in Teachers4Action, Marie Addoo and Karen Ornstein committed to among other things, (a) cooperate with Teachers4Action and its counsel; (b) maintain confidentiality related to Teachers4Action strategies, litigation and activities; and (c) refrain from taking and/or engaging in any actions that were detrimental to Teachers4Action, other Teachers4Action members or their collective or individual claims, Teachers4Action overall goals and purposes. *See Teachers4Action Decl. ¶ 4 and Fagan Decl. ¶ 4.*

- Starting on or about mid-May 2008, Marie Addoo and Karen Ornstein breached their obligations to Teachers4Action and its counsel, by failing to cooperate, breaching confidentiality and taking or engaging in other actions detrimental to Teachers4Action, other members and/or its counsel. *See Teachers4Action Decl. ¶ 5 and Fagan Decl. ¶ 5.*

- Marie Addoo and Karen Ornstein without prior notification to and/or consent of the Teachers4Action Executive Committee or its counsel, agreed to meet with UFT

Representative and Individual Defendant Betsy Combier ("Combier") , who Teachers4Action has learned was sent by Defendant United Federation of Teachers ("UFT") with the knowledge, assistance and support of Defendant Department of Education ("DOE") into the Queens "Rubber Room" to, among other things, further harass Teachers4Action members, interfere with Teachers4Action claims and intimidate Teachers4Action members. *See Teachers4Action Decl. ¶ 6 and Fagan Decl. ¶ 6.*

- Prior to the filing of this Motion, Teachers4Action, its Executive Committee and counsel sought, to no avail, to avoid the necessity of this application. *See Teachers4Action Decl. ¶ 7 and Fagan Decl. ¶ 7.*

- Prior to the filing of this Motion, Marie Addoo and Karen Ornstein refused to honor their membership and contractual obligations to Teachers4Action and counsel. *See Teachers4Action Decl. ¶ 8 and Fagan Decl. ¶ 8.*

- On May 27, 2008, Teachers4Action Executive Committee unanimously terminated the membership of Marie Addoo and Karen Ornstein. *See Teachers4Action Decl. ¶ 9 and Fagan Decl. ¶ 9.*

- From January / February 2008, Teachers4Action and its counsel have expended and/or incurred significant out of pocket expenses and provided legal and other services, for which Marie Addoo and Karen Ornstein are obligated to but for which they have yet to pay. *See Teachers4Action Decl. ¶ 10 and Fagan Decl. ¶ 10.*

## LEGAL STANDARDS

"The unique relationship between an attorney and client, founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion

on the part of the attorney, remains one of the most sensitive and confidential relationships in our society. A relationship built upon a high degree of trust and confidence is obviously more susceptible to destructive forces than are other less sensitive ones.  It follows, then, that an attorney cannot represent a client effectively and to the full extent of his or her professional capability unless the client maintains the utmost trust and confidence in the attorney".  See Cuevas v Cuevas 110 AD 2d 873 (2d Dept 1985) citing Court of Appeals in Demov, Morris, Levin & Shein v. Glantz (53 N.Y.2d 553, 556).

Motion for leave to withdraw can be granted based upon, among other reasons: [1] irreconcilable differences on strategic decisions; [2] lack of cooperation by the cross-moving defendants in the prosecution of the action; and [3] destruction of reciprocal confidence between said defendants and counsel.  See Miller v. Globan Jewish Assistance & Relief Network, 0112622/2005 (1-9-2008) 2008 NY Slip Op 30223(U) .

Plaintiffs' Entitlement to imposition of a "charging lien" is set forth in New York Judiciary § 475, which states in pertinent part:

> *From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination . . .*

At this time, Plaintiff Teachers4Action and its counsel only seek that which is expressly authorized by NY Judiciary Law § 475 – to wit: entry of an Order recognizing a Charging Lien. According to NY Judiciary Law § 475, Plaintiff Teachers4Action and its counsel will at a later

date move for a determination of the amount and enforcement of the Charging Lien.

