UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
TEACHERS4ACTION, et al.,

       Plaintiffs,       Index No. 08 Civ. 548 (VM) (AJP)

  v.

MICHAEL G. BLOOMBERG, et al.,

       Defendants.
------------------------------------------------------------ x

## UFT DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PERMISSION TO SERVE LIMITED DISCOVERY

  Defendants Randi Weingarten, President of the United Federation of Teachers ("UFT"), the UFT and Betsy Combier (collectively, the "UFT Defendants"), by their counsel Stroock & Stroock & Lavan LLP, respectfully submit this Memorandum of Law in opposition to Plaintiffs' May 14, 2008 Motion for Permission to Serve Limited Discovery Requests.

### Preliminary Statement

  On May 1, 2008, this Court ordered that except for the one hour deposition of Ms. Theresa Europe, all discovery in this action would be stayed until a second amended complaint is filed and a decision is rendered on the motions to dismiss that defendants intend to file (Plaintiffs' counsel having indicated that the Second Amended Complaint would contain the existing claims in addition to others). Nonetheless, in response to Plaintiffs' persistent requests for unknown "limited" early discovery, the Court permitted Plaintiffs to make an application which should include the proposed discovery so that the Court may assess whether it is appropriate at this time. As shown below, those requests have proven to be far from "limited" or appropriate at this time.

Accordingly, the UFT Defendants respectfully ask that the Court deny Plaintiffs' motion because: (1) there are no new facts or developments that would justify disturbing your Honor's well-founded ruling that discovery be stayed; (2) the discovery suggested by Plaintiffs is not "limited" – instead it is overly broad in scope, burdensome in time and expense, and generally improper, particularly in Plaintiffs' unabashed request for clearly privileged attorney-client communications; (3) without a final operative complaint, it is impossible to even determine if the requested discovery can lead to relevant evidence, not to mention whether it is even appropriate at this time; and (4) Plaintiffs' stated reason for seeking early discovery, to assist the Court by focusing certain issues implicated by the impending motions to dismiss, is entirely without merit because motions to dismiss are to be decided on the pleadings.

## ARGUMENT

First, Plaintiffs' motion should be denied because this Court lawfully and appropriately exercised its discretion in ordering a stay of discovery pending the motions to dismiss. There have been no changes in facts or circumstances since this Court issued the stay a mere three weeks ago that would warrant a reconsideration of that decision.

It is well-settled that a district court has discretion to stay discovery pending a motion to dismiss. Gandler v. Nazarov, 1994 WL 702004, *4 (S.D.N.Y. Dec. 14, 1994) (Haight, J.). Such a stay is appropriate so long as the anticipated motion to dismiss appears to "not be unfounded in the law." Id.; see also Niv v. Hilton Hotels Corp., 2007 WL 510113, *1 (S.D.N.Y. February 15, 2007) (Leisure, J.); Chrysler Capital Corp. v. Century Power Corp., 137 F.R.D. 209, 210 (S.D.N.Y. June 27, 1991) (Patterson, Jr., J.). Because motions to dismiss may be successful in part or in full, it is often unnecessary or inappropriate to impose the burden of responding to broad discovery based upon claims that may ultimately be dismissed. See e.g. Niv, 2007 WL

510113 at *2. In making a determination whether to say discovery, a court considers whether the discovery requests at issue are extensive and overwhelming. Chrysler Capital, 137 F.R.D. at 210-11. Courts may also consider whether a stay will cause any unfair prejudice to the party who objects to the stay. Gandler, 1994 WL 702004 at 4.

This Court's decision to stay discovery pending the determination of the motions to dismiss should remain intact. To do otherwise would impose an enormous burden on the UFT Defendants without any basis. Responding to Plaintiffs' overly broad and voluminous discovery requests would be onerous in both time and expense. Such a burden should not be imposed where some or all of the claims may (and we believe are likely to) ultimately be dismissed. As stated by this Court in Niv, "responding to the discovery requests will likely prove burdensome, and if the motion is granted, this burden will likely have served little purpose." Niv, at *2. Furthermore, Plaintiffs have not asserted, nor do any facts suggest, that Plaintiffs would suffer any prejudice from a continuation of the stay. There are no exigent circumstances at play that would require an expedited and premature full-blown discovery process at this point. That Plaintiffs would like to have a full inquest now to defend against impending motions to dismiss or support some possible motion for summary judgment is in no way a proper basis for the instant request.

