UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TEACHERS4ACTION, et al.,

                                Plaintiffs,

             -against-

MICHAEL G. BLOOMBERG, et al.,

                           Defendants.

**DECLARATION OF BLANCHE GREENFIELD IN OPPOSITION TO PLAINTIFFS' MOTION FOR LIMITED DISCOVERY**

**08 civ. 548 (VM) (AJP)**

-------------------------------------------------------------------x

       **BLANCHE GREENFIELD**, an attorney duly admitted to practice law before the bar of this Court, declares, under the penalty of perjury, as follows:

       1.     I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for Defendants Mayor Michael Bloomberg, Chancellor Joel Klein, the City of New York, and the New York City Board of Education (sued herein as the "Department of Education") (hereinafter collectively referred to as "City defendants") in the above-captioned action.

       2.     I submit this declaration in order to place before the Court certain documents relied on by City defendants in their Opposition to Plaintiffs' Motion for Limited Discovery.

       3.     Annexed hereto as Exhibit "A" is a copy of the transcript of the conference held before the Court on January 28, 2008.

4.      Annexed hereto as Exhibit "B" is a copy of the transcript of the conference held before the Court on February 8, 2008.

5.      Annexed hereto as Exhibit "C" is a copy of the transcript of the conference held before the Court on May 1, 2008.

6.      Annexed hereto as Exhibit "D" is a copy of the "Plaintiffs' Limited First Requests" served on City defendants.

7.      Annexed hereto as Exhibit "E" is a copy of an Order to Show Cause dated April 14, 2008.

8.      Annexed hereto as Exhibit "F" is a copy of "Petitioners' Declaration and Statement of Additional Authority In Support of Request for Evidentiary Hearing and Permission to Join Additional Respondents," dated April 23, 2008.

9.      Annexed hereto as Exhibit "G" is a copy of a subpoena, dated May 15, 2008.

10.      Annexed hereto as Exhibit "H" is a copy of a letter, dated May 19, 2008 from Assistant Corporation Counsel Blanche Greenfield to Justice Abdus-Salaam.

11.      Annexed hereto as Exhibit "I" is a copy of a Notice of Petition and Motion on Short Notice, and the exhibits annexed thereto, dated May 15, 2008.

12.      Annexed hereto as Exhibit "J" is a "courtesy copy" of a complaint received by the Office of the Corporation Counsel.

13. Annexed hereto as Exhibit "K" is a copy of a summons and complaint dated May 19, 2008.

**WHEREFORE**, for the reasons set forth in City defendants' memorandum of law submitted in opposition to plaintiffs' motion, City defendants respectfully request that

plaintiffs' motion to denied in its entirety, and for such other and further relief as the

Court deems just and proper.

Dated: New York, New York
May 30, 2008

BLANCHE GREENFIELD
Assistant Corporation Counsel

EXHIBIT "A"

81SHTEAC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   TEACHERS4ACTION, et al.,

4                   Plaintiffs,

5            v.                                08 Civ. 548 (VM)

6   MICHAEL G. BLOOMBERG, et al.,

7                   Defendants.

8   ------------------------------x

9
                                         New York, N.Y.
10                                       January 28, 2008
                                         10:40 a.m.
11
    Before:
12
                       HON. ANDREW J. PECK
13
                                         Magistrate Judge
14
                          APPEARANCES
15
    REGUS WORLDWIDE OFFICE CENTERS
16       Attorneys for Plaintiffs
    BY:  EDWARD D. FAGAN
17
    MICHAEL A. CARDOZO,
18  Corporation Counsel of the
    City of New York
19       Attorney for Defendants
    BY:  BLANCHE GREENFIELD
20       Assistant Corporation Counsel
21
22
23
24
25

2

81SHTEAC

1          (In open court)

2          THE COURT:  I assume, Mr. Fagan, you have handed this

3   to Ms. Greenfield as well.

4          MR. FAGAN:  I did, your Honor.

5          THE COURT:  Give me a minute to read it.

6          MR. FAGAN:  Thank you, Judge.

7          (Pause)

8          THE COURT:  I have read the complaint and I have read

9   Mr. Fagan's letter to Judge Marrero, which was memo endorsed

10  sending it over to me.  With that, I guess this is your

11  application, Mr. Fagan.  So proceed.

12         MR. FAGAN:  Thank you, your Honor.  First of all, your

13  Honor, I wanted to introduce my client.  The gentleman to my

14  right is Florian Lewenstein.  He is the named plaintiff in the

15  entity called Teachers4Action, and behind me sit eight or

16  nine --

17         THE COURT:  I hope they are not math teachers.

18         MR. FAGAN:  Well, I am certainly not, your Honor.

19         -- teachers who are affected by what is going on and

20  teachers, some of whom I will refer to by name during the

21  course of the hearing and some of whom are concerned about

22  retaliation, which is one of the things that I mentioned.

23         THE COURT:  Let me ask you this.  To the extent you

24  have John Does 1 to 50 and Jane Does 1 to 50 as plaintiffs,

25  what does that mean?  Are you planning on making the

81SHTEAC

1    appropriate application to the court to have anonymous

2    plaintiffs?  Frankly, absent something that makes this

3    different than any other employment discrimination or

4    employment-related case, retaliation would be against the law.

5    That doesn't mean that no employer ever retaliates, but I

6    cannot think of a single employment case that I have had in the

7    13 years I have been on the bench with an anonymous plaintiff.

8            MR. FAGAN:  Your Honor, I am familiar with the hurdle

9    that we must reach in order to go forward with anonymous

10   plaintiffs.  I am prepared to start amending the complaint,

11   make that application.  I can make that application to your

12   Honor by the end of this week.

13           As your Honor pointed out, I may not be successful,

14   and I don't want to waste the court's time.  What I would

15   propose to do would be to disclose those people in certain

16   categories who are prepared to disclose their identity, to

17   identify them specifically.

18           THE COURT:  Time out.  Let's be very clear because

19   there are a lot of issues with respect to the complaint, and

20   perhaps I should let Ms. Greenfield do her own work, but to the

21   extent it affects my docket, either you are going to amend the

22   complaint and change John Doe to Sherlock Holmes, John Watson,

23   and whatever the names are -- obviously, I am using fictitious

24   names, hopefully with a literature teacher back there.  Either

25   you are going to amend and name actual teachers or there is no

81SHTEAC

4

1    point in motion papers that say Sherlock Holmes is willing to

2    be named but here is why the other people shouldn't.  So either

3    amend them for those who are willing to be named or make your

4    application with respect to the anonymous plaintiffs.

5         I am not 100 percent up on the case law, but it

6    strikes me as a losing proposition.  So if you are going to

7    make that motion, make sure that you have dotted your Is and

8    crossed your Ts because otherwise you are just wasting your

9    money or your client's money and my time.

10         MR. FAGAN:  May I have until Friday to either make

11    that motion or amend the complaint to name those specific

12    individuals in those categories?

13         THE COURT:  And to drop the John Does?

14         MR. FAGAN:  And to drop the John Does.

15         THE COURT:  That is fine.

16         Let me ask another question while we are lining up our

17    plaintiffs.  Is Teachers4Action incorporated or unincorporated,

18    and what is it and what is its standing?

19         MR. FAGAN:  It is an unincorporated association,

20    Judge, of teachers.

21         THE COURT:  Is it a real organization or is it just a

22    group of people who got together because the UFT isn't doing

23    what they want done?

24         MR. FAGAN:  No, Judge, it is a real organization.

25    They have already communicated with the State Board of

5

81SHTEAC

1   Education in order to get the forms -- the State Board has to

2   pass on anything that mentions the name education, any

3   organization that proposes to do that.  They are in the process

4   of doing that.

5           Mr. Lewenstein, the named plaintiff, is a teacher.  He

6   is not just an officer of the company, of the association.  By

7   the time we get further down the line, the next week or so, we

8   hope to be able to provide you not just with the application

9   that has been made to the State Board, Department of Education,

10  but also the documents that show that they have got it and at

11  least there is provisional authority for the association.

12          THE COURT:  All right.  Are all members of the

13  association people who are in the temporary reassignment

14  centers or does it have a different membership?

15          MR. FAGAN:  Every member of the association as is

16  presently constituted is sitting confined in a rubber room

17  somewhere.  Later on they will have other goals, there are

18  other things they are going to do, but for these purposes, for

19  now, every one of the people that are in the courtroom today

20  and Mr. Lewenstein and the members of the association itself,

21  Teachers4Action, are confinees in these rubber rooms.

22          THE COURT:  OK.  Continue.

23          MR. FAGAN:  Your Honor, may my client interrupt for 30

24  seconds?  I don't know what he wanted to ask me.

25          THE COURT:  Yes.

6

81SHTEAC

1        MR. FAGAN:  Thank you.

2        (Pause)

3        MR. FAGAN:  Judge, we came before the court because

4    there are certain emergent issues.  This is not a normal case

5    in the sense of it can go its normal process for motion

6    practice.  The reason for that is there are, as I put on the

7    outline, there are certain issues that are pressing for which

8    we submit emergency relief is appropriate in some form.  It may

9    not be complete.  It may not be everything that we wanted.  But

10   there has to be something in order to protect a group of people

11   who have been targeted and who are in one stage or another

12   along the way to being terminated, further confined, harassed,

13   retaliated against, or fined.

14        The reason I say that is the history of what has gone

15   on with the rubber rooms, as it relates to our application

16   today, is a history where people are, according to us, deprived

17   of their due process rights pursuant to New York State law.

18   They are sent into these rubber rooms, where they are literally

19   confined.  They have to punch in time clocks.  They walk in

20   every morning, they punch in a time card.  They can't leave.

21   Some of them are actually confined to --

22        THE COURT:  They are here today.

23        MR. FAGAN:  Actually, they are here today.  They are

24   allowed to take personal days, your Honor.

25        We are concerned about the issue of retaliation.  I

81SHTEAC

1    will get to the issue of retaliation, but I only want to focus

2    on the emergency issues right now.

3         The emergency issues fall into, I would say, three

4    categories.  One of them is an issue of preservation of

5    documents.  This is not to suggest anything nefarious is going

6    to be done by the DOE.  But I am mindful of your Honor's

7    decision in *In Re NTL*.  The concern that we have is that

8    somewhere within this vast behemoth of the DOE and all its

9    offices and all its computers and all its recordkeeping

10   systems, the exact same thing that your Honor encountered in

11   the *NTL* case is going to happen.  There is going to be --

12        THE COURT:  Are you familiar with the case law with

13   respect to preservation orders in this district?

14        MR. FAGAN:  I am, your Honor.

15        THE COURT:  So how do you satisfy that standard?

16        MR. FAGAN:  I satisfy that standard, your Honor, by --

17        THE COURT:  I guess since you claim to be familiar,

18   what case are you relying upon?

19        MR. FAGAN:  Actually, I briefed the issue in a case

20   called, in the *Kaprune* case.

21        The issue with regard to preservation -- I do

22   apologize, your Honor.  I left my computer at Fed-Ex.  I came

23   running over.  I have all that information there.

24        What I am relying on is the issue of the necessity to

25   preserve documents that are going to automatically be recycled

81SHTEAC

1    and could be destroyed in the normal --

2              THE COURT:  I guess what I am saying is, once the

3    litigation has commenced, which it has, if not beforehand, the

4    Department of Education has a duty under the federal rules, and

5    you may have now served to wake them up and get this in

6    Ms. Greenfield's control a lot sooner than normally an

7    assistant would be assigned to the case, etc., but under the

8    rules automatically they have preservation obligations.  For

9    the court to impose an order under *Treppel v. Biovail Corp.*,

10   the leading case in this district by Judge Francis, there has

11   to be more than just it's a big organization and maybe they

12   won't do what they are supposed to do.  If they don't do what

13   they are supposed to do without any court order for

14   preservation up front, they are going to have NTL-like problems

15   down the road.  But why should the court impose an order?

16             MR. FAGAN:  The reason that the court should impose an

17   order on them, your Honor, is because, number one, during the

18   past -- the teachers who are here, different teachers can

19   provide testimony that they have asked for information and been

20   denied the information.

21             THE COURT:  That doesn't mean it's been destroyed;

22   that just means they are not entitled to it.

23             MR. FAGAN:  Your Honor, that is correct.

24   Mr. Lewenstein also is a computer expert, and Mr. Lewenstein

25   had communications with people at the DOE where they talk about

9

81SHTEAC

1    the e-mail files are regularly deleted.  The e-mail records are

2    regularly deleted because the DOE system is not, or the way

3    their servers are set up they are not big enough or they choose

4    to implement a system where the employees are regularly told to

5    delete e-mails.

6         Now, again, I am not suggesting anything nefarious,

7    but what I am suggesting is the DOE is a huge organization.

8    There is a way, I believe, to structure a very simple order

9    that informs these people that the procedures that they are

10   implementing right now are procedures that they cannot utilize

11   going forward.  They are destroying e-mails related to

12   communications between teachers, they are destroying e-mails

13   related to the rubber rooms and the use of the rubber rooms,

14   and I submit they are also destroying information related to

15   requests that have been made by politicians, city council

16   people, and even the teachers themselves to gain access to the

17   information.

18        I believe we will be able to meet that hurdle.  We can

19   do it by way of affidavits and submissions.  I raised the issue

20   because it is a very serious issue.

21        THE COURT:  Let me hear from Ms. Greenfield on it and

22   then if we do have to have formal motion practice on it, you

23   will put in your affidavits.  But remember, something that says

24   we tell people to delete e-mails so as not to clog up the

25   system or even e-mails unless saved are deleted automatically

81SHTEAC

1    every 30 days, all the stuff that, frankly, is the same at

2    almost any big corporation is a very different story than what

3    happens when a federal lawsuit where federal rules are

4    triggered will apply.

5         Ms. Greenfield.

6         MS. GREENFIELD:  First of all, good morning, your

7    Honor.  I haven't seen you in quite some time.

8         Counsel started by talking about a group of people.

9    Your Honor, we are not here on a pleading which addresses a

10   group of people.  We are here on a pleading where only one

11   named plaintiff is named and there are no factual allegations

12   in the complaint that shows he has any viable cause of action.

13        Also, while counsel is now speaking about e-mails, I

14   would note that in all the correspondence I have from counsel,

15   while they note the need, he notes the need for this meeting,

16   there is nothing specifically addressed which puts us on notice

17   about what information plaintiffs are claiming are in jeopardy

18   of being destroyed.

19        The reassignment centers, your Honor, there is no

20   secret about what the reassignment centers are.  Everybody in

21   the Board of Education knows about it.  I don't know what type

22   of e-mails would bring any additional facts forward to the

23   court about the reassignment centers.  They are there.

24   Plaintiff can speak about it.  People at the Board of Education

25   can speak about it.  The UFT can speak about it.

81SHTEAC

1    I can't speak to particular e-mails because I really

2  don't know what counsel is talking about.  The Board of Ed has

3  system-wide e-mail addresses, but I don't know what e-mails

4  counsel is talking about that pertain to the claims of this

5  particular plaintiff.

6        This particular plaintiff, Mr. Lewenstein, from what I

7  understand, your Honor -- and, again, this case was brought to

8  my attention at 4:30 Friday evening, thank you -- he had an

9  allegation of corporal punishment at the end of June 2007.  It

10  was investigated by OSI commencing in September of 2007.  There

11  was a contact made to the student at issue, his parent, I

12  believe it was September 14, 2007.  On September 17, 2007,

13  Mr. Lewenstein was removed from the classroom and sent to a

14  reassignment center.  OSI continued its investigation,

15  substantiated the allegation, but sent it back to the Office of

16  Legal Services.  They determined that only a letter of

17  reprimand was appropriate.  He was returned to the classroom in

18  early January of '08.

19        Following that, there was another allegation of verbal

20  corporal punishment made, and he has since been reassigned

21  again to the reassignment rooms.

22        That is the facts that we have right now.  Based on

23  that factual scenario, I don't know how this pleading states a

24  viable cause of action, and, therefore, I believe any

25  discussion regarding discovery or preserving any records, your

81SHTEAC

1    Honor, is wholly inappropriate.

2         MR. FAGAN:  I thank you for setting forth that

3    chronology, but the chronology that was just set forth by

4    Ms. Greenfield underscores the need for not just preservation

5    of evidence but access to evidence.  What Ms. Greenfield just

6    allocuted was 100 percent inaccurate as it relates to a very

7    specific period of time.

8         In September, the OSI did not contact the student.

9    The student was out of the country.  Mr. Lewenstein was sitting

10   very comfortably in his school doing work until one thing

11   happened.  On January, the 15th, Mr. Lewenstein sent a letter

12   to the Mayor and to the Board of Education informing them that

13   he believed they were in violation of his rights and the

14   teachers' rights and asking them to do certain things.  The

15   very next day Mr. Lewenstein -- I'm sorry, the same day

16   Mr. Lewenstein gets a letter, that is hand delivered to him

17   there in school, that he is being sent back to this rubber

18   room, the reassignment center.

19        If that is your record, Ms. Greenfield, then I urge

20   the court on that record alone to give us access to every

21   e-mail that names --

22        THE COURT:  We have two different issues.  One is

23   preservation.

24        MR. FAGAN:  Yes, Judge.

25        THE COURT:  The other is motions with respect to the

13

81SHTEAC

1    complaint, which I have to tell you has lots of motions to be

2    aimed at.  Unless you are telling me -- let's try to be fair

3    across the board here.

4            Are you telling me that Mr. Lewenstein or

5    Teachers4Action has gone to the EEOC?

6            MR. FAGAN:  Some have.

7            THE COURT:  I am not talking some.  I have got at the

8    moment one named individual plaintiff and an organization.  So

9    even assuming that, has either Mr. Lewenstein or

10   Teachers4Action filed a Title VII or ADEA complaint with the

11   EEOC?

12           MR. FAGAN:  On behalf of the teachers, the UFT went to

13   the EEOC.

14           THE COURT:  UFT isn't a party here.

15           MR. FAGAN:  It is not, your Honor.

16           THE COURT:  Maybe it should be.

17           Is there a right to sue letter with respect to

18   Mr. Lewenstein or Teachers4Action or anyone else you are going

19   to be bringing in as a named plaintiff?

20           MR. FAGAN:  There is a right to sue by the union on

21   behalf of its members through the EEOC.  I can produce that

22   letter.  That came --

23           THE COURT:  Who does that give the right to bring the

24   action?  If it is the UFT, then you don't have standing under

25   Title VII or the ADEA.  Frankly, I am not sure why the UFT

81SHTEAC

1    isn't in here whether as a plaintiff or a defendant to the

2    extent you are attacking a system that is quasi-contractual or

3    perhaps fully contractual.

4            MR. FAGAN:  Your Honor, one of the things that we had

5    envisioned was we had hoped to avoid a fight with the UFT.  It

6    is possible that we need to bring them in as a defendant.

7            On the issue of whether or not Mr. Lewenstein has

8    filed or Teachers4Action filed with the EEOC, they didn't.  But

9    the union did.

10           THE COURT:  How does that give you, and are you within

11   the statutory period, number one, even if that gave the right

12   to sue, and, secondly, I would have to see the letter, but I

13   don't see how the fact that party A gets a right to sue letter

14   means that party B with a similar claim gets a right to sue.

15           For example -- put the UFT aside -- if Mr. Lewenstein

16   had gotten a Title VII right to sue letter from the EEOC, that

17   would not mean that any of the ten people in the back could

18   piggyback it.

19           MR. FAGAN:  Your Honor, what the court is bringing up

20   is a very interesting issue as it relates to what it is that

21   the UFT can do and what it is that the UFT can't do.

22           THE COURT:  I am not interested in what the UFT can

23   do.  I am interested in what you can do.

24           MR. FAGAN:  That is correct, your Honor, and I

25   appreciate that.  What I am suggesting is that there are

81SHTEAC

1   certain elements of the complaint that may be subject to a

2   challenge of failing to go through the EEOC process.  That is

3   possible.  There are other elements to the complaint that I

4   submit are not subject to that type of challenge.  I am

5   prepared to deal with the issues of the various motions to

6   dismiss.

7          THE COURT:  What I am suggesting, counsel, is that,

8   with all due respect to having this for a broader audience than

9   this court, if you want to --

10         MR. FAGAN:  I was just looking to see if there was a

11  broader audience, your Honor.  Just plaintiffs.

12         THE COURT:  Whether it is grandstanding for your

13  clients, there was an article in the Daily News and it didn't

14  come from this court.  So whether you planted it or they just

15  happened to pick it up, I don't know.  But in any event, where

16  I am going, without all the other things, is you have 14 causes

17  of action, at least three or more of which do not seem to state

18  a claim, certainly as pled, and possibly much more.

19  Preservation is one thing.  As I say, whether I enter a

20  preservation order or not, the city, the Department of

21  Education is under an automatic obligation with the lawsuit

22  having been started to preserve documents and electronically

23  stored information, and if they don't, they do so at their

24  peril.  But to the extent you are talking about emergency

25  access to the documents, I am not going to let this case be

81SHTEAC

1    used as a way to get documents for use in the UFT, Board of Ed

2    hearings that come out of these reassignment centers or

3    anything else.  So frankly, I fail to see any emergency.

4             MR. FAGAN:  May I address that issue?

5             THE COURT:  Well, first, let's address whether -- I

6    guess I would say this.  You have said you wanted until Friday

7    to name certain additional plaintiffs.  Unless you are going to

8    either argue that the UFT right to sue letter, which you then

9    have to attach to the complaint, is timely and gives your folks

10   a right to sue in their own name, etc., etc., and that each

11   one, what is their Title VII claim -- I mean, frankly, you are

12   being very creative here, but this isn't a Title VII case.  It

13   is certainly not a global Title VII case.  I mean, just looking

14   at your client sitting next to you and the ten people in the

15   back, not every single race, creed, etc., can be discriminated

16   against by a global policy.

17            Now, it may be that the principal of P.S. XYZ has it

18   in for Caucasians and the principal of junior high school 80

19   has it in for a different ethnic group or a racial group and

20   all of that, but let's cut the garbage from this complaint.  If

21   you have what it seems to be is a pure due process case, let's

22   get to the -- misuse of public tax payer funds.  Have you

23   looked at the standing cases with respect to that?  I mean, I

24   don't want to start saying Rule 11, but if you want all sorts

25   of nice, quick relief, get the garbage out of the complaint.

81SHTEAC

1    Because if there is a motion to dismiss, I am not sure what I

2    am going to do with discovery.  As it is, you are here two days

3    to five days, whatever it is, after the complaint has served on

4    some but not all defendants, or even if it is all defendants,

5    you are here because of emergency relief in terms of a

6    preservation order.

7                MR. FAGAN:  May I address that, Judge?

8                THE COURT:  Yes.

9                MR. FAGAN:  I am not addressing it in the context of

10   people who can't be specifically identified.  There are very

11   specific examples.

12                By the way, the court's comment about grandstanding, I

13   am not grandstanding here.  I wanted my clients to come here so

14   that they could hear your Honor, understand how the case is

15   going, understand all of this, because I specifically do not

16   want to play the game of, I will tell you what the judge said

17   and I will tell you what I think the judge said.  I wanted them

18   to hear it directly from your Honor and to see the exchange.

19   That is why they are here.

20                Two of them, however, are here for very specific and

21   very emergent relief.  For example --

22                THE COURT:  They are not plaintiffs yet, though.  That

23   is my problem.

24                MR. FAGAN:  Your Honor, they are named as John Does.

25   I can --

18

81SHTEAC

1          THE COURT:  You want to amend the complaint, amend it.

2    I will listen to the claim for emergency relief, but I think

3    from what you have said and what you have said in your letter,

4    the emergency relief is they have got a hearing of some sort

5    before the Board of Ed coming up.  This is not discovery for

6    that purpose.  Damages can alleviate any concerns.

7          MR. FAGAN:  Actually, your Honor, in certain of these

8    circumstances damages cannot relieve some of these concerns.  I

9    will give you two examples.  One example is a gentleman named

10   Mr. McLaughlin, who is here.  Mr. McLaughlin, the time within

11   which Mr. McLaughlin has to file his Article 78 motion for

12   relief expires today.

13         THE COURT:  How long does one have to file an Article

14   78?

15         MR. FAGAN:  Four months.

16         THE COURT:  Why is that my problem if he waited until

17   the day before it expires?

18         MR. FAGAN:  Your Honor, the reason that it has now

19   become your Honor's problem is we filed the complaint.  The

20   complaint has to do with certain issues as they relate to these

21   people, including their violation of due process.

22   Mr. McLaughlin's due process rights, we submit, in the context

23   of the complaint were violated.  I met these people three weeks

24   ago.  We have had meetings every single week.  What I learned

25   is, last night, that a stipulation was -- he was, let's call

81SHTEAC

1    it, encouraged to execute a stipulation, and the time within

2    which he has to attack that under Article 78 and based on the

3    information that we now know expires today.

4           The reason we need that emergency relief is, one, no

5    one is interested in pursuing a course of action that is going

6    to further cause injuries and damages to these people.  It is

7    not just money, Judge.  Some of these teachers are charged with

8    very serious offenses.  I am not suggesting that --

9           THE COURT:  What is the relief you are requesting with

10   respect to this Mr. McLaughlin?

11          MR. FAGAN:  What I am requesting, Judge, with respect

12   to Mr. McLaughlin is -- I set that forth in the proposed

13   evidence preservation order.  It would actually be converted to

14   a proposed production order.  One, I want the time within which

15   or I submit the time within which he would have to file his

16   Article 78 should be stayed.

17          THE COURT:  What is my authority to do that?

18          MR. FAGAN:  That is the problem.  I don't believe your

19   Honor has that authority.

20          THE COURT:  That makes two of us.

21          MR. FAGAN:  Because I don't believe your Honor has

22   that authority, then what Mr. McLaughlin needs is he needs to

23   get access to the -- he needs to get access to those e-mails.

24          THE COURT:  He is not going to get them today.  Come

25   on, be serious.

81SHTEAC

1          MR. FAGAN:  He is not, your Honor, but if he doesn't

2    get them, Mr. McLaughlin's deal was cut at the end of

3    September.  If your Honor remembers what I talked about --

4          THE COURT:  What you are asking for is, in essence,

5    some form of preliminary injunctive relief when your clients

6    have sat on their duff until the day before the deadline.  You

7    may have picked your worst example because even assuming I said

8    to Ms. Greenfield, you have made a persuasive case, Mr. Fagan,

9    go produce the e-mails, it certainly can't be done between

10   11:30 or 12:00 when she gets back to her office and 5:00 today.

11         So once the Article 78 deadline has passed,

12   Mr. McLaughlin will bring his Article 78 and get whatever

13   relief the state courts give him, including any discovery that

14   the Article 78 court is going to give him, or they won't.  I

15   don't see the issue.

16         MR. FAGAN:  Let me go back to the issue of sitting on

17   their duff.  These clients have not sat back passively.  They

18   have utilized literally every opportunity that they could short

19   of commencing this lawsuit in order to gain access to the

20   evidence, including -- Judge, I am only explaining to you and

21   responding to the issue of sitting back passively.  They have

22   not sat back passively.

23         Number one, they have attempted to get the information

24   through freedom of information law under New York State rules,

25   and they have been denied.

81SHTEAC

1          THE COURT:  Excuse me.  Have they taken that to court?

2          MR. FAGAN:  No, Judge.  It just happened.

3          THE COURT:  But why me?  Why am I so lucky, Mr. Fagan?

4          MR. FAGAN:  The reason you are so lucky, your Honor,

5    is because these particular -- this concept of the rubber rooms

6    and the 3028 process are not just violation of due process,

7    these people are actually considered they are confined.  The

8    reason it came to you -- I actually expected us --

9          THE COURT:  This has been going on for years, has it

10   not?

11         MR. FAGAN:  It has, your Honor, but it has only

12   increased in the last two years.  It has gotten --

13         THE COURT:  So even the last two years, what I am

14   basically suggesting, if you want to make motions, I will let

15   you make motions.  I don't see that you have got a record on

16   this complaint.  And with the McLaughlin example, even assuming

17   that John Doe No. 1 is Mr. McLaughlin, I don't see this.  What

18   I see is a challenge, in essence an injunctive relief type

19   challenge, to the temporary reassignment centers or, in your

20   language, the rubber rooms to that process.  The court will

21   decide that.

22         The good news for you, as you have appeared in front

23   of me, I believe, and Ms. Greenfield has certainly appeared in

24   front of me, the good news is you are in a rocket docket

25   generally.  So things will move.  But they are not going to

81SHTEAC

1    move with document discovery until a document demand is served

2    that deals with whoever the named plaintiffs are.  And of

3    course, if there is significant motion practice against your

4    complaint, since you have thrown in everything except the

5    kitchen sink, that may stay discovery.  I don't know that yet.

6    I haven't heard from Ms. Greenfield about that.  But if she

7    isn't annoyed by the Title VII and ADEA claims, I certainly am

8    absent seeing a right to sue letter, which is nowhere referred

9    to in the complaint about UFT right to sue, etc.

10           So what I am suggesting is you and your clients really

11   need to step back, take a deep breath, and do this right.

12           MR. FAGAN:  May I add two more examples, your Honor?

13           THE COURT:  No, because I don't have a document

14   request.  I can't do anything absent a document request.  If

15   you want to serve a document request on Ms. Greenfield after

16   you amend the complaint, be my guest.

17           MR. FAGAN:  Thank you, Judge.

18           THE COURT:  I will deal with the repercussions of that

19   or whether discovery is stayed or anything else.  But neither

20   she nor I can figure out what you want when we have got John

21   Doe plaintiffs, and it is unclear, are you attacking the policy

22   memos from Joel Klein and whoever else in central board set up

23   these so-called rubber rooms or are we attacking the way it

24   applied to Mr. Lewenstein, Mr. McLaughlin, and other

25   unidentified people?  I don't know that.  I am sure

81SHTEAC

1    Ms. Greenfield doesn't know that.

2              When the complaint is amended to make that clear --

3    frankly, the factual allegations of the complaint seem to be

4    there are rubber rooms, my clients are suffering, now let me

5    come up with 14 different causes of action without really

6    saying how that applies.  So take a step back.  Fix it.  Once

7    the amended complaint is served, serve a document request.  You

8    want to make any other motions, you can make them in writing

9    subject to Rule 11, with client affidavits and legal research,

10   and I will deal with them.  If you want to make a motion to

11   expedite anything, we will deal with that.

12             MR. FAGAN:  Your Honor, in light of the court's

13   statement about a document request, may we have permission to

14   serve subpoenas on third parties?  The reason I say that is --

15             THE COURT:  Who?

16             MR. FAGAN:  The UFT.

17             THE COURT:  I guess my question is, is the UFT, and

18   this gets back to the shape of the pleadings and necessary

19   parties, is the UFT a necessary party?  I don't want them going

20   through discovery in part as a nonparty if either you are going

21   to bring them in or the city is going to bring them in in 30

22   days or less when the city is to answer the complaint.

23             Let me ask you, because I am reading between the lines

24   here, is the temporary reassignment center process something

25   that is either contractual or has been negotiated in part with

24

81SHTEAC

1    the UFT and the Board of Ed?

2    MS. GREENFIELD:  Your Honor, it is my understanding

3    that that whole process came about because teachers are paid

4    during the time of their reassignment and it was agreed, and,

5    your Honor, I will have to go back and get more information,

6    that this is where teachers would go to receive their pay

7    during this period when they are under investigation or

8    whatever else is going on before charges are preferred or after

9    charges are preferred.  Depending on the seriousness of the

10   allegations, some teachers, it is determined that they should

11   not be returned to the classroom and this is where they remain

12   while they receive their full salary.

13   MR. FAGAN:  Again, unfortunately, I don't believe

14   Ms. Greenfield -- perhaps I am wrong.  That is not what my

15   client just told me.  There is no contractual provision that

16   authorizes the existence or confinement in rubber rooms.

17   Number two, the law --

18   THE COURT:  Let's take away adjectives.  Is there

19   something in the contract that says, or if not the contract the

20   side letters, agreement between the UFT, that if a teacher is

21   coming up on charges that they will be paid their salary and

22   assigned to central board or district office and taken out of

23   their school?

24   MR. FAGAN:  Not according to what my client just told

25   me.  The law upon which the issue comes up is a law which

81SHTEAC

1  specifically states that the teachers can be suspended with

2  pay, but there is no provision to assign them to a rubber room

3  and no provision in letters that have been sent by the UFT to

4  my clients that suggest that the creation of the rubber rooms

5  is a contractual creation between the UFT and the DOE.

6         We have also checked before we came in here today that

7  outside of the City of New York the rubber room process or the

8  temporary reassignment center process is not utilized.  There

9  are no such things.  It is a unique creature --

10         THE COURT:  The UFT is in New York City.  I am not

11  saying this is a nationwide practice or even statewide.  The

12  question is, what is the UFT's role in this?

13         MR. FAGAN:  But the UFT has to go by the state law,

14  which is 3020(a).  3020(a) has no provision for the rubber

15  rooms, has no provision for the reassignment, and some of the

16  teachers -- we can make a motion on the issue of the rubber

17  rooms.  I am prepared to do that.

18         If Ms. Greenfield produces a document to me that says

19  there is a contract that specifically authorizes the existence,

20  the creation, confinement into rubber rooms, I will be happy to

21  review that.  That was one of the things I was asking for or I

22  was going to ask for in my suggestion about evidence

23  preservation and documents to be produced.  It was whatever

24  documents they have on the creation of rubber rooms, the

25  implementation of rubber rooms, the assignment to the rubber

81SHTEAC

1    rooms, I think we should get.

2          THE COURT:  All right.  Here is what I will let you

3    do.  You can subpoena the UFT at this point with a preservation

4    subpoena so that they are on notice of this lawsuit and the

5    obligation to preserve whatever it is you want them to

6    preserve, subject, of course, to their objecting.  But at least

7    that will put them on notice as of today, if they don't read

8    the paper, they don't consider the newspaper binding, that they

9    have got potential involvement here whether as a party or as a

10   witness.

11         But I am not producing any documents to you until I

12   see what the new complaint looks like, whether there is a

13   motion to dismiss in whole or in part, and where we are going

14   with all of this, subject to any other emergency-based motions

15   that you may make.

16         MR. FAGAN:  Apropos of that, Judge, may I make the

17   following suggestion, because I know this is a rocket docket

18   and I certainly don't want to burden the court with unnecessary

19   allegations in a complaint or unnecessary motion practice.

20         We are filing our amended complaint by Friday, and I

21   will do that.  Included in that I would request permission,

22   since I also asked in the letter this should be considered a

23   premotion conference, I would like permission to file a motion

24   to compel certain discovery, evidence preservation issues.  I

25   will make that.  Combined with that, if your Honor wants to

81SHTEAC

1    jump down to the third item on my proposed agenda, it is not

2    just the defendants who wish to make motions. I believe that

3    there is a motion for partial summary judgment to be made --

4          THE COURT: Then why are we bothering with discovery?

5    You can't have it both ways.

6          Rule number one, each side gets one summary judgment

7    motion per case. You want to make it now, go right ahead. The

8    city responds with 56(f) that they need discovery from you,

9    that is fine. Frankly, since at the moment we have one

10   plaintiff or one and a half if the organization has standing,

11   all of this talk -- I brought you in quickly because you said

12   emergency -- all of this is premature. You want to make a

13   partial summary judgment motion on what? What violates the

14   law?

15         MR. FAGAN: The rubber room process.

16         THE COURT: As far as I am concerned, you want to do

17   this without discovery, let's just jump to the summary judgment

18   stage. I am not giving you expedited discovery for an

19   expedited partial summary judgment motion.

20         MR. FAGAN: Judge, I was talking about establishing a

21   schedule. A moment earlier --

22         THE COURT: The schedule is very simple. We are going

23   to have a date for you all to come back and see me in a week or

24   two after I have seen your complaint, see what Ms. Greenfield's

25   response to it is, and since you and I have done most of the

81SHTEAC

1    talking I will give her the opportunity to get up and shoot

2    herself in the foot or otherwise --

3         MS. GREENFIELD:  I am going to save it for my motion

4    papers, your Honor.

5         THE COURT:  But seriously, I could give you a complete

6    discovery schedule now and say, OK, you have got three months

7    for discovery, you have got six months for discovery, whatever

8    makes sense, but are you able to tell me now how many

9    plaintiffs we are talking about?  And I guess the other thing,

10   as we get into each plaintiff, was assignment to the temporary

11   reassignment center appropriate, which it seems to me is an

12   arbitrable issue or whatever you call the UFT process, that

13   whole process, or are we dealing with, is there something in

14   general in the way that if people have to spend their

15   eight-hour workday or however long teachers work, which is less

16   than eight, if they have to spend 9 to 3 in the reassignment

17   center room, it may be a waste of my tax money, but is the

18   issue is that improper?  So I really don't know what you would

19   want to move on.

20        I am not likely to consider, and of course substantive

21   motions go back to Judge Marrero absent consent from all of

22   you, but the court is not likely to look at is Mr. Lewenstein's

23   case valid, meaning -- I will rephrase it.  Is the Department

24   of Education's reason for assigning him into the so-called

25   rubber room valid, did he really physically or verbally abuse a

81SHTEAC

1    student or any of that, as opposed to was he given whatever due

2    process rights he was entitled to under the Fifth and

3    Fourteenth Amendment and the education law and whatever else

4    may apply.

5          So I really think you need to think about it.  This is

6    not the replacement for the Article 78s that each affected

7    individual can bring after whatever action the Board of Ed

8    takes based on the facts of those particular hearings.

9          MR. FAGAN:  Your Honor, I absolutely agree.  One of

10   the suggestions that I might make to expedite the process is, I

11   certainly don't want to file an amended complaint making

12   certain allegations, on good faith, that don't need to occupy

13   the court's time when in fact Ms. Greenfield has told the court

14   on the record that she believes that there is some document

15   that authorizes the creation of these rubber rooms.  She

16   believes there is a contract provision, there is something

17   there that authorizes this.

18         THE COURT:  I am not sure she said contract as opposed

19   to that it has been discussed with the UFT.

20         MR. FAGAN:  Well, your Honor, that is precisely the

21   point that I wanted to get to, which is I am not looking for a

22   whole pie, I am not looking to create a complaint that has

23   frivolous causes of action.  I am looking for a very specific

24   issue.

25         THE COURT:  Generally the complaint comes first and

81SHTEAC

1    discovery comes second.

2         MR. FAGAN:  It does, your Honor, except in this

3    particular instance, when your Honor was so careful to explain

4    to us about the way we should go forward in this case, and I am

5    very mindful of that, and I am also mindful of the issue of the

6    standing and the issue of whether or not it is even appropriate

7    to include a challenge to the rubber room, what your Honor

8    focused on was the second part of the equation.  The second

9    part of the equation is if it is appropriate to assign a

10   plaintiff or to discipline a plaintiff.  That is the second

11   part.  But the first part is the creation of the rubber rooms

12   themselves.

13        There is no question that Mr. Lewenstein or other

14   people could in fact, pursuant to contract, pursuant to state

15   law, be charged with whatever the offenses are.  That is not

16   the issue.  That comes later, whether those charges are proven,

17   and that is not going to be before the court, I don't believe.

18   What goes before the court is whether or not on January, the

19   15th, in the afternoon, it was appropriate for the Department

20   of Education -- January 15th of this year, for the Department

21   of Education to send Mr. Lewenstein to a preassigned room in

22   which he is going to be confined.

23        The creation of the rubber room --

24        THE COURT:  Does he want to get paid?

25        MR. FAGAN:  He has a right to be suspended with pay,

31

81SHTEAC

1    your Honor. That is the law. What Ms. Greenfield said --

2            THE COURT: How is this any different than when police

3    officers are put on administrative duty?

4            MR. FAGAN: In their precinct.

5            MS. GREENFIELD: That is not accurate.

6            MR. FAGAN: In their precinct, Judge.

7            THE COURT: First of all, there is a difference

8    between a precinct and a school.

9            MR. FAGAN: Let me give you an example of that.

10            Actually, she is not here. I'm sorry. She is not

11    here because she lives in Queens, she teaches in Queens, and

12    she was assigned to a rubber room in Staten Island.

13            These teachers are being sent outside of their

14    district. They are being sent to confinement centers, and all

15    I ask for is if Ms. Greenfield has a document that talks about

16    the creation of the rubber rooms, let us have it. One

17    document.

18            THE COURT: Then what? Then the case is over?

19            MR. FAGAN: No, Judge. Well, it could be over for

20    them.

21            The issue is the rubber rooms, is it a violation of

22    due process -- one of the issues in the case -- is it a

23    violation of due process for the teachers to be confined to the

24    rubber rooms, sent to the rubber rooms, reassigned to the

25    rubber rooms.

81SHTEAC

1    THE COURT:  Why do we need any discovery on that at

2    all?

3    MR. FAGAN:  The reason we need that discovery is that

4    one of Ms. Greenfield's defenses, and she said it to your

5    Honor, one of her defenses is there is some type of right that

6    exists between the DOE and the UFT that allows them, pursuant

7    to agreement or contract, to send the --

8    THE COURT:  Let me put it a different way and then let

9    me hear from Ms. Greenfield.

10    Assuming it is not covered by the UFT but the UFT

11    hasn't grieved it and hasn't challenged it, what is it in some

12    law that prevents an employer, even a municipal employer, from

13    saying we have brought you up on charges, the validity of the

14    charges have to be assumed to be true for purposes of your

15    challenge to the rubber room, and we have decided that to make

16    sure you are not out earning money doing something else or that

17    you are not getting a benefit by being suspended with pay, we

18    are going to make you stay in.  I know you say it is

19    confinement, and maybe then one gets into how bad are the

20    conditions in the room, but what would prevent an employer from

21    saying, you work with children.  Because of the charges against

22    you, you should not be in a school building with children so

23    report to the central office or report to Staten Island and sit

24    in this room from 9 to 3, whatever your normal workday is,

25    punch in and out so that we know whether you are taking sick

33

81SHTEAC

1   leave or personal days or whether you are the equivalent of

2   working and we are going to pay you for that until the charges

3   are resolved?

4          MR. FAGAN:  Your Honor, what prohibits that is the law

5   itself.  The law does not provide -- I am talking about the

6   state law -- does not provide for the confinement of teachers

7   into any other location.  If they want to be suspended, they

8   are suspended with pay or if --

9          THE COURT:  I'm sorry.  If the law just says, and you

10  read it to me before, that the Board of Ed or any other

11  educational district has the right to suspend the teacher with

12  pay and that is all it says, what prevents the board from

13  adopting what it considers reasonable regulations to deal with

14  that?

15         MR. FAGAN:  Your Honor, now we are getting to the

16  issue of the reasonable regulations and the creation of the

17  rubber rooms, and here is why I say that.

18         The law also provides that each of these teachers be

19  provided notice of their charges.  First of all, there has to

20  be an executive session which is convened within five days,

21  voted on, and every teacher who is going to be charged has to

22  receive notice that there has been an executive session, they

23  voted on it, the majority of the people have voted that there

24  are going to be charges made.  That is pursuant to the state

25  law.

34

81LSHTEAC

1          Second, once they do that, then the teachers

2     themselves have a right to -- they have to be notified not just

3     five days of the charges, then they have to be given very

4     specific notice of what the charges are, with their opportunity

5     to defend.  They also, right after that, and I can quote the

6     sections but I would rather paraphrase them for your Honor.

7     They also have a right to have expedited hearings, they have a

8     right to have an unbiased arbitrator, and they have a right to

9     have closure.  The process is supposed to be a quick,

10    definitive process so that those teachers who are, let's say,

11    unfortunately --

12         THE COURT:  Now you are changing the issue.

13         MR. FAGAN:  No, your Honor, I am not changing the

14    issue.  I am going to the heart of the rubber rooms.

15         The heart of the rubber rooms are confinement.  They

16    are retaliatory.  This is not a process whereby teachers are

17    sitting there until they get their day in court.  This is a

18    process where some teachers sit there for months and years

19    before they are ever given notice of the charges.  This is not

20    an issue of saving taxpayers money.  This is an issue of

21    costing taxpayers money.  This is not an issue of efficient use

22    of public employees.

23         By the way, these are not teachers --

24         THE COURT:  When I run for mayor and get elected, we

25    can deal with policy issues.  This is a question of law.  But

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

81SHTEAC

1    OK.

2              MR. FAGAN:  It is, your Honor.

3              THE COURT:  Let me hear from Ms. Greenfield.

4              MS. GREENFIELD:  Your Honor, I agree, I believe we are

5    mixing some issues here.  One, we have a strict issue of law.

6    We don't need discovery about whether or not there are these

7    reassignment centers.  There are.  It seems like counsel is

8    arguing no matter what we do not have the right pursuant to

9    education law to take people out of their school and reassign

10   them to these places.  Whether we can or cannot is an issue of

11   law.

12             Then there is the issue of whether or not they are

13   getting proper notice or timely notice of the charges against

14   them, and then whether or not they are getting timely hearings.

15   I would just like to note, your Honor, the one named plaintiff

16   we have before us was not charged.  The allegation of corporal

17   punishment was substantiated but it was determined not to go

18   forward with charges and all he received was a letter of

19   reprimand.

20             The allegation was made in June of '07.  He was back

21   in the classroom by January of '08.  That is what we are

22   talking about.  That is the factual scenario that we have here.

23   Until we have other plaintiffs and other factual scenarios, it

24   is hard for me to express to the court what I really think this

25   case is about because I think it is about a lot of different

81SHTEAC

1   things, a lot of different challenges.  But, your Honor, to me,

2   they all seem to be legal challenges.  Not whether or not in

3   this case the charges should have been substantiated against

4   me, but whether or not the process that was employed from the

5   initiation of the reassignment to the rubber room until

6   bringing the charges violated due process.  Again, I don't see

7   the need for all this discovery on those legal issues.

8           MR. FAGAN:  She is absolutely right with one caveat.

9   She went right to the heart of it.

10          MS. GREENFIELD:  Thank you.

11          MR. FAGAN:  By the way, with respect to

12  Mr. Lewenstein --

13          THE COURT:  I don't care if the timing is off on that.

14  Let's get to the legal issues.

15          MR. FAGAN:  The legal issue in this case, your Honor,

16  is, are the rubber rooms -- is it permissible to assign these

17  teachers and confine them to the rubber rooms, full stop.  Then

18  there are other things that come after that, but that is one of

19  the threshold issues in this case.

20          Ms. Greenfield has told us, and it is in the record,

21  that she believes there is some type of an understanding that

22  allows that process.

23          THE COURT:  You are missing the point.  You are

24  totally missing the point.

25          MR. FAGAN:  I am trying to get discovery.

1            THE COURT:  I understand that.  That point I

2    understand.

3            MR. FAGAN:  And I have moved very far back.

4            THE COURT:  Candor is sometimes useful.

5            MR. FAGAN:  Judge, I moved very far back to just one

6    single issue.  What is it?  Let her produce to us whatever she

7    has --

8            THE COURT:  You are missing the point or, as you

9    candidly admitted, you want discovery of all this regardless of

10   the point.

11           MR. FAGAN:  Not regardless, your Honor.  With respect,

12   not regardless.

13           THE COURT:  Let's move on.

14           I guess my question is this.  On the one hand you want

15   to move quickly, and since I run a rocket docket I appreciate

16   that.  On the other hand -- Ms. Greenfield shook her head -- as

17   the defense counsel she doesn't.

18           My question is this.  You have got to amend the

19   complaint.  Can you do it by Friday or are we being foolish and

20   would you rather have either until Monday, and ruin your

21   weekend, or next Friday?

22           If you don't want your case to get bogged down, get

23   rid of the John Does, unless you are prepared to make a motion,

24   which you better have good case law on because I don't think

25   you have a chance here, number one.  Number two, what is the

81SHTEAC

1   facts as to each plaintiff, and you have got lots of the same

2   argument.  The fraudulent scheme involved.  Is this age

3   discrimination?  Is it race discrimination?

4           MR. FAGAN:  It is age discrimination, your Honor, and

5   I didn't have a chance to -- we weren't pleading Title VII --

6           THE COURT:  Stop.  You were pleading Title VII.

7           MR. FAGAN:  We weren't pleading Title VII as race,

8   creed, national origin.  We were pleading it as amended under

9   the 1991 Civil Rights Act that includes specific age

10  discrimination.

11          THE COURT:  Then you have separate causes of action

12  for Title VII and the ADEA.  The ADEA is the amendment to Title

13  VII to get age in it.

14          Secondly, you have got a 1981 claim, which, unless I

15  am really rusty, is only for race.

16          MR. FAGAN:  Your Honor, I can pull that out.  I simply

17  believe that 1981 was amended by 1999 to include a paragraph

18  for age.  It was an amendment.

19          THE COURT:  I find that doubtful.  But I guess what I

20  am saying is this.  If you are going to do it -- RICO, come on.

21  Give me a break.  This is a Fifth and Fourteenth Amendment due

22  process case.

23          If you want to get to the heart of the matter,

24  including getting some discovery -- I am not telling you what

25  to do.  You are a lawyer.  You get paid to make these

81SHTEAC

1    decisions.  But if you are bringing any of these causes of

2    action in your amended complaint, and that is why I am saying

3    if Friday is too soon, take more time and let's agree on that,

4    I want you to have researched it.  Does your client have

5    standing under the tenth cause of action to bring a claim for

6    misuse of taxpayer funds.  The Supremes have just recently

7    dealt with that in the religious context in something else.  I

8    can't say I can swear to the case law off the tip of my tongue.

9         Tortious interference with contract rights.  You can't

10   interfere with your own contract.

11        So please do your research.  Get rid of the junk here.

12   Get specific facts as to specific plaintiffs, if that is what

13   you are challenging.  Plaintiff Holmes has been in the rubber

14   room for four months with no charges brought and the rubber

15   room is miles away from his or her home.  Whatever.  Get rid of

16   the boilerplate here.  I mean, for a 20-something page

17   complaint, it says very little.

18        MR. FAGAN:  That is correct, your Honor.  The purpose

19   of --

20        THE COURT:  You don't have to justify this one.

21   Justify your next one.

22        MR. FAGAN:  May I just speak with my client for a

23   second?

24        THE COURT:  Sure.

25        (Pause)

81SHTEAC

1          MR. FAGAN:  I would actually opt for destroying my

2    weekend and going for Monday to file, your Honor.

3          THE COURT:  That is fine.

4          MR. FAGAN:  My suggestion, if I can make a suggestion,

5    Judge.

6          THE COURT:  Yes.

7          MR. FAGAN:  My suggestion would be that, we have got

8    so far the issue of preservation, subpoena to the UFT for

9    preservation, preservation subpoena out to the UFT.  We will

10   serve with the amended complaint, we will serve discovery

11   requests on the UFT.

12         THE COURT:  UFT or the board?

13         MR. FAGAN:  I misspoke.  They confuse me sometimes

14   they are so close.  The DOE.  I will make those very specific,

15   with the specific types of e-mails, with the information.  That

16   way when we come back to your Honor, let's say mid-next week,

17   unless your Honor is going to push it sooner, when we come back

18   then, hopefully Ms. Greenfield --

19         THE COURT:  How about throw into your time schedule,

20   it would really be nice if you and Ms. Greenfield talked to

21   each other and perhaps some of this can be cut through.

22         MR. FAGAN:  I offered that, and I am hopeful that

23   after --

24         THE COURT:  Offered that?  She learned about the case

25   when my secretary called the clerk at 4:30 and said who is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

81SHTEAC

1  assigned to that and they said nobody.  Ms. Greenfield is the

2  supervisor, so she is stuck with it for now.

3       MS. GREENFIELD:  And thank you for that.

4       Your Honor, counsel did give me the sheet of paper

5  this morning and I said this was a no go.  But obviously once I

6  get the amended pleading, we will certainly have a meet and

7  confer with counsel to see what we can do with respect to his

8  discovery.

9       MR. FAGAN:  Is it inappropriate to ask the court to

10 consider directing Ms. Greenfield to produce whatever documents

11 she has with regard to the creation of the --

12      THE COURT:  Yes.

13      MR. FAGAN:  It is inappropriate to ask for that?

14      THE COURT:  You can ask, but the request is denied.

15      There is absolutely no reason -- either that is a

16 legal issue or -- look, I know your desperate issue here is to

17 get discovery for some reason.  I thought lawyers usually like

18 to win a case, not just get discovery.

19      What Ms. Greenfield said was in the context of should

20 the UFT be involved here, she said, as I recall, and you have

21 all got the transcript, something to the effect of this issue

22 has been addressed with the UFT.  She didn't say the UFT

23 contract requires it or anything else.  Frankly, I think from

24 what Ms. Greenfield is saying and from what you are saying that

25 as to the ability to do this it seems to be the board's

81SHTEAC

1    position that they have the unilateral right to do it.  To the

2    extent that any unilateral right when dealing with city unions,

3    particularly UFT, is, well, we have the right to do it but if

4    the UFT is going to scream bloody murder we might try to talk

5    to them and work something out, that may be an additional

6    defense that the city has that the UFT has not challenged this.

7    It doesn't mean that they need the UFT on board for this

8    necessarily.

9            In any event, I am not ordering them to do anything

10    other than preserve, and even preservation is difficult because

11    still, other than whatever you have mentioned today, other than

12    that, it is unclear to me what you want in discovery.

13            So what you are going to do is serve a document demand

14    on Ms. Greenfield.  You are going to state what form you want

15    ESI in and all that good stuff, and she is going to respond.

16    We will see whether that is expedited, whether it is delayed

17    because of motion practice, because you did a terrible job of

18    amending your complaint, or whatever.

19            But with all due respect, and with all due respect to

20    the teachers sitting in the back, some of whom may become named

21    plaintiffs shortly, to the extent this is a due process

22    challenge to the rubber rooms, it is mostly a legal issue and

23    it is not something, considering that the rubber rooms have

24    been around for several years, not something that it would

25    appear to require immediate injunctive or other jumping through

81SHTEAC

1  hoops relief absent some motion papers, that you have not yet

2  filed, that would convince me otherwise.

3      The fact that Mr. McLaughlin has until the end of the

4  day today to bring an Article 78 or that someone else sitting

5  in the back of the room has a month to bring an Article 78, I

6  am not interfering with the state court process.  People will

7  do what they have to do in state court.  The state courts are

8  more than adequate to protect their rights with respect to

9  that.

10     Moreover, on all of this, you keep calling it

11 confinement like being arrested.  Certainly in Section 1983

12 cases against the police department or police officers have

13 come up with ways for the jury to compensate people for being

14 falsely confined.

15     So there is very little that, considering the passage

16 of time in general on the reassignment centers, even if it may

17 be novel for some of your clients, it is unlikely that you can

18 make a showing for injunctive relief or other everybody has to

19 jump through hoops.

20     Moreover, to the extent your requests to

21 Ms. Greenfield for documents, including ESI, are tailored,

22 specific, etc., you have a better chance of getting the court

23 to order that than if it is a blunderbuss request that says

24 every e-mail that talks about the rubber rooms.

25     MR. FAGAN:  Thank you, Judge.

81SHTEAC

1      THE COURT:  So use your time wisely in both amending

2   the complaint and drafting appropriate document requests and we

3   will go from there.

4      MR. FAGAN:  Your Honor, what we will do --

5      THE COURT:  Your client is waving at you.

6      MR. FAGAN:  May I speak to him for a moment?

7      THE COURT:  Yes.

8      MR. FAGAN:  Thank you, Judge.

9   (Pause)

10      MR. FAGAN:  Judge, my client pointed out that one of

11   the issues in the rubber room, and I am saying this not to

12   upset the court but there are some issues going on as it

13   relates to things that are happening in the rubber room and

14   things for which, whether it is injunctive relief or guidance

15   from the court, direction to Ms. Greenfield and to the DOE, it

16   would be helpful.

17      What has happened literally in the last two weeks is

18   that when the DOE learned of the potential action and then when

19   the DOE learned of the action itself, the confinement became

20   even -- and I am using the term confinement and I don't mean to

21   say it to negate what the court has said.  I think we will be

22   able to prove that it is confinement.  The confinement within

23   the rubber rooms has become even more restrictive, where they

24   are preventing the teachers from even sitting and talking

25   together about what is going on.  They are preventing the

45

81SHTEAC

1    teachers -- in a certain way it is draconian.

2            I am not suggesting that the court has any affidavits

3    to this.  The only evidence is that my client, Mr. Lewenstein,

4    could attest to it.  He leaned over and said to me to please

5    make the court aware of this.

6            What I would suggest is that until we come back here

7    next week the DOE should understand that restrictions in the

8    rubber room to people congregating, talking -- by the way, they

9    are not doing anything in the rubber room.  They don't have any

10   jobs in the rubber room.  They sit in a room as if they are

11   wearing dunce caps, in a room this size.  These are not

12   teachers who are accused of the types of conduct that one would

13   think merits this.  These are teachers who are accused of

14   incompetence, teachers who are accused of potential

15   insubordination.

16           So my suggestion, your Honor, is that until we come

17   back here, the DOE and the court, even by way of suggestion on

18   the record, needs to understand these people have a right to

19   sit and talk, they have a right to meet, they have a right to

20   move about the rubber rooms, they have a right to talk about

21   the lawsuits, they have a right to plan.  I think that is the

22   First Amendment.  Whether they are confined in the rubber room

23   or they are outside talking, they should be entitled to move

24   about freely.  And I can put him on the stand.  He can attest

25   to it --

81SHTEAC

1          THE COURT:  Not today.

2          MR. FAGAN:  OK, Judge.

3          THE COURT:  It is 10 to 12.

4          MR. FAGAN:  Thank you, Judge.

5          THE COURT:  When do you want to come back?  How does

6     Friday, the 8th sound?

7          MS. GREENFIELD:  Your Honor, can I just get my

8     appointment book from the back?

9          (Pause)

10          MS. GREENFIELD:  Perfect.  Same time, your Honor?

11          THE COURT:  Let's move it up to 9:30.

12          MS. GREENFIELD:  Your Honor, could we do 10:00?

13          THE COURT:  Sure.  February 8 at 10:00.

14          Usual drill.  I am going to require both sides, unless

15     there is an economic or other objection, to purchase the

16     transcript --

17          MS. GREENFIELD:  It is done already, your Honor.

18          THE COURT:  -- which contains the court's rulings such

19     as they are.  I don't think I have ruled on anything that was

20     definitive enough that it is appealable, so to speak, but for

21     the record and since your clients are sitting here so they know

22     for the future, or maybe they are your clients, pursuant to 28,

23     U.S. Code, Section 636 and Federal Rules of Civil Procedure 6

24     and 72, any party that is aggrieved by any of my rulings at

25     these conferences has ten business days to file objections with

81SHTEAC

1    Judge Marrero.

2         Failure to file such objections within the ten

3    business day period constitutes a waiver of those objections

4    for all further purposes, including appeals to the Second

5    Circuit or beyond.  The ten business days starts running

6    immediately, any time you hear my ruling at a conference,

7    regardless of how long it takes you to get the transcript.

8         All right.  I guess, not that I -- I won't put any

9    comments on other than to say it is my practice at first

10   conferences to remind the parties that they do have the option

11   pursuant to 28, U.S. Code, Section 636(c) to have the case in

12   front of me for all purposes, including jury trial, should the

13   case get that far.  Otherwise, you will be in front of me for

14   some things and back to Judge Marrero for substantive motions

15   and trial.  That, of course, requires unanimous consent.  So if

16   one of you jumped up now and said, I consent, it doesn't matter

17   unless you both consent.  Then you are back with Judge Marrero.

18        MR. FAGAN:  I will defer to Judge Greenfield.

19        MS. GREENFIELD:  My mother always wanted me to be a

20   judge.

21        MR. FAGAN:  We have known each other for eleven years,

22   Judge.

23        MS. GREENFIELD:  And he said I don't look a day older.

24        THE COURT:  Before I age any further, I will just say,

25   if you want to talk to your clients -- I know Ms. Greenfield

81SHTEAC

1    and her colleagues always have to run it up the flagpole at

2    Corp. Counsel for strange reasons.  So if you want to tell me

3    anything about that at the February 8th conference, that is

4    fine.

5                MS. GREENFIELD:  Thank you, your Honor.

6                THE COURT:  I prefer that you get back to me on a

7    combined neutral basis, where one of you flips a coin and does

8    the report for both of you and just says either there is

9    consent, here is the signed form, there isn't consent, without

10   saying I consented but he/she didn't, or that the issue is

11   still under advisement and will get decided further down the

12   road.

13               MR. FAGAN:  Your Honor, because sometimes I don't

14   remember everything that went on, can I just summarize what I

15   believe were what the court allowed us to do?

16               THE COURT:  Sure.  Amend your complaint by Monday,

17   serve a preservation subpoena on the UFT as narrowly drawn as

18   possible, and make sure that they understand that it is for

19   preservation, not production.  Serve a document demand

20   simultaneous with the amended complaint on Ms. Greenfield, and

21   narrow your complaint as much as possible.

22               Also, by the way, and this is no longer a summary, it

23   is somewhat new, you have got not only the Department of

24   Education as a department but John Doe defendants and Mayor

25   Bloomberg and Joel Klein.  If you need all those folks, first

49

81SHTEAC

1    of all, I doubt there should be anonymous superintendents or

2    principals.  Your clients know who did what, and then you would

3    have to serve them.  But if this is a challenge not to what

4    happened to one particular client, as you have said, but are

5    the rubber rooms themselves appropriate, that seems to be that

6    the DOE is the appropriate defendant.  But you will do what you

7    all want on that.

8            Seriously, Mr. Fagan, if the complaint has as much

9    junk in it when it is amended as it does now, I will be very

10   inclined to stay discovery while there are motions aimed at it.

11           MR. FAGAN:  Thank you.

12           THE COURT:  Take the hint.

13           MR. FAGAN:  I got the hint, Judge, and we will include

14   more specific allegations as to each plaintiff.

15           THE COURT:  And less causes of action.

16           MR. FAGAN:  Less causes of action and more named

17   defendants.

18           THE COURT:  That I wasn't necessarily inviting other

19   than -- seriously, I am not sure that the UFT doesn't have to

20   be here.  You will do what you want and the city will do what

21   it wants, and the UFT, once it gets your preservation subpoena,

22   might move to intervene if no one else brings them in.  I will

23   worry about all that.

24           Make sure the complaint says what it is you are

25   challenging, not just this amorphous we don't like the process,

50

81SHTEAC

1    and make sure your document requests are narrow and focused and

2    we will go from there.

3                See you next week.

4            MR. FAGAN:  Thank you, Judge.

5            MS. GREENFIELD:  Thank you, your Honor.

6            (Adjourned)

EXHIBIT "B"

8288TEAC.txt

8288TEAC                                                                    1
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  TEACHERS4ACTION, et al.,
3
4             Plaintiffs,
4
5             v.                          08 Cv. 548 (VM)
5
6  MICHAEL G. BLOOMBERG, et al.,
6
7             Defendants.
7
8  ------------------------------x
8
9                                     February 8, 2008
9                                     10:10 a.m.
10
10 Before:
11
11               HON. ANDREW J. PECK
12
12                                 Magistrate Judge
13
13               APPEARANCES
14
14 EDWARD D. FAGAN
15     Attorney for Plaintiffs
15
16 MICHAEL A. CARDOZO
16     Corporation Counsel of the City of New York
17 BLANCHE GREENFIELD
17     Assistant Corporation Counsel
18
18
19
19
20
20
21
21
22
22
23
24
25

            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

8288TEAC                                                                    2
1          (Case called)
2          MS. GREENFIELD:  Good morning, your Honor.
3          MR. FAGAN:  Good morning, your Honor.
4          THE COURT:  I guess my question, Mr. Fagan, is why are
5  we here today if there is no amended complaint?
6          To put it another way, don't court orders mean
7  anything?
8          MR. FAGAN:  Yes, your Honor, they do mean something,
9  and I called on wednesday.
10         First of all, when I was here last time, I had
                        Page 1

8288TEAC.txt

11  mentioned to the Court that my computer had been lost.  I went
12  back.  It was in fact stolen.  I have been trying to gather the
13  data that was on the e-mails that I had sent out.  I have been
14  trying to get that back.
15      I called to speak with Ms. Greenfield on Wednesday
16  about adjourning today.  I called specifically your Honor's
17  chambers, explained the situation, talked about possibly having
18  the conference next week and --
19      THE COURT:  Who did you speak to?
20      MR. FAGAN:  I spoke with Patricia, I believe is your
21  Honor's clerk.  The explanation was it's a scheduling
22  conference.  The judge doesn't like to adjourn scheduling
23  conferences.  I called Ms. Greenfield back, explained that to
24  her, and then we both agreed that we would come in today.
25      Your Honor, they do mean something to me.
            SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

8288TEAC                                                         3

1       THE COURT:  Where, even if you had to scroll it with
2   crayon, was the request for an adjournment of the deadline for
3   filing an amended complaint?  Forget about whether this
4   conference is necessary.  You may recall, I am sure you do, you
5   said last Monday or Tuesday, whenever it was, Judge, I will get
6   you the amended complaint by Friday.  And I said, Are you sure
7   you can do it that fast?  I gave you till Monday to give you
8   extra days, etc.  We are now sitting here Friday.  You have
9   violated a court order.
10      MR. FAGAN:  Your Honor, I was going to send in a
11  letter.  I did not send in a letter requesting an adjournment
12  of the time within which to file the amended complaint because
13  I expected to come in and explain to your Honor today --
14      THE COURT:  Forget it.  You're wasting my time.
15  You're wasting the time of the eight or ten of your clients who
16  are sitting here.
17      I can't give you a schedule until I know who the
18  plaintiffs are.  When are you going to amend the complaint?
19      MR. FAGAN:  By Monday, your Honor.
20      THE COURT:  I have heard that song before.
21      MR. FAGAN:  Your Honor, since the time that happened,
22  I went out and bought a new computer to try to gather the
23  information.  My client didn't go to Europe.  He stayed here in
24  the United States to try to gather it.  And I committed to Ms.
25  Greenfield just now, actually outside, I told her that we were
            SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

8288TEAC                                                         4

1   going to provide her with the identities of the named
2   plaintiffs and he has been working on the bio so that we can
3   provide that.  We are able to do that.  I had this conversation
4   with my client this morning.
5       THE COURT:  I am giving you one last chance.  If you
6   want Monday, I will order Monday.  If you want a week from
7   Monday, I will order a week from Monday.  But, if by 5 p.m. on
8   whatever date you choose there is not an amended complaint in
9   the ECF system and physical hard copy on my desk, I will impose
10  sanctions.  So pick your date.
11      MR. FAGAN:  Judge, actually, I was expecting Monday at
12  11:59 because there are times when I file very late at night.
13  Monday the end of the day is fine with me.  If the Court wants
14  to have that because Monday at 5 p.m. is the deadline, I can
15  tell the judge --
                      Page 2

8288TEAC.txt

16    THE COURT:  I don't care.  You're missing the point.
17  Since it's not here -- stop, please.  Since it's not here by
18  today, and I am not just interested in the ECF copy but a copy
19  that I can read without having to use government paper to print
20  it out, etc., etc., pick your date.  If you file ECF by
21  midnight on Monday so you want until Tuesday at 5 p.m., I don't
22  care.
23    MR. FAGAN:  It will be on your desk by 12 noon on
24  Tuesday.
25    THE COURT:  You will have till the end of business on
          SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

8288TEAC                                                         5
1  Tuesday.  I don't care how you do it.  I am not going to be
2  here Tuesday.  Actually, the court is closed on Tuesday, so if
3  you want Wednesday the 13th, that's the date.
4    MR. FAGAN:  Thank you, Judge.
5    THE COURT:  Now, how many named plaintiffs are we
6  going to have, approximately?
7    MR. FAGAN:  Between 18 to 35.
8    THE COURT:  And you have spoken to all of them, not
9  just your client?
10    MR. FAGAN:  No, Judge.  I have spoken to all of them.
11  And before their names go in the complaint, they are going to
12  sign off on the description of who they are, how we describe
13  them, and putting them into each one of the causes of action.
14    THE COURT:  OK.  At the risk of repeating myself,
15  that's a lot of work to do.  If you're sure it's the 13th,
16  that's fine.
17    Just listen to me for a minute.  I don't want you to
18  make a commitment you can't keep, and I don't want a further
19  amendment down the road saying, I only was able to get our act
20  together for 10 of them or 18 of them and now I want to add 17
21  more a week later.  I don't care when you do this, but I want
22  it done once, I want it done right, and I want you to tell me
23  now, this is the last warning, the last issue, when you want to
24  do it by.  If it is by Wednesday the 13th at 5 p.m., that's
25  fine.  You want till the end of the week, you want another
          SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

8288TEAC                                                         6
1  week, it's not going to matter other than we can't do much in
2  this case till we see what the complaint looks like.
3    MR. FAGAN:  No, Judge.  Wednesday is fine.
4    I would like to alert the Court to the following.
5  There will be plaintiffs who are named, and we have very
6  specific descriptions of those plaintiffs, and then there will
7  be an attachment to the complaint which includes names of
8  additional plaintiffs that are going to fall into one of the
9  different categories.  It's not going to have the level of
10  specificity that we have as to the dozen that we have already
11  got, but it's going to name who they are, what has happened to
12  them, what the damages are and what the basis for relief is and
13  in which section they go to.
14    THE COURT:  Why?  I don't understand an appendix
15  method.  They are either a plaintiff or they are not a
16  plaintiff.
17    MR. FAGAN:  Here is why, Judge.  Since we were here
18  last time, and contrary to your Honor's admonition to the DOE,
19  there has been retaliation.  This is not speculative.  There
20  has been retaliation against a bunch of these teachers and some
                       Page 3

```
                                8288TEAC.txt
21   of these teachers are fearful of putting --
22           THE COURT:  Stop.  I am not accepting John Does.
23           MR. FAGAN:  I wasn't saying John Doe, your Honor.
24           THE COURT:  I must be missing something and it would
25   be much easier if I were reading the complaint instead of
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

⬜                                                                          7

```
     8288TEAC
1    listening to all of this.  What I am interested in is are all
2    of these people people who have signed a retainer agreement
3    with you?
4            MR. FAGAN:  Yes.
5            THE COURT:  Then why aren't they all in the body of
6    the complaint?
7            MR. FAGAN:  Your Honor, some will be -- you know what,
8    I will put them all in the body of the complaint.  What I am
9    suggesting to your Honor is there is going to be much more
10   detail about some of them than there is about others.  That's
11   all I am suggesting.
12           THE COURT:  I am asking why.
13           MR. FAGAN:  Because some of these people cannot gain
14   access to the information, and they cannot sit and do the work
15   in their locations where they are confined because the DOE has
16   prevented them from bringing in computers to work with.
17           THE COURT:  Stop, please.  Mr. Fagan, please.  That's
18   why there are nights.  That's why there are weekends.  Either
19   you're ready to bring a complaint for these people that meets
20   Rule 11, that meets the pleading standards of the Bell Atlantic
21   Cromley standard and all of those cases or you're not.
22           I really don't understand what you're telling me, and
23   I guess what I will say is, you're the plaintiffs' lawyer, do
24   what you want, but there will not be discovery in this case
25   until we have a clean complaint and any motion to dismiss or
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

⬜                                                                          8

```
     8288TEAC
1    anything else that may have to be aimed against it, unless I
2    decide that a motion to dismiss is not likely to resolve
3    things.
4            MR. FAGAN:  All I was saying was some of them will
5    have more detail than others.  That's all I was saying.  I was
6    actually specifically saying some of the named plaintiffs would
7    be included by name in an appendix in the exact same way they
8    were included in EEOC complaints, the exact same way.
9            As far as the standards, the Court should also know
10   that what we are also going to put into the complaint, and it's
11   going to come by a letter to the Court, we expect to be asking
12   either your Honor or Judge Marrero for a preliminary injunction
13   hearing, consistent with Burlington, consistent with the
14   standards in this circuit as far as the chilling of free
15   speech.
16           THE COURT:  Please stop.  First of all, you're paying
17   by the page.  Secondly, my time is not unlimited.  If you want
18   to move for a preliminary injunction, make the motion.  It goes
19   to Judge Marrero, unless you and Ms. Greenfield stipulate to
20   have it in front of me, or unless Judge Marrero refers it to me
21   for some purposes.
22           Do what you have to do.  Do it right.  I am not giving
23   you premotion clearance, I just want you to be clear on that.
24   If Judge Marrero requires premotion clearance, you have got to
25   ask him for it.  Whatever you have got to do to make a
                                 Page 4
```

8288TEAC.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

8288TEAC
1  preliminary injunction motion, quite frankly, I think you're
2  wasting your time, but that's your prerogative.
3          The reason I say it, just so you know where I am
4  coming from, is the rubber rooms, to use your term, have been
5  going on for quite some time.  So for you to meet the
6  preliminary injunction standard for what is in essence an
7  affirmative injunction as opposed to a negative one, I assume,
8  you're either asking for an injunction that says obey the law,
9  don't retaliate, which is somewhat meaningless, or you're
10  asking for an injunction to somehow stop or change the way the
11  rubber rooms operate, which strikes me, gut reaction, obviously
12  without seeing any papers from you, other than the initial
13  complaint, is you're asking for the court to bend over
14  backwards, jump through hoops and do all sorts of amazing
15  things, without there being any reason for that hurry since you
16  have waited this long both to amend the complaint and, more
17  importantly, you have waited this long from the initiation of
18  the rubber room process until now.  But you will make the
19  motion and you will convince Judge Marrero or me, whoever winds
20  up dealing with it, that it has merit.
21          MR. FAGAN:  I will, Judge.  Just so the Court will
22  know, there is not just precedent in this circuit, but Judge
23  Marrero himself has issued an order, set standards for
24  preliminary injunction hearings.  He did it last year in a case
25  called Somoza.  We have the standards both of the Supreme Court
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

8288TEAC
1  and within this district talking about adverse actions by an
2  employer against an employee.  I am not worried about that,
3  Judge.
4          THE COURT:  Make your motion.
5          MR. FAGAN:  Thank you.
6          THE COURT:  Subject to Judge Marrero's premotion
7  clearance rules, if any.
8          I guess I will put it to the two of you.  I am not
9  prepared to start discovery in this case, which is why we had
10  this conference for today, without knowing what the complaint
11  is, what the claims are.  If you're telling me that you have
12  gone from 14 claims to one or two, and you want to tell me what
13  it is, I might reconsider.
14          MR. FAGAN:  I can do that, Judge.
15          THE COURT:  Go ahead.
16          MR. FAGAN:  We are talking about hostile work
17  environment.  We are talking about --
18          THE COURT:  Has there been an EEOC complaint?
19          MR. FAGAN:  There has, your Honor.
20          THE COURT:  By who?
21          MR. FAGAN:  By Jennifer Saunders.  She is actually not
22  here.
23          THE COURT:  Slow down one minute.  You told me there
24  are going to be 18 to 35 plaintiffs.  Obviously, there may be
25  different claims for different plaintiffs.  How many of them
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

8288TEAC
1  went to the EEOC?

Page 5

8288TEAC.txt

2          MR. FAGAN:  To my knowledge, as far as hostile work
3 environment, there's at least one.  I don't know which of the
4 others from -- we are talking about a very specific rubber
5 room, which is at 333 Seventh Avenue.
6          THE COURT:  You have got one Title VII hostile
7 environment claim.  When did the right to sue letter get
8 issued?
9          MR. FAGAN:  The right to sue letter hasn't been
10 issued.
11          THE COURT:  Then you can't be here, can you?
12          MR. FAGAN:  Actually, Judge, I will submit the case
13 law that I believe will satisfy your Honor, Judge Marrero, and
14 the standards for why it is that we can take this action with
15 regard to these particular violations at this time.
16          Let me continue on.
17          THE COURT:  No.  It really makes no sense for me to do
18 this orally because I don't think what you're doing makes
19 sense.  If you say there are cases that say you can do it, in
20 the complaint submit whatever backup you want to convince me to
21 allow you any discovery.  Otherwise discovery is stayed pending
22 further order of the Court.
23          MR. FAGAN:  Your Honor, let me continue because there
24 are certain areas of discovery which, with all due respect, I
25 think your Honor needs to hear this.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                           12

1          We were here last time.  Your Honor asked me --
2          THE COURT:  With all due respect, counsel, although
3 there seems to have been a slight disconnect between my
4 secretary and you, but in this case, unlike my normal caseload,
5 this case is so confusing, I will leave that as the word,
6 without knowing what the new complaint is, I can't do anything
7 for you.
8          MR. FAGAN:  I was attempting to give you a summary of
9 responding to what your Honor said last time, which was to weed
10 out what your Honor called garbage.  I am attempting to explain
11 that to you.
12          THE COURT:  You have got a hostile environment claim.
13 What else?
14          MR. FAGAN:  We have got a retaliation claim.
15          THE COURT:  Again, under the EEOC laws, Title VII or
16 whatever?
17          MR. FAGAN:  Yes.
18          THE COURT:  OK.
19          MR. FAGAN:  We have got an age discrimination claim,
20 and the plaintiff is here.  We have an EEOC letter.  We have
21 got a claim against the UFT for a breach of duty of fair
22 representation.
23          THE COURT:  Now we have got a new party who is not
24 even here today.
25          MR. FAGAN:  We do, your Honor, but I have already

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                           13

1 spoken to the counsel for the UFT who indicated they were going
2 to come in as an amicus.  I didn't understand how they would be
3 doing that, but I spoke with Charles Moerdler of Stroock
4 Stroock & Lavan.  They were aware of this case.  Actually, they
5 were inquiring themselves about where the EEOC letter was that
6 they themselves have.  The plaintiff in that case is a

Page 6

8288TEAC.txt

7  gentleman named Mr. Sid Rubenfeld.  He is here.
8       I would say those are the primary causes of action.
9       THE COURT:  How many secondaries are there?
10      MR. FAGAN:  What I would like to be able to do is give
11 your Honor not just the complaint but the application for very
12 limited discovery, the way your Honor had specified I should do
13 it.  We have additional information.  I am not asking for lots
14 of discovery.  I am not going to ask for that.  We have very
15 pointed information and discovery requests.  I will do that,
16 together with the filing of the complaint, and I will do that
17 in a way that I believe your Honor will have an opportunity to
18 consider it.
19      I have already spoken with Ms. Greenfield.  We are
20 scheduled to speak on Tuesday to discuss the issue of who the
21 plaintiffs are, what type of relief it is that we need, where
22 we are going with the complaint, whether we are going for a
23 permanent injunction, whether we are asking for an interim
24 injunction.  We did what your Honor directed us to do.  The
25 thing I didn't do was file the complaint in time, and I would
               SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                              14

8288TEAC
1  like the Court to consider the explanations that I gave for why
2  it is that it wasn't done.
3       THE COURT:  Except for one other thing, and I won't
4  belabor it, which is if you called my secretary on Wednesday,
5  which is what you said, the complaint was due on Monday.
6       MR. FAGAN:  Yes, your Honor.
7       THE COURT:  Fine.  Let's put it this way.  The UFT is
8  not here yet.  Obviously you have to serve them.  If you want
9  to make a letter application to me to allow limited discovery
10 from the City or the UFT after they are served, you can make
11 that application and attached to that your proposed Rule 34
12 request or whatever it is.  But at the moment, until I see what
13 this case is about today, not what it was about a month ago
14 when you filed the original complaint, less than a month ago, I
15 am not prepared to allow discovery to go forward, in
16 part -- never mind the in part.  I am not prepared to allow
17 discovery to go forward yet.
18      Moreover, you asked for an emergency conference
19 previously which is how you got here.  The City's time to
20 answer the original complaint, let alone any amended complaint,
21 has not yet run.  UFT hasn't been served yet with anything.
22 Normally that would trigger a whole period of time for them to
23 answer, time for a 26(f) conference, etc., etc.  While I am
24 running a rocket docket, it is not to be for the benefit of
25 getting discovery for the sake of discovery.  It is to get the
               SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                              15

8288TEAC
1  case appropriately moving.
2       So when I see the complaint, we can deal with all of
3  that.
4       MR. FAGAN:  Thank you, Judge.
5       THE COURT:  Ms. Greenfield, anything to say from the
6  City?
7       MS. GREENFIELD:  No, your Honor.  Having been thinking
8  about it while I am sitting here, I think I will save my
9  comments until I see a copy of the amended complaint.
10      THE COURT:  By the way, one other question, Mr. Fagan.
11 Who are the defendants going to be?
                      Page 7

8288TEAC.txt

```
12          MR. FAGAN:  The defendants are going to be --
13          THE COURT:  Besides the UFT.
14          MR. FAGAN:  -- the same named defendants that we have
15  got, Bloomberg, Mayor Bloomberg, Chancellor Klein, the Board of
16  Education, the New York State Department of Education, the UFT,
17  and several principals and superintendents specifically who
18  were involved in some of the actions against the teachers
19  themselves.
20          THE COURT:  All right.  Ms. Greenfield, quick
21  question.  Is the proper defendant the DOE or the City or both?
22          MS. GREENFIELD:  It could be either, your Honor.
23          THE COURT:  The DOE, unlike the police department, is
24  suable?
25          MS. GREENFIELD:  Yes, your Honor.
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```

[]

8288TEAC                                                                16

```
1           THE COURT:  OK.
2           MS. GREENFIELD:  Just to be clear, we don't represent
3   the New York State Department of Education.  The AG's office
4   would have to be served.
5           THE COURT:  State agency, I don't know what their
6   involvement is on this.  I don't need to know.  Serve them.
7   That will take longer.
8           I assume that the principals and superintendents have
9   to be individually served, unless you make some other
10  arrangement with Ms. Greenfield, which she may or may not be
11  able to do.
12          MR. FAGAN:  We were prepared to serve and we intended
13  to serve them all individually and directly.
14          THE COURT:  All right.  When does it make sense to
15  come back having allowed all the players to be involved?
16  Normally I would say, OK, we will bring you back next Friday,
17  but I am a little concerned we will not have the new players,
18  the Attorney General's Office, the UFT, and anybody else here
19  by then.
20          MR. FAGAN:  My suggestion would be that we bifurcate
21  it a little bit.  I will tell you why.  The issues as they
22  relate to the UFT and the issues as they relate to the State of
23  New York are discrete and the requests that we are making as it
24  relates to the Department of Education is something that, after
25  your Honor sees the complaint, after your Honor sees the letter
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```

[]

8288TEAC                                                                17

```
1   request with regard to discovery, and after your Honor sees a
2   copy of the letter that we are sending to Judge Marrero about
3   the request for a preliminary injunction, I do believe it would
4   be appropriate for your Honor to call us back in next Friday,
5   the following Monday, as soon as is convenient, and that
6   application, when we are going to be here next time, doesn't
7   need to involve at this point the UFT or New York State because
8   they are discrete issues as it relates to the Board of
9   Education.
10          THE COURT:  Ms. Greenfield, any views?
11          MS. GREENFIELD:  Yes, your Honor.  Having not seen the
12  amended complaint, I don't know that I can rely on counsel's
13  representation that they are discrete issues because I don't
14  really know what the issues are.  Obviously, as it goes to a
15  hostile work environment or retaliation allegedly committed by
16  the Department of Education, I don't need these other parties.
```

Page 8

8288TEAC.txt

17  But if it relates to the reassignment centers or anything else,
18  I believe that I would need to see what the specific
19  allegations are before I can determine if the UFT or the New
20  York State Department of Education should be involved in any
21  discovery or conferences involving those matters.
22          THE COURT:  Frankly, I am not exactly sure what the
23  state's role is, but I certainly wonder whether it's
24  appropriate to do anything without the UFT, who may be, if not
25  sitting in between your two tables, may have an interest in
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                            18
    8288TEAC
1   some of the things the plaintiffs want, albeit even though
2   you're suing them as a defendant.
3           One of the problems I would have is I don't want the
4   department to have to go through certain aspects of discovery
5   twice because you frame it in one way and then the UFT frames
6   it a different way.
7           I am also not sure, and maybe Ms. Greenfield can help
8   me on this, once the principals and superintendents are served,
9   are they going to be, if requesting it, represented by you, by
10  the UFT, or, because of potential conflicts all across the
11  board here, by something else?
12          MS. GREENFIELD:  Your Honor, as the Court is probably
13  aware, the principals are not represented by the UFT.
14          Again, not having seen the allegations, we all know
15  that the individuals cannot be defendants in a Title VII
16  action; it is the employer.  I don't know what the specific
17  allegations are as to them or the causes of action asserted,
18  but with respect to any individual plaintiff, I would have to
19  interview the principal to find out what happened and determine
20  if representation is appropriate, and if we decline
21  representation, then they would either be represented by their
22  union or by their own privately retained counsel.
23          MR. FAGAN:  What I committed to do with Ms.
24  Greenfield, before your Honor even came in, was to give her the
25  specifics as to each of the plaintiffs by noon today.  I have
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                            19
    8288TEAC
1   got those.  My client is here.  We also included the specific
2   principals so she can conduct her investigation as it relates
3   to who these people are.  And then what will happen, your
4   Honor, is they can make whatever decision it is that they want
5   to do with regard to the principals.  I don't believe we need
6   the principals here, I don't believe that we need the
7   superintendents here at the hearing as it relates to the DOE.
8           THE COURT:  Don't sue them then.
9           Look, it is highly unusual to have hearings in a case
10  without all parties being present.  I don't know mean the
11  individuals but their lawyers.  This is a public courtroom.  I
12  am perfectly happy to have all of your plaintiffs here, or
13  whoever the people in the back of the room are, but what I am
14  saying is it is unusual, and I bent over backwards to give you
15  an immediate hearing on your preservation order, but I think we
16  really need to let this case fall into a normal pattern of
17  getting people served and represented, etc.
18          So if you have urgency between now and the 13th,
19  rethink how many new parties you need to bring in.  The UFT, we
20  talked about last time, is probably a necessary party.  Whether
21  the principals individually are necessary defendants as opposed
                          Page 9

8288TEAC.txt

22  to witnesses under the umbrella of the DOE or whatever, I leave
23  it to you to structure your case, but I am not going to do this
24  merely to satisfy your convenience, meaning let's get everybody
25  served and represented and worry about starting discovery at
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                              20

1   that point, unless you need something for the preliminary
2   injunction hearing, which Judge Marrero will then send you back
3   to me to deal with.
4        MR. FAGAN:  All I was trying to do is be responsive to
5   when your Honor raised the issue of bringing us back on Friday.
6   The only ones that I believe would be relevant to bringing us
7   back --
8        THE COURT:  You're repeating yourself and you're not
9   listening to what I just said, which is I see no reason to do
10  anything until everybody who is being sued is represented.
11       MR. FAGAN:  Yes, Judge.
12       THE COURT:  That means we are talking 30 to 60 days
13  from now.
14       MR. FAGAN:  Unless there is an issue that we have
15  articulated by way of a request for either a preliminary
16  injunction hearing or an emergent matter, which I already
17  indicated I would be submitting by way of letters.
18       THE COURT:  Then I will deal with that when I receive
19  the letter, but I am telling you now if you need discovery to
20  deal with an upcoming, whatever the hearings are called, I am
21  not going to give it to you.  If you need discovery for the
22  preliminary injunction motion, you will have to state that when
23  you make the preliminary injunction motion.  If you need
24  discovery because you're curious or whatever, wait until
25  everybody is served and consider dropping the excess baggage.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                              21

1        MR. FAGAN:  Thank you, Judge.  I wasn't suggesting
2   anything other than that.  I wasn't asking nor did I intend to
3   ask for full-blown discovery.
4        THE COURT:  Any discovery.  You get no discovery until
5   everyone is served unless there is an emergency.  The emergency
6   would be the preliminary injunction and we will see what is in
7   your preliminary injunction motion papers.
8        MR. FAGAN:  Yes.  Thank you.
9        THE COURT:  At this point, I am not going to schedule
10  a date.  When all defendants have appeared via counsel, you
11  will contact me, or whenever you want relief on something you
12  will contact me and you will follow the rules, which is you
13  will send me copies of everything you give to Judge Marrero and
14  we will go from there.  Discovery is stayed, however, pending
15  further order of the Court.
16       MR. FAGAN:  Thank you, Judge.
17       THE COURT:  I think, Mr. Fagan, in fairness to our tax
18  dollars, you're buying today's transcript.
19       MR. FAGAN:  OK.  Thank you.
20       THE COURT:  And making a free copy available to Ms.
21  Greenfield.
22       One last thing.  It's not my issue per se, but I want
23  to make it clear to your clients and the Board of Ed, if these
24  folks are supposed to be in school, in school meaning, as you
25  call it, the rubber room, in order to get paid, then I assume
SOUTHERN DISTRICT REPORTERS, P.C.
Page 10

8288TEAC.txt
(212) 805-0300

22

8288TEAC

1   this is sick leave or personal time or whatever. They are not
2   necessary. They are welcome to be here, but if the Board of Ed
3   only pays people who have to be somewhere, none of them have to
4   be here. I want to make sure there is no misunderstanding on
5   that.
6           MR. FAGAN: We will certainly take that with regard to
7   future hearings. I didn't know who should be here or who
8   shouldn't be here. The reason that these plaintiffs are here
9   is each of these are the named plaintiffs. They needed to be
10  here --
11          THE COURT: They did not need to be here. If you
12  wanted them to be here, that's another story.
13          MR. FAGAN: I didn't finish. I am sorry. I didn't
14  finish my sentence. With respect to the Court, I was going to
15  say something. It's OK. I understand it's the Court's
16  position they didn't need to be here today. I will instruct
17  them they should not consider it as a necessary day and they
18  should consider it to be sick leave. Some of them actually
19  have already been terminated so it doesn't matter whether they
20  were sick or not.
21          THE COURT: I didn't want there to be any confusion so
22  that later when they are told they are not getting paid or
23  something, you call that retaliation or you say that the judge
24  wanted them here or anything like that. I am happy to have
25  them here, but not at the tax dollar expense.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

23

8288TEAC

1           OK. Make your arrangements with the court reporter.
2           (Adjourned)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

EXHIBIT "C"

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

851rteac                                                                    1
 1  UNITED STATES DISTRICT COURT
 1  SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x
 2
 3  TEACHERS4ACTION, et al.,
 3
 4              Plaintiffs,
 4
 5          v.                          08 Civ. 548 (VM)
 5
 6  MICHAEL G. BLOOMBERG, et al.,
 6                                       Conference
 7              Defendants.
 7
 8  ------------------------------x
 8
 9                                       New York, N.Y.
 9                                       May 1, 2008
10  Before:                             4:00 p.m.
10
11          HON. ANDREW J. PECK
11
12                                       Magistrate Judge
12
13          APPEARANCES
13
14
15  EDWARD D. FAGAN, ESQ.
15      Attorney for Plaintiffs
16
16
17  MICHAEL A. CARDOZO
17  Corporation Counsel for the City of New York
18      Attorney for City Defendants
18  BLANCHE GREENFIELD
19      Assistant Corporation Counsel
19
20
20  STROOCK & STROOCK & LAVAN LLP
21      Attorneys for Defendant UFT
21  CHARLES G. MOERDLER, ESQ.
22  DINA KOLKER, ESQ.
22
23
23  ADAM S. ROSS, ESQ.
24      Attorney for Defendant UFT
25
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

851rteac                                                                    2
 1          (Case called)
 2          THE COURT:  Mr. Fagan, I guess this is your
 3  application.
 4          MR. FAGAN:  It is my application, your Honor.
 5      First of all, I wanted to say that I find myself in a
 6  case with both a colleague whom I've known for many years and
 7  an old nemesis against whom I've fought many battles.  To quote
 8  someone that your Honor knows, life is infinitely stranger than
 9  anything which the mind of man could invent.  I apologize to
                            Page 1

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

10 the Court if I offended it by making an application.  I believe
11 the application was made in good faith.  I hope that starting
12 today and moving forward we can move the case along with the
13 things behind us behind us and the things in front of us in
14 front of us.
15          THE COURT:  That's fine.
16          MR. FAGAN:  Thank you, your Honor.
17          Your Honor, the application that I have is based on
18 several different matters all of which relate to some things
19 that I believe could expeditiously move this case along.  They
20 started, your Honor, as you recall, with an issue of an email
21 that was intercepted.  The interception of the email is
22 significant for two reasons.  Forget about the content of the
23 email, forget about what it has to do with.
24          The interception of the emails provides a potential
25 independent basis for an additional cause of action.  In
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                                    3
851rteac
1 addition to which the sender of the emails, the source of the
2 emails, is a party or could be a party over which we have to
3 make an additional claim.
4          THE COURT:  And it could be one of your clients.
5          MR. FAGAN:  It could be one of our clients, your
6 Honor.  The importance of being able to ascertain that as
7 quickly as possible is so that we will know is it someone on
8 the other side of these proceedings, on the other side of the
9 caption, or is it someone within our group.  I can tell your
10 Honor I have spoken to all the named plaintiffs, I've spoken to
11 all the people within our group, I've spoken to Mr. Lewenstein;
12 it is not from our plaintiffs.
13          I also spoke with Ms. Greenfield about two and a half
14 weeks ago.  I explained to her the importance of preserving and
15 getting immediate access to the fax log.  The reason for that
16 is these two documents, whatever they are, however they came
17 in, they started out as just being two documents.  Then we
18 discovered the existence of a fax cover sheet.  But when one
19 looks at the documents themselves, they are missing the types
20 of things that would normally come when you look at a fax.
21          THE COURT:  I understand that.  We also had a prior
22 conference at which Ms. Europe, is it? England, somebody from
23 the board of ed. -- help me out with the name.
24          MS. GREENFIELD:  You're right, your Honor, Ms. Europe.
25          THE COURT:  Ms. Europe said, although she was not
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                                    4
851rteac
1 under oath at the time -- I try not to have to put any lawyer
2 under oath in these proceedings.  She represented as an officer
3 of the court that the blank cover sheet that is blank of the
4 usual fax transmittal information that we often or always see
5 on fax sheets was indeed blank, that the cover sheet was just
6 handwritten information.
7          I guess the question is the fax log may well be an
8 easy thing.  I'm not sure if there is one or what the computer
9 or fax capabilities is.  If that's all you want, let us try to
10 get to the heart of this case and not spend too much time or
11 money on what may or may not be a sideshow, however important
12 you think this issue is.
13          Let me ask Ms. Greenfield first -- and as those of you
14 know who have been in this before, and Mr. Moerdler welcome to
                              Page 2

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

15  you and your colleagues, I try and cut through the paperwork
16  and get to the heart of things -- I assume that was a board of
17  ed. fax machine.
18          MS. GREENFIELD: Your Honor, if I may for a moment.
19  First of all, I really strenuously object to counsel's
20  reference in his letters and in this courtroom to his referring
21  to the email as intercepted. He cites to a statutory provision
22  which talks about the interception of transmissions. As the
23  Court is fully aware, this was not an interception of some type
24  of covert or overt the operation by the Department of Education
25  but rather a fax that was sent to them unsolicited.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    5
851rteac
1          That being said, I don't remember which court
2   conference it was, your Honor. It may have been after the
3   April 11th conference, I went back to the Department of
4   Education office, Teresa Europe's office, to check the inbox or
5   the box where they would normally keep the summary sheets of
6   the faxes that come in.
7          I'm going to go a little bit out of chronology here.
8   I subsequently spoke to their tech person to get some
9   information about their fax machine, which is a Brother fax
10  machine. Apparently, that fax machine spits out, I'm sorry for
11  lack of a better word, those summaries every 50 faxes that are
12  received.
13          When I went to the office, they don't maintain them as
14  my office does. As a litigation office, we save those fax
15  summary sheets. They didn't have for that date or any dates
16  before that time. When I spoke to the tech person, he told me
17  that the memory of that fax machine is I think approximately
18  200 faxes. And when he checked, it wasn't going back to the
19  4th.
20          That being said, your Honor, I think what I need to
21  add is in, addition to that fax that was sent to the Department
22  of Education, an email, more than one email, was sent to an
23  attorney in the discipline unit as well as to Terry Europe,
24  where Mr. Lewenstein's email that is the subject of counsel's
25  application was attached.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    6
851rteac
1          THE COURT: Let me make sure I got that. An email was
2   received by Ms. Europe and somebody else at the board of ed.,
3   and they also had the two documents in dispute attached?
4          MS. GREENFIELD: The April 3rd email from Mr.
5   Lewenstein, the one that starts "To All," "Hello All," "Hi
6   All."
7          THE COURT: They are both April 3 and they are both
8   "Hi All." But one of the two emails.
9          MS. GREENFIELD: Yes, your Honor.
10          THE COURT: I guess the question now becomes: Subject
11  to further argument by Mr. Fagan, with the milk already spilt
12  or the water under the dam, or whatever the appropriate bad
13  analogy is, on the faxes, should we be focusing on the emails
14  for a minute?
15          MR. FAGAN: Your Honor, does the Court want me to
16  address the issue of the faxes first or the emails?
17          THE COURT: Sure.
18          MR. FAGAN: The issue of the faxes, if those fax logs
19  are gone, then I want the opportunity to make an NTL
                            Page 3

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt
20    application, an application for sanctions under NTL.  We were
21    here, your Honor, on April 10th.  Ms. Greenfield was here in
22    court on that day.  That's the first time we find out about
23    this fax log.  The fax cover sheet, I'm sorry, I misspoke.
24        The reason we need this information is we believe that
25    it's highly --
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                7
    851rteac
1           THE COURT:  Stop for one minute.  It may be, and maybe
2    I will change my mind on which you should address first, that
3    who sent the email may well give you the information you need,
4    assuming that there is not going to be any claim that the email
5    is privileged or something else.
6           Let me hear from Ms. Greenfield on whether you're
7    willing to produce the emails or email.  Yes, it is emails.
8           MS. GREENFIELD:  Yes, they are emails, your Honor.  We
9    have been waiting for the plaintiff's application which the
10   Court gave them permission to file on April 11th regarding the
11   privilege of emails.  We have been waiting.  We were here on
12   April 11th.  I checked the fax machine at that time.  I did not
13   contact the sender of the emails that Ms. Europe received to
14   confirm whether that individual is the one who sent the fax.  I
15   did not.
16          THE COURT:  Let's take this in baby steps, since it's
17   4:15 and there are a lot of you here and there are
18   demonstrations supposedly going on outside or something.
19          MS. GREENFIELD:  They're over, your Honor.
20          THE COURT:  That's good.  So you all can get home
21   after this.  But I'd like to have that happen sooner rather
22   than later.
23          Do you have any problem turning over the two emails
24   you referred to?
25          MS. GREENFIELD:  No, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                8
    851rteac
1           THE COURT:  Do so.  Mr. Moerdler?
2           MR. MOERDLER:  If your Honor please, if the Court will
3    permit me a preliminary question that you posed, which is:  Is
4    there a claim that the contents of email are privileged being
5    based on something that Mr. Fagan did or did not say?  If the
6    answer to that question is yes -- is it yes, Mr. Fagan?
7           MR. FAGAN:  The answer is the emails themselves, the
8    Florian Lewenstein emails, are privileged.
9           MR. MOERDLER:  Is that because of something that
10   discloses advice you gave?
11          MR. FAGAN:  It's because it discloses advice I gave,
12   because it discloses litigation strategy.  We outlined that
13   in --
14          MR. MOERDLER:  That's all I want to know.  Your Honor,
15   at this point I'm required under the canons to advise the Court
16   that the representation by Mr. Fagan that it discloses advice
17   that he gave constitutes a violation of the disciplinary rules
18   of the State of New York as adopted in the model code in that
19   it represents an attempt to intimidate an adjudicatory officer,
20   an administrative judge, by a threat of an ethics violation.
21   I'm constrained to ask the Court to forward this to the
22   disciplinary committee for the First Department.
23          MR. FAGAN:  Your Honor, so we can be clear, I'm happy
24   that Mr. Moerdler finally made that application so I can
                              Page 4

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

25  finally get Mr. Moerdler himself before the disciplinary
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

851rteac                                                          9

1   committee on the outstanding issues between him and me.
2        THE COURT:  Gentlemen, gentlemen, stop.  Anyone who
3   wants to go to the disciplinary committee has the absolute
4   right, as I understand it, to do so on their own.
5        MR. FAGAN:  Thank you, your Honor.
6        THE COURT:  At this point I'm not taking any action on
7   disciplinary matters to the First Department, to this court's
8   disciplinary committee.
9        I will note for the record -- and maybe we'll get to
10  that, maybe everybody will calm down and we can start talking
11  about this case on the merits instead of whatever -- that I did
12  read not the attachments but Mr. Moerdler's affidavit submitted
13  to Judge Marrero with respect to the disqualification
14  application, which ends with him asking me to submit you to the
15  Southern District disciplinary committee.
16       As of now, absent further papers on that subject, if
17  you two want to beat each other up in front of various
18  disciplinary committees, you don't need my permission to make
19  the appropriate filing.  I'm not doing it yet, for anybody.
20       MR. FAGAN:  Thank you, your Honor.
21       THE COURT:  With that, I think we were back to will
22  you give them the emails and, to make matters easier or faster
23  now, maybe, can you tell who the email sender is?
24       MS. GREENFIELD:  Your Honor, I think there is one
25  other issue that needs to be addressed.  We have these letters
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

851rteac                                                         10

1   that counsel keep sending requesting the Court have this
2   conference and the Court granted counsel permission to make a
3   motion, and that hasn't been done yet.
4        THE COURT:  I'm not saying the document is privileged,
5   that if it is privileged the privilege hasn't been waived, or
6   anything else.  To the extent that you all would like to spend
7   my tax dollars on the city side and your own time and money
8   doing motions, I will get to them when I get to them.  But it
9   may well be that once we see who the sender of the material at
10  least via email is, that the allegations that you somehow
11  intercepted -- you or your client, not you personally --
12  intercepted communications or that there is a privilege that
13  wasn't waived or anything else -- and there we go.
14       On a very fast read, to either of you know who Krinsky
15  is?
16       MS. GREENFIELD:  Your Honor, I don't know him
17  personally.  He has litigated against my office.
18       MR. FAGAN:  I know him.  His name is Richard Krinsky.
19  He is not one of us, your Honor.  We will take the appropriate
20  action.
21       What is important, your Honor, is to also
22  communicate -- may I go back now to the fax, the issue of the
23  fax?  Now that we have this, I assume that this is the only
24  email.  Is this the only email?
25       THE COURT:  There are two of them here.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

851rteac                                                         11

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

1    MS. GREENFIELD:  There are two.  I believe Mr. Krinsky
2  also sent an email, the same email, to another attorney.  His
3  name begins with a T-A-E.  But he didn't keep his email.  It
4  was sent to Terry Europe, but he doesn't have the email that
5  Mr. Krinsky sent him.  It's the same one.
6    MR. FAGAN:  Could we then have a very simple order
7  that Ms. Greenfield turns over whatever emails she's got,
8  however many there are, Bates stamp them according to your
9  Honor's rules, and that will be the end of the issue as it
10  relates to the emails?
11    THE COURT:  Any problem with that?  I take it it's
12  just these two.
13    MS. GREENFIELD:  There was an email that wasn't about
14  Mr. Lewenstein.  I think it recited a case, had a case
15  citation.  But this is the one that's April 4th at 12:41, to
16  Nancy Ryan, which has the Lewenstein email underneath it, and
17  then the one dated April 7th at 10:36, which refers to Denise
18  Gobell, who used to be a plaintiff in this lawsuit.  I'm sorry,
19  your Honor.  Underneath that one is the other email about
20  matter of NTSE Communications, Inc.
21    THE COURT:  Is that the email --
22    MS. GREENFIELD:  The other email.
23    THE COURT:  So the two stapled things, one of which is
24  two pages, the April 4 email, and the other of which is 7
25  pages, the last email in the chain being an April 7 at 10:36
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              12
851rteac
1  a.m. email to Teresa Europe, are those the only two emails that
2  the board of ed. has about the Florian email that was the
3  subject of prior proceedings in this proceeding?
4    MS. GREENFIELD:  Your Honor, you know they have the
5  email that was faxed.
6    THE COURT:  Right.  In terms of emails, these are the
7  only emails received by the board of ed., yes?
8    MS. GREENFIELD:  By email, yes.
9    THE COURT:  Thank you.
10    MR. FAGAN:  Your Honor, I'll accept that
11  representation.  What we'll do, Ms. Greenfield and I will mark
12  these so we have them clearly documented.
13    THE COURT:  That's fine.
14    MR. FAGAN:  May I go back to the issue of the fax
15  machine, your Honor?
16    THE COURT:  Yes.
17    MR. FAGAN:  I have a Brother fax machine.  I've had
18  Brother fax machines.  For anyone to suggest that the brother
19  fax machine does not print out something at the top of the fax
20  I believe is --
21    THE COURT:  What would you like to do?  Do you want
22  Ms. Europe's deposition to see if she whited it out despite
23  saying that she didn't?  Do you want to hire a tech person?
24  I'm not taking lawyer representations about technology.  Do you
25  want to higher Kroll?  Do you want to hire any of the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              13
851rteac
1  e-discovery vendors?  Do you want to hire whoever?  I'm not
2  endorsing anyone, just one name came to mind.  Do you want to
3  spend your money on that?
4    MR. FAGAN:  I would like Ms. Europe's deposition on
5  the issue of that fax, that fax transmission of the email.
                        Page 6

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt
6   THE COURT:  I will give it to you, and I will
7 thereafter shift costs under Rule 37 if nothing new is
8 developed, considering it as if it's a motion.
9   Ms. Greenfield, keep your time records.  I know you're
10 not an hourly employee.
11   MS. GREENFIELD:  We do keep time records, your Honor.
12 We're required.
13   THE COURT:  Good.
14   MS. GREENFIELD:  Your Honor, I would like to object,
15 however.  This is not an issue of how the Department of
16 Education went out and snuck and got a communication of the
17 plaintiff.  The issue right now is plaintiff's claim of
18 privilege as to these documents.  He can assert them in a
19 motion without any of this other information.
20   THE COURT:  I'm trying to do this cost-effectively for
21 all of you and, frankly, efficiently for my time.
22   If this is the only issue that puts aside everything
23 else about these emails, I would be willing to give you an hour
24 deposition of Ms. Europe strictly limited to the receipt of the
25 faxed version of the Florian emails under cover of the plain
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

851rteac
1 white sheet of paper on which are the words, "Terry, Something
2 you should see 4/4/08" and a phone or fax number which I think
3 is Ms. Europe's, period.
4   If she says, and the Court credits it, that however
5 strange it may be, there was no fax header on this, I will be
6 expecting you to pay counsel's costs with respect to the
7 deposition.
8   MR. FAGAN:  Your Honor, one more thing.  In addition
9 to finding out from her how it comes in, we also need to find
10 out -- she sends it to someone else.  She sends the email
11 itself, these two pages and the cover sheet, she sends that to
12 somewhere else.  What we need is it comes in and it goes out.
13   THE COURT:  I've heard nothing that it went out
14 anywhere.  If it does, the question is, so what?
15   MR. FAGAN:  Let me tell you why that's relevant, your
16 Honor.  If it goes out that day from the fax machine into which
17 it came, then there will be a log there also.  There should be
18 a fax legend on that.  The importance of that your Honor is
19 what we need to be able to do is track it backward.
20   THE COURT:  This like an if on top of an if.  If what
21 you are suggesting seems to be that Ms. Europe was smart enough
22 to white it out and perjure herself before this Court, or its
23 equivalent even though she was not technically under oath, but
24 she then willy-nilly sent it out to other people with the
25 incoming fax legend that it originally came in from, that's
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

851rteac
1 lots and lots of ifs.
2   If you tell me that you're not asking for any other
3 relief on these emails, I will give you that one-hour
4 deposition of Ms. Europe.  If you're still telling me you want
5 all sorts of sealings and callbacks and injunctions about the
6 use of the emails and other proceedings, then you are going to
7 have to do what you were told to do three or four weeks ago,
8 which is make an appropriate motion that these are indeed
9 privileged emails and were not revealed directly or indirectly
10 to the board of ed. by one of your clients.
Page 7

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

11      MR. FAGAN: Your Honor, we did in fact file an order
12  to show cause. We submitted an order to show cause with a
13  declaration from Florian Lewenstein.
14      THE COURT: If you're prepared to say that that is
15  your motion and that's what you want to rest on, that's fine,
16  I'll wait for opposition papers and I'll rule on it. That does
17  not -- well, I won't preview the ruling.
18      MR. FAGAN: Your Honor, what I'm suggesting to the
19  Court is that the issue that we have about the email, I think
20  what we ought to do is first, as your Honor suggested, first
21  have the deposition of Ms. Europe, limit it to this one-hour
22  deposition, which is fine, allow us to make inquiry about the
23  coming in and the going out. The going out is important, your
24  Honor.
25      Then, based on that, I would hope that the Court would

851rteac
1  also give us an opportunity to bring our own expert. We don't
2  need the actual machine. All we have to know is the model
3  number. She said it was a Brother fax. We don't know the
4  model number.
5      THE COURT: Counsel, this is putting the cart before
6  the horse. Where is all of this going? You wanted to know who
7  leaked it to the board of ed. You now know at least one person
8  who leaked it to the board of ed. Do what you want.
9      MR. FAGAN: Thank you, your Honor.
10      THE COURT: If you want to sue that person in state
11  supreme, whatever. You're not suing them here. That's a
12  separate cause of action.
13      MR. FAGAN: Yes, your Honor.
14      THE COURT: If you want to go to the U.S. Attorney's
15  office, since you cited a criminal statute, be my guest. I'm
16  not endorsing it. I think it's ridiculous. But, because right
17  now you used the word "interception," etc., you now know at
18  least in one way that it's not the board of ed. -- I hate to
19  insult the board of ed., but I'm not sure they have the
20  technical ability to intercept faxes. But be that as it may.
21      If you want to do what you want to do outside of my
22  courtroom, that's fine. If you want to do everything that you
23  have put forth in your order to show cause, then what you have
24  to do is prove to me that this is a privileged email that was
25  misused by the board of ed.

851rteac
1      Right now, being as Mr. Krinsky got the email -- I
2  don't know where -- as far as the board of ed. is concerned,
3  it's not a privileged document. If you have some remedy
4  against Mr. Krinsky or if there is somebody else and it's super
5  relevant that Professor Moriarty sent them the fax, you see the
6  relevance. As of this point, unless you prove that Krinsky
7  stole something or whatever, there is no privilege.
8      MR. FAGAN: Your Honor, I'm not suggesting that the
9  game is afoot nor that Moriarty is in here. What I am
10  suggesting, however, is that under 18 U.S.C. 2511(d)(2) no one
11  has to actually reach out to intercept the email. As long as
12  they were not a knowing, intended recipient, if they used the
13  emails in an inappropriate way, there may be a potential
14  problem for them.
15      THE COURT: Bring a lawsuit in state supreme or go to
Page 8

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

16  the U.S. Attorney's office.
17          MR. FAGAN:  Thank you, your Honor.
18          THE COURT:  I'm sorry.  2511 what?
19          MR. FAGAN:  2511(2)(d).
20          THE COURT:  Let me read it, since we're talking
21  criminal statutes.  Thank on.
22          MR. FAGAN:  Going down to sub (a).
23          THE COURT:  There is no sub (a).
24          MR. FAGAN:  Your Honor, I cited the actual statute.
25          THE COURT:  I have 18 U.S.C. 2511.  I've got (2).

851rteac                                                    18

1           MR. FAGAN:  (d).
2           THE COURT:  Yes.  (d) has no subparts.  So either you
3   have an outdated U.S. Code or mine, which is the 2008 bench
4   book edition, has somehow been superseded.
5           MR. FAGAN:  Your Honor, before I come back here on
6   2511(d)(2), I'll be happy to provide the exact quote.  I took
7   the quote directly from Loewen Law.
8           THE COURT:  That was your first mistake.  That's why
9   we have the U.S. Code.
10          Please, please, please.  In any event, if you want to
11  sue them, if you want to go to the U.S. Attorney's office,
12  that's not my problem.
13          MR. FAGAN:  All we want to do right now, your Honor,
14  is follow up on the issue of the fax machine itself.
15          THE COURT:  Why?
16          MR. FAGAN:  Why, your Honor?
17          THE COURT:  The only purpose is to pursue a claim in
18  another court.  Let the U.S. Attorney do its discovery.  They
19  have great subpoena powers, they have great warrant powers.  I
20  sign their search warrants, when justified, the weeks I'm on
21  criminal duty.  If they want to do it, fine.  If my friends in
22  state supreme want to deal with it, they can deal with it.
23          Right now the only issue that had this Court concerned
24  was that they somehow are misusing a confidential document.
25          MR. FAGAN:  That's correct.

851rteac                                                    19

1           THE COURT:  As of now, whatever the fax of the Florian
2   email was, that same day they got it in an email from, as to
3   them, a nonprivileged, legitimate source.  If you want to
4   pursue Mr. Krinsky, that's fine.  My knowledge of 2511 from the
5   weeks I'm on criminal duty would not seem to have it apply to
6   the board of ed. in any way, shape, or form here.
7           Let's move on to the substance of this litigation.
8           MR. FAGAN:  I agree, your Honor.  But we do want that
9   one-hour deposition of Ms. Europe.  What we will find from
10  that -- I'm not going to speculate about what we'll find.  But
11  your Honor offered the deposition.  The deposition is
12  important.
13          THE COURT:  Mr. Moerdler, what is your hourly rate?
14          MR. MOERDLER:  My hourly rate the last time I looked
15  is $875 an hour.  Outrageous, I agree.
16          THE COURT:  Careful, because that's on the record,
17  with a smile.
18          MR. MOERDLER:  I understand that.  Still my view.
19          THE COURT:  Ms. Greenfield, what's your hourly rate?
20          MS. GREENFIELD:  Your Honor, the last time this came
                                Page 9

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt
21 up was many, many years ago. And then I was at 250. I don't
22 know what it is now. That was before I was a supervisor or
23 maybe the beginning years as a supervisor. I don't know, your
24 Honor.
25         THE COURT:  Everyone slow down and let me talk.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                            20
    851rteac
1  Assuming Ms. Greenfield's rate hasn't gone up, that's $1,125
2  that you and your client will be on the hook for if you get
3  nothing from this deposition, because I'm treating it as part
4  of a Rule 37 motion. Unless you get her to admit that indeed
5  there was a fax legend on the fax that she received or that she
6  faxed it out in such a way that that fax legend appeared, I am
7  going to charge these costs to you.
8          If that is acceptable to you, I will give you the
9  deposition despite Ms. Greenfield's objection and the minor, if
10 not nonexistent, relevance of it now. If that is not
11 acceptable, then I'm going to ask you to make a motion for
12 whatever you want so I can use officially Rule 37's powers as
13 well as my inherent powers on it.
14         MR. FAGAN:  What your Honor is doing, I believe, is
15 prejudging an issue and imposing costs before I have --
16         THE COURT:  They will not be imposed upon you if you
17 prevail. I'm just giving you your risks.
18         MR. FAGAN:  If your Honor is going to limit me to the
19 ability of asking her basically the one question of did she
20 white out the incoming fax legend, then I've already got her
21 statement on the record.
22         THE COURT:  That's why I wonder what you're doing in
23 this deposition.
24         MR. FAGAN:  The reason for the deposition, your Honor,
25 is that document has been through three iterations. It appears
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                            21
    851rteac
1  at different times with different markings on it. Now we find
2  out about the emails. This is the first time we found out
3  about the emails.
4          THE COURT:  You've convinced me. No deposition unless
5  you make a motion. Let's move on.
6          MR. FAGAN:  Your Honor, I'm prepared to pay it. I'm
7  simply objecting to that predetermination.
8          THE COURT:  Counsel, the predetermination is based on
9  this:  Either Ms. Europe lied to me, in which case she will be
10 referred to the disciplinary committees by this Court, or she
11 didn't lie, and that when she received this fax it is in the
12 way it is attached to your April 18th letter to Judge Marrero,
13 which is to say as the 4408 white sheet of paper with no fax
14 legends.
15         MR. FAGAN:  Your Honor, I'll pay for the deposition,
16 we'll get her statement, and then we'll take the necessary
17 steps.
18         MS. GREENFIELD:  Your Honor, I just want to clarify
19 one issue because there is a little confusion here. Counsel is
20 talking about whether or not Ms. Europe sent out this email or
21 this fax. The fact is that Mr. Lewenstein's letter was sent
22 out by email to my office. I don't know that it was the email
23 that was faxed or the email --
24         THE COURT:  Since you presumably therefore have the
25 copy, see what fax legends are on it, and, without waiver of
                        Page 10

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

851rteac
1  privilege if there was anything substantive, present to Mr.
2  Fagan the appropriate fax legends, etc.  If it merely shows a
3  fax from Ms. Europe to your office and no prior fax legends,
4  which sometimes can be seen if one takes it and refaxes things
5  around -- either it has it or it doesn't.  Please.  It's 4:45.
6  Let's try to get to some merits.
7          What else?
8          MR. FAGAN:  That was it on the issue of the faxes and
9  the emails.
10         THE COURT:  Good.
11         MR. FAGAN:  Can we have a date by which we can take
12 this deposition, your Honor?
13         THE COURT:  How soon do you want it, how soon is it
14 convenient for at least the lawyers who are here who will be in
15 attendance?  Two weeks?
16         MR. MOERDLER:  Your Honor, either I or one of my
17 colleagues will be there at any time the Court names.
18         MR. FAGAN:  And your colleagues will be there at their
19 rate, not yours?
20         THE COURT:  Obviously.  And try to find a less senior
21 colleague so the prices don't go up, if there is anyone who
22 bills higher than you.
23         MS. GREENFIELD:  Your Honor, I'll confer with Ms.
24 Europe, because she is disciplinary counsel and there are other
25 hearings and things scheduled.  I will speak to her tomorrow.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

851rteac
1          THE COURT:  Within two weeks unless there is
2  absolutely insuperable inability to find an hour that works for
3  the principal players here.  That's the end of the email saga,
4  right?
5          MR. FAGAN:  Yes, your Honor.
6          THE COURT:  Good.  Now let's get to my agenda, which
7  is:  where are we on responding to the complaint?  UFT I assume
8  still has more time.  where are we from the city?
9          MR. MOERDLER:  If I may be heard for a moment.  It is
10 my understanding from Mr. Fagan directly that he proposes to,
11 as he has repeatedly stated he will, serve yet another amended
12 complaint.  He must do so, because there is an inconsistency
13 between the complaint that's on file, what was served, and the
14 like.  As I understand it, he proposes to make those
15 inconsistencies now consistent.
16          There are parties named in one pleading that are not
17 named in another.  There are people that are not in the caption
18 but they are tucked away somewhere in the exhibit and they are
19 plaintiffs.  I'd like to have a pleading to respond to.
20          MR. FAGAN:  Your Honor, when we were here last time,
21 your Honor gave a very specific date by which we would file our
22 amended complaint.  We didn't attempt to go out afterwards and
23 file another pleading without having everybody in, everybody
24 served.  They are all here.
25          THE COURT:  Can everybody learn to get to the point?
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

851rteac
1  Are you filing another amended complaint or not?
Page 11

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

2      MR. FAGAN:  I would like to, your Honor.
3      THE COURT:  To drop or add?
4      MR. FAGAN:  To specifically add names.
5      THE COURT:  To add just additional plaintiffs?
6      MR. FAGAN:  Additional plaintiffs and one additional
7  cause of action, an LMRDA cause of action.
8      THE COURT:  Against the UFT?
9      MR. FAGAN:  Against the UFT, yes, your Honor.
10     THE COURT:  I'm rusty on my labor relations.  Does
11  that have to go before the NLRB first?
12     MR. FAGAN:  No, your Honor.  Actually, your Honor
13  decided the case, it was Operaji v. UFT.  Part of that was an
14  LMRDA case.  It does not have to go to the board first.  The
15  court has discretion to allow that complaint.  I can give your
16  Honor the case law in a letter if you want.  But it's allowed.
17     THE COURT:  I guess the only thing I'll say on that,
18  my recollection of my prior decision was that it was a hybrid
19  claim.  Is that what you are doing here or something else?
20     MR. FAGAN:  It's because of the actions that have
21  occurred in the last month and a half to two months which
22  allows us to have the LMRDA claim, your Honor.
23     THE COURT:  Is it a hybrid claim or a direct LMRDA
24  claim?
25

      MR. FAGAN:  It's a direct LMRDA claim.
        SOUTHERN DISTRICT REPORTERS, P.C.
           (212) 805-0300

851rteac                          25

1      THE COURT:  I guess I will tell you this.  If you want
2  to amend to add that, I don't know if the UFT or the city is
3  currently planning to move to dismiss, and Mr. Moerdler is
4  shaking head yes, frankly, unless something has changed and
5  since you have a lot of folks here who I assume are your
6  clients, I am not going to be trying in this lawsuit
7  disciplinary hearings as to individual plaintiffs.
8     I guess what I'm trying to say is on the number of
9  plaintiffs, to the extent that a lot of this case involves
10  policies, the policy of the board of ed. to have these rubber
11  rooms, with quotes around "rubber rooms," as I always do, the
12  policy of the UFT not to represent your clients because of the
13  mere fact that you have sued them, the policy of how these
14  hearings are conducted, to the extent that's what we're looking
15  at, I sincerely doubt that you need any more than the very
16  numerous plaintiffs that you already have and indeed probably
17  don't need more than a handful.
18     Knowing that discovery is still stayed other than this
19  one-hour deposition of Ms. Europe on this particular
20  extravaganza of the emails, because of the importance you've
21  put on that, if you want to take more time and make a lengthier
22  motion to dismiss -- I run a rocket docket, but I'm not sure
23  that I'm going to allow what sounds like it is going to be very
24  extensive discovery until the pleadings are fully resolved.
25     If with that caveat and that warning you want to do
        SOUTHERN DISTRICT REPORTERS, P.C.
           (212) 805-0300

851rteac                          26

1  one more amendment, then, unless somebody really objects -- and
2  Mr. Moerdler, who is good with body language, is shaking his
3  head in the no direction that he doesn't object -- tell me when
4  you want to do it.
5     MR. FAGAN:  By next Friday, your Honor.  Do you want
6  to make it longer?

              Page 12

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt
```
 7          MR. LEWENSTEIN:  Yes.
 8          THE COURT:  Mr. Lewenstein and I are on the same page,
 9   which is the last time you were so gung-ho you needed two or
10   three extra extensions.  I'd rather use my rubber stamp that
11   says extension granted for something else.  Tell me what you
12   need, do it.  If you do it faster than the absolute end date,
13   that's fine.  What date do you and Mr. Lewenstein want?
14          MR. FAGAN:  He would like 30 days.
15          THE COURT:  If you get it in sooner, that's great.
16   I'm not sure that I will, if I give you 30 days, extend it
17   thereafter.  So don't leave it until the last minute.  Fine.
18   Is this up to the second or third amended?
19          MR. FAGAN:  This is the second amended.
20          THE COURT:  Second amended complaint due July 1.
21          MR. FAGAN:  No, no.  June 1, your Honor.
22          THE COURT:  Thank you.  I was looking at the wrong
23   place on the calendar.  Due June 2, since I don't think we'll
24   make you file on a Sunday.  You need to get it into the ECF
25   system, which means try not to have nearly as many pages, or if
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                                    27
```
     851rteac
 1   you do, talk to the ECF folks.  That's beyond my technical
 2   abilities, too.
 3          MR. FAGAN:  I will, your Honor.
 4          THE COURT:  I know the UFT is planning a motion to
 5   dismiss, from Mr. Moerdler's body language.
 6          MR. MOERDLER:  Yes, your Honor.
 7          THE COURT:  Ms. Greenfield, is the city?
 8          MS. GREENFIELD:  Your Honor, from a review of the
 9   current pleadings, there was a motion to dismiss at least in
10   part.  I really would have to see the second amended complaint.
11          THE COURT:  All right.  Response to the complaint,
12   which I assume will be a motion to dismiss, what's your
13   pleasure?  Two weeks, 20 days, 30 days?  No more than that,
14   please.
15          MR. MOERDLER:  I think I'd like to take 20 days, if I
16   may, your Honor.
17          MS. GREENFIELD:  He has better staff than I do, your
18   Honor.  I was looking more for 30 days, especially if the
19   complaint.
20          MR. MOERDLER:  That's fine.
21          THE COURT:  June 30 for the motion to dismiss.  And to
22   the extent between now and June 30 that the three principal
23   lawyers can sit down and perhaps find a way to simplify the
24   pleadings and avoid motion practice, you will make Judge
25   Marrero and me very happy, and I guess you'll make Judge
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                                    28
```
     851rteac
 1   Marrero even happier, since at this point the motion to dismiss
 2   goes to him.  He may retaliate by sending it to me for a report
 3   and recommendation, but I'm just here to serve.
 4          Do you know now whether you'll need more than the
 5   normal two weeks to respond, or do you want to wait until you
 6   see the motions and ask for more time at that point?
 7          MR. FAGAN:  I'd like to see the motions first, your
 8   Honor.
 9          THE COURT:  In the event that the complaint comes in
10   earlier than June 2, you'll have 30 days from whenever it is to
11   respond.  If Mr. Fagan and his clients move faster, that will
                              Page 13
```

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

12  just give you more time to deal with the motion. But these are
13  the outside dates.
14          Since discovery is still going to be stayed at this
15  point, what else do we need to do?
16          MR. FAGAN: Actually, your Honor, I'd like to address
17  that issue of discovery being stayed. The Court had said once
18  before that discovery was stayed until all the parties were in.
19  If necessary, I'll make a formal application for limited
20  discovery. I think there are things that we could do in order
21  to assist in preparing for the motion to dismiss and our
22  responses to the motion to dismiss.
23          THE COURT: Motions to dismiss are based on the
24  pleadings. However many smoking guns you find in their
25  documents or whatever they would find in yours can't be

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

29

851rteac
1   submitted on the motion to dismiss.
2           If you want to make an application in this regard on
3   paper with a copy of your proposed limited discovery attached,
4   I'll listen to the motion and expect a relatively prompt
5   response from whichever defendant you're aiming it at or both
6   defendants, and we'll go from there.
7           MR. FAGAN: Thank you, Judge.
8           MS. GREENFIELD: Your Honor, I have one issue. As
9   counsel pointed out previously, the UFT defendants were served
10  with an amended complaint that has 29 plaintiffs and the city
11  was served with an amended complaint that has 31 plaintiffs.
12          THE COURT: For at least one of those plaintiffs I did
13  a memo endorsement.
14          MS. GREENFIELD: Denise Gobell, that's correct. The
15  other one was Betina Propikeya.
16          THE COURT: Talk to Mr. Fagan and see if you all can
17  work out how many plaintiffs there will be in the next version
18  of it. Please, part of the problem may be because of the bulk
19  of the documents. Let's make sure that what gets sent to me as
20  a courtesy copy, what gets filed in ECF, and what gets served
21  on Ms. Greenfield and Mr. Moerdler, and I guess we have the
22  missing defendant of Ms. Combiner, however that is
23  pronounced --
24          MR. MOERDLER: I believe we are now going to be acting
25  for her. She has now retained us.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

30

851rteac
1           THE COURT: So you will accept service of the second
2   amended on her behalf?
3           MR. MOERDLER: Yes.
4           THE COURT: Make sure that what you give each of them,
5   me, and the ECF version are all the same.
6           MR. FAGAN: Your Honor, in fact what was --
7           THE COURT: You don't need to explain to me whether
8   there was a glitch previously or whether they can't count.
9   Just get it right this next time without saying you didn't get
10  it right previously.
11          MR. FAGAN: We will, your Honor.
12          THE COURT: Thank you. Mr. Moerdler?
13          MR. MOERDLER: Your Honor, I would like to make two
14  requests. The first request is that, if possible, the names of
15  the plaintiffs be in the caption rather than scattered
16  elsewhere.

Page 14

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

17      THE COURT:  That is required and has to be so in the
18  complaint.
19      MR. MOERDLER:  Secondly, I would ask that we be served
20  with any exhibits that may be filed or may be deemed to be part
21  at the same time as we get the pleading.
22      THE COURT:  So ordered.
23      MR. MOERDLER:  Thank you.
24      THE COURT:  Any exhibits to the complaint?
25      MR. FAGAN:  Yes, your Honor.  Just for clarification,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

851rteac                                                    31

1   because it is important, Mr. Moerdler, did you not receive an
2   exhibit binder with the amended complaint?
3       MR. ROSS:  When we received the service copy, we
4   received a binder of exhibits, yes.  But that was different
5   than what was filed.
6       THE COURT:  Whatever.  Get it right, folks, please.
7       MR. FAGAN:  Thank you, Judge.
8       THE COURT:  Officially, for the record, since you
9   reminded me that my prior stay was until all parties were
10  served, discovery is stayed until further order of the Court in
11  response to Mr. Fagan's motion or anyone else's application to
12  allow discovery other than the one-hour Ms. Europe deposition.
13      At the risk of prolonging things, let me ask one other
14  question.  This is for everybody.  We seem to be in continuing
15  circles upon circles in that, as I understood it, one of the
16  prior issues was that the, whatever they're called, internal
17  board of ed. disciplinary hearings were taking too long, which
18  is why the plaintiffs were, in plaintiffs' view, being held in
19  the disciplinary rooms, the so-called rubber rooms, longer than
20  appropriate.
21      I believe, from reading between the lines or maybe
22  reading on the lines, that previously the UFT represented
23  teachers at these hearings.  No?
24      MR. MOERDLER:  The UFT does not represent teachers at
25  the hearings.  NYSUT, an entity which is not a party to this

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

851rteac                                                    32

1   litigation, does.  We do not.
2       THE COURT:  What does that stand for?
3       MR. MOERDLER:  New York State United Teachers.
4       THE COURT:  N-Y-S-U-T.  OK.  And they are not doing it
5   anymore, is that where things stand?  I thought it was UFT
6   lawyers.
7       MR. MOERDLER:  Your Honor, I'll say it as briefly as I
8   know how.  The applications, comments, affidavits, and
9   assertions made by Mr. Fagan persuaded NYSUT that it had an
10  ethical conflict when it was charged with having engaged in
11  misconduct by the misrepresentation.  Therefore, it recused
12  itself from representing the teachers.
13      THE COURT:  At the risk of prolonging my misery, or
14  your misery for having to be in front of me -- I can't
15  pronounce it right -- should NYSUT be a party to this action?
16  Frankly, I always thought we were dealing only with the UFT.
17      MR. FAGAN:  Your Honor, we were dealing only with the
18  UFT.  The reason that NYSUT gave for withdrawing its
19  representation is because it had a conflict of interest between
20  two clients, meaning the teachers and the UFT.  That's in the
21  letter from this Mr. Sandner.

Page 15

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

22   What we have done since that time is, in light of your
23 Honor's stay -- your Honor indicated that if we wanted a stay
24 of the 3028 hearings, we had to go to the state court. We are
25 in fact going to the state court in multiple proceedings. We
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

851rteac                                                         33

1 are even going to the Appellate Division because there are
2 inconsistent stay orders coming from judges. There are four
3 judges. Three of them have ruled one way, another one has
4 ruled another way, and all of it is causing confusion.
5   I will consult with my clients about whether we join
6 NYSUT in this litigation or we deal with them in the state
7 court.
8   THE COURT: Where I was going with all of this was not
9 to add more parties to my lawsuit but to ask, and I guess I'm
10 now asking in the air with a party that isn't here, why there
11 could not be the appropriate conflict waiver or whatever it is
12 to allow what I thought was UFT counsel, who I now learn is
13 NYSUT counsel, to represent teachers at these disciplinary
14 hearings so that life can move forward? I'm probably not
15 saving myself any work, but I guess I'm saying four or more
16 judges in New York Supreme and five or more in the Appellate
17 Division --
18   MS. GREENFIELD: And me.
19   THE COURT: And Ms. Greenfield.
20   MR. FAGAN: Your Honor, we welcome that suggestion and
21 that advice.
22   MR. MOERDLER: Your Honor, I believe under the New
23 York State canons, that would be unethical.
24   THE COURT: It's a nonwaivable conflict?
25   MR. MOERDLER: Absolutely nonwaivable.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

851rteac                                                         34

1   THE COURT: OK. Now that I'm not a practicing lawyer,
2 I don't keep my fingers on those rules as much as I had to in
3 the old days. I do think that I don't know what the expenses
4 of all this are to the plaintiffs. I certainly know what the
5 expense is to the overworked federal and state court system are
6 and the expense of time. It is really time for the parties
7 here to step back and see what can be done to put an end to
8 five or eight or however many lawsuits are going around all
9 over the place and see what can be resolved.
10   Obviously, certain things can't be resolved that are
11 in front of this Court. But the hearings going forward, not
12 going forward, using private lawyers, not using private
13 lawyers, using NYSUT lawyers, I would strongly recommend that,
14 without violating ethical obligations that Mr. Moerdler has
15 referred to, if there is a way to calm this down and get some
16 real substantive progress --
17   This case started in front of me, just to be clear,
18 the complaint was filed in January and I saw you on an
19 emergency application on January 28th. We are now looking at
20 an second amended complaint due June 2, a motion to dismiss
21 coming at the end of June, which means the briefing schedule
22 will run deeply into the summer. That means there won't be a
23 decision before the next school term begins in September, as
24 well as whatever else is going on in the state courts.
25   If there is a way for lawyers to be as creative in
SOUTHERN DISTRICT REPORTERS, P.C.
Page 16

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt
(212) 805-0300

851rteac                                                                    35

1  settling parts of these issues as they are in bringing multiple
2  litigations, it is now time to start going in that direction.
3  Maybe it's impossible, but I certainly would suggest that you
4  try that.
5          MR. FAGAN:  May I take one step further based on that
6  suggestion, your Honor?  Would the Court permit me to make an
7  application for the appointment of a special master on certain
8  of these issues?  Perhaps the Court doesn't need to get
9  involved in it, but perhaps if the parties all sit down with
10 someone that has authority.
11         THE COURT:  There are two issues as to that.  One, in
12 some ways it is a rare case in a court with very active
13 magistrate judges where special masters actually get appointed.
14 Moreover, special masters don't work for free.  Magistrate
15 judges do work the congressional salary equivalent of working
16 for free.  If you're prepared to pay for a special master that
17 is acceptable to all parties, I would consider it, if all
18 parties want to split the cost.
19         Look, we all know there are lots of good mediation
20 companies out there, former Judge Rosenblatt of the New York
21 Court of Appeals, who is a friend of mine, JAMS/Endispute or I
22 guess they are now just JAMS, and numerous other former judges
23 affiliated with organizations or on their own.  If it's to deal
24 with settlement, there are ways to do it.
25         Frankly, I'm not sure that the biggest picture can be
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

851rteac                                                                    36

1  settled here.  From what I have read in your complaint and
2  various other things, the UFT was trying to work with the board
3  of ed. in dealing with some of these problems but wasn't
4  successful, or maybe still are trying to deal with it.
5          I have a great ego, but I think there may be limits to
6  how far I or anyone else as a special master can resolve these
7  sort of problems.  Frankly, if we're going that route, there
8  are regular mediators who deal under I guess it's PERB or
9  whatever with these sort of issues in a contractual sense.
10 whether they are allowed to get involved in this or not, I
11 don't have a clue.
12         MR. FAGAN:  I was just following up, your Honor.
13         THE COURT:  Be creative.  If you want to pay for a
14 special master, chat with your opposing counsel and see if they
15 are willing to chip in.  If not, if you and your clients are
16 willing to deal with that, if you want a settlement, first of
17 all, you don't need my permission to have a settlement
18 conference in front of somebody else.
19         Even if you did, if you agree that you want to do it
20 at whoever's expense and you want me to appoint your agreed-
21 upon mediator as a special master to give them some additional
22 settlement powers -- I'm not sure that in settlement anybody
23 has any power other than hoping the parties can reach an
24 applicable resolution.  I'm willing to hear you all be
25 creative, but the court has no money to pay special masters.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

851rteac                                                                    37

1          MR. FAGAN:  I didn't expect it, Judge.  Thank you.
2          THE COURT:  I'm not going to schedule another
                           Page 17

(71438530)_(1)_05 01 08 - MJ Peck Conference.txt

3   conference. Let's hope that the requests for emergent relief
4   on anybody's side are kept to where it's really essential. If
5   a request is made, it will be acted upon promptly. What the
6   results will be of any such request remain to be seen. I think
7   you've seen I'm not shy bringing you all in when you are doing
8   what you are supposed to be doing and have an emergency problem
9   that is related directly or indirectly apparently to this
10  Court.

11         MR. FAGAN: Thank you, your Honor.
12         THE COURT: The usual drill. First, pursuant to 28
13  U.S. Code Section 636 and Federal Rules of Civil Procedure 6
14  and 72, although I suppose you all know this by now, anyone who
15  has any objections to anything I've ruled upon today has ten
16  business days to file those objections with Judge Marrero. The
17  ten business days starts immediately, since you're hearing what
18  I've ruled, you have heard what I have ruled regardless of how
19  long it takes you to get the transcript from our crack court
20  reporter.

21         Failure to file objections constitutes a waiver of
22  those occasions for all further purposes, including any
23  ultimate appeals to the Second Circuit or, heaven forbid,
24  beyond that to our friends in Washington.
25         Also, it is my practice to have the court reporter

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

851rteac                                 38

1   take down all the arguments, all the rulings, all the
2   kibitzing, all the Sherlock Holmes references, whatever may go
3   on at a conference, and to require the parties to pay for the
4   transcript and buy the transcript so it's of record for any
5   further use, whether that's refreshing my memory or if Judge
6   Marrero has to get involved or anything else. Unless I hear
7   any economic objection now, on a 50-50 basis between the
8   plaintiff and the two defendants --
9         MR. FAGAN: Your Honor, with respect, it ought to be
10  one third, one third, one third, I submit.
11         THE COURT: On this hearing there really was
12  uniformity between the city and UFT, so 50-50 seems fair. It
13  may well be there are going to be issues, if we ever get to the
14  merits, where the UFT will really be sitting at your table and
15  you and the UFT will pay half collectively and the city will
16  pay the other half. By suing them, you've forced them to sit
17  at a different table than they otherwise might be at. But
18  since they didn't resolve this issue to your client's
19  satisfaction, I understand that they are sitting at the defense
20  table. So 50-50.
21         We are adjourned.
22         (Adjourned)
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
Teachers4Action et al,                                      :
                                       Plaintiffs            :        CIVIL ACTION #
                                                            :        08-CV-548 (VM) (AJP)
           -  vs -                                          :
                                                            :
Michael Bloomberg, et al,                                   :
                                       Defendants.          :
-------------------------------------------------------------------X

==================================================
## PLAINTIFFS' LIMITED FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS FROM DEFENDANTS BLOOMBERG, NYC, KLEIN & DOE
==================================================

TO:    Blanche Greenfield Esq.
       Office of Corporation Counsel
       100 Church Street, 4th Floor
       New York, NY 10007
       Via Fax # 212-788-8877
       Attorneys for NYC Defendants
            Bloomberg, NYC, Klein and NYC Department of Education

Cc:    Charles Moerdler Esq.
       Stroock, Stroock & Lavan
       180 Maiden Lane
       New York, NY 10038
       Via Fax # 212-806-6006
       Attorneys for Defendants UFT, Weingarten and Combier

     **PLEASE TAKE NOTICE** that pursuant to Rule 34 of the Federal Rules of Civil Procedure as well as the Local Rules for the United States District Court for the Southern District of New York, plaintiffs hereby demand that defendants Michael Bloomberg ("Bloomberg"), New York City ("NYC"), Joel Klein ("Klein") and New York City Department of Education ("DOE") (hereinafter collective "NYC Defendants") answer and and/or respond, under oath, by producing the Requested Documents as set forth below.

     To the extent permitted by Rule 26 (e) of the Federal Rules of Civil Procedure, these Requests of Production of Documents shall be deemed to be continuing requests and the responses to them are to be supplemented upon acquisition or discovery of further additional and/or responsive documents.

# DEFINITIONS

A.    The term "you" or "your" shall refer to Bloomberg, NYC, Klein and/or DOE, as well as its/their present and former directors, offices, agents, employees and all persons acting or purporting to act on their behalf including all present or former directors, officers, agents, employees and all other persons exercising or purporting to exercise discretion, decisions, policy and/or in positions of authority through which to make such decisions and/or policies.

B.    The term "UFT" shall refer to Defendants United Federation of Teachers and/or Weingarten.

C.    The term "Weingarten" shall refer to Defendant Randi Weingarten.

D.    The term "Combier" shall refer to Defendant Betsy Combier.

E.    The term "NYSUT" shall refer to the New York State United Teachers.

F.    The term "Amended Complaint" shall refer to the plaintiffs' Amended Complaint dated February 22, 2008.

G.    The term "3020-a hearings" refers to administrative arbitration hearings pursuant to which Plaintiffs are subject to potential discipline.

H.    The term "Arbitrators" refers to the persons who are empaneled to conduct the 3020-a hearings.

I.    The term "Article 21-g" refers to the provisions in the Collective Bargaining Agreement pursuant to which the 3020-a hearings are being conducted.

J.    The term "Teachers4Action" or "Teachers4Action Plaintiffs" refer to the association of teachers and its member teachers in the above referenced case entitled Teachers4Action et al v Bloomberg et al 08-cv-548 (VM)(AJP).

K.    The term "pedagogue" shall refer to tenured teachers.

L.    The term "Relevant Period" shall mean January 2002 to present.

M.    The term "Rubber Room" shall refer to a location to which Plaintiffs have been assigned, also known as a "Temporary Reassignment Center".

N.    The term "document(s)" shall mean correspondence, letters, brochures, materials, communications, emails and all other documents and drafts thereof including those maintained and/or stored electronically.

O.     As used herein, the words "document" or "documents", "record" or "records" shall include any written, printed, typed, graphic matter of any kind or nature, including all drafts and/or copies thereof, however produced, reproduced, maintained and/or stored, including electronically generated and/or stored documents, now in the possession, custody or control of the present or former directors, officers, agents, representatives and/or employees of Defendants or any and all persons acting in its behalf, including documents at any time in the possession, custody or control of individuals or entities, or known by Defendants to exist or have existed.

P.     The words 'identify", "identity" and/or "identification" shall:

a.   when used in reference to a natural person shall require a response with the full name and present and/or last known address, present and/or last known position and/or business affiliation of such person; and

b.   when used in reference to a document or record shall require a response with the exact date, author, intended recipient, all persons or departments copied thereon and the exact type of document or record (such as a letter, memorandum, facsimile, telegram, wire, report, photograph, bond etc.) or if the above information is not available some other means by which the document or record and its present location and the name of its present custodian can be identified. Note: If any such document or record was but is no longer in your possession, custody and/or control, or subject to your control, or is no longer in existence, state with specificity whether it is:

1.   missing or lost;

2.   has been destroyed;

3.   has been transferred, voluntarily or involuntarily to others; or

4.   has otherwise been disposed of, and in each such instance explain the circumstances surrounding the authorization for such disposition, and state the exact and/or approximate date of such disposition.

# DOCUMENTS REQUESTED

**REQUEST # 1**      Documents related to the negotiations and alleged agreements
between Defendants DOE and UFT related to the changes to
Article 21-g, as they related to the conduct of 3020-a hearings and
the rights in such hearings of pedagogue teachers, such as
Plaintiffs.

**Response # 1**

**REQUEST # 2**     Document identified by Defendant DOE representative Theresa
Europe at the May 5, 2008 3020-a hearing in the matter of Olga
Batyreva, before Arbitrator Jack Tillem, in which Defendant DOE
acknowledges that the language of the Collective Bargaining
Agreement, and specifically Article 21-g of the Collective
Bargaining Agreement, does not deprive pedagogue teachers, such
as plaintiffs, of their right to a Three Person Panel of Arbitrators.

**Response # 2**

**REQUEST # 3**    Document identified by Defendant DOE representative Theresa
Europe at the May 5, 2008 3020-a hearing in the matter of Olga
Batyreva, before Arbitrator Jack Tillem, which Defendant DOE
claims to have received from Defendants UFT and/or Weingarten,
in which Defendant UFT and/or Weingarten allegedly
acknowledges "failure to include", "omission" or "oversight"
regarding language of the Collective Bargaining Agreement, and
specifically Article 21-g of the Collective Bargaining Agreement,
and that it was intended to deprive pedagogue teachers, such as
plaintiffs, of their right to a Three Person Panel of Arbitrators.

**Response # 3**

**REQUEST # 4**     Documents related to the empanelling of the permanent panel of Arbitrators to conduct the 3020-a hearings and the vetting process through which potential conflicts of interest of proposed individual Arbitrators are disclosed to pedagogue teachers, such as Plaintiffs, to challenge the permanent panel or the individual arbitrators.

**Response # 4**

**REQUEST # 5**     Documents between NYC Defendants, UFT, Weingarten and
Combier regarding claims by pedagogue teachers, such as
Plaintiffs, that the schools and/or Rubber Rooms constitute a
Hostile Work Environment.

**Response # 5**

**REQUEST # 6**     Documents between NYC Defendants, UFT, Weingarten and/or Combier, regarding conditions in Rubber Rooms, health violations, safety violations and potential dangers (both physical and psychological) to persons in the Rubber Rooms.

**Response # 6**

**REQUEST # 7**     Documents between NYC Defendants, UFT, Weingarten and/or Combier, regarding targeting and/or discrimination of senior, tenured pedagogue teachers, including Plaintiffs.

**Response # 7**

**REQUEST # 8**          Documents between NYC Defendants, UFT, Weingarten and/or
Combier, regarding decision by NYSUT attorneys to withdraw as a
result of an alleged conflict of interest between Teachers4Action
and its individual members on the one hand and Defendant UFT on
the other hand.

**Response # 8**

**REQUEST # 9**    Documents between NYC Defendants, UFT and/or Weingarten on the one hand and Defendant Combier on the other hand between the period from January 2001 to October 2007 when Defendant Combier became an official representative of Defendant UFT.

**Response # 9**

**REQUEST # 10**    Documents exchanged between NYC Defendants, UFT, Weingarten and/or Combier related to defenses, strategies, claims and efforts, to be taken from January 15, 2008 to the present, related to Teachers4Action, its members or its counsel.

**Response # 10**

**REQUEST # 11**     Documents exchanged between NYC Defendants and the Arbitrators related to Teachers4Action, its members or its counsel during the period from January 15, 2008 to the present.

**Response # 11**

DATED: May 8, 2008

By:___/s/ Edward D. Fagan_____
Edward D. Fagan Esq (EF-4125)
5 Penn Plaza, 23rd Floor
New York, NY 10001
(646) 378-2225
e-mail: faganlaw.teachers@gmail.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

A copy of this First Limited Request for Production of Documents has been provided to:

Blanche Greenfield Esq., Office of Corporation Counsel
100 Church Street, 4th Floor, New York, NY 10807, Via Fax # 212-788-8877 -
Attorneys for NYC Defendants
Bloomberg, NYC, Klein and NYC Department of Education

Charles Moerdler Esq., Stroock, Stroock & Lavan
180 Maiden Lane, New York, NY 10038, Via Fax # 212-806-6006
Attorneys for Defendants UFT, Weingarten and Combier

DATED:  May 8, 2008

By:____/s/ Edward D. Fagan_____
Edward D. Fagan Esq (EF-4125)
5 Penn Plaza, 23rd Floor
New York, NY 10001
(646) 378-2225
e-mail: faganlaw.teachers@gmail.com
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
Teachers4Action et al,                                        :
                                        **Plaintiffs**    :    **CIVIL ACTION #**
                                                             :    **08-CV-548 (VM) (AJP)**
        -   vs -                                             :
                                                             :
Michael Bloomberg, et al,                                :
                                        **Defendants.**  :
------------------------------------------------------------------X

## PLAINTIFFS' LIMITED FIRST SET OF INTERROGATORIES
## OF DEFENDANTS BLOOMBERG, NYC, KLEIN & DOE

TO:    Blanche Greenfield Esq.
       Office of Corporation Counsel
       100 Church Street, 4th Floor
       New York, NY 10007
       Via Fax # 212-788-8877
       Attorneys for NYC Defendants
            Bloomberg, NYC, Klein and NYC Department of Education

Cc:    Charles Moerdler Esq.
       Stroock, Stroock & Lavan
       180 Maiden Lane
       New York, NY 10038
       Via Fax # 212-806-6006
       Attorneys for Defendants UFT, Weingarten and Combier

**PLEASE TAKE NOTICE** that pursuant to Rule 33 of the Federal Rules of Civil Procedure as well as the Local Rules for the United States District Court for the Southern District of New York, plaintiffs hereby demand that defendants Michael Bloomberg ("Bloomberg"), New York City ("NYC"), Joel Klein ("Klein") and New York City Department of Education ("DOE") (hereinafter collective "NYC Defendants") answer and and/or respond, under oath, to the Interrogatories set forth below.

To the extent permitted by Rule 26 (e) of the Federal Rules of Civil Procedure, these Interrogatories shall be deemed to be continuing interrogatories and the answer to them are to be supplemented upon acquisition of further additional information.

# **DEFINITIONS**

A.     The term "you" or "your" shall refer to Bloomberg, NYC, Klein and/or DOE, as well as its/their present and former directors, offices, agents, employees and all persons acting or purporting to act on their behalf including all present or former directors, officers, agents, employees and all other persons exercising or purporting to exercise discretion, decisions, policy and/or in positions of authority through which to make such decisions and/or policies.

B.     The term "UFT" shall refer to Defendants United Federation of Teachers and/or Weingarten.

C.     The term "Weingarten" shall refer to Defendant Randi Weingarten.

D.     The term "Combier" shall refer to Defendant Betsy Combier.

E.     The term "NYSUT" shall refer to the New York State United Teachers.

F.     The term "Amended Complaint" shall refer to the plaintiffs' Amended Complaint dated February 22, 2008.

G.     The term "3020-a hearings" refers to administrative arbitration hearings pursuant to which Plaintiffs are subject to potential discipline.

H.     The term "Arbitrators" refers to the persons who are empanelled to conduct the 3020-a hearings.

I.     The term "Article 21-g" refers to the provisions in the Collective Bargaining Agreement pursuant to which the 3020-a hearings are being conducted.

J.     The term "Teachers4Action" or "Teachers4Action Plaintiffs" refer to the association of teachers and its member teachers in the above referenced case entitled Teachers4Action et al v Bloomberg et al 08-cv-548 (VM)(AJP).

K.     The term "pedagogue" shall refer to tenured teachers.

L.     The term "Relevant Period" shall mean January 2002 to present.

M.     The term "Rubber Room" shall refer to a location to which Plaintiffs have been assigned, also known as a "Temporary Reassignment Center".

N.     The term "document(s)" shall mean correspondence, letters, brochures, materials, communications, emails and all other documents and drafts thereof including those maintained and/or stored electronically.

O.    As used herein, the words "document" or "documents", "record" or "records" shall include any written, printed, typed, graphic matter of any kind or nature, including all drafts and/or copies thereof, however produced, reproduced, maintained and/or stored, including electronically generated and/or stored documents, now in the possession, custody or control of the present or former directors, officers, agents, representatives and/or employees of Defendants or any and all persons acting in its behalf, including documents at any time in the possession, custody or control of individuals or entities, or known by Defendants to exist or have existed.

P.    The words 'identify', "identity" and/or "identification" shall:

    a.    when used in reference to a natural person shall require a response with the full name and present and/or last known address, present and/or last known position and/or business affiliation of such person; and

    b.    when used in reference to a document or record shall require a response with the exact date, author, intended recipient, all persons or departments copied thereon and the exact type of document or record (such as a letter, memorandum, facsimile, telegram, wire, report, photograph, bond etc.) or if the above information is not available some other means by which the document or record and its present location and the name of its present custodian can be identified. Note: If any such document or record was but is no longer in your possession, custody and/or control, or subject to your control, or is no longer in existence, state with specificity whether it is:

        1.    missing or lost;

        2.    has been destroyed;

        3.    has been transferred, voluntarily or involuntarily to others; or

        4.    has otherwise been disposed of, and in each such instance explain the circumstances surrounding the authorization for such disposition, and state the exact and/or approximate date of such disposition.

# **INSTRUCTIONS**

A. To the extent that information sought by any Interrogatory can be furnished by reference to the Answer or Response provided to another Interrogatory, kindly give the exact reference to such other Interrogatory and the basis upon which you consider such a response to a different Interrogatory responsive to this interrogatory.

B. Each Interrogatory shall be answered separately and fully to the best of your ability.

C. No Interrogatory is intended to call for a response that would be deemed to be intrusive of the attorney-client privilege, attorney work product or other applicable privileges. If any Interrogatory is objected to by you as being potentially intrusive of such a privilege, you are required to set forth fully the basis upon which such Interrogatory is deemed to be objectionable, and the facts upon which you shall rely in support of your objection.

D. If the Interrogatory calls for identification of any document, report, study, memorandum or other written or electronically generated and/or stored materials to which you claim such material can be withheld and/or not identified under a claim of privilege, you are directed to provide a "privilege log" identifying each such document for which the privilege is being claimed, together with the following information:

      i. Date;
      ii. Author;
      iii. Sender;
      iv. Intended Recipients;
      v. Persons Copied or to whom copies were furnished;
      vi. Job titles of all intended recipients, persons copied or who received copies;
      vii. Subject matter of the document;
      viii. Basis on which the asserted privilege is claimed; and
      ix. Paragraph(s) or portion(s) of these Interrogatories to which the document is otherwise responsive.

# INTERROGATORIES

**Interrogatory 1.**     Identify each and every person, including job description(s), and the location of the office from or in which such person works, who participated in the preparation of the responses to these Interrogatories.

Response:

**Interrogatory 2.**    Describe the reasons, including incentives, promises and/or consideration provided and/or offered by NYC Defendants to Defendants UFT and/or Weingarten as part of the negotiations to changes in Article 21 g of the Collective Bargaining Agreement regarding the 3020-a hearings for pedagogues, such as Plaintiffs?

Response:

**Interrogatory 3.**     Describe the policies, both written and verbal, with regard to Defendant
DOE's policies of filing multiple charges and specifications against
pedagogues, specifically plaintiffs, in addition to allegations presented
when teachers are sent to the reassignment centers?

Response:

**Interrogatory 4.**    Describe the investigations, research, studies, statistics and/or inquiries made by NYC Defendants with regard to the percentage of pedagogue teachers, such as Plaintiffs who, at the end of the 3020-a hearings are exonerated of all charges, without the imposition of fines, suspensions, reprimand or any other form of discipline?

Response:

**Interrogatory 5.**     Describe the investigations, research, studies, statistics and/or inquiries made by NYC Defendants with regard to the percentage of pedagogue teachers, such as Plaintiffs who after having been charged with incompetence, have at the end of the 3020-a hearings been exonerated and/or cleared of incompetence charges, without fines, suspension, reprimand or any form of discipline?

Response:

**Interrogatory 6.**     Explain why, and on whose authority, NYC Defendants representatives and/or agents, including but not limited to Office of Special Investigations ("OSI") and Special Commissioner of Investigation ("SCI") investigators do not allow pedagogue teachers, such as Plaintiffs, to have counsel present, in addition to or in place of union representatives, when OSI or SCI investigate, interrogate, interview and/or question the teachers?

Response:

**Interrogatory 7.**     Describe the directions, protocols and/or procedures that are provided by NYC Defendants with regard to the selection and pay scale of arbitrators, and specifically the reasons for selecting arbitrators who live hundreds of miles from New York City?

Response:

**Interrogatory 8.**    Describe the investigations, research, studies, statistics and/or inquiries made by NYC Defendants with regard to the charges made by Defendant DOE against pedagogue teachers, including Plaintiffs, leading to 3020-a hearings and the rulings by the Arbitrators, on an arbitrator by arbitrator basis.

Response:

**Interrogatory 9.**    Explain why NYC Defendants and the arbitrators do not comply with the time requirements within which the 3020-a hearings are to be commenced and concluded?

Response:

**Interrogatory 10.**     Explain why NYC Defendants do not return or restore pedagogue
teachers, including plaintiffs, to service in instances when charges are not
filed within six (6) months of their being removed from their schools?

Response:

**Interrogatory 11.**    Set forth the name, address and contact information for each arbitrator who was removed from the Permanent Panel, since the permanent panel was established, and provide an explanation of why they were removed, and whether their removal was requested by NYC Defendants and/or Defendants UFT and/or Weingarten.

Response:

**Interrogatory 12.**     Describe the investigations, research, studies, statistics and/or inquiries made by NYC Defendants with regard to the pedagogue teachers, including plaintiffs, who have been in the rubber rooms more than once, and why.

Response:

**Interrogatory 13.**    Describe the investigations, research, studies, statistics and/or inquiries made by NYC Defendants with regard to pedagogue teachers removed from payroll without 3020-a hearings after being judged to be "mentally unfit" by a doctor employed or appointed by Defendant DOE and, without identifying the name of the subject teacher, provide the name of each such DOE doctor who issued a ruling that a teacher was "mentally unfit".

Response

**Interrogatory 14.**    Describe the rules, regulations, restrictions, procedures and practices, and the objective to be achieved, for such rules, regulations, restrictions, procedures and practices, enacted by Defendant DOE regarding each "Rubber Room" since it was established, including but not limited to restrictions on teachers ability to use phones, communicate with one another, go into and/or out of the Rubber Room during the course of the day, and the reason for the use of security guards at such Rubber Rooms.

Response:

**Interrogatory 15.**     Describe the safety procedures, rules, regulations and procedures, in the Rubber Rooms, including but not limited to the physical conditions, air quality, occupancy, fire standards, emergency practices and compliance with NYC, NYS and Federal laws related to safety requirements in facilities owned and/or operated by federal, state and municipal entities and publicly owned properties.

Response:

**Interrogatory 16.**   Identify with specificity the document retention and/or destruction policies for documents related to the allegations of the Complaint *Note: In lieu of a written response, you may simply attach and incorporate herein the document retention and/or destruction policies applicable to the Relevant Time Period.*

Response:

DATED: May ___ , 2008

By:____/s/ Edward D. Fagan_____
Edward D. Fagan Esq (EF-4125)
5 Penn Plaza, 23rd Floor
New York, NY 10001
(646) 378-2225
e-mail: faganlaw.teachers@gmail.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

A courtesy copy of this First Limited Interrogatories has been provided to:

Blanche Greenfield Esq., Office of Corporation Counsel
100 Church Street, 4th Floor, New York, NY 10007, Via Fax # 212-788-8877 - Attorneys for
NYC Defendants
Bloomberg, NYC, Klein and NYC Department of Education

Charles Moerdler Esq., Stroock, Stroock & Lavan
180 Maiden Lane, New York, NY 10038, Via Fax # 212-806-6006
Attorneys for Defendants UFT, Weingarten and Combier

DATED: May ___, 2008

By:____/s/ Edward D. Fagan_____
Edward D. Fagan Esq (EF-4125)
5 Penn Plaza, 23rd Floor
New York, NY 10001
(646) 378-2225
e-mail: faganlaw.teachers@gmail.com
Attorney for Plaintiffs

EXHIBIT "E"

**HON. SHEILA ABDUS-SALAAM**

NEW YORK STATE SUPREME COURT
NEW YORK COUNTY

------------------------------------------------

TEACHERS4ACTION, ON BEHALF OF
    DAVID BERKOWITZ
    ROSELYNE GISORS,
    LISA HAYES
    SIDNEY RUBINFELD,
    PAUL SANTUCCI,
    MICHAEL WESTBAY, and
    MAURICIO ZAPATA

                                **PETITIONERS**

V.

NEW YORK CITY DEPARTMENT OF EDUCATION.
                           **RESPONDENT**

------------------------------------------------

At I.A.S. Part _13_ of the Supreme Court of the State of New York, held in and for the County of New York, at the County House, on the _15th_ day of _April_ 200_

INDEX NO.

Present:
Hon. **SHEILA ABDUS-SA**
                             Justice

**NEW YORK
COUNTY CLERK'S OFFICE**

**APR 14 2008**

**NOT COMPARED
WITH COPY FILE**

**ORDER TO
SHOW CAUSE**

Index No. _____
105364

UPON reading and filing the annexed April 14, 2008 Verified Petitions and the annexed exhibits thereto, and upon all the pleadings and proceedings heretofore had:

**IT IS HEREBY ORDERED** that Respondent or its attorney show cause before me or one of the Justices of this Court at IAS Part 13, Room 305 to be held at the courthouse located at 71 Thomas Street, New York, New York on April 24, 2008 at *Noon* ~~o'clock in the forenoon~~ or as soon thereafter as counsel can be heard, why an Order should not be made:

Staying Petitioners' Education Law '3020-a arbitration hearing pending the ~~hearing~~ *determination* of this application in which the Petitioners are respectfully requesting that the NYC Department of Education be enjoined from proceeding with the 3020-a hearings for the Petitioners until they are represented by competent counsel paid for or arranged by the United Federation of Teachers (which has been the past practice for many years).

*Exhibit 3*

~~THE WITHIN RELIEF HAS NEVER BEEN PREVIOUSLY REQUESTED BY~~

~~PETITIONERS to this or any other Court.~~

**SUFFICIENT CAUSE THEREFORE BEING ALLEGED,** let service pursuant to the

CPLR of a copy of this Order together with the papers upon which it is granted ~~along with service of~~

~~the complaint,~~ upon the Respondents on or before ~~5 P.M. on~~ the 15th of April 2008 be deemed good

and sufficient service and, it is further ordered that the attorneys for the Department of Education *if necessary a briefing schedule will be imposed* ~~at~~ *the April 24th return date.* ~~at~~ are to serve any opposition papers to this Petition, and file and serve with the IAS Part 13 of the

~~Court, and to the Petitioners on or before April   2008.~~

~~Reply papers, if any, are to be served and filed with Part 13 of the Court on or before~~

~~April   2008.~~

Oral Argument directed:

*SA-S*

Hon. Sheila Abdus-Salaam, J.S.C

ENTER:

*SA-S*

~~Hon. Sheila Abdus-Salaam~~   J.S.C.
~~Justice of the Supreme Court of New York~~

## HON. SHEILA ABDUS-SALAAM

As set forth in the Petition, Teachers4Action member Gloria Chavez applied for, Respondents objected to and on April 9, 2008, this Court has granted a temporary stay until April 24, 2008, which is the same relief Petitioners seek. A request for a Conference at which potential injunctive relief related to the 3020-a hearings was made in the action entitled Teachers4Action et al v. Bloomberg et al 08-cv-548 (VM) and Petitioners were directed to make their application to NY State Court. Continuing the 3020-a hearings without counsel prejudices the 3020-a hearings themselves. Petitioners merely request a stay until appropriate substitute counsel is appointed and allowed to prepare to defend Petitioners in said 3020-a hearings. The Petitioner does not request permanent injunction of 3020-a hearings.

NEW YORK STATE SUPREME COURT
NEW YORK COUNTY

INDEX NO.

--------------------------------------------------------------------------

TEACHERS4ACTION, ON BEHALF OF
     DAVID BERKOWITZ
     ROSELYNE GISORS,
     LISA HAYES,
     SIDNEY RUBINFELD,
     PAUL SANTUCCI,
     MICHAEL WESTBAY and
     MAURICIO ZAPATA

                       PETITIONERS

     V.

                                  VERIFIED
NEW YORK CITY DEPARTMENT OF EDUCATION,     Article 78 Petition
                     RESPONDENT

--------------------------------------------------------------------------

1.  Petitioners are tenured teachers employed by the NYC Department of Education (ADOE@)

who are charged with various allegations of misconduct that are being adjudicated in 3020-a

hearings mandated by NYS Education Law and their Collective Bargaining Agreement.

2.  Petitioners were assigned counsel employed by New York State United Teachers

("NYSUT"), as has been past practice for members of the United Federation of Teachers

("UFT") for many years.

3.  Petitioners are members of a group, Teachers4Action, who filed an action in United States

District Court for the Southern District of New York, Teachers4Action et al vs. Bloomberg

et al, 08-cv-548 (VM) claiming violation of procedural and substantive due process rights by

the DOE. The complaint was later amended to add the UFT as a Defendant.

1

4. Teachers4Action named the UFT as co-defendant for failing to better protect its members property rights in life-tenured positions despite the fact that each of approximately 140,000 members pay approximately $1000.00 per year in union dues, separate and independent of any retirement contributions made to the Teachers= Retirement System or any major medical or hospital insurance.

5. The UFT's parent organization, NYSUT, has withdrawn as counsel from each plaintiff to the action, without any judicial or even substantive quasi judicial intervention, i.e. there was no argument to all applications to arbitrators who all had long been assigned to specific cases well before the issue of the Action against the UFT and DOE ever came to pass. Respondents in the 3020-a action were either not heard (because their cases were not yet ready for hearing) or not heeded as in Petitioners cases where they were summarily directed that they must proceed *pro se* or hire private counsel.

6. Thus, in violation of their due process rights under Educ. Law 3020-a and their Collective Bargaining Agreement, Respondent is forcing Petitioners to proceed without counsel with their 3020-a arbitration hearings.

7. If Petitioners substantive due process liberty interests were being threatened because of allegations of wrongdoing for even a token possible sentence of incarceration, Petitioners would be guaranteed counsel under *Gideon v. Wainright.* Far more damaging is what is at stake in the 3020-a process.

2

8. Not only are Petitioners substantive due process property interests in their life tenure positions (without regard to age) at risk, but their future careers in education are at risk, which for some is the only career they have had.

9. There is national access by all public school districts to the disciplinary status of public school personnel and Petitioners will not be hired anywhere if they are terminated in New York City.

10. Executive Law 296 (New York State Human Rights Law) prevents discrimination against persons in future employment even if they were incarcerated and released, but that protection will not be afforded Petitioners if they are terminated after their 3020-a hearings.

11. There is no protection should Petitioners lose their educational positions because they were not represented by counsel at their 3020-a hearings.

12. Petitioners each have a legitimate expectation to earnings totaling millions of dollars in salary and pension cumulatively for the balance of their life from their property rights in their life tenure.

13. Demanding that Petitioners defend themselves *pro se* in a process conducted by the state of New York, when they have no training or experience to participate meaningfully to do this, represents a taking without due process and in violation of their Amendment XIV, section 1, of the U.S. Constitution.

3

14. Should Petitioners be terminated, they will be bereft of their one considerable asset, deprived of their livelihood and banned from their only profession..

15. The DOE seeks termination or other ruinous determinations against Petitioners. The DOE prosecuting attorneys are not only zealous advocates for their client, they are obsessed to see Petitioners and other Respondents they oppose fired

16. This conduct by state actors in a quasi-judicial State proceeding appears to be in violation of Petitioners' due process rights under the 14th Amendment of the United States Constitution.

17. Therefore, the infringement of Petitioners procedural due process rights by arbitrators in a state run quasi-judicial proceeding allowing Petitioners' counsel to unilaterally withdraw, and both arbitrator and opposing counsel insisting Petitioners must proceed unrepresented, is a most serious Constitutional violation.

18. The NYSUT attorneys were all released on request. Petitioners saw this done before their very eyes without argument or without the arbitrator asking the Petitioners whether they agreed to the release. Petitioners did not realize they could object to the release.

19. The DOE attorneys were only too happy to have untrained *pro se=s* defending the charges; the easier to get them terminated

20. Petitioners, therefore, respectfully request that the 3020-a process be stayed until a

4

mechanism whereby they are represented by counsel appointed or paid by the UFT is arranged to the satisfaction of all parties.

21. Petitioners request that this Order to Show Cause be consolidated with a similar Order to Show Cause, Index # 08 105020, that was filed by Gloria Chavez, another Plaintiff in Teachers4Action et al vs. Bloomberg et al, on the 8th of April 2008 and signed by the Honorable Sheila Abdus-Salaam, J.S.C.

22. The issue in the instant petition is identical to the issue presented in Gloria Chavez's petition, and Petitioners respectfully request that a stay of their 3020-a hearings be granted and their petition be heard before the Honorable Sheila Abdus-Salaam on the 24th of April 2008 together with the petition of Gloria Chavez.

**WHEREFORE**, Petitioners, having been denied their constitutionally protected procedural and substantive due process property interest rights in their life-tenured positions as pedagogues by the State of New York and those acting on behalf of the State of New York, by denying them assigned counsel to protect those rights at impartially conducted 3020-a hearings. Petitioner prays that the Court will stay the 3020-a proceeding until appropriate counsel is obtained on Petitioners' behalf by NYSUT or Petitioners' Union, the United Federation of Teachers.

April 14, 2008

Teachers4Action

Vice President

April 14, 2008                    _____
                                  David Berkowitz

April 14, 2008                    _____
                                  Roselyne Gisors

April 14, 2008                    _____
                                  Lisa Hayes

April 14, 2008                    _____
                                  Sidney Rubinfeld

April 14, 2008                    _____
                                  Paul Sartucci

April 14, 2008                    _____
                                  Michael Westbay

April 14, 2008                    _____
                                  Mauricio Zapata

6

**VERIFICATION**

**STATE OF NEW YORK    )**
**COUNTY OF NEW YORK) ss:**

Being duly sworn, I state that I am a Petitioner in the above-captioned proceeding and that the foregoing petition is true as to my knowledge and experience of the incidents herein described, except as to matters herein stated as on information and belief, and as to those matters, I believe them to be true.

April 14, 2008                                     Teachers4Action

                                                   By:

April 14, 2008

                                                   David Berkowitz

April 14, 2008

                                                   Roselyne Gisors

April 14, 2008

                                                   Lisa Hayes

7

April 14, 2008

Sidney Rubinfeld

April 14, 2008

Paul Santucci

April 14, 2008

Michael Westbay

April 14, 2008

Mauricio Zapata

The Aforementioned Petition and Statements
Are Sworn to and Subscribed before me
On this ___ day of April 2008

Notary Seal

8

EXHIBIT "F"

*For Blanche & et al.*

SUPREME COURT OF STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------- X

Teachers4Action, on behalf of
    David Berkowitz, Roselyne Gisors,
    Lisa Hayes, Sidney Rubinfeld,
    Paul Santucci, Michael Westbay, and
    Mauricio Zapata

                             **Petitioners**

        V.

New York City Department of Education,

                        **Respondent**

---------------------------------------------------------- X

Index # 105304/08

PETITIONERS' DECLARATION
AND STATEMENT OF
ADDITIONAL AUTHORITY
IN SUPPORT OF REQUEST
FOR EVIDENTIARY HEARING
AND PERMISSION TO JOIN
ADDITIONAL RESPONDENTS

Petitioner counsel, Edward D. Fagan, declares and says as follows:

### Introduction

1. I am the counsel for Petitioners in the above referenced matter. I am familiar with the facts and circumstances related to this application. I am submitting this Declaration in advance of the Oral Arguments scheduled for April 24, 2008 at 12 noon.

2. I make this Affidavit in lieu of my clients because they reside in different counties and/or are unavailable to execute this document due to the holidays. I will endeavor to obtain Petitioners signatures and/or attestations of the facts prior to the Oral Argument.

3. This Affidavit and Memorandum of Authorities is submitted to provide additional relevant facts that arose after the parties were before the Court on April 14 – 15, 2008.

4. Petitioners' pray that, based upon the original and additional facts, and the authority set forth below, the Court grant this Supplemental Request for:

    a. an evidentiary hearing on the disputed facts;

b.   permission to join the New York State United Teachers ("NYSUT") and the Arbitrators as additional respondents (*See Exhibit 1*);

c.   permission to add additional Petitioners to this matter (*See Exhibit 2*); and

d.   stay of future 3020-a hearings pending the determination of the Evidentiary Hearings.

5.   The proposed relief is necessary to prevent the manifest injustice that is being committed against Petitioner Teachers4Action and its members by forcing them into 3020-a hearings, without counsel and with Arbitrators who have violated and are violating the rules that govern the 3020-a hearings and who are otherwise biased, prejudiced and should not have accepted employment and should have recused themselves when Petitioners discovered the facts and promptly moved for disqualification.

## Relief Sought in NYS Supreme Court is Different from Federal Action

6.   As the Court will recall, Petitioners have an ongoing Federal Action entitled Teachers4Action et al v Bloomberg et al, 08-cv-548 (VM) ("The Federal Action").

7.   Respondent has not yet entered its appearance in that case.

8.   For ease of reference, Petitioners assure the Court that they have not made the same claims and are not seeking the same relief in The Federal Action as they are in this Court.

9.   The matters before this Court deal exclusively with temporarily staying the 3020-a hearings because Respondent is forcing Petitioners into hearings without counsel.

10.  The additional matters which Petitioners believe the Court should consider deal with similar issues related to temporarily staying the 3020-a hearings because the arbitrators violated the applicable rules governing the 3020-a hearings.

2

11. Nothing in this proceeding should be construed as an attempt to litigate the due process and other issues that are before the US District Court in The Federal Action.

12. Petitioners will continue to oppose efforts by Respondents to litigate similar matters in two separate Courts.

## NYSUT Refuses to Cooperate with Petitioners & Must Be Joined

13. NYSUT has an obligation to represent Petitioners and it has been NYSUT's custom and practice and policy to represent teachers in the 3020-a hearings. See Exhibit 3 – excerpts from 2000 Teachers Handbook.

14. Prior to filing this Declaration, Petitioners sought to resolve their differences with NYSUT and to thereby avoid the need to join NYSUT as a Respondent. See Exhibit 4 – Fagan April 21, 2008 Letter to NYSUT general counsel James Sandner.

15. NYSUT has refused to respond and has refused to cooperate with Petitioners.

16. NYSUT's refusal is improper and places Petitioners at greater risk and exposes them to additional prejudice and irreparable injury by being forced into 3020-a hearings without counsel.

17. NYSUT knows that the circumstances in which they withdrew – albeit improperly – exposed Petitioners to prejudice and irreparable injury.

18. By letter dated March 17, 2008 with regard to proposed additional Petitioner Alan Schlesssinger, NYSUT confirmed that it intended to make a "formal application to withdraw" on Monday April 28, 2008. See Exhibit 5.

19. The acts by NYSUT in attempting to withdraw from representation of Teachers4Action Petitioners is a breach of their legal duties and the duty of fair representation that is

3

passed through to them by Petitioners' Union that defrays NYSUT expenses by paying NYSUT a portion of the dues collected from teachers. *See Exhibit 6.*

20. NYSUT is also discriminating against which union member teachers they will represent and which union member teachers they will not represent.  NYSUT knows that its actions are inappropriate but has refused to cooperate by paying for alternate counsel, since they have decided that they will not represent Petitioners.

21. NYSUT's present actions are inconsistent with its obligations as they were recognized in Matter of Jacobs v. Bd of Educ. 94. Misc. 2d 659 (1977) rev'd other grounds Jacobs v Board of Education 64 A.D.2d 148 (2d Dept 1978).  *See Exhibits 6 & 7, respectively.*

22. At the end of February 2008, NYSUT undertook to provide alternate counsel for Petitioner Sidney Rubinfeld, paid for by them.

23. To the extent that NYSUT now seeks to evade their original obligation to represent teachers in the 3020-a hearings, or their additional obligation as stated to Petitioner Rubinfeld, or their obligation as adjudicated in Matter of Jacobs v. Bd of Educ. (*See Exhibit 6*), they should not be permitted to do so.

24. Petitioners should be permitted to join NYSUT in this Petition so that the issue of NYSUT's providing alternate counsel at their expense can be expeditiously resolved before the 3020-a hearings are allowed to resume as related to the original or the additional Petitioners.

25. Furthermore, since Respondent continues to challenge this obligation by NYSUT to represent Petitioners and to provide alternate counsel at their expense, Petitioners submit they should be entitled to an Evidentiary Hearing so this issue can be expeditiously

resolved before the 3020-a hearings are allowed to resume as related to the original or the additional Petitioners.

## Discoveries After 4/15/08 Related to Arbitrators Bias & Violation of Arbitration Rules

26. Plaintiffs have discovered that the Arbitrators have violated and ignored the rules governing the 3020-a hearings and do so because they are biased against Petitioners.

27. For example,

    a.  On April 15, 2008, Arbitrator Javits – in my presence – and at a hearing of Petitioner Paul Santucci confirmed that he was taking *directions* [emphasis added] from a New York State Education Department employee about whether or not he should stay the 3020-a hearings until the issue of NYSUT withdrawal and providing alternate counsel was resolved;

    b.  After they were put on notice of the Petitioners request that the Arbitrators recuse themselves, each Arbitrator violated the rules governing the arbitrations by ruling themselves not biased and refusing to call for a ruling by and according to AAA rules;

    c.  Arbitrators have refused to disclose their financial conflicts that raise questions as to their ability to impartially hearing the issues in the arbitration, again in violation of AAA rules; and

    d.  Arbitrators are improperly taking directions from Respondents and attempted to, and are attempting to, schedule Arbitrations in violation of the Court's April 15, 2008 Stay, and in such a manner that they know they make it impossible for Petitioners to prepare 3020-a defenses when they are trying to address the issues

5

*before this Court (See Exhibit 8 - April 17, 2008 Letters from Respondent demanding that Arbitrators move forward with hearings, and Exhibit 9 – April 22, 2008 letter from Arbitrator Lowitt stating that she will move forward on April 28, 2008).*

28. What is going on in this matter is that Respondent DOE is trying to force Petitioners into hearings, without counsel, and before biased and partial arbitrators who are being influenced by their personal financial interests – due to the fact that they earn hundreds of thousands of dollars from Respondent DOE.

29. The arbitrators are not moving the 3020-a hearings based upon principles of due process in a forum where Petitioners can challenge the arbitrator, present defenses and evidence, be represented by counsel and have a fair and impartial adjudication.

30. It now appears that the 3020-a hearings are in the hands of Arbitrators who are motivated by their own personal pocket books and who have concealed their failure to follow the rules for arbitration and their bias and prejudice.

31. NYSUT attorneys withdrew and left Petitioners without protection from the biased arbitrators, and Respondent is seeking to take unfair and improper advantage of the situation that they have created

32. The Arbitrators failure to abide by the Rules that govern the 3020-a hearings, and the Arbitrators taking directions from one or more of the parties to the 3020-a hearings (or other interested entities), is further evidence of their bias and the need to grant this supplemental relief sought by Petitioners.

6

33. Petitioners can show – and request permission to present this evidence properly at an Evidentiary Hearing – that the Arbitrators themselves have to be joined in these proceedings to expose the facts related to the Arbitrators (i) failure to abide by the governing rules of arbitration, (i) failure to disclose their potential conflicts, (iii) failure to follow the rules related to disqualification, based on bias and prejudice or appearance of impropriety, including their financial relationship with and dependence upon Respondents, (iv) failure to properly address the issues of NYSUT improper withdrawal, (v) taking directions from Respondents and/or interested parties, (vi) attempts to force Petitioners and additional Petitioners into 3020-a hearings without counsel and (vii) refusal to stay the 3020-a hearings until these issues can be resolved.

## AUTHORITY RELATED TO PETITIONERS REQUESTS

### Respondent DOE & Proposed Additional Respondent Arbitrators Violated AAA Rules

34. The Rules of the American Arbitration Association with regard to the qualifications of the arbitrators provide, in pertinent part, the following:

*Section 11. Qualifications of Arbitrator* - Any neutral arbitrator appointed pursuant to Section 12, 13, or 14 or selected by mutual choice of the parties or their appointees, shall be subject to disqualification for the reasons specified in Section 17 . . .

*Section 17. Disclosure and Challenge Procedure* - No person shall serve as a neutral arbitrator in any arbitration under these rules in which that person has any financial or personal interest in the result of the

7

arbitration. _Any prospective or designated neutral arbitrator shall immediately disclose any circumstance likely to affect impartiality, including any bias or financial or personal interest in the result of the arbitration._ Upon receipt of this information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator. _Upon objection of a party to the continued service of a neutral arbitrator, the AAA, after consultation with the parties and the arbitrator, shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive._

35. The Arbitrators failed to make the necessary disclosures about their (financial) dependence on Respondent for continuing to serve on the arbitration panel.

36. When Petitioners discovered the issues, they promptly challenged the Arbitrators. However, the Arbitrators failed to follow Sections 11 and 17 of the AAA Rules governing the 3020-a hearings.

37. N.Y.C.P.L.R. § 7504 provides in pertinent part that _"If the arbitration agreement does not provide for a method of appointment of an arbitrator, or if the agreed method fails or for any reason is not followed, or if an arbitrator fails to act and his successor has not been appointed, the court, on application of a party, shall appoint an arbitrator"._

## NYS Supreme Court Has Authority to Disqualify Arbitrator

38. It has long been recognized that the NY Courts have authority to disqualify an arbitrator. _See Exhibit 10 – In Re Nat'l Union Fire Insurance of Pittsburgh PA 120192 (7-22-2004) 2004 NY Slip Op 51024(U) (Court concludes has inherent power to disqualify an arbitrator before an award has been rendered where there is a real possibility that_

*injustice will result . . . . citing Matter of Astoria Med. Group (Health Ins. Plan), 11 N.Y.2d 128, 132 (1962); and Matter of Grendi (LNL Constr. Mgmt. Corp.), 175 A.D.2d 775, 776 (1st Dept. 1991).*

39. Even an arbitrator's unintentional act may constitute misconduct sufficient to vacate an award. *See In re Albert (Hesney), N. Y.L.J., Sept. 7, 1993, p. 25, col. 5 (Sup.Ct., Rockland Co.) (the court held that the arbitrator's innocent but erroneous statement that he was experienced in computer law was "misconduct" since the "fundamental fairness of the proceeding seemingly was affected by having a person preside over a matter with little or no experience in the field"). To the same effect are Bernstein v. Mitgang, 242 A.D.2d 328, 661 N.Y.S.2d 253 (2d Dep't 1997) (one form of misconduct is the refusal to hear pertinent and material evidence); and Scott v. Bridge Chrysler Plymouth, 214 A.D.2d 675, 625 N.Y.S.2d 266 (2d Dep't 1995) (arbitrator's failure to dispose of the controversy submitted renders award not final and thus subject to vacatur; failure to consider all issues of fact and law that a court would have to consider in order to properly dispose of the same controversy is not judicially reviewable).*

40. An arbitrator exceeds his or her power when the arbitrator makes a completely irrational decision, not when he or she misapplies law or misconstrues facts. *See Local 375 v. N.Y.C. Health & Hosps. Corp., 257 A.D.2d 530, 685 N.Y.S.2d 29 (1st Dep't 1999); Motor Vehicle Accident Indemnification Corp. v. Travelers Ins. Co., 246 A.D.2d 420, 667 N.Y.S.2d 741 (1st Dep't 1998)*

41. An Arbitrators insistence on continuing hearings can also be improper and a basis for vacatur and removal. *See Beyona v. Superior Maint. Co., 204 A.D.2d 136, 611 N.Y.S.2d*

*193 (1st Dep't 1994) (refusal to grant adjournment was misconduct where such refusal foreclosed presentation of important evidence).*

42. An arbitrator's undisclosed ongoing financial relationship and/or dependence upon one party is grounds for vacatur and disqualification. *See Fein v. Fein, 160 Misc. 2d 760, 610 N.Y.S.2d 1002 (Sup.Ct., Nassau Co. 1994) (award vacated where arbitrator had ongoing financial relationship with one party, and such fact was not disclosed prior to arbitration).*

43. Disqualification of the Arbitrator should be made at the earliest opportunity and as soon as the challenging party discovers the bias or prejudice, and the arbitration should be heard or proceed before a new and unbiased arbitrator. *See Santana v. Country-wide Ins. 177 Misc. 1 (1998).*

44. Arbitrator disqualified for failure to disclose nature of relationship with party. *See Exhibit 12 – In Re Application of Seligman v Allstate Insurance Co. 195 Misc. 2d 553 (2003).*

45. The Arbitrators refusal to disqualify themselves when the issue was first discovered and presented to them starting in early April requires their disqualification.

46. The Arbitrators ruling on the disqualification Motions on their own violates the arbitrations rules and on that ground they should also be disqualified.

47. Petitioners have also learned that one of the arbitrators on the current panel, Deborah M. Gaines, is listed in the NY Lawyers Diary as working for the City of New York in another capacity.   If that is the case, the entire panel is suspect, as it may be controlled by one of the persons ultimately responsible for Respondent DOE.

10

48. In any event, Petitioners submit that because the Arbitrators refuse to recuse themselves and because Respondent DOE insists on attempting to move the 3020-a hearings forward with Arbitrators who should be disqualified, Petitioners pray that they be permitted to join the Arbitrators as additional Respondents. Then, at the requested Evidentiary Hearing, Petitioners can show how the Arbitrators – acting improperly and as Respondents agents – should be disqualified, and any decisions rendered by them to date should be vacated as a result of the Arbitrators (i) failure to abide by the governing rules of arbitration, (i) failure to disclose their potential conflicts, (iii) failure to follow the rules related to disqualification, based on bias and prejudice or appearance of impropriety, including their financial relationship with and dependence upon Respondents, (iv) failure to properly address the issues of NYSUT improper withdrawal, (v) taking directions from Respondents and/or other interested parties, (vi) forcing Petitioners and additional Petitioners into 3020-a hearings without counsel, (vii) refusal to stay the 3020-a hearings until these issues can be resolved and (viii) improper issuance of awards and/or decisions influenced by their bias, prejudice, lack of impartiality and misconduct in the 3020-a hearings.

## **Evidentiary Hearing Necessary**

49. The questions being raised in this Petition are those which are permitted pursuant to N.Y.C.P.L.R. § 7803 et seq including:

   a. Did Respondent, proposed additional Respondents, and its/their representatives, fail to perform a duty enjoined upon it/them by law ? - <u>Answer: Yes !</u>

11

b. Is Respondent, proposed additional Respondents, and its/their representatives, is/are proceeding or is/are about to proceed without, or in excess of, jurisdiction? <u>Answer – Yes !</u>

c. Has Respondent, proposed additional Respondents, and its/their representatives, made a determination in violation of lawful procedure, or affected by an error of law, or which was arbitrary and capricious or an abuse of discretion? <u>Answer – Yes !</u>

d. Has Respondent, proposed additional Respondents, and its/their representatives, made determinations as a result of hearings held at which evidence was taken, pursuant to direction by law, which, on the record, are supported by substantial evidence? <u>Answer – Yes they made determinations, but no, the determinations are not supported by the record or substantial evidence!</u>

50. The failure to protect property interests (such as teachers salaries and teaching licenses) and due process right and the use of the arbitrary and capricious standards of review are administrative actions reviewable under CPLR 7803. As relates to Article 78 proceedings related to arbitrations, contested issues of fact warrant evidentiary hearings prior to any determination on the merits. *See Cohoes Firefighter v. Cohoes, 258 A.D.2d 24, 28 [3d Dept 1999] 692 N.Y.S.2d 750, aff'd 94 N.Y. 2d 686 (2000)*.

<u>**Conclusion**</u>

51. In view of the foregoing, Petitioners pray the Court grant their request for (i) an evidentiary hearing on the disputed facts; (ii) permission to join NYSUT and the Arbitrators as additional respondents; (iii) permission to add additional Petitioners to this

matter; and (iv) stay future 3020-a hearings pending the determination of the Evidentiary

Hearings.

52. I hereby certify that the foregoing statements made by me are true to the best of my

knowledge, information and belief and based on the review of the documents and files in

this matter.


Dated: April 23, 2008

_____
Edward D. Fagan, Petitioners Counsel


Dated: April 23, 2008

_____
Florian Lewenstein, President
Teachers4Action for its members


The Aforementioned Petition and Statements
Are Sworn to and Subscribed before me
On this ___ day of April 2008


_____
Notary Seal


13

## List of Teachers4Action Arbitrators

1) Douglas Bantle
2) Stuart Bauchner
3) Melissa Biren
4) James A. Cashen
5) James Darby
6) Deborah M. Gaines
7) Eleanor Glanstein
8) Joshua Javits
9) Randi Lowitt
10) Andree McKissick
11) Earl Pfeffer
12) Arthur Riegel
13) Martin Scheinman
14) Jay Siegel
15) Jack Tillem
16) Bonnie Weinstock
17) Paul Zonderman

| **Plaintiff** | **Next Date** | **Arbitrator** | |
|---|---|---|---|
| Judith Cohen | 4/28/08 | Bonnie Weinstock | |
| Josefina Cruz | 5/5/08 | Arthur Riegel | |
| Diane Daniels | 5/29/08 | Eleanor Glanstein | |
| Michael Ebewo | 5/1/08 | Martin Sccinman | |
| Boubakar Fofana | 5/2/08 | Jay Siegel | |
| Alan Schlessinger | 4/28/08 | Andree McKissick | (finished -- NYSUT withdrawing) |
| Alex Schreiber | 5/6/08 | Eleanor Glanstein | |

# *UNITED FEDERATION OF TEACHERS*

# **HANDBOOK**

# *FOR CHAPTER LEADERS*

Revised 2000

# DUE PROCESS/RATINGS/SUMMONS

**DUE PROCESS:** (See Agree. Art. 21; Section 3020-a of State Education Law; Board of Education By-Laws 5.3.4.)

**Removals, Suspensions, Trials on Charges:**

The rules governing removal of tenured pedagogues are controlled by Section 3020-a of the Education Law and By-laws Section 5.3.4.

The Chancellor may suspend tenured employees with full pay. They are usually assigned to the central or district office and maintain a 6 hour and 20 minute day. Teachers must appeal within ten (10) working days of receipt of notice. (Save the envelope.) Immediately upon receipt of charges, the teacher should bring the papers to his/her borough office where he/she will receive assistance.

Article 21E of the Agreement provides for an expedited procedure for 3020-a hearings.

**"Cause" for removal may be:**

Unauthorized absence or excessive lateness

Neglect of Duty

Conduct unbecoming his/her position or conduct prejudicial to the good order, efficiency or discipline of the service

Incompetence or inefficient service

Failure to comply with regulations with regard to debts (See "DEBTS" Membership Rights section)

Violation of By-Laws, rules or regulations of the Board of Education

Any substantial cause that makes the employee unfit to properly perform his obligations to the service

**The employee is entitled to:**

Receive a copy of the charges and specifics relating to the charges

Have a hearing before a three person panel or an arbitrator

 Be represented by counsel. Current NYSUT policy is to provide counsel free of charge to employees in the UFT bargaining unit charged with 3020-a offenses 

Call witnesses

# EDWARD D. FAGAN ESQ.

Five Penn Plaza, 23rd Floor, NY, NY  10001 - Tel. (646) 378-2225
*Email: faganlawintl@aim.com (Court Email Address)*
*Email: faganlaw.teachers@gmail.com (Email Address for Teachers' Cases)*

*Via Fax # (212) 995-2347*
James R. Sandner Esq.
General Counsel, NYSUT
52 Broadway, 9th Floor
New York, NY 10004

April 21, 2008

Re:    *Teachers4Action et al v Bloomberg et al 08-cv-548 (VM)*
        *Teachers4Action et al v New York City Board of Education 08-105304 (Justice Abdus-Salaam)*

Dear Mr. Sandner:

I am counsel for Teachers4Action and the individual member Plaintiffs / Petitioners in the above matters.

I write you as counsel of record in the above matters for Teachers4Action Plaintiffs/Petitoners, who are Respondents in ongoing 3020-a hearings with the New York City Department of Education ("DOE").

You are aware of the obligation that NYSUT has to all UFT members to provide legal representation at 3020-a hearings.   Nevertheless, you withdrew representation of Teachers4Action Plaintiffs/Petitioners. Your withdrawal was improper.  Your withdrawal and the circumstances of your withdrawal violated contractual, legal and ethical obligations to Teachers4Action Plaintiffs/Peitioners.   You also refused to honor your obligation to provide alternate counsel for the teachers.

On behalf of Teachers4Action Plaintiffs/Petitioners, I demand that you provide your written confirmation to me – before the close of business tomorrow April 22, 2008 – that NYSUT will:

*   honor its obligations and undertakings to provide and pay for alternate counsel to Teachers4Action Plaintiffs/Petitioners;

*   cooperate with Teachers4Action Plaintiffs/Petitioners in obtaining the necessary additional stays and/or extensions of pending and/or scheduled 3020-a hearings so alternate in-coming counsel can enter his/her appearance and be ready to assume representation in the hearings;

*   cooperate with Teachers4Action Plaintiffs/Petitioners in preserving the tapes of all transcripts from February 25 to present at which the issue of NYSUT withdrawal was raised; and

*   cooperate with Teachers4Action Plaintiffs/Petitioners in preserving any and all rights in the 3020-a hearings including objections to the panels, objections to the arbitrators and any other relevant objections necessary to protect their rights.

Your prompt attention and cooperation will avoid the need for Teachers4Action Plaintiffs/Petitioners having to take direct action against NYSUT.  Awaiting your reply, I remain.

Very truly yours,

Edward D. Fagan

**HP LaserJet** *3050*

# Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 1418 | 21 4 2008 | 12 25 MAP | end | 1 1 2665 2847 | 9 41 | 1 | OK |

---

**EDWARD D. FAGAN ESQ**
Five Penn Plaza, 23rd Floor, NY, NY, 10001 - Tel. (646) 378-2225
Email: faganlw@epBaum.com (Court Email Address)
Email: faganus.teachers@gmail.com (Email Address for Teachers' Cases)

Via Fax #1717-465-3340                                                          April 21, 2008
James R. Sandner, Esq.
General Counsel, NYSUT
52 Broadway, 9th Floor
New York, NY 10004

Re:   Teachers4Action et al v Bloomberg et al 08-cv-548 (VM)
      Teachers4Action et al v New York City Board of Education 08-0858 (Charge Undisciplined)

Dear Mr. Sandner

I am counsel for Teachers4Action and the individual member Plaintiffs/Petitioners in the above matters.

I write you as counsel of record in the above matters for Teachers4Action Plaintiffs/Petitioners, who are Respondents in ongoing 3020-a hearings with the New York City Department of Education ("DOE").

You are aware of the obligation that NYSUT has to all UFT members to provide legal representation at 3020-a hearings. Nevertheless, you withdrew representation of Teachers4Action Plaintiffs/Petitioners. Your withdrawal was improper. Your withdrawal and the circumstances of your withdrawal violated contractual, legal and ethical obligations to Teachers4Action Plaintiffs/Petitioners. You also refused to honor your obligation to provide alternate counsel for the teachers.

On behalf of Teachers4Action Plaintiffs/Petitioners, I demand that you provide your written confirmation to me - before the close of business tomorrow Apr. 22, 2008 - that NYSUT will

- honor its obligations and undertakings to provide and pay for alternate counsel to Teachers4Action Plaintiffs/Petitioners;

- cooperate with Teachers4Action Plaintiffs/Petitioners or in issuing the necessary additional stays and/or extensions of pending and/or scheduled 3020-a hearings so alternate incoming counsel can enter his/her appearance and be made to assume representation in the next days;

- cooperate with Teachers4Action Plaintiffs/Petitioners in preserving the tapes of all transcripts from February 20 to present at which he/she and NYSUT withdrawal was raised; and

- cooperate with Teachers4Action Plaintiffs/Petitioners preserving any and all rights to the 3020-a matters including objections to the panels, members, to the references and their other rules and objections necessary to protect their rights.

Your prompt attention and cooperation is important for the needs for Teachers4Action Plaintiffs/Petitioners having to take direct action against NYSUT. Awaiting your reply, I remain,

Very truly yours,

*[signature]*

Edward D. Fagan


A Union of Professionals

**Office of General Counsel**
James R. Sandner
*General Counsel*

**Albany**

Janet Axelrod
*Associate General Counsel*

Richard E. Casagrande
*Associate General Counsel*

**New York**

Claude I. Hersh
*Assistant General Counsel*

Stuart I. Lipkind
*Associate General Counsel*

Richard A. Shane
*Associate General Counsel*

March 17, 2008

**VIA CERTIFIED AND REGULAR MAIL**
Alan Schlesinger
325 West 14th Street, Apt. #2
New York, NY 10014

Re:     **Schlesinger, Alan advs. BOE, CSD, CNY**
        **Our File No.: 059169-T240**

Dear Mr. Schlesinger:

        In a March 17, 2008 letter, you were informed that NYSUT was withdrawing from representation in the above-referenced matter. As further indicated in the letter, notification to Hearing Officer McKissick would be forthcoming.

        Please be aware that NYSUT will be making a formal application to withdraw representation before Hearing Officer McKissick at 10:00 a.m., on April 28, 2008 at the NYC Department of Education, Office of Legal Services located at 49-51 Chambers Street, 6th Floor, New York, NY. I recommend that you attend this conference.

        Thank you for your attention on this matter.

                                        Very truly yours,

                                        JAMES R. SANDNER

                        By:

                                        ANN M. BURDICK
                                        Associate Counsel

AMB/cv

NYCLegal 115487 1

**New York Miscellaneous Reports**

MATTER OF JACOBS v. BD OF EDUC., 94 Misc.2d 659 (1977)

405 N.Y.S.2d 259

In the Matter of SHARON JACOBS, Petitioner, v. BOARD OF EDUCATION OF EAST

MEADOW UNION FREE SCHOOL DISTRICT, Respondent

Supreme Court, Special Term, Nassau County

July 27, 1977

*James R. Sandner* for petitioner.

*Sheldon J. Sanders* for Paul Dreska, intervenor-respondent.

DOUGLAS F. YOUNG, J.

As a result of the recent decrease in the number of school age children, school districts throughout the State have been forced to abolish teaching positions and "excess" the teachers in the tenure area in which the termination has occurred (Education Law, § **2510**, subd 2). This procedure has
**Page 660**
given rise to numerous lawsuits in which "excessed" teachers seek reinstatement based upon a definition of the relevant tenure area which differs from that employed by the school board in deciding who loses his or her job. (See, e.g., *Steele v Board of Educ.*, **40 N.Y.2d 456**; *Matter of Baer v Nyquist*, **34 N.Y.2d 291**.)

The courts quickly realized that the outcome of such litigation necessarily affected some teachers who have not been excessed, but would be subject to the loss of their employment if the petitioner teacher's definition of the relevant tenure area is correct. Thus, it is now well settled that those teachers whose job security would be affected by a determination of a tenure dispute must be joined as respondents in the reinstatement proceedings. *(Matter of Lezette v Board of Educ.,* **35 N.Y.2d 272**; *Matter of Skliar v Board of Educ.,* **45 A.D.2d 1012**.)

The instant case presents an added wrinkle to this rapidly developing body of law. Petitioner Sharon Jacobs' employment with the respondent Board of Education, East Meadow Union Free School District (the District) was terminated on July 28, 1976 because of the abolition of a position in her tenure area. On November 1, 1976, Jacobs instituted this CPLR article 78 proceeding, seeking reinstatement on the ground that Paul Dreska, the respondent-intervenor, had less seniority in the relevant tenure area than Jacobs. Jacobs' counsel is the general counsel of New York State United Teachers (NYSUT), a State-wide federation of local teachers' organizations. The East Meadow Teachers' Association, which is the certified bargaining representative for teachers in the District, is a member of NYSUT and a percentage of the dues it collects from its members is paid to NYSUT to defray its expenses. Dreska, who was permitted to intervene by

Mr. Justice GIBBONS' order and is a member of the East Meadow Teachers' Association and NYSUT, now moves for an order either disqualifying petitioner's counsel or requiring NYSUT to provide him with counsel or funds to pay his own counsel. Dreska bases his request on the proposition that a labor organization to which he pays dues should not champion the cause of a fellow teacher who seeks to be reinstated to her position at his expense. Simply stated, he argues that NYSUT should not favor one member over another.

Petitioner's counsel's position is that neither he nor NYSUT is under any obligation to provide any member with counsel, but that it provides counsel for teachers in job-related matters

**Page 661**

where counsel considers the teacher's case meritorious. Counsel further argues that there is no statutory or common-law authority for Dreska's position. Counsel claims that *Vaca v Sipes* (**386 U.S. 171**) is the pertinent authority contrary to Dreska's position. In *Vaca*, the United States Supreme Court held that a certified bargaining representative's duty to fairly represent all of the members of the bargaining unit (see *Steele v Louisville & Nashville R.R. Co.*, **323 U.S. 192, 203**) does not require the union to take every grievance raised by a member of the bargaining unit to arbitration merely because he demands it. Rather, the obligation of the union is satisfied as long as the union is neither arbitrary nor discriminatory and acts in good faith (*Steele v Louisville & Nashville R.R. Co.*, 323 US, at p 207). Thus, on the basis of *Vaca*, counsel argues that NYSUT through counsel "made a good faith reasonable judgment that petitioner's rights had been violated, and, accordingly, provided her with counsel." The union, it is argued, "must also be free to pursue those matters it deems meritorious" and "it must be free to take a position on * * * disputes." (*Humphrey v Moore*, **375 U.S. 335, 349.**) In *Humphrey v Moore* (supra), the United States Supreme Court rejected the contention that a union's recommendation that seniority lists of two merging companies within the same bargaining unit be "dovetailed" was a breach of the duty owed to members of the bargaining unit who were employed by one of the companies. The court stated that, absent hostility, bad faith or dishonesty, the union should not be "neutralized" when an issue arises between two sets of employees (*Humphrey v Moore*, **375 U.S. 335, 349**, supra). A similar holding was reached in *Waiters Union, Local 781 of Washington, D.C. v Hotel Assoc. of Washington, D.C.* (82 LRRM 2646), where the court, relying on *Humphrey*, stated that a court "cannot find a breach of the duty of fair representation when a union's decision in a matter as to which the interests of differing groups of employees are in conflict is not shown to be fraudulent or deceitful and is not based upon capricious or arbitrary factors" (*Waiters Union, Local 781 of Washington, D.C. v Hotel Assoc. of Washington, D.C.*, 82 LRRM, at p 2648, supra).

The above-cited cases deal with issues arising in the context of collective bargaining and grievance arbitration and are grounded in the "majoritarian principles" of Federal labor policy enunciated in the National Labor Relations Act (US Code, tit 29, § 151 et seq.; *Emporium Capwell Co. v Western*

**Page 662**

*Addition Community Organization*, **420 U.S. 50, 63**). None, however, deals with a situation such as the instant proceeding, where the

labor organization has made a choice between two of its members in a matter which has little or no bearing upon the membership as a whole. Thus, the "majoritarian principles" (*Emporium Capwell Co. v Western Addition Community Organization, supra*), which underscore the union's need for "a wide range of reasonableness" (*Ford Motor Co. v Huffman*, **345 U.S. 330, 338**) are not really present. Moreover, this case does not involve a labor organization's failure or refusal to proceed with what it considered a meritless grievance, as in *Vaca v Sipes* (**386 U.S. 171,** *supra*), but rather a decision to espouse the cause of one union member over another after speaking with one member only.

I find little in the way of precedent or dictum on this issue. The case of *Matter of Crystal v Board of Educ.* (**87 Misc.2d 632**) is not really in point. There Judge BURSTEIN did detect a potential conflict of interest but that conflict would have occurred if the union were to represent both sides in a dispute between two groups of members. Judge BURSTEIN did not hold that the teachers association had to provide counsel for either or both sides. In this case the union is supporting one side against the other by supplying legal assistance and is refusing to take both sides, and the question is whether the union is unfair to the side it opposes.

Assuming as I do that the conflict involved is a genuine one and the claims are not frivolous, what is the duty of the union to its member? The union counsel states that there is no contractual obligation to provide counsel to members and none has been alleged or proven.

I grant that the union has the right to take a good faith position opposing some of its members in grievance proceedings or matters of general concern to members. Nevertheless it seems incongruous for a union to sponsor or to support the attack of one member against the job security of another member in what can be termed a "one on one" dispute. I believe that this issue involves considerations of public policy. If this conduct is permissible and becomes a regular practice it holds the possibility of a proliferation of lawsuits sponsored by the union on behalf of some of its members against the other members. This could lead to serious intra-union dissension and fragmentation of the union.

As indicated previously it appears that there is no contractual
**Page 663**
obligation on the part of the union to provide counsel for a member, provided of course that it acts in good faith. That is not the final word, however. Does not the member have the right, based on the usual expectations of a prospective union joiner, to anticipate that in a crucial contest for job survival, if the power of the union is not available to support him, at least it will not be used to support his opponent with free legal representation? I think so. However, that does not mean that the union must remain mute when a bad policy is put forward. It does not preclude a stand by the union in matters of principle. In such a situation the union can make application to appear *amicus curiae* and the court can then decide whether it be appropriate for the union to so appear in that case. Thus the union would fulfill its function of supporting the principle it regards as meritorious without providing legal representation for the actual

prosecution of a lawsuit against a member. If the union's position is taken in good faith, the member whose stand the union opposes *amicus curiae* cannot, in my view, reasonably complain.

Realizing the delicacy of intervening in a client-attorney relationship, the court makes the following disposition.

The court rules that it is improper for counsel employed by NYSUT to represent the petitioner Jacobs in opposition to intervenor-respondent Dreska and in this proceeding which was initiated against the Board of Education and that said counsel must withdraw unless the union provides independent legal counsel for the intervenor-respondent or agrees to pay the reasonable legal fees incurred by intervenor-respondent in this proceeding.

Settle order on notice. The order shall provide for a stay of all proceedings in this matter, pending compliance with this ruling and that compliance shall take place within 45 days of the entry of this order.
**Page 664**

Copyright © 2008 Loislaw.com, Inc. All Rights Reserved

New York Appellate Division Reports

JACOBS v. BD. OF EDUC., 64 A.D.2d 148 [24 Sept 1978]

409 N.Y.S.2d 234

In the Matter of SHARON JACOBS, Appellant, v BOARD OF EDUCATION OF EAST MEADOW UNION FREE SCHOOL DISTRICT, Respondent, and PAUL DRESSA,
Intervenor-Respondent.

Appellate Division of the Supreme Court of New York, Second Department.

October 2, 1978

**Page 149**

**Page 150**

THIS CASE CONTAINS HEADNOTES
HEADNOTES ARE NOT AN
OFFICIAL PART OF THE COURT. THEY ARE NOT COMPILED [sic]

**Page 151**

THE FACTS

Page 159

**841 N.Y.S.2d**

Page 160

Copyright © 2008 West Group, Inc. All rights reserved.



**THE NEW YORK CITY DEPARTMENT OF EDUCATION**

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
51 Chambers Street, Room 604 New York, NY 10007

April 17, 2008

<u>VIA E-MAIL: sebarb@att.net</u>
Stuart E. Bauchner, Esq.
299 Riverside Drive - # 6d
New York, New York 10025

### <u>Re: Disciplinary case of Mauricio Zapata</u>

Dear Arbitrator Bauchner:

This letter is written to advise you that on April 15, 2008 the Office of the Corporation Counsel served an Affirmation of Intent to Move for Permission to Appeal ("Affirmation of Intent") the order of Justice Sheila Abdus-Salaam, which purported to grant Mr. Zapata a stay of the Education Law 3020-a proceedings until April 24, 2008. A copy of Justice Salaam's Order and the Affirmation of Intent to Move for Permission to Appeal are annexed hereto. As set forth in the Affirmation of Intent, pursuant to Civil Practice Law and Rules Section 5519(a) the order of Justice Salaam is now stayed. Accordingly, the pre-hearing conference involving the Zapata matter, currently scheduled for April 18, 2008, may proceed.

If you have any questions please do not hesitate to contact me at (212) 374-6749.

Sincerely,

Theresa Europe
Deputy Counsel to the Chancellor
Administrative Trials Unit
(212) 374-6749

Cc. Edward Fagan, Esq.
    Mauricio Zapata



# THE NEW YORK CITY DEPARTMENT OF EDUCATION

### JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
51 Chambers Street, Room 604 New York, NY 10007

April 17, 2008

**VIA E-MAiL: sebarb@att.net**
Stuart E. Bauchner, Esq.
299 Riverside Drive - # 6d
New York, New York 10025

### Re: Disciplinary case of Michael Westbay

Dear Arbitrator Bauchner:

This letter is written to advise you that on April 15, 2008 the Office of the Corporation Counsel served an Affirmation of Intent to Move for Permission to Appeal ("Affirmation of Intent") the order of Justice Sheila Abdus-Salaam, which purported to grant Mr. Westbay a stay of the Education Law 3020-a proceedings until April 24, 2008. A copy of Justice Salaam's Order and the Affirmation of Intent to Move for Permission to Appeal are annexed hereto. As set forth in the Affirmation of Intent, pursuant to Civil Practice Law and Rules Section 5519(a) the order of Justice Salaam is now stayed. Accordingly, the pre-hearing Conference involving the Westbay matter, currently scheduled for April 18, 2008, may proceed.

If you have any questions please do not hesitate to contact me at (212) 374-6749.

Sincerely,

Theresa Europe
Deputy Counsel to the Chancellor
Administrative Trials Unit
(212) 374-6749

Cc: Edward Fagan, Esq
Michael Westbay



**THE NEW YORK CITY DEPARTMENT OF EDUCATION**

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
51 Chambers Street, Room 604 New York, NY 10007

April 17, 2008

**VIA E-MAIL: dmg01@sprynet.com**
Deborah M. Gaines, Esq.
33 West 92nd Street
New York, New York 10025

### Re: Disciplinary case of David Berkowitz

Dear Arbitrator Gaines:

This letter is written to advise you that on April 15, 2008 the Office of the Corporation Counsel served an Affirmation of Intent to Move for Permission to Appeal ("Affirmation of Intent") the order of Justice Sheila Abdus-Salaam, which purported to grant Mr. Berkowitz a stay of the Education Law 3020-a proceedings until April 24, 2008. A copy of Justice Salaam's Order and the Affirmation of Intent to Move for Permission to Appeal are annexed hereto. As set forth in the Affirmation of Intent, pursuant to Civil Practice Law and Rules Section 5519(a) the order of Justice Salaam is now stayed. Accordingly, the pre-hearing conference involving the Berkowitz matter, currently scheduled for April 18, 2008, may proceed.

If you have any questions please do not hesitate to contact me at (212) 374-6749.

Sincerely,

Theresa Europe
Deputy Counsel to the Chancellor
Administrative Trials Unit
(212) 374-6749

Cc  Edward Fagan, Esq.
David Berkowitz



# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
51 Chambers Street, Room 604 New York NY 10007

April 17, 2008

<u>VIA E-MAIL: relowitt@patmedia.net</u>
Randi Lowitt, Esq.
2 Saddle Hill Road
Far Hills, New Jersey 07931

## Re: Disciplinary case of Lisa Hayes

Dear Arbitrator Lowitt:

This letter is written to advise you that on April 15, 2008 the Office of the Corporation Counsel served an Affirmation of Intent to Move for Permission to Appeal ("Affirmation of Intent") the order of Justice Sheila Abdus-Salaam, which purported to grant Ms. Hayes a stay of the Education Law 3020-a proceedings until April 24, 2008. A copy of Justice Salaam's Order and the Affirmation of Intent to Move for Permission to Appeal are annexed hereto. As set forth in the Affirmation of Intent, pursuant to Civil Practice Law and Rules Section 5519(a) the order of Justice Salaam is now stayed. Accordingly, please proceed to schedule the pre-hearing conference involving the Hayes matter.

If you have any questions please do not hesitate to contact me at (212) 374-6749.

Sincerely,

Theresa Europe
Deputy Counsel to the Chancellor
Administrative Trials Unit
(212) 374-6749

Cc: Edward Fagan, Esq.
Lisa Hayes

Loading "Gmail - Forward of document"

4-23-08 6 49 AI



Edward Fagan <faganlaw@gmail.com>

# Forward of document

**Randi Lowitt <relowitt@patmedia.net>**
To: Edward Fagan <faganlaw@gmail.com>

**Tue, Apr 22, 2008 at 3:59 PM**

Mr. Fagan, I tried to send this to you and it was returned on "mail failure." I will try again.

Ms. Europe, Ms. Chapin, Mr. DaCosta and Mr. Fagan:

Please be advised that I am scheduling an additional pre-hearing conference in the above-captioned case for Friday, April 25, at 9:00 a.m. Please also be advised that this PHC is being scheduled IN THE EVENT that, on April 24, 2008, the judge ends the stay she put into place, or, in the alternative, the City prevails on its motion to stay the stay.

Mr. Fagan, I am only notifying you of this as a courtesy, since you have informed me and Ms. Hayes has informed me that you are not representing her in the 3020a matter that is before me. Mr. Fagan, please understand that you have no standing to appear on Ms. Hayes' behalf in the hearing before me regarding Ms. Hayes. This letter should not and will not be construed as conferring standing upon you.

However, if the stay is not lifted and/or if the motion by the City is not ruled on, then I will hold a pre-hearing conference in which I want to hear argument on whether or if CPLR 5519 does, indeed, stay the Judge's stay, thereby causing the 3020a proceeding against Ms. Hayes to go forward, as scheduled, on Monday, April 28, 2008.

As I have no e-mail address for Ms. Hayes, I will be notifying her of the above by letter.

Thank you.

Loading "Gmail - Forward of document"

4/23/08 6:54 A

Randi Lowitt

**New York Miscellaneous Reports**

IN RE NAT'L UNION FIRE INS. OF PITTSBURGH, P.A., 120192 (7-22-2004)

2004 NY Slip Op 51024(U)

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A., on behalf of

itself and each of the related insurers that provided coverage to

Respondent, Petitioner, v. DYNEER CORPORATION, Respondent.

120192/02.

Supreme Court of the State of New York, New York County.

Decided July 22, 2004.

[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]

For the Petitioners: Zeichner Ellman & Krause LLP New York, New York, By: Michael S. Davis, Esq., Shima Imoto, Esq. Of Counsel.

For the Respondent: Seeger Weiss LLP, New York, New York, By: David R. Buchanan, Esq. Of Counsel.

For the Arbitrator: Lord, Bissell & Brook LLP, New York, New York, By: Gregory T. Casamento Of Counsel.

WILLIAM A. WETZEL, J.

Respondent Dyneer Corporation ("Dyneer") seeks (1) an order pursuant to CPLR § **5015** to **vacate** the Order dated July 22, 2003 that designated Donald T. DeCarlo, Esq. as the court appointed umpire in the arbitration pending between Dyneer and Petitioner National Union Fire Insurance Company of Pittsburgh, P.A., on behalf of itself and each of the related insurers that provided coverage to Dyneer ("National Union"); and (2) an order appointing a new umpire pursuant to CPLR § **7504**.

*Background*

National Union provided workers' compensation, commercial automobile, general and property liability coverage pursuant to Policies and an Indemnity Agreement to Dyneer during the periods 1991-1992 and 1992-1993. Each Indemnity Agreement includes an arbitration clause.**[fn1]**

National Union served Dyneer with a Demand for Arbitration dated July 11, 2002 alleging that Dyneer failed to make payments under the Policies and the Indemnity Agreement. The Demand required that Dyneer name a qualified arbitrator by August 15, 2002. Dyneer allegedly failed to appoint an arbitrator or respond to the Demand.

National Union sought an order to compel Dyneer to proceed with the arbitration. On or about October 11, 2002, counsel for Dyneer

consented to the arbitration and stated that Dyneer would appoint an arbitrator. Thereafter, National Union and Dyneer appointed their respective party-appointed arbitrators but the party-appointed arbitrators were unable to **agree** upon a neutral umpire.

National Union applied to this Court to appoint an Umpire. This Court, consistent with the Indemnity Agreement, reviewed candidates in the *Directory of Certified Arbitrators* maintained by ARIAS•US, a society that trains and certifies arbitrators for insurance and reinsurance arbitrations. In its July 22, 2003 Order, this Court appointed Donald T. DeCarlo, Esq. as Umpire. This Court was satisfied that Mr. DeCarlo met all the necessary requirements and qualifications. *See Nat'l Union Fire Ins. Co. v. Dyneer Corp.*, No. 120192/02 (N.Y.Sup.Ct. July 22, 2003).

On or about May 6, 2004, Dyneer served the within Order to Show Cause seeking an order **vacating** the July 22nd Order and appointing a new umpire. Dyneer's principal contention is that Mr. DeCarlo has a conflict of interest that prevents him from serving as a neutral umpire in the underlying arbitration proceeding. (Buchanan Aff. ¶ 14.)

*Discussion*

A threshold question for this Court is whether it has the power to disqualify an arbitrator in advance of the arbitration proceedings. *See Santana v. Country-Wide Ins. Co.*, **177 Misc. 2d 1, 3** (N.Y. Civ. Ct. 1998), *aff'd*, **184 Misc. 2d 294** (2d Dept. 2000). This Court concludes that it has "the inherent power to disqualify an arbitrator before an award has been rendered where there is a real possibility that injustice will result." *Id.* at 3; *see also Matter of Astoria Med. Group (Health Ins. Plan)*, **11 N.Y.2d 128,** 132 (1962); *Matter of Grendi (LNL Constr. Mgmt. Corp.)*, **175 A.D.2d 775, 776** (1st Dept. 1991).

Respondent, as the movant on a CPLR § **5015** motion, must demonstrate the genuineness and materiality of the newly discovered evidence, and that, despite due diligence, the evidence could not have been discovered prior to the Respondent's petition. *See* CPLR § **5015**(a)(2); *see also Jackson v. Kessner*, **206 A.D.2d 123,** 130 (1st Dept. 1994).

Here, Respondent alleges that Mr. DeCarlo did not reveal that his law firm, Lord, Bissell & Brook LLP, was presently representing Travelers against Dyneer in a separate action styled *Albany International Corp., et al. v. American National Fire Insurance Company, et al.*, Cause No. CV98-11695, pending in the Superior Court of the State of Arizona, Maricopa County (the "Arizona Action").**[fn2]** Respondent further contends that the Arizona action shares similar factual and legal bases as the Respondent's claims against Petitioner in the underlying arbitration proceeding. (Buchanan Aff. ¶ 10.) Due to the similarity of the claims, Respondent argues that it would be impossible for Mr. DeCarlo to find for Dyneer because he would have to reach adverse conclusions to those advanced by his firm in its representation of Travelers. (Buchanan Aff. ¶ 14.) Moreover, Respondent maintains that Mr. DeCarlo would be unlikely to concede that his firm's position in the Arizona action, where the claims are similar to those of Dyneer here, is without merit.

(Buchanan Aff. ¶ 16.)

There is little precedent as to whether an arbitrator whose firm serves as adversarial counsel against one of the parties in a pending matter should be disqualified in the instant arbitration because of the appearance of partiality. *Santana*, **177 Misc. 2d at 7**. However, courts generally **reject** challenges where there was a waiver by the party contesting the appointment of the arbitrator. *See id.* at 7-8; *see also Matter of Baar & Beards, Inc. (Oleg Cassini, Inc.)*, **30 N.Y.2d 649**, 651 (1972); *Matter of Labenski (Kraizberg)*, **234 A.D.2d 296**, 297 (2d Dept. 1996); *Palmieri v. Ins. Co.*, **67 A.D.2d 967**, 967 (2d Dept. 1979).

Petitioner here argues that Respondent has in fact waived its right to object to the appointment of Mr. DeCarlo. A fundamental requirement before one can waive a challenge to an arbitrator is that the arbitrator must have disclosed any facts or information which might disqualify him as an impartial arbitrator. *Matter of J.P. Stevens & Co. (Rytex Corp.)*, **41 A.D.2d 15**, 16 (1st Dept. 1973), *aff'd*, **34 N.Y.2d 123** (1974); *see also Matter of Colony Liquor Distribs., Inc. (Local 669, International Brotherhood of Teamsters)*, **34 A.D.2d 1060**, 1060 (3rd Dept. 1970), *aff'd*, **28 N.Y.2d 596** (1971). In the November 17, 2003 organizational meeting between the arbitration panel and the parties, Mr. DeCarlo disclosed his employment history at Travelers, NCCI and his current law firm, Lord, Bissell & Brook LLP. Since the disclosure contained facts sufficient to put Respondent on inquiry notice of Mr. DeCarlo's prior and present work relationships, Respondent may not now claim bias based on the failure to disclose such a relationship. *See Matter of Canajoharie Cent. School Dist. (Canajoharie United School Employees)*, **108 A.D.2d 1087**, 1088 (3rd Dept. 1985).

Furthermore, Respondent may not sit idly back and rely exclusively upon Mr. DeCarlo's disclosure. *See Matter of Stevens & Co.*, **34 N.Y.2d at 129**. Mr. Dodge, whose law firm is counsel for Respondent in both the underlying arbitration proceeding and the Arizona action, may not have had actual notice of the claims between Dyneer and Travelers in the Arizona action but he should be held to have constructive notice.**[fn3]** Since Respondent had knowledge of facts that reasonably should have prompted further, limited inquiry, Respondent had the responsibility to ascertain the potentially disqualifying facts. *See id.* For that reason, this Court finds that Respondent's "new" evidence could have been discovered with due diligence.

In the final analysis, this Court concludes from the record that Respondent effectively waived its objection to the umpire. Mr. Dodge first lodged his challenge to Mr. DeCarlo's appointment at the November 17, 2003 organizational meeting. Then at the December 2, 2003 organizational meeting, Mr. Dodge explicitly consented to Mr. DeCarlo's appointment.**[fn4]** Respondent was possessed of sufficient information and time for it to make an informed decision for a waiver. *See Matter of Baar & Beards, Inc.*, **30 N.Y.2d at 651**; *cf. Matter of Milliken Woolens, Inc. (Weber Knit Sportswear, Inc.)*, **11 A.D.2d 166**, 169 (1st Dept. 1960), *aff'd*, **9 N.Y.2d 878** (1961); *Matter of Seligman (Allstate Ins. Co.)*, **195 Misc. 2d 553**, 556 (N.Y.Sup.Ct. 2003). This Court therefore finds that this petition for

disqualification is untimely. Since Respondent has waived the right to challenge the designation of Mr. DeCarlo as the umpire, there is no "new" evidence that Mr. DeCarlo would conduct the arbitration in anything less than a "faithful and fair" manner. See CPLR § **7506**, subd. (a).

For the foregoing reasons, Respondent's petition is in all respects denied. This opinion constitutes the Decision and Order of this Court.

[fn1] Article V ("the Arbitration Clause") of the Indemnity Agreement states the following: "All disputes or differences arising out of the interpretation of this Agreement shall be submitted to the decision of two (2) Arbitrators, one to be chosen by each party, and in the event the Arbitrators fail to **agree**, to the decision of an Umpire to be chosen by the Arbitrators. The Arbitrators and Umpire shall be active or retired Risk Management Officials in the same or similar industries or active or retired executive officials of Insurance Brokers or Insurance Agents. If either of the parties fails to appoint an Arbitrator within one (1) month after being required by the other party in writing to do so, or if the Arbitrators fail to appoint an Umpire within one (1) month of a request in writing by either of them to do so, such Arbitrator or Umpire, as the case may be, shall at the request of either party be appointed by a Justice of the Supreme Court of the State of New York." (Buchanan Aff. Ex. B; Davis Aff. Ex. A.)

[fn2] The Arizona action has been pending prior to September 30, 1998. See Selling Defendants' Motion to **Dismiss** at 15, Albany Int'l Corp. v. American Nat'l Fire Ins. Co., No. CV98-11695 (Ariz. Super. Ct. 1998).

[fn3] At the March 9, 2004 organizational meeting, Mr. DeCarlo explained that when he conducted his conflicts check at Lord, Bissell & Brook, the name "Dyneer Corporation" did not show up because in the Arizona action, it is listed as "Titan International, Inc. and subsidiary, Dyneer Corporation." (Transcript of March 9, 2004 organizational meeting held via conference phone before Donald T. DeCarlo, Umpire, Mary Ellen Burns, Arbitrator, Edward J. Priz, Arbitrator with Michael S. Davis, Esq. and David W. Dodge, Esq. (Mar. 9, 2004).) Lord, Bissell & Brook consists of 325 attorneys with offices in Chicago, IL, Los Angeles, CA, Atlanta, GA, New York, NY and London, England. (Davis Aff. Ex. 3.) While Mr. DeCarlo is partner at Lord, Bissell & Brook, his partnership is at the New York office and not at the Chicago office where the Arizona matter is being handled. On the other hand, Mr. Dodge's firm, Dodge, Anderson, Jones, Bezney & Gillman, P.C. has nine attorneys and 15 support staff in Dallas, TX. (Davis Aff. Ex. 4.) Mr. Dodge's conflicts check must proportionally be less cumbersome.

[fn4] Mr. DeCarlo asks: "This is the continuation of the organizational meeting which we adjourned; and the way we left off was there were some concerns or issues related to my conflicts, and I appreciate it if either counsel would kind of report on that. Mr. Dodge answers: "We had adjourned the last

meeting in order for us to confer with our client, and we have
done so and are happy to report that to announce to Mr. DeCarlo
any challenge that we had has been dropped." (Transcript of
December 2, 2003 organizational meeting held via conference phone
before Donald T. DeCarlo, Umpire, Mary Ellen Burns, Arbitrator,
Edward J. Priz, Arbitrator with Michael S. Davis, Esq. and David
W. Dodge, Esq. (Dec. 2, 2003).)

Copyright © 2008 Loislaw.com, Inc. All Rights Reserved

**New York Miscellaneous Reports**


SANTANA v. COUNTRY WIDE INS., 177 Misc.2d 1 (1998)

675 N.Y.S.2d 917

RAFAEL SANTANA, Petitioner v. COUNTRY-WIDE INSURANCE COMPANY, Respondent.

Civil Court of the City of New York, Queens County

May 27, 1998

**Page 2**

 *Jose R. Mendez, P.C.,* Rego Park, for petitioner. *Cheven, Keely & Hatzis,* New York City *(Robert J. Valenti* of counsel), for respondent.

 MARTIN E. RITHOLTZ, J.

 After the parties to an American Arbitration Association (hereinafter AAA) uninsured motorist arbitration exercised their peremptory challenges, and a neutral arbitrator and hearing date were designated, the respondent insurance company challenged the appointment of said arbitrator for cause, on the eve of the hearing, alleging partiality. Upon the arbitrator's refusal to recuse himself, the respondent specified on the record the fact that said arbitrator was at that time actively involved in litigation, representing another claimant in an adversarial role with the respondent, and on that basis, the respondent could not participate in the scheduled arbitration. In the absence of respondent, the arbitration ensued and petitioner was awarded the sum of $10,000, which is the subject of the instant motion to confirm, pursuant to CPLR **7510**, and respondent's cross motion to vacate, pursuant to CPLR **7511**(b)(1).


<u>Dilemma</u>

 It is well settled that a party wishing to object to an arbitrator's purported partiality should do so immediately and
**Page 3**
not await for the award *(see,* 5 N.Y. Jur.2d, Arbitration and Award, § 149). Any claims related to the alleged bias of an arbitrator shall be deemed waived by a complaining party who proceeds with the arbitration after learning of the tainted relationship or interest of the arbitrator. *(See, Matter of Siegel [Lewis],* **40 N.Y.2d 687,** *rearg denied* **41 N.Y.2d 901;** *Matter of Arner v. Liberty Mut. Ins. Co.,* **233 A.D.2d 321;** *Matter of Lincoln Graphic Arts v. Rohta/New Century Communications,* **160 A.D.2d 871;** *Rose v. Travelers Ins. Co.,* **118 A.D.2d 844.**) On the other hand, sans a prehearing determination on the issue of partiality, a complaining party who intentionally abstains from participating in the scheduled arbitration does so at said party's peril, not knowing whether the default award will be vacated.

 In the instant matter, the respondent did not seek such a prearbitration determination from the court, and instead followed the practice summarized by Siegel, New York Practice (§ 596,

at 959 ('d ed]): "An effort to disqualify an arbitrator for bias, to the extent that the court is to become involved with the issue at all – the hope, again, is that the arbitration forum itself will resolve the problem – should take place after an award has been made, either with an application to vacate the award or by way of resisting the winner's effort to confirm it. It has been suggested that the courts may not even have the power to disqualify an arbitrator in advance of the arbitration proceedings, but in an appropriate case judicial intervention can probably be secured." There is no question that the courts have the inherent power to disqualify an arbitrator before an award has been rendered where there is a real possibility that injustice will result. *(See, Matter of Astoria Med. Group [Health Ins. Plan], **11 N.Y.2d 128**, 132; Matter of Excelsior 57th Corp. [Kern], **218 A.D.2d 528**, 530; Matter of Grendi v. LNL Constr. Mgt. Corp., **175 A.D.2d 775**, 776; Rabinowitz v. Olewski, **100 A.D.2d 539**; Matter of Belanger v. State Farm Mut. Auto. Ins. Co., **74 A.D.2d 938**, 939; also see,* 23 Carmody-Wait 2d, N.Y. Prac. § 141:121.) Nevertheless, to encourage such prearbitration relief would defeat the goal of arbitration as a cost-saving expedient process, and instead would promote and protract court litigation. Furthermore, as noted in *Matter of Stevens & Co. (Rytex Corp.)* **(34 N.Y.2d 123**, 128): "Because arbitration is at bottom a consensual arrangement, resolution of this delicate question of disqualification, which has proved so vexing to the courts, ought to be resolved in the first instance by the parties to the agreement. As Mr. Justice WHITE stated, concurring in

**Page 4**

*Commonwealth Coatings* (393 U.S., at p. 151), 'The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are better informed of the prevailing ethical standards and reputations within their business."'

At first glance, it would appear that in the instant matter, the parties attempted to resolve the disqualification issue by themselves prior to the scheduled arbitration, and when that attempt failed, they avoided protracted litigation by first involving the court with the contested issue only after the award had already been issued. Upon a more careful review of the specific facts of this matter, the court is of the opinion that an institutional solution to the dilemma should have been employed in the first instance, and that the instant litigation could have been avoided, as well as the increasing volume of similar, unnecessary litigation.

<u>Solution</u>

It is undisputed that in a letter from the AAA to the parties, dated December 16, 1997, it was made clear that the AAA Accident Claims Arbitration Rules (Rules), effective January 1, 1996, would govern the arbitration. In accordance with section 8 of the Rules, a list of nine members of the Accident Claims Panel was enclosed in the letter, and each, party was given an opportunity within 20 days to peremptorily strike up to two names from the list. Pursuant to said procedure, the AAA appointed Steven Siegel, Esq., as the arbitrator from amongst the remaining names, and in a letter from the case administrator, Jenny A. Martinez, dated January 8, 1998, the parties were informed that the

arbitration was to be held at said arbitrator's office on February 11, 1998 at 2:30 P.M.

It appears that on the eve of the scheduled arbitration date, respondent's counsel became aware of the fact that Mr. Siegel represented another claimant, Lorena Giraldo, in a pending motion to confirm an arbitrator's award against the respondent herein, and that not only was said motion contested, there was also a cross motion pending by respondent seeking to vacate said award. Based upon this litigation, respondent's counsel fixed a letter on February 10, 1998 to petitioner's counsel, with a copy to Ms. Martinez of the AAA, raising the issue of Mr. Siegel's impartiality, and seeking petitioner's "consent to have Mr. Siegel recused as the arbitrator in this matter."

On February 11, 1998, the following colloquy was placed on the record:
**Page 5**

"MR. ARBITRATOR: Counsel for the Country-Wide Insurance Company has requested that I recuse myself because I have an appeal pending with Country-Wide Insurance Company. I have called the AAA to inquire as to whether or not that requires a recusal. I set forth for the record that I do have an appeal going with Country-Wide Insurance Company, but that that would have no effect or bearing on my decision making in this case. I was advised by the AAA to ask claimant's attorney whether they will consent or join in the application for a recusal, and I'm asking counsel right now whether or not you want me to recuse myself.

PETITIONER'S COUNSEL: I would prefer that we go forward today. I mean, it is your call, but I would prefer that we go forward today.

"MR. ARBITRATOR: I'm going to decline the invitation to recuse myself and ask you to proceed with the case."

Whereupon, respondent's counsel reiterated for the record his objection to Mr. Siegel serving as an arbitrator based on his impartiality, and also stated that there was no other recourse to preserving the objection than to refuse to participate in the arbitration.

It is the opinion of the court that had the subject AAA Rules been adhered to, the dilemma or impasse could have been resolved. Section 10 of the Rules, in pertinent part, provides as follows: "Qualifications of Arbitrator * * * An arbitrator shall disclose any circumstances likely to create a presumption of bias which might disqualify the arbitrator as an impartial arbitrator. Any party shall have the right to challenge the appointment of an arbitrator for reasonable cause. The AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive." From said rule the following procedure is prescribed: (1) After the appointment of an arbitrator and prior to the commencement of the arbitration, any party shall have the right to challenge such an appointment for reasonable cause; (2) the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties; and (3) said determination shall be conclusive. These Rules are definite and recognizable enough to "provide for a method

of appointment of an arbitrator" (see, CPLR 7504; Short v. Descoe [Descoe] Shoe Corp., 32 A.D.2d 621), and set forth an explicit and unambiguous procedure for determining whether an arbitrator should be disqualified, which should be controlling (see, Matter of De Laurentiis [Cinematografica de las Americas], 9 N.Y.2d 503; Matter of Bernstein

**Page 6**

v. On-Line Software Intl., 232 A.D.2d 336; Marthan Equities v. P. M. Realty Mgt. Corp., 216 A.D.2d 180; Greater Miami Baseball Club Ltd. Partnership v. National League of Professional Baseball Clubs, 193 A.D.2d 513, lv dismissed and lv denied 82 N.Y.2d 800; Thermasol, Ltd. v. Dreiske, 78 A.D.2d 838, affd 52 N.Y.2d 1069, cert denied 454 U.S. 826; Short v. Lescoe [Desco] Shoe Corp., supra; Matter of Franz Rosenthal Inc. [Tannhauser], 279 App. Div. 902, affd 304 N.Y. 812; Investment Intelligence Sys. Corp. v. Schwartz, N.Y.L.J., Dec. 31, 1992, at 24, col. 3; also see, 5 N.Y. Jur.2d, Arbitration and Award, § 127; 23 Carmody-Wait 2d, N.Y. Prac. § 141:122). It is apparent from case law that the distinct purpose of these Rules was to obviate court litigation, and that an AM ruling on a disqualification issue which pursuant to the Rules "shall be conclusive", would be "final and binding" (see, Matter of D.M.C. Constr. Corp. v. Nash Steel Corp., 41 N.Y.2d 855, revd. on dissenting opn. of Shapiro, J., 51 A.D.2d 1040, 1042; Brewster Excavating Corp. v. Woods Assocs., 162 A.D.2d 490).

Under the circumstances herein, where the challenged arbitrator, instead of referring the final determination of the disqualification issue to the AAA, made his own call, he has, in effect, violated section 10 of the Rules, and thereby "exceeded his power" (see, CPLR 7511 [b] [1] [iii]; McLaughlin, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C7511:5, at 582). Upon receipt of a copy of the letter from respondent's counsel dated February 10, 1998, the case administrator, Jenny A. Martinez, should have immediately informed the parties as to who from the AAA would rule on the disqualification issue, whether a hearing on that issue was necessary, and when an expedited ruling would be issued. Even if this procedure had not been implemented, the challenged arbitrator on February 11, 1998 should have immediately referred the parties to the case administrator for a ruling. Since the arbitrator ignored the governing rule, the court finds that the default award was defective and, pursuant to CPLR 7511(b)(1)(iii), the cross motion to vacate said award should be granted, and the motion to confirm should be denied.

Rehearing Before Same Arbitrator or Before a New Arbitrator?

As set forth in CPLR 7511(d), upon vacating an award, the court may order a rehearing and determination of all or any of the issues either before the same arbitrator or before a new arbitrator. The issue of the purported impartiality of Mr. Siegel

**Page 7**

gel has not been properly resolved. It is well established that "[p]recisely because arbitration awards are subject to * * * judicial deference, it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded" (Matter of Goldfinger v. Lisker, 68 N.Y.2d 225, 230). The "basic, fundamental principles of justice require complete impartiality on the part of the arbitrator and mandate that the proceedings be conducted without

any appearance of impropriety'" (Matter of Kern [303 E. 57th St. Corp.], **204 A.D.2d 152**, **153**, citing Matter of Fischer [Queens Tel. Secretary], **106 A.D.2d 314**, **315-316**). The proper standard of review for the disqualification of arbitrators is whether the arbitration process is free of the appearance of bias (Commonwealth Corp. v. Continental Co., **393 U.S. 145**, supra; Matter of Excelsior 57th St. Corp. [Kern], **218 A.D.2d 528**, supra; Rabinowitz v. Olewski, **100 A.D.2d 539**, supra). It is only necessary to demonstrate the potential for bias, and even a suggestion of impropriety or partiality by an arbitrator will not be sanctioned (see, Matter of Catalyst Waste-to-Energy Corp. [City of Long Beach], **164 A.D.2d 817**, **820**, lv dismissed **76 N.Y.2d 1017**). Many are the cases where a "reasonable inference" of partiality was sufficient to disqualify an arbitrator (see, e.g., Matter of Ossman v. Ossman, **166 A.D.2d 896**; Matter of Colony Liq. Distrib. [Local 669, Intl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers], **34 A.D.2d 1060**, affd **28 N.Y.2d 596**). On the other hand, it has also been held that a "mere inference" of impartiality is insufficient to warrant interference with an arbitrator's award (see, Rose v. Lowrey & Co. **181 A.D.2d 418**, **419**). It is also well settled that mere "occasional associations between an arbitrator and a party * * * will not warrant disqualification of the arbitrator on the ground of the appearance of bias or partiality", but rather, "[i]t must be shown that the arbitrator and the party or witness have some ongoing relationship" (see, Artists & Craftsmen Bldrs. v. Schapiro, **232 A.D.2d 265**, **266**; Matter of Quentzel Plumbing Supply Co. v. Quentzel, **193 A.D.2d 678**; Milliken & Co. v. Tiffany Loungewear, **101 A.D.2d 739**; Matter of Labor Relations Section v. Gordon, **41 A.D.2d 25**; Matter of Perl [General Fire & Cas. Co.], **34 A.D.2d 748**; Matter of Cross Props. [Gimbel Bros.], **15 A.D.2d 913**, affd **12 N.Y.2d 806**). There is no clear precedent as to whether an arbitrator who serves as adversarial counsel against a party in another pending matter should be disqualified in the instant arbitration when said party alleges an appearance of partiality. There are borderline cases that imply some partiality, but reject any such claims

**Page 8**

based on waivers (see, Matter of Baar & Beards [Oleg Cassini, Inc.], **30 N.Y.2d 649**; Matter of Labenski v. Kraizberg, **234 A.D.2d 296**; Palmieri v. Insurance Co., **67 A.D.2d 967**).

In light of the institutional mechanism of section 10 of the AAA Rules, the court need not rule now as to whether the rehearing of the arbitration should be remanded to Mr. Siegel or before a new arbitrator. It appears that since February 11, 1998, the Giraldo matter is no longer pending and a final determination was made on April 30, 1998. Nevertheless, the court finds that section 10 is binding on the parties, and that the issue of whether Mr. Siegel should be disqualified is to be referred back to the AAA. If necessary, a hearing on that issue should be held, and the AAA determination shall be "conclusive". The court wishes to distinguish a prearbitration objection alleging the appearance of partiality or bias, which may be waived either by the failure to timely object, or by means of a "conclusive" determination on that issue, in accordance with specific rules accepted by the parties in the subject arbitration agreement. This is to be distinguished from a postarbitration allegation of "actual partiality" which may not be deemed waived (see, Matter of Milliken Woolens [Weber Knit Sportswear], **11 A.D.2d 166**, **168**; Matter of Miller [Weiner], **260 App. Div. 444**). In other words, even

if the AAA finds that Mr. Siegel should not be disqualified, and
respondent remains dissatisfied, that determination shall be
final and binding, without prejudice to any claims of actual
partiality during the course of the arbitration proceeding which
must be established by clear and convincing proof (see, Matter of
645 First Ave. Manhattan Co. v. Kalisch-Jarcho, Inc., **220 A.D.2d 517**;
Matter of Public Empls. Fedn. [Dasrath], **191 A.D.2d 569**;
Siebert & Co. v. Ponmany, **190 A.D.2d 544**).

In conclusion, the parties are directed to contact the AAA
within 30 days from the date of service of a copy of this order
together with notice of entry, and are to follow the procedure
set forth above.
**Page 9**

Copyright © 2008 Loislaw.com, Inc. All Rights Reserved

**New York Miscellaneous Reports**

IN RE APPLICATION OF SELIGMAN v. ALLSTATE INS. CO., 195 Misc.2d 553 (2003)

756 N.Y.S.2d 403

IN THE MATTER OF THE APPLICATION OF GERALD SELIGMAN, Petitioner, FOR

AN ORDER PURSUANT TO ARTICLE 75 OF THE CPLR INDEX NO. 017082/2002

**VACATING** AN ARBITRATION AWARD v. ALLSTATE INSURANCE COMPANY, AMERICAN

ARBITRATION ASSOCIATION, IRWIN H. SCHWARTZ, ESQ. AND ROBERT P. TUSA,

ESQ. Respondent.

23454.

Supreme Court, Nassau County.

February 10, 2003.

**Page 554**

Sackstein, Sackstein & Sackstein, Garden City (Laurence D. Rodgers of counsel), for plaintiff.

Robert P. Tusa & Associates, Garden City (Carol A. Antonini of counsel), for Allstate Insuarance Company and another, defendants.

Layton, Brooks & Hecht, New York City (Theodore L. Hecht of counsel), for American Arbitration Association and another, defendants.

PETER B. SKELOS, J.

Petitioner's motion (seq. no. 001) for an order pursuant to CPLR **7511**(b)(I) **vacating** the arbitration award dated August 9, 2002 in favor of respondent Allstate Insurance Company is granted. The cross motion of respondents American Arbitration Association and Irwin H. Schwartz, Esq. for an order **dismissing** the petition against said defendants is granted. The court sua sponte **dismisses** the petition against Robert P. Tusa, Esq.

Petitioner alleges that his right to a fair and impartial arbitration hearing was violated by reason of the fact that the respondents' failed to disclose to petitioner the fact that Irwin H. Schwartz, Esq., the arbitrator employed by the American Arbitration Association, had been a long-time employee of respondent Allstate Insurance Company.

Respondents do not deny that for the years 1958 through 1977, Mr. Schwartz was employed as senior trial counsel by Allstate Insurance Company. Thereafter, he entered the private practice of law until his appointment as a full time arbitrator on January 1, 2002. Plaintiff suggests that Mr. Schwartz may be receiving a pension funded during his employment with Allstate. In opposition, Barbara Russo Lommel, a supervisor employed by American Arbitration Association avers that she has been advised that Mr. Schwartz is not receiving a pension from Allstate. Counsel for Allstate suggests that Mr. Schwartz was terminated

from his employment with Allstate and therefore is not receiving a pension. None of those competing allegations are made by a person with personal knowledge of the facts or by one who has had an opportunity to examine business records to confirm their respective averments. Curiously, Mr. Schwartz, a party to this proceeding has not tendered an affidavit. Nevertheless, for the reasons stated below, whether he is receiving a pension funded during his employment with Allstate is not dispositive of the motions before the court.
**Page 555**

Petitioner was a claimant in a supplementary uninsured/underinsured motorist (hereinafter "SUM") arbitration proceeding brought pursuant to Section **3420**(f)(2) of the Insurance Law of the State of New York and the regulations promulgated thereunder by the Superintendent of Insurance (see 11 NYCRR § 60-2.4, et. seq.). The Superintendent has delegated his authority to administer SUM arbitrations to the American Arbitration Association (see 11 NYCRR § 60-2.4[a]). The arbitration is governed by the American Arbitration Rules for the Arbitration of Supplementary Uninsured/Underinsured Motorist Insurance Disputes and Uninsured Motorist Disputes in the State of New York (hereinafter "SUM Rules") (see 11 NYCRR § 60-2.4[a]).

In accordance with petitioner's election to utilize the SUM arbitration process administered by the American Arbitration Association, petitioner **agreed** to waive any right to name the American Arbitration Association or its designated arbitrator as a party to a judicial proceeding:

Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary party in judicial proceedings relating to the arbitration. The participation of a party in an arbitration proceeding *shall be a waiver* of any claim against an arbitrator or the AAA for any act or omission in connection with any arbitration conducted under these rules. (emphasis added) (see AAA SUM Rules, Rule 31)

The rules precluding lawsuits against arbitration tribunals and arbitrators have been upheld by the courts of this state and other jurisdictions, which frequently note that the arbitrator and tribunal have no interest in the litigation and are not indispensable parties (see e.g. *Candor Central School District v American Arbitration Association,* **97** Misc.2d **267,** 269; *Tamari v Conrad,* **552** F.2d 778, 780 [7th Cir 1977]; *Richardson v American Arbitration Association,* 888 F. Supp. 604, 605 [SDNY 1995]; *Hospitality Ventures of Coral Springs, LC v American Arbitration Association,* 755 So.2d 159, 160 [Ct App. Fla 2000]; *McKown v American Arbitration Association,* 213 Ga. App. 197, 198 [Ct App. Ga1994]; *Peters Sportswear Co. v American Arbitration Association,* 427 Pa 152, 155-56 [S.Ct. Pa 1967]). The courts also recognize the principle of arbitral immunity in **dismissing** actions against arbitrators and arbitration panels (see e.g. *John Street Leasehold, LLC v Brunjes,* 234 A.D.2d 26; *Austern v Chicago Bd Options Exchange, Inc.,* 898 F.2d 882, 885 [2nd Cir 1990]; *Branden, Jones, Sandall, Zeide, Kohn, Chalal & Musso, PA v. MedPartners, Inc.,* 203 FRD 677, 688 [SD Fla 2001]).
**Page 556**

Neither the arbitrator nor the American Arbitration Association has the authority to grant the relief sought by petitioner. The authority to **vacate** an arbitrator's award is exclusive to the court (see CPLR § **7511**[b]; *Aetna Casualty & Surety Company v Vigilant Insurance Company,* 241 A.D.2d 451, 452). There are no factual allegations

against respondent Robert P. Tusa, Esq. Accordingly, the cross-motion is granted and the petition is **dismissed** to the extent that it seeks relief against respondents American Arbitration Association, Irwin H. Schwartz, Esq. and Robert P. Tusa, Esq.

The applicable rules and regulations provide that arbitrators are appointed following the recommendation of a screening panel and serve at the pleasure of the Superintendent of Insurance (see 11 NYCRR § 60-2.1[b][1], [3]; AAA SUM Rules, Rule 7). Apparently, Mr. Schwartz was found qualified to serve as an arbitrator and was appointed effective January 1, 2002. Once appointed, an arbitrator may not "have any practice or professional connection with any firm or insurer involved in any degree with automobile insurance or negligence law" (11 NYCRR § 60-2.4[b][4]). There is no proof that Mr. Schwartz was so employed in violation of the regulation. Nevertheless, petitioner was foreclosed by the non-disclosure of Mr. Schwartz' prior relationship from making an inquiry into the nature of his prior employment.

The American Arbitration Association is required to "maintain information concerning the professional background of each of the arbitrators and such information shall be available to a party to the arbitration upon request" (AAA SUM Rules, Rule 9). The same rule provides a method for any party to challenge the assignment of an arbitrator to one's arbitration proceeding. In this matter no such challenge was made prior to the arbitration hearing. However, since there is no evidence that the petitioner had actual knowledge of the prior relationship between Mr. Schwartz and Allstate, the petitioner did not waive the right to later challenge the designation of Mr. Schwartz as arbitrator by not voicing a challenge before the hearing (see J.P. Stevens & Co., Inc. v Rytex Corp., **34 N.Y.2d 123, 129**); Ossman v Ossman, **166 A.D.2d 896**; Lincoln Graphic Arts, Inc. v Rohta/New Century Communications, Inc., **160 A.D.2d 871**).

While the courts recognize some obligation on the part of the parties to the arbitration to ascertain the potentially disqualifying facts, the ultimate burden falls upon the one with personal knowledge of those facts (see J.P. Stevens & Co., Inc. v. Rytex Corp., supra
**Page 557**
at 129; Nationwide Ins. Co. v Sheldon, **70 A.D.2d 847**).
In order to protect the integrity of the arbitral process the arbitrator and the American Arbitration Association had a duty to disclose any facts within their knowledge which might in any way support an inference of bias (see Matter of Goldfinger v Lisker, 68 N.Y.2d 228, 231; J.P. Stevens & Co., Inc. v Rytex Corp., supra at 128). An arbitrator's failure to disclose any information that may reasonably support an inference of bias may be grounds to **vacate** the arbitration award so long as the relationship was not a trivial one (see J.P. Stevens & Co., Inc. v Rytex Corp., supra at 125; Morgan Guaranty Trust v Solow Building Co., LLC, **279 A.D.2d 431**; Conley v Ambach, **93 A.D.2d 902**). The determination of whether the relationship is trivial or not does not rest with the arbitrator, but rather must in the first instance passed upon by the parties (Matter of Stevens & Co., supra at 128)

Rule 10 of the AAA Accident Claims Arbitration Rules for Use in New York State (eff. Jan 1, 1996) provides that the "arbitrator shall disclose any circumstance likely to create a presumption of bias which might disqualify that arbitrator . . . ." (emphasis added). The standard by which the requirement of disclosure is measure is not actual bias, but rather the appearance of bias or impartiality (see Weinrott v Carp,

32 N.Y.2d 190, 201; DeCamp v Good Samaritan Hospital, 66 A.D.2d 766, citing Commonwealth Corp. v Casualty Co., 393 U.S. 145).

An existing or past attorney-client relationship requires disclosure (see Conley v Ambach, supra at 931) in order to afford the parties the opportunity to make an independent judgment as to whether the past relationship should serve as a basis to challenge the arbitrator (see DeCamp v Good Samaritan Hospital, supra at 673). In this court's view a twenty year relationship is not so trivial as to preclude disclosure even with the twenty-five year gap. To be sure, the courts have not established a bright line rule as to the number of years since the date of termination of the employment beyond which disclosure is not required (see Milliken Wollens, Inc., v Weber Knit Sportswear, 11 A.D.2d 166 [relationship existed 2.5 years before the arbitration hearing]; Matter of Gilmore v Zurich Insurance Company, 116 Misc.2d 551 [relationship existed in excess of 4 years before the arbitration hearing].

Under these circumstances, the arbitrator's award must be **vacated** by reason of the non-disclosure of his past long-term relationship with Allstate Insurance Company (see Nationwide **Page 558** Mut. Insurance Co. v. Sheldon, supra; Colony Liquor Distributors, Inc. v Local 699, IBT, 34 A.D.2d 1060; Santana v Country-Wide Insurance Company, 177 Misc.2d 1; compare Siegel v Lewis, 40 N.Y.2d 687, 689 [Court declined to **vacate** award notwithstanding nondisclosure where no direct employer-employee relationship]).

This constitutes the decision and order of the court.
**Page 559**

Copyright © 2008 Loislaw.com, Inc. All Rights Reserved

SUPREME COURT OF STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------- X

Teachers4Action, on behalf of   :
  David Berkowitz, Roselyne Gisors, :
  Lisa Hayes, Sidney Rubinfeld,  :
  Paul Santucci, Michael Westbay, and :
  Mauricio Zapata     :
            :
        Petitioners :
V.            :
            :
New York City Department of Education, :
            :
        Respondent :
-------------------------------------------------------- X

Index # 105304/08

**PETITIONERS' DECLARATION
AND STATEMENT OF
ADDITIONAL AUTHORITY
IN SUPPORT OF REQUEST
FOR EVIDENTIARY HEARING
AND PERMISSION TO JOIN
ADDITIONAL RESPONDENTS**

Edward D. Fagan Esq.
Petitioners Counsel
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel. # (646) 378-2225

EXHIBIT "G"

B 69— Subpoena duces tecum, blank court with witness stipulation to remain subject to attorney's call. 6-02

©2002 by Blumberg Excelsior, Inc., Publisher, NYC 10013
www.blumberg.com

STATE OF NEW YORK
COUNTY OF NEW YORK

Teachers 4 Action et al

Index No.
105304/08

Petitioner
Plaintiff

Calendar No.

against

New York City Department of Education

Respondent
Defendant

JUDICIAL SUBPOENA
DUCES TECUM

The People of the State of New York

TO    Randi Lowitt Arbitrator
11 Beach Street
New York, NY 10013

WE COMMAND YOU, That all business and excuses being laid aside, you and each of you appear   GREETING:
and attend before a deposition
at NYS Supreme Court 60 Centre Street, 4th Floor, NY NY
on the 27th day of May 2008
and at any recessed or adjourned date to give testimony in this action on the part of the    at 10:00 o'clock, in the fore    noon,

and that you bring with you, and produce at the time and place aforesaid, a certain

① Exparte communications, documents (electronic or otherwise) including faxes and emails you received or sent to Respondent, other arbitrators, NYSUT counsel and/or any third party related to Petitioners or its individual members from the period of Jan. 15, 2008 to present; and

② Emails and/or faxes received from Respondent or its representatives related to emails from Florian Lewenstein that were forwarded to you or on which you were copied by Richard Krinsky from April 3, 2008 to present related to 3020-a hearings into which Petitioners members were forced without NYSUT counsel.

now in your custody, and all other deeds, evidences and writings, which you have in your custody or power, concerning the premises.

Failure to comply with this subpoena is punishable as a contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued for a penalty not to exceed fifty dollars and all damages sustained by reason of your failure to comply.

WITNESS, Honorable
of said Court, at
the        day of        one of the

May 15, 2008

A copy of this subpoena must
accompany all papers or other
items delivered to the court.

Edward D. Fagan
Edward D. Fagan

Attorney(s) for Petitioners

Office and Post Office Address

5 Penn Plaza, 23rd Fl
New York NY 10001
(646) 375-2225

EXHIBIT "H"



THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

MICHAEL A. CARDOZO
*Corporation Counsel*

Blanche Greenfield
Phone:212-788-0872
Fax:212-788-8877
E-mail:bgreenfe@law.nyc.gov

May 19, 2008

**BY HAND**
Justice Sheila Abdus-Salaam
Supreme Court of the State of New York
County of New York
71 Thomas Street
New York, NY 10013

Re:     **Teachers4Action et al., v. New York City Department of Education.,**
**Index Number 105304/08**

Dear Justice Abdus-Salaam,

I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for respondent in the above captioned Article 78 proceeding. As the court may recall, on April 14, 2008 this Court granted petitioners a stay of their pending disciplinary hearings until April 24, 2008. On April 24, 2008, following argument by counsel, Your Honor declined to extend the stay. Because the underlying petition did not seek a review of any action by respondent nor did it seek any remedy beyond the grant of the stay, petitioners do not have a viable Article 78 proceeding currently under review before your Honor under the above referenced index number.

We call to the Court's attention that on May 15, 2008 petitioners served Arbitrator Randi Lowitt with a subpoena under the caption and index number of the above referenced proceeding. A copy of the subpoena is annexed hereto as Exhibit "A." This latest action by petitioners is fundamentally flawed in two respects. First, respondent submits that service of the subpoena in connection with a proceeding that had at its sole purpose securing a stay, which was not extended, and which presents no underlying controversy, is wholly improper. Second,

petitioners' service of the subpoena, which seeks, among other things, the deposition of Arbitrator Lowitt and communications between respondent and Arbitrator Lowitt, is in clear violation of Section 408 of the Civil Practice Law and Rules which requires leave of court for disclosure in a special proceeding. Further, the prevailing law of this Department provides that in a special proceeding disclosure may only be had where the disclosure sought is material and necessary to the prosecution of the proceeding. *Allocca v. Kelly*, 44 A.D.3d 308, 844 N.Y.S.2d 195 (1st Dep't 2007)("The request [for discovery], made for the first time in petitioner's response to respondent's motion to dismiss, was not properly before the court (CPLR 408; 7804[a]), and, in any event, petitioner made no showing that such records were material and necessary to the prosecution of this proceeding (*Stapleton Studios, LLC v. City of New York*, 7 AD3d 273, 275, 776 N.Y.S.2d 46 [2004]).")

Respondent submits that because the subpoena was issued without regard to the prevailing law and rules governing disclosure in Article 78 proceedings it should be quashed by this Court sua sponte. Respondent further submits that under the circumstances presented herein, they be granted fees associated with the preparation of this letter.

Respectfully submitted,

Blanche Greenfield
Assistant Corporation Counsel

cc: Edward Fagan by e-mail with attachments
    Greg Weinstock by e-mail

2

EXHIBIT "I"

SUPREME COURT OF STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------X
Teachers4Action et al,                    :        Index # 105845/08
                                          :
                    Petitioners           :
                                          :
        vs.                               :
                                          :
Deborah M. Gaines et al                   :
                                          :        **NOTICE OF PETITION**
                    Respondents           :        **AND MOTION ON SHORT NOTICE**
--------------------------------X

**PLEASE TAKE NOTICE** that upon the annexed sworn Petition, together with the accompanying exhibits, the undersigned will move this Court before the Hon. Sheila Abdus Salaam JSC, at the Courthouse located at 60 Centre Street, Room 130, New York, NY, at 9:30 in the forenoon of the 30th day of May, 2008, or as soon thereafter as counsel may be heard for an Order granting the relief sought in the Petition, including but not limited to (i) declaring Respondents disqualified to serve as Arbitrators related to Petitioners' members based upon bias, prejudice, conflicts of interest, failure to disclose ex-parte communications and for other good cause, (ii) declaring Respondents disqualified for "good and sufficient cause" for their failure to comply with the requirements of Article 21-G, including but not limited to sub pars. 2 a. – f., of the Collective Bargaining Agreement and NYS Education Law 3020 and 3020-a, (iii) declaring Respondents disqualified for failure to comply with the Rules of the American Arbitration Association and the Ethical obligations related to disclosures of facts and other relationships that affect Respondents ability to properly discharge their obligations, (iv) declaring Respondents disqualified for concealment of evidence related to, for concealment of and engaging in ex-parte communications related to and for retaliation against Teachers4Action and its members, (v) enjoining Respondents from serving in 3020-a disciplinary hearings related to Petitioners'

members until the resolution of this Petition, (vi) voiding prior decisions of or settlements entered into with Teachers4Action members as a result of 3020-a hearings presided over by Respondents, which decisions or settlements resulted from or were coerced by Respondents' to conceal their bias, prejudice, conflicts of interest, violation of Article 21-G, violation of Education Law 3020, 3020a, Rules of the American Arbitration Association and/or as being against public policy, (vii) compelling an accounting and disgorgement of fees earned and/or paid to Respondents for services as Arbitrators related to Teachers4Action members during periods when Respondents were ineligible to serve based upon bias, prejudice, undisclosed conflicts, ex-parte communications, violations of Article 21-G of the Collective Bargaining Agreement, NYS Education Law 3020 and 3020-a and the applicable rules of the American Arbitration Association, and (viii) for such other and further relief as the Court deems just and necessary.

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR 2214 (b) answering Affidavits, if any, are required to be served upon the undersigned at least two (2) days before the return date of this Motion.

Dated: May 15, 2008
New York, NY

Edward D. Fagan Esq.
5 Penn Plaza, 23rd Floor
New York, NY 10005
Counsel for Petitioner

To:     All Respondents Personally at their Normal Places of Business

Gregg Weinstock Esq. - Garbarini & Scher
432 Park Avenue South, New York, NY 10016
Counsel for Respondents Bauchner, Biren, Bantle, Gaines, Glanstein, Javits, Lowitt,
           Pfeffer, Riegel, Scheinman, Siegel, Tillem, Weinstock and Zonderman

All Other Respondents *Pro Se*

Blanche Greenfield Esq. - New York City Law Department
100 Church Street, 4th Floor, New York, NY 10007
Counsel for Respondent Department of Education

AT AN IAS PART ___ OF THE SUPREME COURT OF
THE STATE OF NEW YORK, HELD IN AND FOR
COUNTY OF NEW YORK, ____ CENTRE STREET,
COURTROOM ___, NEW YORK, NEW YORK, ON THE
_____ DAY OF APRIL 2008.

Present: _____ JSC

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------X

TEACHERS4ACTION, ON BEHALF OF ITS MEMBERS,    :

                           **PETITIONERS**    :

V.    :

DEBORAH M. GAINES et al,    :    **ORDER TO SHOW**
                                           :    **CAUSE WITH**
                     **RESPONDENT**    :    **TEMPORARY**

--------------------------------------------------------X    **RESTRAINTS**

INDEX NO.
08/105845

UPON reading and filing the annexed verified petition of Florian Lewenstein dated April

24, 2008 and the annexed exhibits thereto, and upon all the pleadings and proceedings heretofore

had:

**NEW YORK
COUNTY CLERK'S OFFICE**

**APR 24 2008**

**IT IS HEREBY ORDERED** that Respondents or their attorneys show cause ~~NOT COMPARED
WITH COPY FILE~~

or one of the Judges of this Court at IAS Part ___, Room _____ to be held at the courthouse

located at _____, New York, New York on April ____, 2008 at 9:30

o-clock in the forenoon or as soon thereafter as counsel can be heard, why an Order should not

be made:

Enjoining Respondents from conducting 3020-a hearings against Petitioners until an

evidentiary hearing can be held to determine whether Respondents (i) were properly empanelled,

(ii) have fairly and impartially conducted hearings for Petitioners, and (iii) have followed the

timing and procedures required by NYS Education Law § 3020-a and the United Federation of

Teachers Collective Bargaining Agreement Article 21G.

**IT IS FURTHER ORDERED** that pending the hearing on this Order to Show Cause, Respondents are enjoined from attempting to convene further 3020-a hearings, from sitting as Arbitrators in 3020-a hearings, from issuing any judgments or rulings on 3020-a hearings in progress and from destroying their notes and documents related to the 3020-a hearings that they have conducted to date.

**THE WITHIN RELIEF HAS NEVER BEEN PREVIOUSLY REQUESTED** of this Court or any other court.

**SUFFICIENT CAUSE THEREFORE BEING ALLEGED:**

Let personal service pursuant to the CPLR of a copy of this order together with the papers upon which it is granted along with service of the Petition, upon Respondents on or before 5 P.M. on the ____ of April 2008 be deemed good and sufficient service; and

Respondents or attorneys for the Respondents are to serve any opposition papers to this petition, and file and serve their responsive papers on Petitioner Teachers4Action counsel Edward D. Fagan at his offices on or before April____, 2008; and

Reply papers, if any, are to be served and filed with Part ___ of the Court on or before

April___, 2008.

Oral Argument directed:

Honorable _____

                    J.S.C

                                                    ENTER:

                                                    Honorable

                                                    _____

                                                    Justice of the Supreme Court of New York

**SUPREME COURT OF STATE OF NEW YORK**
**COUNTY OF NEW YORK**

—————————————————————— X

Teachers4Action, on behalf of its members          :          Index # 105845/08
                                                   :
                              Petitioners          :
                                                   :
              v.                                   :
                                                   :
Deborah M. Gaines et al,                           :          Supplemental Declaration
                                                   :          in Support of Order to Show
                              Respondents          :          Cause with Temporary Restraints
—————————————————————— X

Edward D. Fagan, declares and says as follows:

1. I am Petitioners' counsel and I am familiar with the facts and circumstances related to this application.

2. I submit this brief Declaration in further support of Petitioners' request as set forth in the accompanying Order to Show Cause.

3. With this Declaration I am attaching a Declaration of Petitioner Paul Santucci related to statements made, in his and my presence, by Respondent Javits, as set forth in the Petition at ¶ 18 b.

4. Prior to submitting this Order to Show Cause, Petitioners and I have started to inform Respondents of this application and Petition.

5. **No prior application for this relief against these respondents has been made in this or any other Court.**

6. I hereby certify that the foregoing statements made by me are true to the best of my knowledge, information and belief.

Dated: April 25, 2008

_____
Edward D. Fagan, Petitioners' Counsel

1

**NEW YORK STATE SUPREME COURT**
**NEW YORK COUNTY**

INDEX # 08/105845

---

**TEACHERS4ACTION, ON BEHALF OF ITS MEMBERS**

**PETITIONER**

**V.**

**DEBORAH M. GAINES, ET AL**

**RESPONDENTS**

**DECLARATION**

---

Paul Santucci hereby declares as follows:

1. I am a petitioner in the matter of Teachers4Action et al v. NYC Department of Education, Index # 08/105304, that was filed on the 14th of April 2008.

2. I am also a member of Teachers4Action and a petitioner in the instant action.

3. I am also a member of Teachers4Action and a plaintiff in their federal lawsuit, Teachers4Action et al vs. Bloomberg et al, docket # 08-cv-548 (VM).

4. On April 15, 2008 a 3020-a hearing in my case was conducted by the NYC Department of Education (DOE) and Arbitrator Joshua Javits, in the presence of Edward D. Fagan, Esq., the Teachers4Action attorney in the above referenced federal action.

5. Mr. Fagan entered an objection to the hearing and demanded that Mr. Javits adjourn the hearing in accordance with the principle of collateral estoppel, based on an order to stay the hearings for another Teachers4Action member issued by Judge Sheila Abdus-Salaam.

6. Arbitrator Javits responded that he had been *directed* [emphasis added] to continue the

- - - - - - - - - - - - - - - -
*Teachers4Action et al. vs. Deborah M. Gaines et al – Index #*                *Page 1*

Page 1

hearings in spite of the judge's order.

7. Mr. Fagan asked who had directed Arbitrator Javits to continue the hearings.

8. Arbitrator Javits responded that he had been directed by Deborah Marriott of the New York State Education Department.

9. This exchange took place in my presence and I personally heard both parties clearly.

April 24, 2008

Paul Santucci

## DECLARATION UNDER 28 USC § 1746

I declare, verify, certify and state under the penalty of perjury that the facts and statements contained above are true and accurate to the best of my knowledge information and belief.

Dated: April 24, 2008

Paul Santucci

SWORN TO BEFORE ME THIS
24TH DAY OF APRIL, 2008

Notary Seal

**LINDA BICKHARDT**
Notary Public of NJ
My Commission Exp. FEB 2, 2013

- - - - - - - - - - - - - - - -

*Teachers4Action et al vs. Deborah M. Gaines et al – Index 8*                    *Page 2*

**Exhibit**                                                                         **Page 2**

**SUPREME COURT OF STATE OF NEW YORK**
**COUNTY OF NEW YORK**

------------------------------------------------------ X

Teachers4Action, on behalf of                    :        Index #
    All its members;                            :
                                   :        08/105845
                       Petitioners  :

           V.                                          :

Deborah M. Gaines;                               :
Douglas Bantle;                                  :        **VERIFIED PETITION**
Stuart Bachner;                                  :        **PURSUANT TO ARTICLE 78**
Melissa Biren;                                   :
James A. Cashen;                                 :
James Darby;                                      :
Eleanor Glanstein;                               :
Joshua Javitz;                                    :
Randi Lowitt;                                     :
Andree McKissick;                                :
Earl Pfeffer;                                     :
Arthur Riegel;                                    :
Martin Scheinman;                                :
Jay Siegel;                                       :
Jack Tillem;                                      :
Bonnie Weinstock; and                            :
Paul Zonderman.                                   :
                     Respondents  :

------------------------------------------------------ X

       Petitioner Teachers4 Action individually and on behalf of its members, hereby declares

and says as follows:

<u>Introduction</u>

1.   Petitioner Teachers4Action is a group of New York City Public School Teachers. This

      Petition is brought by Teachers4Action individually and on behalf of its members (as set

      forth on Exhibit 1).

2.   Respondents are a panel of arbitrators who, pursuant to NYS Education Law 3020, sit in

1

judgment of Petitioners.

## Relevant Facts

3. The Petition is brought pursuant to CPLR 7803 (1), (2), (3) and (4).

4. The relief is necessary to prevent the manifest injustice that is being committed against Petitioner Teachers4Action and its members by forcing them into 3020-a hearings, without counsel and with Respondent Arbitrators who have violated and continue to violate NYS Education Law and the Collective Bargaining Agreement rules that govern the 3020-a hearings.

5. Respondent Arbitrators are biased and prejudiced.

6. Respondent Arbitrators should not have accepted employment pursuant to NYS Education Law and the Collective Bargaining Agreement.

7. Respondent Arbitrators failed to disclose and/or concealed from Petitioners the conflicts of interest, bias and prejudice.

8. Respondent Arbitrators are attempting to continue their employment, conduct hearings, render verdicts and make decisions in 3020-a hearings that are being conducted by Respondent Arbitrators in violation of the terms and provisions of the 3020-a law and the Collective Bargaining Agreement.

9. After Petitioners discovered Respondent Arbitrators bias, Respondent Arbitrators refused to follow the provisions of NYS law and the Collective Bargaining Agreement, convened hearings, made determinations and issued rulings in violation of the lawful procedures, and which were arbitrary and capricious.

10. After Petitioners discovered the bias, prejudice and improper actions, they notified

2

Respondent Arbitrators and demanded that they disqualify themselves and not conduct any further 3020-a hearings.

11. Respondent Arbitrators have refused, performed duties and/or actions in violation of NYS law for which CPLR 7803 (1) applies.

12. Respondent Arbitrators have proceeded, are proceeding or about to proceed in violation of NYS law and the terms of the Collective Bargaining Agreement, for which CPLR 7803 (2) applies.

13. Respondent Arbitrators have made determinations in violations of NYS law and the terms of the Collective Bargaining Agreement, and/or which are arbitrary and capricious, for which CPLR 7803 (3) applies.

14. Respondent Arbitrators have made determinations at hearings, based on evidence taken, which evidence was taken in violation or in which hearings evidence was unlawfully suppressed, in violation of NYS law and the terms of the Collective Bargaining Agreement, and/or which are arbitrary and capricious, for which CPLR 7803 (4) applies.

## Relief Sought

15. The relief sought is to enjoin the arbitrators from continuing to sit in violation of the law and Collective Bargaining Agreement procedures, and who are otherwise biased, prejudiced and should not have accepted employment and should have recused themselves when Petitioners discovered the facts and promptly moved for disqualification.

## Arbitrators Bias & Violation of Arbitration Rules

16. Plaintiffs have discovered that the Arbitrators have violated and ignored the rules

3

governing the 3020-a hearings and do so because they are biased against Petitioners

17. Perhaps the most egregious example of Bias that demonstrates that the relief sought is meritorious and warranted is the fact that the lead named Respondent Deborah M. Gaines is affiliated with and/or an employee of Petitioners employer. *See Exhibit 2.*

18. Other examples of the need to enjoin Respondent Arbitrators:

    a. Respondent Gaines works in the Mayor's Office of Labor Relations and is a permanent member of the Panel that is sitting in judgment of matters related to Petitioners. Respondents communicate with one another and Respondent Gaines' presence, decisions and advice influences the entire Respondent Panel and prejudices Petitioners rights;

    b. On April 15, 2008, Arbitrator Javitz at a hearing of Petitioner's member Paul Santucci confirmed that he was taking directions from the New York State Education Department about whether or not he should stay the 3020-a hearings until the issue of NYSUT withdrawal and providing alternate counsel was resolved;

    c. After they were put on notice of the Petitioners request that the Arbitrators recuse themselves, each Arbitrator violated the rules governing the arbitrations by ruling themselves and refusing to call for a ruling by, and according to, AAA rules;

    d. Arbitrators have refused to disclose their financial conflicts that raise questions as to their ability to impartially hear the issues in the arbitration, again in violation of AAA rules;

    e. Arbitrators are intentionally concealing evidence and preventing the record from

4

From Florian Lewenstein 1.888.845.8593 Thu May 15 07:14:38 2008 MST Page 13 of 38

containing the substantial evidence1 presented by Petitioners - *See Exhibit 3 – excerpt from McLoughlin transcript showing that Respondent Arbitrator directed certain matters be excluded from the record;*

    f.   Arbitrators are improperly taking directions from third parties who are improperly influencing the 3020-a hearings – *See Exhibit 4 – Misc Letters directing Arbitrator actions.*

19. Respondent Arbitrators are not moving the 3020-a hearings based upon principles of due process in a forum where Petitioners can challenge the arbitrator, present defenses and evidence, be represented by counsel and have a fair and impartial adjudication.

20. Respondent Arbitrators are acting in violation of NYS law and the Collective Bargaining Agreement related to the 3020-a hearings, are motivated by their own personal pocket books and have concealed their failure to follow the rules for arbitration and their bias and prejudice.

21. Respondent Arbitrators knowingly violate NYS law and the provisions of the Collective Bargaining Agreement related to the conduct, evidence and determinations at or in the 3020-a hearings.

22. Respondent Arbitrators fail to abide by the NYS law and the Collective Bargaining Agreement governing rules related to the 3020-a arbitration.

---

1 In the case of Petitioner Roselyn Gisors, Respondent Arbitrator Eleanor Glanstein also excluded evidence from the Record; in the case of Petitioner Jennifer Saunders, Arbitrator Eric Lawson interfered with and prevented Petitioner from introducing relevant exculpatory evidence that was admitted; in the cases of Petitioners Sydney Rubinfeld, Paul Santuccci, Gloria Chavez, Michael Westbay, Lisa Hayes, Mauricio Zapata, Respondent Arbitrators Scheinman, Lowitt, Javits, Pfeffer and Bauchner failed to submit the recusal motions to the AAA, pursuant to the NYS law and the Collective Bargaining Agreement.

23. Respondent Arbitrators failed to disclose and concealed their actual and potential conflicts.

24. Respondent Arbitrators fail to follow the rules related to disqualification, based on bias and prejudice or appearance of impropriety, including their financial relationship and dependence upon Petitioners employer or other parties in interest.

25. Respondent Arbitrators are attempting to force Petitioners into 3020-a hearings that are being conducted in violation of NYS law and the Collective Bargaining Agreements.

26. Respondent Arbitrators have made or are in the process of making arbitrary and capricious determinations and/or rulings, excluded evidence, altered or precluded evidence from being placed in the record, all of which is in violation of Petitioners' due process rights, affect Petitioners' property rights and for which monetary damages are insufficient.

### Respondent Arbitrators Violated AAA Rules

27. The Rules of the American Arbitration Association with regard to the qualifications of the arbitrators provides, in pertinent part, the following:

> *Section 11. Qualifications of Arbitrator* - Any neutral arbitrator appointed pursuant to Section 12, 13, or 14 or selected by mutual choice of the parties or their appointees, shall be subject to disqualification for the reasons specified in Section 17 . . .

> *Section 17. Disclosure and Challenge Procedure* - No person shall serve as a neutral arbitrator in any arbitration under these rules in which that person has any financial or personal interest in the result of the arbitration. *Any prospective or designated neutral arbitrator shall immediately*

6

*disclose any circumstance likely to affect impartiality, including any bias or financial or personal interest in the result of the arbitration. Upon receipt of this information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator. Upon objection of a party to the continued service of a neutral arbitrator, the AAA, after consultation with the parties and the arbitrator, shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.*

28. The Arbitrators failed to make the necessary disclosures.

29. When Petitioners discovered the issues, they promptly challenged the Arbitrators. However, the Arbitrators failed to follow Sections 11 and 17 of the AAA Rules governing the 3020-a hearings.

30. N.Y.C.P.L.R. § 7504 provides in pertinent part that *"If the arbitration agreement does not provide for a method of appointment of an arbitrator, or if the agreed method fails or for any reason is not followed, or if an arbitrator fails to act and his successor has not been appointed, the court, on application of a party, shall appoint an arbitrator"*.

## NYS Supreme Court Has Authority to Disqualify Arbitrator

31. It has long been recognized that the NY Courts have authority to disqualify an arbitrator. *See        – In Re Nat'l Union Fire Insurance of Pittsburgh PA 120192 (7-22-2004) 2004 NY Slip Op 51024(U) (Court concludes has inherent power to disqualify an arbitrator before an award has been rendered where there is a real possibility that injustice will result . . . . citing Matter of Astoria Med. Group (Health Ins. Plan), 11 N.Y.2d 128, 132 (1962); and Matter of Grendi (LNL Constr. Mgmt. Corp.), 175 A.D.2d*

7

775, 776 (1st Dept. 1991).

32. Even an arbitrator's unintentional act may constitute misconduct sufficient to vacate an award. *See In re Albert (Hesney), N. Y.L.J., Sept. 7, 1993, p. 25, col. 5 (Sup.Ct., Rockland Co.) (the court held that the arbitrator's innocent but erroneous statement that he was experienced in computer law was "misconduct" since the "fundamental fairness of the proceeding seemingly was affected by having a person preside over a matter with little or no experience in the field"). To the same effect are Bernstein v. Mitgang, 242 A.D.2d 328, 661 N.Y.S.2d 253 (2d Dep't 1997) (one form of misconduct is the refusal to hear pertinent and material evidence); and Scott v. Bridge Chrysler Plymouth, 214 A.D.2d 675, 625 N.Y.S.2d 266 (2d Dep't 1995) (arbitrator's failure to dispose of the controversy submitted renders award not final and thus subject to vacatur; failure to consider all issues of fact and law that a court would have to consider in order to properly dispose of the same controversy is not judicially reviewable).*

33. An arbitrator exceeds his or her power when the arbitrator makes a completely irrational decision, not when he or she misapplies law or misconstrues facts. *See Local 375 v. N.Y.C. Health & Hosps. Corp., 257 A.D.2d 530, 685 N.Y.S.2d 29 (1st Dep't 1999); Motor Vehicle Accident Indemnification Corp. v. Travelers Ins. Co., 246 A.D.2d 420, 667 N.Y.S.2d 741 (1st Dep't 1998)*

34. An Arbitrators insistence on continuing hearings can also be improper and a basis for vacatur and removal. *See Bevona v. Superior Maint. Co., 204 A.D.2d 136, 611 N.Y.S.2d 193 (1st Dep't 1994) (refusal to grant adjournment was misconduct where such refusal foreclosed presentation of important evidence).*

8

35. An arbitrator's undisclosed ongoing financial relationship and/or dependence upon one party is grounds for vacatur and disqualification. *See Fein v. Fein, 160 Misc. 2d 760, 610 N.Y.S.2d 1002 (Sup.Ct., Nassau Co. 1994) (award vacated where arbitrator had ongoing financial relationship with one party, and such fact was not disclosed prior to arbitration).*

36. Disqualification of the Arbitrator should be made at the earliest opportunity and as soon as the challenging party discovers the bias or prejudice and the arbitration should be heard or proceed before new and unbiased arbitrator. *See Santana v. Country-wide Ins. 177 Misc. 1 (1998).*

37. Arbitrator disqualified for failure to disclose nature of relationship with party. See *In Re Application of Seligman v Allstate Insurance Co. 195 Misc. 2d 553 (2003).*

38. Petitioners pray that the Arbitrators be recused and/or enjoined from continuing with 3020-a hearings for their (i) failure to abide by the governing rules of arbitration, (i) failure to disclose their potential conflicts, (iii) failure to follow the rules related to disqualification, based on bias and prejudice or appearance of impropriety, including their financial relationship and dependence on the outcome, (iv) failure to properly address the issues of NYSUT improper withdrawal, (v) taking directions from and/or interested parties, (vi) forcing Petitioners and Petitioners members into 3020-a hearings without counsel, (vii) refusal to stay the 3020-a hearings until these issues can be resolved and (viii) improper issuance of awards and/or decisions influenced by their bias, prejudice, lack of impartiality and misconduct in the 3020-a hearings.

9

### Evidentiary Hearing Necessary

39. The questions being raised in this Petitioner are those which are permitted pursuant to N.Y.C.P.L.R § 7803 et seq including:

    a.  Did Respondents fail to perform a duty enjoined upon them by law ?  -  <u>Answer: Yes !</u>

    b.  Are Respondents proceeding or attempting to proceed without or in excess of jurisdiction? <u>Answer – Yes !</u>

    c.  Are or have Respondents made   determinations in violation of lawful procedure, or that are affected by an error of law or which are arbitrary and capricious or an abuse of discretion? <u>Answer – Yes !</u>

    d.  Have Respondents made determinations, as a result of hearings held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence? <u>Answer – Yes they made determinations but no the determinations are not supported by the record or substantial evidence!</u>

### Petitioners Property and Others Rights Are At Risk and Must be Protected

40. The failure to protect property interests (such as teachers salaries and teaching licenses) and due process right and the use of the arbitrary and capricious standards of review are administrative actions reviewable under CPLR 7803.  As relates to Article 78 proceedings related to arbitrations, contested issues of fact warrant evidentiary hearings prior to any determination on the merits.  *See Cohoes Firefighter v. Cohoes, 258 A.D.2d 24, 28 [3d Dept 1999] 692 N.Y.S.2d 750, aff'd 94 N.Y. 2d 686 (2000)*.

### Conclusion

41. In view of the foregoing, Petitioners pray the Court enjoin Respondent Arbitrators from

continuing to sit in violation of NYS law and the Collective Bargaining Agreement

and/or from attempting to sit in judgment of any arbitration hearings involving

Petitioners.

Dated: April 24, 2008

State of New York
County of New York
The Aforementioned Petition and Statements
Are Sworn to and Subscribed before me
On this 24th day of April 2008

_____
Notary Seal

Florian Lewenstein, President
Teachers4Action for its members

MARGARET A. SCHWARTZ
Notary Public, State of New York
Reg. No. 02SC6142668
Qualified in New York County
Commission Expires Aug. 23, 20 10

11

**Exhibit 1 - List of Petitioners**                                    **Page 1**

1.  Twana Adams
2.  Marie Addoo
3.  Maryam Ayazi
4.  Olga Batyreva
5.  Ming Bell
6.  David Berkowitz
7.  Jonathan Berlyne
8.  Jill Budnick
9.  Roslya Burks
10. Jaime Castro
11. Gloria Chavez
12. Judith Cohen
13. Josefina Cruz
14. James Cullen
15. Diane Daniels
16. Michael Ebewo
17. Boubakar Fofana
18. Louisa Genis
19. Roselyne Gisors
20. Diana Gonzalez
21. Bob Grant
22. Evelyn Hanlon
23. Joanne Hart
24. Lisa Hayes
25. Wendy Hasen
26. Arnulfo Hinostroza
27. Michael Hollander
28. Eleanor Johnson
29. Rita Johnson
30. Rafal Kowal
31. Jane Levine
32. Florian Lewenstein
33. Hazel Martinez

Exhibit 1

**Exhibit 1 - List of Petitioners**                                    Page 2

34. Michael McLoughlin

35. Raymond Nunge

36. Karen Ornstein

37. Julianne Polito

38. Alena Radise-Gabriel

39. Thomasina Robinson

40. Denise Russo

41. Sidney Rubinfeld

42. Paul Santucci

43. Jennifer Saunders

44. Jacneline Sawyer

45. Brandi Scheiner

46. Alan Schlesinger

47. Alex Schreiber

48. Linda Seiffert

49. Barbara Segall

50. Daniel Smith

51. Helena Tarasow

52. Gilda Teel

53. EustoquioTorres-Nogueras

54. Ivan Valtchek

55. Jaqueline Wade

56. Nahid Wakili

57. Nicholas Watson

58. Michael Westbay

59. George Zanetis

60. Mauricio Zapata

61. Beverly Zimler-Rosenfeld

# 2008

## NEW YORK LAWYERS DIARY

### AND

## MANUAL®

### Bar Directory of the State of New York

#### ONE HUNDREDTH NINTH YEAR OF PUBLICATION



NEW YORK LAWYERS DIARY AND MANUAL®

249 Mulberry Street, P.O. Box 50

Newark, N.J. 07101-0050

(973) 642-1440

(800) 444-4041

FAX (973) 642-4280

E-mail: mail@lawdiary.com

Visit our web site at http://www.lawdiary.com

---

The New York Lawyers Diary and Manual® is also available on CD-ROM. This electronic format also includes court rules, legal productivity calculators, and an electronic calendar & diary.

Call us at (800) 444-4041, Ext. 2 for further details on this invaluable time saver.

---

*Exhibit 2*





## Public Sector Labor and Employment Law (2006)

This program, more advanced than the 2004 Public Sector Employment Law Primer course, provides practitioners in the area with a valuable resource to explore some of the more complex issues of municipal employee labor relations.

The program includes five topics: (1) Issues relating to post-impasse procedures, such as mediation, fact finding and interest arbitration; (2) Issues relating to collective bargaining, such as negotiating 403(b) plans that conform to the IRS Code and drafting of settlement agreements to insure that they are in accordance with various tax laws; (3) An overview of recent Public Employment Relations Board cases that have had an impact in public sector labor practice; (4) Issues relating to retiring or already retired employees, such as negotiating retirement incentives and the unique issues that arise in dealing with the New York State Retirement Systems; and (5) A presentation on the sometimes thorny ethical issues when representing municipal employers and employees.

This program is geared to the practitioner who is currently practicing in the field.

### Program Contents

· Hot Topics Before PERB

· Issues Relating to Retirement

· 403(b) Compliance in Collective Bargaining

· Post-Impasse Procedures

· Ethical Considerations

### Program Speakers

**Seth Greenberg, Esq. (Program Planning Co-Chair)**
Greenberg Burzichelli Greenberg P.C.
—Lake Success

**Stephanie M. Roebuck, Esq. (Program Planning Co-Chair)**
Keane & Beane, P.C.
—White Plains

**Michael C. Axelrod, Esq.**
Certilman Balin Adler & Hyman, LLP
—East Meadow

**Howard C. Edelman, Esq.**
Attorney at Law
—Rockville Centre

**John Gaal, Esq.**
Bond, Schoeneck & King, PLLC
—Syracuse

**Deborah M. Gaines, Esq.**
Office of Labor Relations
—New York City

Attorneys Employment And Labor Relations in New York, Ny - LocalSearch.com          Page 2 of 3



**Web Results**
1 - 10 out of 81 total results for Attorneys Employment and Labor Relations in New York, NY

1   Employment Lawyer
    You Have Rights-Get Help Today You May Deserve Compensation
    Sponsored by: www.EmployeeRights.com

2   Employment Lawyer, Employment Attorneys - New York
    Kalies Mecka Robenson LLP Labor and Employment attorneys pride themselves on listening to each ... New York, NY 10022 Phone:
    212.940.3000 Fax: 212.940.3111 ...
    www.lawtorise.com

3   Attorneys Labor & Employment Law in Brooklyn New York (NY ...
    Find Attorneys-Labor & Employment Law in Brooklyn New York (NY) in Switchboard.com Yellow Pages. Get phone, address, driving
    directions and more.
    www.switchboard.com/Attorneys-Labor-&-Employment...

4   NY Employment Attorney
    Have You Been Unlawfully Terminated? Our Firm Can Help
    Sponsored by: www.GarrganoLaw.com

5   Lipman & Plesur, LLP   employment lawyers
    He attended the New York State School of Industrial & Labor Relations at Cornell ... He is a member of the National Employment
    Lawyers Association, ...
    www.lipmanplesur.com

6   Labor Relations
    Labor Relations Employment Listed. Search by State & Apply.

7   NYSBA | Home
    ... Attorney at Law â€¢ Reocville Centre  John Gaal, Esq, Bond, Schoeneck & King, PLLC â€¢ Syracuse, Deborah M. Gaines, Esq. Office
    of Labor Relations â€¢ New York City ... Labor Relations â€¢ New York ... Labor & Employment Law in New York ...

8   Employment Attorney
    Find Employment Attorneys near you Employment Law Firm Info.
    Sponsored by: www.connexsearch.com

9   Get Info On Your Search
    Get Info on Your Search from 14 search engines in 1.

800.523.7887          06/19/2007, In the matter of Michael McLoughlin    Associated Reporters Int'l, Inc.

Page 8182

```
 1
 2                    THE STATE EDUCATION DEPARTMENT
             THE UNIVERSITY OF THE STATE OF NEW YORK
 3

 4    ──────────────────────────────────────────────

                          In the Matter of
 5         THE NEW YORK CITY DEPARTMENT OF EDUCATION
                               v
 6                     MICHAEL McLOUGHLIN
 7    Section 3020-a Education Law Proceeding (File 5,394)
 8
      DATE:            June 19, 2007
 9
      TIME:            10:36 a.m. to 12:30 p.m.
10                     1:30 p.m. to 2:30 p.m.
11    LOCATION:        New York City Department of Education
                       Office of Legal Services
12                     49-51 Chambers Street, 6th Floor
                       New York, New York
13
      BEFORE:          ARTHUR A. RIEGEL, ESQ.
14                     Hearing Officer
                       One Willow Lane
15                     Hewlett Harbor, New York 11557
16
17
18
19
20
21
22
23
24
```

Associated Reporters Int'l, Inc.    06/19/2007, In the matter of Michael McLoughlin          800.523.7887

Exhibit 3

800.523.7887          06/19/2007, In the matter of Michael McLoughlin      Associated Reporters Int'l., Inc.

Page 8183

1        Michael McLoughlin - 6-19-2007
2
3    FOR THE DEPARTMENT:
4        LISA BECKER, ESQ., Of counsel
         MICHAEL BEST, ESQ., General Counsel
         New York City Department of Education
         Office of Legal Services
5        49-51 Chambers Street, 6th Floor
         New York, New York
6
7    FOR THE RESPONDENT:
8        MITCHELL RUBENSTEIN, ESQ., Of Counsel
         JAMES R. SANDNER, ESQ., General Counsel
         NEW YORK STATE UNITED TEACHERS
9        52 Broadway, 9th Floor
         New York, New York 10004
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 8184

1        Michael McLoughlin - 6-19-2007
2        INDEX OF PROCEEDINGS
3    Michael McLoughlin; Previously sworn   8187
     Cross Examination by Ms. Becker        8187
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 8185

1        Michael McLoughlin - 6-19-2007
2        THE HEARING OFFICER: It's
3    now eleven thirty. We were on the record at
4    about ten thirty and now summarizing an
5    off-the-record discussion we had. And then
6    there was, subsequent to that -- there was some
7    there was some discussion on the record which
8    is to be deleted in its entirety. Everything
9    from the beginning of today's session until
10   these comments now ought to be deleted from the
11   record and that this is at the direction of the
12   Hearing Officer and with the concurrence of
13   Tony Williams, who is the person in charge of
14   Associated Court Reporters. And this is also
15   with the concurrence of the attorneys for the
16   parties.
17       Okay. We are prepared to --
18   we are prepared to move forward. I believe
19   that the issues which -- which I initially
20   discussed which dealt with offers of proof as
21   to what individual teachers would testify to
22   and what the assistant -- the principal and the
23   assistant principals will testify to, that
24   information has been conveyed to Respondent and

Page 8186

1        Michael McLoughlin - 6-19-2007
2    need not be repeated. The names will be
3    provided to -- to Counsel for Respondent. The
4    names of the teachers, that is, will be
5    provided to Counsel for Respondent with the
6    understanding that these people may or may not
7    be called.
8        And secondly, there's no date
9    certain when they will be called if, in fact,
10   they are called. And I believe -- I believe
11   that this summarizes the discussion until now.
12       MR. RUBENSTEIN: I would just
13   ask that when -- as we get closer, when Counsel
14   gets to the point that she knows exactly who is
15   going to be called on a particular date like
16   we've been doing throughout this hearing, that
17   she --
18       MS. BECKER: I'll do the best
19   I can do.
20       MR. RUBENSTEIN: When you get
21   to the point that you know that -- that on July
22   17th, you're going to call these two witnesses
23   that you give me the call like I have been
24   doing to you and you have done to me.

Associated Reporters Int'l., Inc.    06/19/2007, In the matter of Michael McLoughlin

2 (Pages 8183 to 8186)

800.523.7887

**Stuart K. Banchner, Esq.**
Arbitrator and Mediator
299 Riverside Drive #6D
New York, NY 10025
212-222-8900


April 1, 2008


Via Express Mail and First Class Mail

Mr. Maurice Zapata
8915 86th Street
Woodhaven, NY 11421

R. Joseph Coryat, Esq.
New York City Department of Education
Office of Legal Services
49-51 Chambers Street
New York, NY 10007

        Re: NYC DOE
        v. M. Zapata
        SED File No. 7,794
        Section 3020-a Education Law Proceeding

Dear Mr. Zapata and Mr. Coryat:

    This confirms that a pre-hearing conference in the above referenced matter has
been scheduled for April 8, 2008, at 9:00 a.m., at the offices of the New York City
Department of Education, Office of Legal Services, 49-51 Chambers Street, 6th Floor,
New York, NY.

    This further confirms that this is the second matter on my hearing calendar and is
subject to being called to hearing on any of my scheduled hearing dates. Once called to
hearing, the matter will continue on my scheduled hearing dates until completed. My
scheduled hearing dates are April 8, April 9, April 10, April 29, April 30, May 8, May 13,
May 14, May 28, May 30, June 3, June 4, June 5, June 13, and June 16, 2008. All
hearings will take place at the offices of the New York City Department of Education,
Office of Legal Services, 49-51 Chambers Street, 6th Floor, New York, NY.

    Please note that the applicable collective bargaining agreement between the NYC
DOE and the UFT provides that "absent extraordinary circumstances, arbitrators are not
to adjourn hearing dates. It should be noted that normally attorney or party scheduling

Exhibit    - Miscellaneous                                          Page 1

                    Exhibit 4

April 1, 2008
Page "2"

conflicts are not extraordinary circumstances." Absent an adjournment being granted by
the undersigned, pre-hearing conferences and hearings may be conducted even if one
party fails to appear. Chandi v. NYC DOE, 833 N.Y.S. 2d 472 (2007)

Very truly yours,

Stuart E. Bruchner

Exhibit   - Miscellaneous

FROM :                          FAX NO. :                     Apr. 03 2008 05:12PM  P2


EARL R. PFEFFER, Esq.
Address
145 BELLEVUE AVENUE
MONTCLAIR, NEW JERSEY 07043-1846

(973) 783-0347
FAX (973) 783-0347


March 31, 2008


BY EXPRESS AND REGULAR MAIL

Julianne Newman, Esq.                    Gloria S. Chávez
NYC Department of Education              P.O. Box 721349
Office of Legal Services                 Jackson Heights, New York  11372
51 Chambers Street – Room 604
New York, New York  10007


Re: NYC Department of Education
adv.
Gloria S. Chávez
SED File# 4,905


Dear Ms. Newman and Ms. Chávez:

I write to reiterate and confirm that we are scheduled to proceed with testimony in the above matter on Friday, April 4, 2008.  The hearing will be convened at 49-51 Chambers Street, New York, NY, and will commence at 10:00 a.m.

As of this date, Ms. Chávez has not advised me regarding the representation issues we discussed on the last hearing date.  Although I have urged her to retain counsel in this matter, I have stressed that it is not a requirement and that we will proceed with the hearing even if she is not represented.  Only under the most extraordinary circumstances will I entertain any requests by Ms. Chávez to adjourn further these proceedings.

Indeed, my review of applicable case law reveals that where an employee who has requested arbitral review of disciplinary charges receives adequate notice of the proceedings, and is advised that the hearing will go forward as scheduled unless there is proof of the most compelling circumstances for a postponement, the denial of an adjournment request lies in the sound exercise of the arbitrator's discretion.  See Chaudki v. New York City Department of Education, 39 A.D.3d 323; 833 N.Y.S.2d 472 (1st Dep't, April 17, 2007), appeal denied, 9 N.Y.3d 816, 844 N.Y.S.2d 786 (October 16, 2007).


Exhibit   - Miscellaneous                                    Page 3

FROM :                              FAX NO. :                    Apr. 03 2008 05:13PM  P3


Julianne Newman, Esq.
Gloria S. Chavez
March 31, 2008
Page 2

    Although Ms. Chavez has cooperated with all of my scheduling orders, I nevertheless place her on notice that the Appellate Division's decision in Chandi confirmed the appropriateness of the arbitrator's decision to conduct the hearing in the respondent's absence. Thus, a simple failure to appear will not justify a postponement.

    Accordingly, the parties each are advised that I will hear and determine this controversy upon the evidence adduced on April 4, 2008, and on hearing dates scheduled thereafter until the record is completed. Ms. Chavez is on notice that she will be granted no additional postponements or adjournments absent proof of the most compelling circumstances.

               Very truly yours,

               Earl R. Pfeffer

ERP/s

cc: Howard Singer, Esq.

Exhibit  - Miscellaneous                                        Page 4

RANDI E. LOWITT
ARBITRATOR
11 BEACH STREET
NEW YORK, NEW YORK 10013
TEL: (908) 256 6091
FAX: (908) 234 1248

BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED
AND BY REGULAR MAIL

Ms. Lisa Hayes
105 Maple Road
Huntington Station, New York 11746

Dennis DaCosta, Esq.
Offices of Michael Best, General Counsel to the Chancellor
New York City Department of Education
Office of Legal Services
49-51 Chambers Street, 6th Floor
New York, New York 10007

March 25, 2008

RE:   In the Matter of the New York City Department of Education, IS 61
      v. Lisa Hayes
      Section 3020-a Education Law Proceeding
      SED File # 9,771

Dear Ms. Hayes and Mr. DaCosta:

In addition to the Pre-Hearing Conference on the above-captioned case, which is scheduled for 10:00 a.m., Thursday, April 3, 2008 at the offices of the Department of Education, 49-51 Chambers Street, 6th Floor, please be advised of the following:

1. The hearings on the case are scheduled to go forward beginning April 4, 2008.
2. The remainder of the hearing dates for April are April 7, April 8, April 14, and then May 7. Not knowing how many hearing days this case will take, please ensure that you are available for all of the above dates, as well as any additional dates that may be necessary.
3. Article 21Gad of the Collective Bargaining Agreement between the parties provides as follows: *The parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normally attorney or party scheduling conflicts are not extraordinary circumstances.*
4. The hearings will proceed in the absence of either party.

Exhibit  - Miscellaneous                                    Page 5

Ms. Hayes, please be advised that the Department has notified me that this case is now assigned to Dennis DaCosta, Esq. He can be reached at (212) 374 6035. You may appear either with counsel or pro se. Ms. Hayes, please present your discovery demands to the Department's attorney prior to the Pre-Hearing Conference. If possible, go so to expedite the conference and so as to ensure that

Thanking you in advance for your cooperation, I remain

Very truly yours,

RANDI E. LOWITT
ARBITRATOR

**Exhibit    - Miscellaneous**

*RANDI E. LOWITT*
*ARBITRATOR*
*11 BEACH STREET*
*NEW YORK, NEW YORK 10013*
*TEL: (908) 296 6091*
*FAX: (908) 224 1248*
*rxlowitt@optimisia.net*

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED
AND BY REGULAR MAIL.**

Ms. Lisa Hayes
105 Maplewood Road
Huntington Station, New York 11746

Dennis DaCosta, Esq.
Office of Michael Best, General Counsel to the Chancellor
New York City Department of Education
Office of Legal Services
49-51 Chambers Street, 6th Floor
New York, New York 10007

March 27, 2008

RE:     In the Matter of the New York City Department of Education, IS 61
        v. Lisa Hayes
        Section 3020-a Education Law Proceeding
        SED File # 9,771

Dear Ms. Hayes and Mr. DaCosta:

I am in receipt of Ms. Hayes's letter of March 27 (although, given the date on the
Priority Mail Envelope, I assume that it was meant to be dated March 26), in
which letter Ms. Hayes states that "Because of very short notice, I don't have any
legal representation," and in which letter Ms. Hayes "respectfully request(s) an
adjournment of the Pre-Hearing Conference scheduled for Thursday, April 3,
2008 at 10:00 A.M." In light of the request, I am GRANTING THIS
ADJOURNMENT. However, please be aware that THIS WILL BE THE ONLY
ADJOURNMENT GRANTED. Therefore, please note the following revised
schedule for the hearings in the above captioned case:

1.  The hearings will occur at the offices of the Department of
    Education, 49-51 Chambers Street, 6th Floor.
2.  The Pre-Hearing Conference on the case is rescheduled to go
    forward at 10:00 a.m., April 14, 2008.
3.  The Hearing will begin on April 28, 2008. As a scheduling
    courtesy, be advised that the subsequent scheduled dates to be used
    for this hearing are April 30, May 6, and then May 7. Not knowing
    how many hearing days this case will take, please ensure that you

**Exhibit   - Miscellaneous**                                    **Page 7**

are available for all of the above dates, as well as any additional dates that may be necessary.

4. Article 21Gad of the Collective Bargaining Agreement between the parties provides as follows: *The parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normal attorney or party scheduling conflicts are not extraordinary circumstances.*

5. The hearings will proceed in the absence of either party.

Ms. Hayes, given that I have delayed the pre-hearing conference by a ████████████████████████████████████████████████████████████

██████████████████████████████████████████████

Please remember that the Department has assigned this case to Dennis DaCosta, Esq. He can be reached at (212) 374-6035. You may appear either with counsel or pro se.    Ms. Hayes, please present your discovery demands to the Department's attorney 5 days prior to the Pre-Hearing Conference, as that is when they are due, so as to expedite the conference and so as to ensure that the case proceeds as per schedule. Finally, and again as a reminder, please be advised that the hearing will proceed whether you are able to be present or not, whether you are represented by counsel or not, and whether you are prepared to proceed or not.

Thanking you in advance for your cooperation, I remain

Very truly yours,

RANDI E. LOWITT
ARBITRATOR

cc:    Florence Chapin, Esq.

**Exhibit    - Miscellaneous**

**Page 8**

From Florian Lewenstein 1.888.845.8593 Thu May 15 07:14:38 2008 MST Page 36 of 38

'01/31/2018 18:56 FAX                                                        @002/003



# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR

51 Chambers Street, Room 604 New York, NY 10007

March 27, 2008

Mr. Stuart E. Bauchner, Arbitrator
290 Riverside Drive- Apt. 9D
New York, New York 10025

Re: Jane Levine

Dear Mr. Bauchner:

Please allow this letter to serve as an acknowledgement of receipt on March 26, 2008 of a copy of Jane Levine's request for a stay in the referenced proceeding, dated March 14, 2008. Further, take notice that the Department shall not agree to any adjournment in Ms. Levine's case for the reasons set forth below. The Department will be ready to proceed with the hearing on the date(s) scheduled.

As you know, NYSUT has relieved itself from representing Ms. Jane Levine along with the other Plaintiffs in Teachers4Action, et al v. Bloomberg, et al, S.D.N.Y. Index No. 08-CV- 54, based on apparent conflict of interest. It is my understanding that NYSUT is not providing Ms. Levine with alternative counsel and that she must retain and bring counsel at her own expense.

The Plaintiffs, including Ms. Levine, have been denied a stay of their proceedings pursuant to the March 26, 2008 memorandum decision of the Magistrate Judge, Honorable Andrew J. Peck. Further, denial of such requested relief was made with the court being fully aware that the Plaintiffs would be obliged to move forward without the benefit of counsel, as the same is clearly stated in Plaintiffs' counsel's motion.

Further, it is the Department's position that a 3020-a arbitrator does not have the authority to stay the proceeding and Ms. Levine would have to seek court intervention, which to this point has denied.

The Department shall not agree to any adjournment in Ms. Levine's case for the reasons set forth hereinabove. The Department will be ready to proceed with the hearing on the date(s) scheduled. Without the aforementioned court intervention, the Department shall proceed with the case.

The Department is asking the arbitrator to advise Ms. Levine that should she fail to appear, the hearing will proceed in her absence.

OFFICE OF LEGAL SERVICES * 51 CHAMBERS STREET * ROOM 604 * NEW YORK, NEW YORK 10007
Telephone: (212) 374-5525 * Fax: (212) 504-4524/1604

Exhibit  - Miscellaneous                                        Page 9

From Florian Lewenstein 1.888.843.8593 Thu May 15 07:14:38 2008 MST Page 37 of 38
01/31/2018 19:50 FAX                                                      003/003

Sincerely,

R. Joseph Coryat
New York City Department of Education
Office of Legal Services
Administrative Trials Unit


cc:  Jane Levine
     5-16 Dorothy Street
     Fair Lawn, New Jersey 10026

Encl. :(1) Endorsed Memorandum and Transcription 3 pages

OFFICE OF LEGAL SERVICES • 52 CHAMBERS STREET • ROOM 320 • NEW YORK, NEW YORK 10007
Telephone: (212) 374-6888 • Fax: (212) 374-5588

Exhibit    - Miscellaneous                                    Page 10

(718) 373-0583                 p. 1

.58a    Vadim Cherngavskiy

# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
110 Livingston Street - Brooklyn, NY 11201

March 24, 2008

**CERTIFIED AND REGULAR MAIL**

Ms. Olga Batyreva
2097 Surf Avenue
Apt. LSD
Brooklyn, NY 11224

RE:    DOE v. Olga Batyreva

Dear Ms. Batyreva:

It has come to my attention that you have fired Mr. Edward Wolf as your attorney to represent you against the charges brought against you by the NYC Department of Education. I have also been informed that the New York United Teachers has declined your request that they represent you.

This letter is to advise you that the first day of hearing is scheduled for Monday, March 31, 2008. You must be present at the hearing on that day. Your presence is expected whether or not you have retained new counsel. If you have retained new counsel please have them contact me already.

The hearing will be held at 49-51 Chambers Street, 6th floor at 10:00 a.m. The building is located between Centre St. and Broadway.

Sincerely,

Susan K. Jakowski, Esq.
Administrative Trials Unit
(212) 374 – 6756

Cc: Jack Tillem, Esq.

OFFICE OF LEGAL SERVICES -110 LIVINGSTON ST • RM 828 • BROOKLYN, NY 11201
Telephone:(718) 935-3686 • Fax:(718) 935-3625

**Exhibit    - Miscellaneous**

Page 1

EXHIBIT "J"

**Greenfield, Blanche**

| | |
|---|---|
| **From:** | Edward Fagan [faganlaw@gmail.com] |
| **Sent:** | Tuesday, May 20, 2008 4:56 PM |
| **To:** | Greenfield, Blanche; teurope@schools.nyc.gov |
| **Cc:** | sidtkd@aol.com; hasjd@aol.com |
| **Subject:** | Fagan, Teachers4Action v NYC Law Dept et al 08-107007 (Re: Rubinfeld May 2nd "Settlement") |
| **Attachments:** | Rubinfeld DOE Complaint 5-19-08.pdf |

Dear Ms. Greenfield, Ms. Europe, Mr. Rubinfeld and Mr. Singer:

A courtesy copy of the complaint that was filed today with regard to the "putative" settlement with Sidney Rubinfeld is attached.

The complaint was filed today - May 20, 2008 and was assigned Index # 08-107007.

You are NOT to distribute, dispuse or dispose on any of the monies that were offered in purported satisfaction and/or in exchange for withdrawal of claims related to Sidney Rubinfeld.

Should you attempt to distribute disburse, release and/or hypothecate any monies that are the subject of this claim, we will seek additional damages against you individually, jointly, and/or severally.

Ed Fagan

PS  A PDF copy of the actual complaint as filed will be sent to you later today.

--
Ed Fagan


NOTE: THIS EMAIL CONTAINS PRIVILEGED & CONFIDENTIAL COMMUNICATIONS. THE EMAIL IS PROTECTED BY ATTORNEY CLIENT, WORK PRODUCT AND OTHER APPLICABLE PRIVILEGES. THE DOCUMENT ALSO CONTAINS COMMUNICATIONS RELATED TO EVIDENTIARY ISSUES AND LITIGATION STRATEGY. IT IS INTENDED ONLY FOR THE ADDRESSEE AND MAY NOT BE USED, DISCLOSED OR DIVULGED WITHOUT PRIOR WRITTEN CONSENT OF THE SENDER & AUTHORIZED RECIPIENTS.

Supreme Court of State of New York
County of New York
-------------------------------------------------------------X
Edward D. Fagan Esq.,                          :          INDEX #
Teachers4Action;                               :
                                    Plaintiffs :
     - vs -                                     :
                                                :
New York City Law Department;                  :
New York City Department of Education;         :
And John Does/Jane Does 1 – 5                  :
                                    Defendants :
-------------------------------------------------------------X

## <u>INTRODUCTION</u>

This action is necessary to prevent damages resulting from Defendants' (i) refusal to honor and preserve Plaintiffs' charging lien under Judiciary Law § 475, (ii) assistance with plaintiff Fagan's former client in an attempt to "cheat" plaintiff in violation of *Matter of Levy, 249 N.Y. 168, 170)*, (iii) interference with Plaintiffs' right to recover reimbursement of out of pocket expenses and reasonable value of services rendered in *quantum meruit*, (iv) tortious interference with contract, (v) unjust enrichment and (vi) other unlawful and/or wrongful acts.

## <u>PARTIES</u>

1) Plaintiff Edward D. Fagan (hereinafter "Fagan") is a lawyer licensed to practice in New York State who maintains offices at 5 Penn Plaza, 23rd Floor, New York, NY 10001.

2) Plaintiff Teachers4Action (hereinafter "Teachers4Action") is an association of teachers doing business in New York City.

3) Defendant New York City Law Department ("Law Dept.") is an organ of New York City, which maintains offices at 100 Church Street, 4th Floor, New York, NY.

4) Defendant New York City Department of Education ( "DOE") is an organ of New York City and maintains offices at 52 Chambers Street, New York, NY.

-----------------------
*Fagan et al v. NYC Law Dept and DOE – May 2008 – Complaint – Page 1*

## JURISDICTION, VENUE & AUTHORITY FOR CAUSES OF ACTION

5) The Court has jurisdiction, and venue is proper in New York County, over Defendants Law

Department and DOE, pursuant to CPLR §§ 301.

6) The Court also has jurisdiction over this action pursuant to CPLR § 3001 et seq., Judiciary

Law § 475, Matter of Levy, 249 N.Y. 168, 170 (charging lien), Geraldi v. Melamid, 212

AD2d 575 (2d Dept 1995) (charging lien), NBT Bancorp v Fleet/Norstar Fin. Group, 87

NY2d 614, 621 (1996) (interference with contractual relations); Guard Life Corp. v Parker

Hardware Mfg. Corp., 50 NY2d 183 (1980)(interference with contractual relations), Kronos,

Inc. v AVX Corp., 81 NY2d 90, 94 (1993) (interference with contract) and Guard-Life Corp.

v Parker Hardware Mfg. Corp., 50 NY2d 183 (1980), Walker v Sheldon, 10 NY2d 401

(1961) (interference with contract and punitive damages),  (see Bernberg v Health

Management Systems, 303 AD2d 348, 349 (2003) (induced breach of contract), (see Snyder

v Sony Music Entertainment, 252 AD2d 294, 299-300 (1997), Lurie v. New Amsterdam

Casualty Co., 270 NY 379 (1936) (citing Posner Co. v. Jackson, 223 NY 325; Lamb v.

Cheney & Son, 227 NY 418; Hornstein v. Podwitz, 254 NY 443) (unlawful inducement of

breach).

## FACTS RELEVANT TO CAUSES OF ACTION

7) Starting in or about January 2008, Plaintiff Fagan agreed to provide legal services to Plaintiff

Teachers4Action member Sidney Rubinfeld (hereinafter "Rubinfeld")[1].

8) From January 2008 to May 6, 2008, Plaintiff Fagan provided legal services to Rubinfeld.

---

[1] Rubinfeld is not joined as a named defendant in this action for the following reasons.  The Retainer
Agreement related to some of the services Fagan provided to Rubinfeld included a provision that disputes
related to reimbursement of expenses and legal fees as between Plaintiffs and Rubinfeld would be
submitted to binding expedited arbitration.  The Demand for Arbitration has already been submitted and
the legal issues and claims presented in this action are separate and apart from the issues between
Rubinfeld and Plaintiffs, which issues will be resolved in Arbitration.

----------------------

*Fagan et al v. NYC Law Dept and DOE – May 2008 – Complaint – Page 2*

9) From January 2008 to May 6, 2008, Plaintiff Teachers4Action advanced costs related to the legal services being provided or organized by Plaintiff Fagan to/for Rubinfeld.

10) From January 2008 to May 6, 2008, Plaintiffs filed multiple claims on behalf of Rubinfeld and others in New York Federal Court and New York State Court. Those claims included but were not limited to:

   a) Teachers4Action et al v Bloomberg et al 08-cv-548 (VM)(AJP);

   b) Teachers4Action et al v New York City Department of Education 08-105304; and

   c) Teachers4Action on behalf of its members v Deborah M. Gaines et al 08-105845.

11) In addition to the actual claims filed, Plaintiffs Fagan and/or Teachers4Action provided legal advice, assistance and/or other guidance and support to Rubinfeld in relation to defending himself and his property and due process rights in certain 3020-a disciplinary proceedings in which he was being prosecuted by Defendant DOE.

12) During the period from January 2008 to May 6, 2008, Plaintiff Teachers4Action and its individual members advanced expense monies and incurred out of pocket expenses that inured to the benefit of Rubinfeld.

13) During the period from January 2008 to May 6, 2008, Plaintiff Fagan advanced expense monies, incurred out of pocket expenses and performed legal services that inured to the benefit of Rubinfeld.

14) Prior to the advancement of expenses and services provided by Plaintiffs to Rubinfeld, he was facing termination of his employment, loss of his teaching license, ruinous fines and/or other damages.

15) As of March / April 2008, Defendant DOE had not offered a settlement to Rubinfeld on favorable terms.

16) In April 2008, Rubinfeld requested and Plaintiffs agreed to provide additional services to Rubinfeld as part of broader representation of Plaintiff Teachers4Action members to defend them against the disciplinary charges being made against Rubinfeld and other of Plaintiff Teachers4Action members by Defendant DOE, and in support of Rubinfeld's and other Plaintiff Teachers4Action members' affirmative claims for damages based upon, among other things, due process violations, harassment, discrimination, retaliation, unlawful confinement and other claims for relief as those which were set forth in the cases identified above in ¶ 10.

17) In early April 2008, Plaintiffs stepped up their efforts to complain against the inappropriate actions by Defendant DOE and the arbitrators involved in the disciplinary process. These efforts were undertaken specifically on behalf of Rubinfeld and certain other Plaintiff Teachers4Action members currently in 3020-a hearings.

18) At all times during the period from January 2008, Defendants Law Dept and DOE were aware that Plaintiff Fagan was acting as the lawyer for Rubinfeld.

19) During the period from April to early May 2008, Defendants Law Dept and DOE sought to find a way to settle the claims between Defendant DOE and Rubinfeld.

20) During the period from April to early May 2008, Defendants Law Dept and DOE also sought to find a way to settle the claims and to have Rubinfeld withdraw the complaint he made against the Arbitrator. [2]

---

[2] Upon information and belief, a material term, provision or fundamental component, either written or oral, to the Settlement Agreement was the withdrawal by Rubinfeld of his grievance and/or complaint filed on April 7, 2008 with the supervising disciplinary committee, against the Arbitrator for his conduct as an attorney / arbitrator in the 3020a hearings. The allegations that formed the basis of the grievance and/or complaint against the Arbitrator were not unique to Rubinfeld, and the Arbitrators' conduct that gave rise to the complaints is relevant to other Teachers4Action members. Rubinfeld informed plaintiffs that he did in fact withdraw the April 7, 2008 grievance. Plaintiffs are informed that in the event such a dismissal of the grievance / complaint against the Arbitrator did in fact occur, such an act would be a

---------------------

*Fagan et al v. NYC Law Dept and DOE – May 2008 – Complaint – Page 4*

21) On May 2, 2008, without notice to Plaintiffs, Defendant DOE and Rubinfeld entered into an agreement (hereinafter "the May 2nd Settlement") through which claims against one another were amicably settled.

22) On May 5, 2008, Rubinfeld disclosed to Plaintiff Teachers4Action members that the cash value of the settlement was in excess of $73,000 and that there were other good and valuable terms and benefits for Rubinfeld.

23) On May 2, 2008, prior to entering into the May 2nd Settlement, Defendants Law Dept. and DOE knew that Plaintiff Fagan was counsel of record in one or more of the cases between Defendant DOE and Rubinfeld.

24) On May 5, 2008, Rubinfeld discharged Plaintiff Fagan and directed that his name be withdrawn from the Federal Action.[3]

25) From May 6 – 15, 2008, Plaintiffs Fagan and Teachers4Action sought to secure their rights and property interests to the settlement monies from the May 2nd Settlement.

26) From May 6 to present, despite repeated demands of Defendants Law Dept. and DOE, the exact terms of the May 2nd Settlement have been withheld and concealed from Plaintiffs Fagan and Teachers4Action.

27) At all times relevant hereto, Plaintiffs served Defendants Law Dept. and DOE (as well as the Arbitrator and Rubinfeld) with a copy of a Notice of Charging Lien and demand that Defendants Law Dept. and DOE protect Plaintiffs' rights to legal fees (both contingent fees and/or quantum meruit fees) and reimbursement of expenses.

---

basis for further complaints, as any such provision in or related to a Settlement Agreement would violate relevant provisions *of 22 NYCRR 1200.3. (DR 1-102)*, including sub-paragraphs *a (5) and a (7)*.

[3] Although Rubinfeld never formally discharged Plaintiff Fagan from representation in the other actions between Defendant DOE and/or the Arbitrators, on the one hand, and Rubinfeld on the other hand, Rubinfeld has made admissions that all claims were settled and that Plaintiff Fagan's services were terminated as of May 6, 2008.

----------------------

*Fagan et al v. NYC Law Dept and DOE – May 2008 – Complaint – Page 5*

28) At all times relevant hereto, Defendants Law Dept. and DOE refused to cooperate with Plaintiffs and refused to recognize and honor the Notice of Charging Lien served upon them.

**29)** At all times relevant hereto, Defendants Law Dept. and DOE are about to disburse the settlement monies and compel Rubinfeld to take other affirmative actions that will or could cause further damages to Plaintiffs and their property rights.

### Count I – Charging Lien for Expenses & Legal Fees, pursuant to Judiciary Law § 475

30) Plaintiffs repeat and reallege the allegations of ¶¶ 7 to 29 above as if the same were set forth fully and at length herein.

31) Plaintiffs have a contractual right pursuant to reimbursement of out of pocket expenses and legal fees incurred that benefitted Rubinfeld and for which payment is to be made out of the May 2nd Settlement proceeds.

32) Plaintiffs have a common law right to reimbursement of out of pocket expenses and legal fees incurred that benefitted Rubinfeld and for which payment is to be made out of the May 2nd Settlement proceeds.

33) Plaintiffs notified Defendants Law Dept. and DOE of the existence of their entitlement and property rights to the reimbursement of out of pocket expenses and legal fees to be paid out of the May 2nd Settlement proceeds.

34) Defendants Law Dept. and DOE have refused to recognize Plaintiffs' entitlement and property rights to the reimbursement of out of pocket expenses and legal fees to be paid out of the May 2nd Settlement proceeds.

35) Upon information and belief, Defendants Law Dept. and DOE are about to distribute monies and property in and/or from the May 2nd Settlement in which Plaintiffs have entitlement and property rights to the reimbursement of out of pocket expenses and legal fees.

----------------------

36) As a direct and proximate result of Defendants aforesaid acts, Plaintiffs Fagan and
Teachers4Action have suffered monetary and other damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, jointly severally
and/or in the alternative for (i) compensatory damages in excessive of the jurisdictional limit of
this Court; (ii) exemplary, special and/or punitive damages in an amount to be awarded by the
ultimate trier of fact; and (iii) attorneys fees, interest and costs of suit.

## Count II – *Quantum Meruit* Value of Services

37) Plaintiffs repeat and reallege the allegations of ¶¶ 7 to 29 above as if the same were set forth
fully and at length herein.

38) Plaintiffs have performed services in good faith, which services were for the benefit of
Rubinfeld, from which Rubinfeld benefited and which directly resulted in the May 2nd
Settlement, as attested to by Rubinfeld's own statements to his colleagues and other of
Plaintiff Teachers4Action members.

39) Plaintiffs advanced and/or incurred out of pocket expenses in good faith, which expenses
were for the benefit of Rubinfeld, from which Rubinfeld benefited and which led to the May
2nd Settlement.

40) The services performed and out of pocket expenses advanced and/or incurred were received
by Rubinfeld, the person for whom they were intended, and led to the May 2nd Settlement.

41) Plaintiffs have a reasonable expectation of payment for services performed and out of pocket
expenses advanced and/or incurred for the benefit of Rubinfeld, for whom they were
intended, and which led to the May 2nd Settlement.

42) The services provided and out of pocket expenses advanced and/or incurred were reasonable
and led to the May 2nd Settlement.

43) The services provided and out of pocket expenses advanced and/or incurred were for legal services, litigation support, consulting, administrative, organizational and other services to assist Rubinfeld and which led to the May 2nd Settlement.

44) The services provided and out of pocket expenses advanced and/or incurred were for legal services important to help protect Rubinfeld from the improper acts by Defendant DOE and to help him advance his claims.

45) Plaintiffs assumed responsibility for extremely difficult legal, political and labor related issues for which they were uniquely situated and/or from which other entities and/or persons declined to assist Rubinfeld prior to Plaintiffs organizing and commencing the aforementioned legal actions.

46) The responsibility assumed by Plaintiffs went beyond just achieving a significant cash settlement for Rubinfeld. Plaintiffs also helped Rubinfeld retain his dignity and emotional well being.

47) Plaintiffs spent hundreds of hours in services, in preparation of pleadings, preparation of documentary evidence, preparation of legal memoranda and arguments, attendance at Court on multiple occasions and before multiple Judges.

48) Plaintiffs provided a level of skill, experience and dedication that was not otherwise available to Rubinfeld and which was directly responsible for the May 2nd Settlement.

49) Plaintiffs are entitled to be paid for their hourly consulting and other services, for the contingent and/or quantum meruit value of legal services, and reimbursed for their advanced or incurred out of pocket expenses.

50) Defendants Law Dept. and DOE have refused to honor the Plaintiffs charging lien.

------------------------

51) As a direct and proximate result of Defendants aforesaid acts, Plaintiffs Fagan and Teachers4Action, have suffered monetary and other damages.

  **WHEREFORE,** Plaintiffs demand judgment against Defendants, jointly severally and/or in the alternative for (i) compensatory damages in excessive of the jurisdictional limit of this Court; (ii) exemplary, special and/or punitive damages in an amount to be awarded by the ultimate trier of fact; and (iii) attorneys fees, interest and costs of suit.

### <u>Count III – Tortious Interference with Contract</u>

52) Plaintiffs repeat and reallege the allegations of ¶¶ 7 to 29 above as if the same were set forth fully and at length herein.

53) A contract for legal services and reimbursement of out of pocket expenses existed between Rubinfeld and Plaintiffs

54) Defendants Law Dept. and DOE knew of the existence of the contract between Plaintiffs and Rubinfeld.

55) Defendants Law Dept. and DOE induced Rubinfeld to breach the contract with Plaintiffs.

56) But for Defendants Law Dept. and DOE actions, Rubinfeld would not have breached the contract with Plaintiffs.

**57)** As a direct and proximate result of Defendants' aforesaid acts, Plaintiffs Fagan and Teachers4Action have suffered monetary and other damages.

  **WHEREFORE,** Plaintiffs demand judgment against Defendants, jointly severally and/or in the alternative for (i) compensatory damages in excessive of the jurisdictional limit of this Court; (ii) exemplary, special and/or punitive damages in an amount to be awarded by the ultimate trier of fact; and (iii) attorneys fees, interest and costs of suit.

----------------------

## Count IV – Unjust Enrichment

58) Plaintiffs repeat and reallege the allegations of ¶¶ 7 to 29 above as if the same were set forth fully and at length herein.

59) Defendants Law Dept.'s and DOE's refusal to honor the charging lien, interference with Plaintiffs' contracts and other wrongful acts allowed Defendants Law Dept. and DOE to retain monies that belong to Plaintiffs.

60) Defendants Law Dept.'s and DOE's retention of monies that belong to Plaintiffs allowed Defendants Law Dept. and DOE to be unjustly enriched by its retention of monies that did not belong to them.

**61)** As a direct and proximate result of Defendants' aforesaid acts, Plaintiffs Fagan and Teachers4Action have suffered monetary and other damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly severally and/or in the alternative for (i) compensatory damages in excessive of the jurisdictional limit of this Court; (ii) exemplary, special and/or punitive damages in an amount to be awarded by the ultimate trier of fact; and (iii) attorneys fees, interest and costs of suit.

## Count V – Declaratory Judgment Pursuant to CPLR 3001 et seq.

62) Plaintiffs repeat and reallege the allegations of ¶¶ 7 to 29 above as if the same were set forth fully and at length herein.

63) Upon information and belief, a material term, provision or fundamental component, either written or oral, to the Settlement Agreement was the withdrawal by Rubinfeld of his grievance and/or complaint filed on April 7, 2008 with the supervising disciplinary committee, against the Arbitrator for his conduct as an attorney / arbitrator in the 3020a hearings.

-----------------------

64) The allegations that formed the basis of the grievance and/or complaint against the Arbitrator were not unique to Rubinfeld and the Arbitrators' conduct that gave rise to the complaints is relevant to other of Plaintiff Teachers4Action members.

65) Upon information and belief, the inclusion of a provision or undertaking through which Rubinfeld was to dismiss the grievance / complaint against the Arbitrator would violate relevant provisions of *22 NYCRR 1200.3. (DR 1-102)*, including sub-paragraphs *a (5) and a (7)*.

66) As a direct and proximate result of Defendants' wrongful acts, Plaintiffs request a Declaratory Judgment that the May 2nd Settlement is void as being violative of the relevant provisions of *22 NYCRR 1200.3. (DR 1-102)*, including sub-paragraphs *a (5) and a (7)*.

67) As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and will continue to suffer damages for which there is no adequate remedy at law.

**WHEREFORE,** Plaintiff demands declaratory judgment and such other just and equitable relief as is necessary.

Dated:   May 19, 2008         By: _____
         New York, NY
                               Edward D. Fagan
                               5 Penn Plaza, 23rd Floor
                               New York, NY  10001
                               Tel. (646) 378-2225
                               *Email: faganlaw.teachers@gmail.com*
                               Plaintiff and Plaintiffs Counsel

                               Teachers4Action
                               (by its Executive Committee Members)

Dated:   May 19, 2008         By: _____
         Queens, NY
                               Florian Lewenstein, President

-----------------------

*Fagan et al v. NYC Law Dept and DOE – May 2008 – Complaint – Page 11*

Dated:  May 19, 2008
        Queens, NY

By: _____
    Mauricio Zapata, Executive V.P

Dated:  May 19, 2008
        Queens, NY

By: _____
    Michael Hollander, Secretary

Dated:  May 19, 2008
        Queens, NY

By: _____
    Michael McLoughlin, Treasurer

Dated:  May 19, 2008
        Queens, NY

By: _____
    Linda Seiffert, Director

Dated:  May 19, 2008
        Queens, NY

By: _____
    Jonathan Berlyne, Director

EXHIBIT "K"

Venue is based on Plaintiffs and/or
Defendants' Place of Business or the
actions taking place in this County.

SUPREME COURT FOR STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
Edward D. Fagan Esq.,                               :
Teachers4Action;                                    :
                                     Plaintiffs     :
      - vs -                                        :
                                                    :
Richard Krinsky Esq.,                               :
Denise Goebel, and                                  :
John Does/Jane Does 1 – 10                          :
                                     Defendants     :
-------------------------------------------------------------X

INDEX #
**0 8 - 1 0 7 0 0 8**

Date Purchased:
**5/20/08**

SUMMONS    **NEW YORK
COUNTY CLERK'S OFFICE**

MAY 2 0 2008

**NOT COMPARED
WITH COPY FILE**

### TO THE FOLLOWING DEFENDANTS:

Richard Krinsky Esq., 2117 Avenue R, Brooklyn, NY 11229

Denise Goebel, _7615 21st Avenue_ , Bensonhurst, NY

   **YOU ARE HEREBY SUMMONED** to answer the attached complaint within twenty (20)
days of service of this Summons, exclusive of the date of service (or thirty days if this Summons
is not served upon you personally in the State of New York) and in case you fail to answer, plead
or otherwise move in response to the Complaint, judgment will be taken against you for the relief
demanded in the Complaint.

DATED:   May 19, 2008
         New York, NY

By: /s/ [signature]
     Edward D. Fagan Esq.
     5 Penn Plaza, 23rd Floor
     New York, NY 10001
     Tel (646) 378-2225
     Email: faganlaw@gmail.com

Supreme Court of State of New York
County of New York

--------------------------------------------------------------X

Edward D. Fagan Esq.,
Teachers4Action;

                        Plaintiffs

    - vs -

Richard Krinsky,
Denise Goebel, and
John Does/Jane Does 1 – 10

                        Defendants

--------------------------------------------------------------X

INDEX #

*08-107008*

**NEW YORK
COUNTY CLERK'S OFFICE**

**MAY 2 0 2008**

**NOT COMPARED
WITH COPY FILE**

## INTRODUCTION

This action is necessary predicated upon Defendants' (i) unauthorized disclosure of confidential materials to adversaries, (ii) tortious interference, (iii) negligence and (iv) other tortious unlawful and/or wrongful acts.

## PARTIES

1) Plaintiff Edward D. Fagan (hereinafter "Fagan") is a lawyer licensed to practice in New York State who maintains offices at 5 Penn Plaza, 23rd Floor, New York, NY 10001.

2) Plaintiff Teachers4Action (hereinafter "Teachers4Action") is an association of teachers doing business in New York City.

3) Defendant Richard Krinsky (hereinafter "Krinsky") is a lawyer licensed to practice in New York State, who maintains his offices at Richard Krinsky Esq., 2117 Avenue R, Brooklyn, NY 11229.

4) Defendant Denise Goebel (hereinafter "Goebel") is a former client of Plaintiff Fagan's and a former member of Plaintiff Teachers for action.

--------------------------

*Fagan et al v. Krinsky, Goebel et al – May 2008 – Complaint – Page 1*

5) Defendants John Doe and Jane Does 1 – 10 (hereinafter "Does 1 – 10") are persons whose identities are not yet known but whose identities will be discovered in the course of this proceeding.

## JURISDICTION & VENUE

6) The Court has jurisdiction, and venue is proper in New York County, over Defendants, pursuant to CPLR §§ 301, insofar as they reside, maintain and/or conduct business in, and/or the relevant acts took place in, the State of New York and/or in the County of New York.

7) The Court also has jurisdiction over this action pursuant to CPLR § 3001 et seq.

## FACTS RELEVANT TO CAUSES OF ACTION

8) Plaintiff Fagan agreed to provide legal services to Plaintiff Teachers4Action member, Defendant Goebel.

9) Plaintiffs Fagan, Teachers4Action and Defendant Goebel entered into a contract pursuant to which legal services and costs related to the legal services were provided or organized by Plaintiffs Fagan and Teachers4Action to/for Defendant Goebel.

10) Pursuant to the contract, Defendant Goebel was to cooperate with Plaintiffs and was to keep confidential all strategy and communications related to the actions that were being taken by Plaintiffs on behalf of Teachers4Action members, including Goebel.

11) From January 2008 to early April 2008, Plaintiff Teachers4Action advanced costs related to the legal services being provided or organized by Plaintiff Fagan to/for Goebel.

12) From January 2008 to early April 2008, Plaintiffs filed claims and/or were taking action on behalf of Goebel and other Teachers4Action members in New York Federal Court and New York State Court and in other venues.

---------------------------

*Fagan et al v. Krinsky, Goebel et al – May 2008 – Complaint – Page 2*

13) In addition to the actual claims filed, Plaintiffs Fagan and/or Teachers4Action provided legal advice, assistance and/or other guidance and support to Goebel in relation to defending herself and her property and due process rights in certain 3020-a disciplinary proceedings in which she was being prosecuted by Defendant DOE.

14) During the period from January 2008 to early April 2008, Plaintiff Teachers4Action and its individual members advanced expense monies and incurred out of pocket expenses that inured to the benefit of Goebel.

15) During the period from January 2008 to early April 2008, Plaintiff Fagan advanced expense monies, incurred out of pocket expenses and performed legal services that inured to the benefit of Goebel.

16) As of April 8, 2008, Goebel owed Plaintiffs for out of pocket expenses advanced and/or incurred and the quantum meruit value of legal services for Goebel.

17) In early April 2008, Plaintiffs stepped up their efforts to complain against the inappropriate actions by Defendant DOE and the arbitrators involved in the disciplinary process. These efforts were or were anticipated to be taken undertaken on behalf of Goebel and other Teachers4Action members.

18) From January 2008 to early April 2008, Defendant Goebel was sent confidential communications from Plaintiffs related to the litigation and other strategies (hereinafter "The Confidential Communications") that Plaintiffs were taking or contemplating to take on behalf of Teachers4Action members, including Goebel.

19) In early April 2008, unbeknownst to Plaintiffs, without Plaintiffs' prior written consent and in violation of the confidentiality provisions of the contract and/or agreements with Plaintiffs, Defendant Goebel forwarded copies of The Confidential Communications directly or

----------------------

*Fagan et al v. Krinsky, Goebel et al – May 2008 – Complaint – Page 3*

indirectly to unauthorized persons and/or directly or indirectly provided The Confidential Communications to Defendants Krinsky and/or Does 1 - 10.

20) In early April 2008, unbeknownst to Plaintiffs and without Plaintiffs' consent, Defendants Krinsky and/or Does 1 – 10, came into possession of The Confidential Communications and then provided them to Plaintiff Teachers4Action's adversaries and/or other unauthorized recipients in or related to the Federal and State actions and administrative proceedings.

21) From early April 2008 to the present, Defendants Krinsky and/or Does 1 – 10 used The Confidential Communications with the intent to cause damage to Plaintiffs and their claims.

22) From early April 2008 to the present, Defendants Krinsky's and/or Does 1 – 10's use of The Confidential Communications has caused damage to Plaintiffs and their claims.

23) On April 8, 2008, Defendant Goebel notified Plaintiffs of her intention to withdraw from the Federal Action and sought to terminate the agreements with Plaintiffs Fagan and Teachers4Action.

24) As of early April 2008, Defendant Goebel had not reimbursed Plaintiffs for the out-of-pocket expenses advanced and/or the legal fees, or quantum meruit value of the legal fees, due to Plaintiffs.


**Count I – Charging Lien for Expenses & Legal Fees, pursuant to Judiciary Law § 475**

25) Plaintiffs repeat and reallege the allegations of ¶¶ 8 to 24 above as if the same were set forth fully and at length herein.

26) Plaintiffs have a contractual right pursuant to reimbursement of out of pocket expenses and legal fees incurred that benefitted Goebel and for which payment is to be made out of any settlement proceeds.

-----------------------

27) Plaintiffs have a common law right to reimbursement of out of pocket expenses and legal fees incurred that benefitted Goebel and for which payment is to be made out of any proceeds.

28) The amount of the lien will be determined through binding expedited arbitration pursuant to the contract between Plaintiffs and Defendant Goebel.

29) Plaintiffs are entitled to a declaratory judgment, pursuant to CPLR 3001 et seq that a charging lien exists against any proceeds of any settlement to protect and insure that whatever award will be made through binding expedited arbitration will be available to be paid.

30) In the event a declaratory judgment to protect the Plaintiffs' entitlement to their share of the proceeds of any settlement is not granted, Plaintiffs Fagan and Teachers4Action will suffer monetary and other damages.

**WHEREFORE,** Plaintiffs demand (i) declaratory judgment pursuant to CPLR 3001 et seq that a charging lien exists against any settlement between Defendant Goebel related to the actions and/or claims initiated by or services rendered during the period from January to early April 2008; and (ii) attorneys fees, interest and costs of suit.

### Count II – Tortious Interference

31) Plaintiffs repeat and reallege the allegations of ¶¶ 8 to 24 above as if the same were set forth fully and at length herein.

32) Contracts for legal services existed between Plaintiffs and Teachers4Action members, including Goebel.

33) Defendants Krinsky and/or Does 1 – 10 knew of the existence of the contracts between Plaintiffs and Teachers4Action members, including Goebel.

----------------------

*Fagan et al v. Krinsky, Goebel et al – May 2008 – Complaint – Page 5*

34) Claims and actions were being taken or were being prepared, in matters pending or about to be commenced in US District Court, NYS Court, in the administrative hearings or in other forums on behalf of Plaintiffs and Teachers4Action members, including Goebel.

35) Without authorization or prior consent of Plaintiffs, and in violation of the confidentiality provisions of the contract and/or agreements with Plaintiffs, Defendant Goebel forwarded copies of The Confidential Communications directly or indirectly to unauthorized persons, and directly or indirectly provided The Confidential Communications to Defendants Krinsky and/or Does 1 - 10.

36) Defendants Krinsky and/or Does 1 – 10 sought to use The Confidential Communications against Plaintiffs and Plaintiff Teachers4Action members and to their detriment.

37) Defendants Krinsky and/or Does 1 – 10 used The Confidential Communications with the intent to cause damage to Plaintiffs and Teachers4Action members and their claims.

38) Defendants Krinsky's and/or Does 1 – 10's use of The Confidential Communications has caused damage to Plaintiffs and Teachers4Action members and their claims.

39) The actions of Defendants Krinsky and/or Does 1 – 10 were unlawful and/or improper.

40) As a direct and proximate result of Defendants Goebel's, Krinsky's and/or Does 1- 10's aforesaid acts, Plaintiffs Fagan and Teachers4Action and Teachers4Action members, have suffered monetary and other damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly severally and/or in the alternative for (i) compensatory damages in excess of the jurisdictional limit of this Court; (ii) exemplary, special and/or punitive damages in an amount to be awarded by the ultimate trier of fact; and (iii) attorneys fees, interest and costs of suit.

--------------------

## Count III- Negligence

41) Plaintiffs repeat and reallege the allegations of ¶¶ 8 to 24 above as if the same were set forth fully and at length herein.

42) Defendant Goebel was not authorized and/or permitted to distribute The Confidential Communications to any persons without prior written consent of Plaintiffs and all Plaintiff Teachers4Action members.

43) Defendant Goebel distributed and/or allowed The Confidential Communications to be distributed directly and/or indirectly to unauthorized third persons, and/or Plaintiffs' adversaries, including but not limited to Defendants Krinsky and/or Does 1- 10.

44) The distribution of The Confidential Communications by Defendant Goebel to Plaintiff Teachers4Action adversaries and other unauthorized persons, including but not limited to Defendants Krinsky and/or Does 1 – 10, was not permitted.

45) The distribution of The Confidential Communications by Defendant Goebel to Plaintiff Teachers4Action adversaries and other unauthorized persons, including but not limited to Defendants Krinsky and/or Does 1 – 10, was negligent, reckless and careless.

46) Defendants Krinsky and/or Does 1 – 10 were not authorized and/or permitted to distribute The Confidential Communications to any persons without prior written consent of Plaintiffs and all Plaintiff Teachers4Action members.

47) Defendants Krinsky and/or Does 1 – 10 distributed and/or allowed The Confidential Communications to be distributed directly and/or indirectly to unauthorized third persons, and/or Plaintiffs' adversaries.

48) The distribution of The Confidential Communications by Defendants Krinsky and/or Does 1 – 10 was not permitted.

--------------------

*Fagan et al v. Krinsky, Goebel et al – May 2008 – Complaint – Page 7*

49) The distribution of The Confidential Communications by Defendants Krinsky and/or Does 1

— 10 to Plaintiff Teachers4Action adversaries and other unauthorized persons was negligent,

reckless and careless.

50) As a direct and proximate result of Defendants Goebel's, Krinsky's and/or Does 1- 10's

aforesaid acts, Plaintiffs Fagan and Teachers4Action and Teachers4Action members have

suffered monetary and other damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly severally

and/or in the alternative for (i) compensatory damages in excess of the jurisdictional limit of this

Court; (ii) exemplary, special and/or punitive damages in an amount to be awarded by the

ultimate trier of fact; and (iii) attorneys fees, interest and costs of suit.

Dated:  May 19, 2008
   New York, NY

By: _____

  Edward D. Fagan
  5 Penn Plaza, 23rd Floor
  New York, NY 10001
  Tel. (646) 378-2225
  *Email: faganlaw.teachers@gmail.com*
  Plaintiff and Plaintiffs Counsel

Teachers4Action (by its Executive Committee Members)

Dated:  May 19, 2008
   Queens, NY

By: _____

  Florian Lowenstein, President

Dated:  May 19, 2008
   Queens, NY

By: _____

  Mauricio Zapata, Executive V.P

------------------------

*Fagan et al v. Krinsky, Goebel et al – May 2008 – Complaint - Page 8*

Dated:   May 19, 2008          By: _____
         Queens, NY                 Michael Hollander, Secretary

Dated:   May 19, 2008          By: _____
         Queens, NY                 Michael McLoughlin, Treasurer

Dated:   May 19, 2008          By: _____
         Queens, NY                 Linda Seiffert, Director

Dated:   May 19, 2008          By: _____
         Queens, NY                 Jonathan Berryne, Director

_____

*Fagan et al v. Krinsky, Goebel et al – May 2008 – Complaint – Page 9*