UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
TEACHERS4ACTION, et al.,  : Index No. 08 Civ. 548 (VM) (AJP)
                          :
       Plaintiffs,        :
    v.                    : **DECLARATION OF**
                          : **LEROY BARR**
MICHAEL G. BLOOMBERG, et al., :
                          :
       Defendants.        :
                          :
------------------------------------- x

  LEROY BARR, under penalty of perjury under the laws of the United States of America, declares that the foregoing is true and correct:

  1. I am Director of Staff for the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO ("UFT"). The UFT is a labor union duly organized under the New York Public Employees Fair Employment Act, Civil Service Law §200 et seq. (the "Taylor Law") and is the recognized bargaining agent for all non-supervisory pedagogical personnel and classroom paraprofessionals employed by the Board of Education of the City School District of the City of New York (the "BOE"). The UFT represents its members in collective bargaining negotiations with the BOE concerning teachers' terms and conditions of employment as well as other related matters.

  2. I respectfully make this declaration in response to Plaintiffs' June 9, 2008 letter characterizing the events of June 4, 2008 and the videotaping of the Temporary Reassignment Center ("TRC") located at 4111 Broadway. I am familiar with the facts set forth below and make this declaration based upon my personal experience.

3. On or about May 20, 2008 I, along with other UFT staff, met with the Liaison's elected by teachers assigned to TRCs. At that meeting we discussed making TRC site visits City-wide.

4. On June 4, 2008, I, along with Ron Isaac, Betsy Combier, Wilma Valazquez, Zina Myrick, Robert Astrowsky and Claude Hersh, among others, made our second such site visit to the TRC located at 4111 Broadway, New York, New York. The group consisted of UFT representatives and New York State United Teachers' Assistant General Counsel Claude Hersh.

5. Upon arriving at the TRC, I was informed that Plaintiffs' Counsel, Mr. Fagan was present inside the room where our meeting was to be had.

6. I spoke with security officers at the TRC regarding whether it was appropriate for Mr. Fagan to be present. The security officers may have spoken to Mr. Fagan, but apparently did not require him to leave. Shortly thereafter, I observed Mr. Fagan step out of the room and back into the hallway where he spoke some teachers congregated there in advance of the meeting. I heard Mr. Fagan state to the teachers, in some and substance, that he had commenced a federal action against the BOE and the UFT and that he had made a request for permission to inspect the TRCs.

7. I then noticed a man standing near me holding a video camera pointed at Mr. Fagan. The man appeared to be with Mr. Fagan, as he was following Mr. Fagan with the camera and recording Mr. Fagan's actions and conversations. I asked the individual to stop filming and he refused.

8. I then proceeded into the meeting room to address the assembled teachers. I introduced myself and the UFT team. I also identified Mr. Fagan and explained that he had commenced a lawsuit against the BOE and the UFT. I then advised the teachers that the UFT representatives would not address the group in Mr. Fagan's presence and that the teachers should determine if they wished Mr. Fagan to remain. I then left the room to permit them to consider the question.

9. All this while, the individual with the camera seemed to be following Mr. Fagan, filming him and anyone who spoke to him.

10. I waited in the hallway while the teachers deliberated. Mr. Fagan had entered the room after I stepped out, addressed the group and remained in the room and talked with the teachers as they considered the question. Ultimately, the teachers voted that Mr. Fagan should leave and the meeting should proceed.

11. Mr. Fagan left the TRC.

12. After Mr. Fagan left the TRC, I reentered the meeting room to commence the meeting. Upon entering I again observed the individual with the camera. He was standing in the room filming. I stated that I did not give my consent to be filmed, nor did I consent to allow any of the UFT representatives to be filmed. One of the teachers asked who the individual was and I responded that I did not know, but if they did not wish to be filmed, they should make that known. Finally, the individual stopped filming and the meeting went on.

13. It was my impression from witnessing Mr. Fagan and the individual with the camera that they knew each other and were working together.

Dated: New York, New York
June 11, 2008

/s/ Leroy Barr
LEROY BARR