The standards as articulated in New York Courts for what clients and attorneys rights and obligations are when a client chooses to discharge his/her attorney are set forth in Matter of Levy, 249 N.Y. 168 (1928) and Matter of Krooks, 257 N.Y. 329 (1931).

The general principals are quite simple – The law does not permit the client to cheat his/her attorney.   As explained in Matter of Levy, 249 N.Y. 168, 170-171 (1928):

> *The law does not permit the client to cheat his attorney. But the client is competent to decide whether he will continue the litigation or seek to collect the judgment or agree with his adversary in the way. "The right of the parties to thus [honestly] settle is absolute and the settlement determines the cause of action and liquidates the claim. This necessarily involves the reciprocal right of the attorney to follow the proceeds of the settlement, and * * * to insist that his share be ascertained and paid to him." (Fischer-Hansen v. Brooklyn Heights R.R. Co., supra, p. 501.)*

As explained in Matter of Krooks, 257 N.Y. 329 331 – 333 (1931)

> *A client may at any time for any reason which seems satisfactory to him, however arbitrary, discharge his attorney. (Tenney v. Berger, 93 N.Y. 524, 529; Matter of Dunn, 205 N.Y. 398, 402; Matter of Paschal, 77 U.S. 483, 496.) . . . The decisions in this State rest upon the familiar principle that the peculiar relationship of trust and confidence which ought to exist between attorney and client injects into the contract special and unique features. . . . The client's right to control her retainer does not permit her to cheat her attorney. (Matter of Levy, 249 N.Y. 168, 170.) If the attorney shall be paid the reasonable value of his services, no cheating will occur. The contract has been canceled and its terms cannot establish the standard for compensation. Indeed, the agreement of retainer may prove to the attorney an extremely unjust guide for ascertaining his worth. . . . A reduction to a sum below that stipulated amount would give him nothing in return for industry, skill, studious research, long days in court and fidelity to his client's interests. Quantum meruit is the rule to apply. (Matter of City of New York, 219 N.Y. 192.)*

In addition to the general prohibition in New York insuring that a client does not cheat his/her attorney, the 2nd Circuit recognizes additional elements, i.e. the Common Benefit and

Catalyst Theories in settlements, that are relevant to this Motion and the ultimate valuation of the NY Judiciary § 475 - Charging Lien.

> In Rodonich v. Senyshyn, 52 F.3d 28 (2nd Cir. 1995), the Court explained that
>
> *. . . To deny attorney's fees under the common benefit doctrine on this basis would be incorrect as a matter of law. . . . an award of money damages to an aggrieved . . . member (of a group) can serve as a check on the abuse of power and can promote the exercise of democratic rights (for others) . . . the award of money damages potentially confers two kinds of benefits . . . it may deter the . . . disciplining of others for the exercise of their free speech rights, and it may "dispel the `chill" cast upon the rights of others". . . While these potential benefits are intangible and indirect, even atmospheric, they may nevertheless be substantial. It is a settled matter that, where attorney's fees are permitted, and where a lawsuit provided the "catalyst" for the sought policy change, the plaintiff may be considered to have "prevailed" and attorney's fees may be justified.*

*Rodonich* is applicable in this case as it involved a case of an aggrieved union member whose rights were affected. The efforts of Plaintiff Teachers4Action, its members and its counsel who have been prosecuting these claims to produce the same type of intangible and indirect – yet substantial – benefits for as the benefits described and which inured to the union members in *Rodonich*.

Therefore, common benefit and catalyst theory of settlements is also applicable to the determination of the value and benefits that inured to former members of Teachers4Action who sought to take advantage of and who have failed to honor their obligations to Plaintiffs Teachers4Action, its members and its counsel.

## **CONCLUSION**

In view of the foregoing, Plaintiffs pray their Motion is granted in its entirety.

| | |
|---|---|
| Dated: May 29, 2008 | /s/ Edward D. Fagan (electronically signed) |
| New York, NY | Edward D. Fagan Esq. |
| | 5 Penn Plaza, 23rd Floor |
| | New York, NY  10001 |
| | Tel. (646) 378-2225 |
| | Plaintiffs' Counsel |