The UFT Defendants' have taken steps pursuant to their general document preservation obligations to ensure that existing relevant documents will continue to be available should discovery become appropriate at a later time.

Second, while Plaintiffs title the requests as "limited discovery," there is nothing "limited" about the discovery sought. Rather, Plaintiffs propose what amounts to a blunderbuss fishing expedition before even filing an operative complaint setting forth all their claims. This

approach appears to be Plaintiffs' Counsel's modus operandi, which persists despite sanctions being levied against him on several occasions for abuse of discovery. See In re Ski Train Fire in Kaprun Austria on November 11, 2000, MDL No. 1428 (SAS) (S.D.N.Y. August 16, 2007 Order) (sanctioning Mr. Fagan for discovery violations and disqualifying him). See also Association of Holocaust Victims for Restitution of Artwork and Masterpieces, a/k/a "AHVRAM" v. Bank Austria Creditanstalt AG, 04 Civ. 3600 (SWK) (S.D.N.Y. August 19, 2005 Order).

Plaintiffs have submitted seventeen document requests and eighteen interrogatories that cover an exceedingly broad array of topics and are generally broad and vague. For example, in Interrogatory 7, Plaintiffs seek information relating to "Arbitrators" and "the 3020-a hearings" but does not specify any particular arbitrator, hearing, teacher, or delineate a time period. Over the years there have doubtless been hundreds of such individuals and proceedings. Plaintiffs also seek, as evidenced by Request # 10, documents pertaining to a claim that Plaintiffs have alleged in State Court, but that bear no relevance to any claim that is before this Court. Requests such as Requests # 2 and # 3 are generally overreaching and indicative of the entire approach, seeking a document that may or may not have been identified in a hearing by a party to one (if not more) of Plaintiffs' separate State Court proceedings against 3020-a arbitrators, at which the UFT Defendants were not present, and consequently, the goings on of which the UFT Defendants have no personal knowledge.

Not only are these requests not "limited" with regard to the issues in this case, but they are in fact well beyond what is permitted at the beginning stages of litigation under the Local Civil Rules of the Southern and Eastern District of New York. Local Rule 33.3(a) plainly states that:

> Unless otherwise ordered by the court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents…

Plaintiffs' requests also go beyond what is permitted in later stages of discovery. The Local Civil Rules caution that interrogatories other than those described above "may only be served" if "they are a more practical method of obtaining the information sought than a request for production or a deposition," or if permitted by the Court. This Rule recognizes that in most instances the sort of essay questions proposed by Plaintiffs will be inappropriate. For example, Interrogatory 2, asks the UFT Defendants to

> Describe the reasons, including incentives, promises and/or consideration provided and/or offered by Defendants UFT and/or Weingarten to NYC Defendants as part of the negotiations to changes in Article 21 g of the Collective Bargaining Agreement regarding the 3020-a hearings for pedagogues, such as Plaintiffs

This question essentially asks UFT Defendants to write an essay discussing years of collective bargaining history and the thoughts and feelings of those involved – much of which would be protected by the attorney-client privilege as well as a collective bargaining privilege in any event.

Privilege issues are not limited to that interrogatory. For example, in Request # 10, Plaintiffs seek "Documents received by, sent from and/or internal documents of Defendants UFT…and/or its counsel Stroock, Stroock & Lavan . . ." and in Request # 15, Plaintiffs seek "Copy of conflicts waivers between [the UFT Defendants] pursuant to which Stroock, Stroock and Lavan is allowed to represent Defendants . . ." These requests clearly and brazenly seek

information protected by the attorney-client privilege. Plaintiffs also seek documents protected by the work-product doctrine. In Request # 14, Plaintiffs seek

> Documents, memoranda, notes and/or other records related to meetings conducted…at the direction of Defendants UFT and/or Weingarten, and including Defendant UFT and/or Weingarten at the Rubber Rooms with Teachers4Action members…with regard to Teachers4Action member claims in the present action, including but not limited to claims against NYC Defendants and/or Defendant UFT, Weingarten and Combier.

By this request, Plaintiffs demand documents that would have been prepared in anticipation of litigation, and are unquestionably attorney work-product. Such requests are certainly not proper at all, let alone at this stage.

Third, while Plaintiffs assert that such discovery is needed to "reduce or at a minimum focus the issues in future Motions so that the Court can expeditiously rule upon the upcoming motions to dismiss by Defendants and the motions for partial Summary Judgment which Plaintiffs believe may be dispositive of some of the claims . . .", as your Honor correctly noted on May 1, 2008, determinations of motions to dismiss are limited to the pleadings. Therefore, this Court should not permit Plaintiffs to obtain discovery in order to bolster or expand claims that may well be dismissed based on the pleadings alone. Nor should Plaintiffs be allowed to use this discovery to fish for material to be used in crafting their impending second amended complaint or request leave of the Court still for a third. See Fed. R. Civ. P. 26(b)(1) advisory committee's note (2000) (stating that courts have the authority to confine discovery to the claims and defenses asserted in the pleadings and that parties are not entitled to discovery to develop new claims or defenses that are not already identified in the pleadings). See also Dunkin' Donuts Franchised Restaurants, LLC v. 1700 Church Ave. Corp., 2008 WL 1840760, *1 (E.D.N.Y. April 23, 2008) (Go, Mag. J.).

Further, while Plaintiffs allegedly seek to assist this Court by way of Plaintiffs' requested discovery by focusing some of the issues in the case in anticipation of their "motions for partial summary judgment," the issues referenced by Plaintiffs are exhaustive of those in the current (and soon to be superseded) amended complaint and include others that are not yet part of any complaint in this case.[1]  It is difficult to see how any "focus" is achieved, when the topics of the discovery request are as broad and overreaching as the topics in the pleadings themselves. Moreover, the pleadings are not yet even complete in this case.[2]  Your Honor has allowed Plaintiffs until June 2, 2008 to file their second amended complaint.  Variances seen so far in Plaintiffs' pleadings have included discrepancies in parties and causes of action.  Plaintiffs' counsel indicated before your Honor on May 1, 2008 that he would be adding causes of action and parties to the amended complaint.  Without even knowing what the claims will be, the UFT Defendants cannot even evaluate whether Plaintiffs' discovery requests are at all relevant to the action.  It is also unclear if Plaintiffs' intended motions for partial summary judgment will be necessary or appropriate, in light of Defendants' motions to dismiss.  If Plaintiffs truly wish to help narrow the focus of this litigation, a finalized complaint would certainly further that endeavor.  At the very least, the UFT Defendants should be made aware what claims are alleged against which parties, before Plaintiffs begin their aggressive and broad discovery campaign.

---

[1]  Plaintiffs' counsel states in his letter in support of Plaintiffs' Motion that "[t]he limited Document Requests and Interrogatories were designed to help focus the factual and legal issues upon which Plaintiffs have predicated their claims for, among other things (i) due process violations related to the 3020-a hearings and Article 21-g of the Collective Bargaining Agreement, (ii) harassment, (iii) retaliation, (iv) discrimination, (v) hostile work environment, (vi) constructive discharge, (vii) breach of duty of fair representation and for other relief."  However, there are no "other things" as this list represents claims already alleged in this action plus those that we can only assume will be alleged in the Second Amended Complaint.

[2]  The fluctuating status of Plaintiffs' allegations also make it premature for UFT Defendants to completely state their individual objections to each request at this time.  Therefore, should this Court permit Plaintiff to serve any portion of the requested discovery, the UFT Defendants reserve the right to make appropriate objections and/or to file motions to quash at that time.  If the Court prefers to consider the individual objections before determining the motion, the UFT Defendants can submit those objects that can now be discerned without benefit of a final pleading.

## CONCLUSION

For all these reasons the application should be denied.

Dated: New York, New York
       May 30, 2008

                                    STROOCK & STROOCK & LAVAN LLP

By: _____
     Charles G. Moerdler
     Alan M. Klinger
     (A Member of The Firm)
     180 Maiden Lane
     New York, New York 10038
     (212) 806-5400

Of Counsel:
Dina Kolker
Christine E. Ellice