USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 7/7/08

EDWARD D. FAGAN ESQ.

*Five Penn Plaza, 23rd Floor, NY, NY 10001, Tel. (646) 378-2225*
*Email: faganlawintl@aim.com (Official Email Address for Court Documents)*
*Email : faganlaw.teachers@gmail.com (Email Address for Teachers4Action Case)*

RECEIVED
JUL - 7 2008
CHAMBERS OF
ANDREW J. PECK

July 5, 2008

Via Fax (212) 805-7933
Honorable Andrew J. Peck, USMJ
United States District Court
Southern District of New York
500 Pearl Street, Chambers
New York, NY 10007

*Re: Teachers4Action et al v. Bloomberg et al, 08-cv-548 (VM)(AJP)*

**MEMO ENDORSED** p4

Honorable Judge Peck:

As the Court knows, I am Plaintiffs' counsel in this matter.

In accordance with Judge Marrero's July 2, 2008 Order, Plaintiffs address this letter to Your Honor to request the Court convene a Rule 16 Conference.

This request is based on events that occurred and that Plaintiffs discovered immediately before the July 4th Holiday weekend. Because of these events, Plaintiffs believe that a Rule 16 Conference might (i) expedite disposition of the action, (ii) discourage wasteful pretrial activities, and (iii) facilitate settlement. Allow me to explain.

On July 3rd , 2008, Plaintiffs learned – through the media - that the Defendants New York City Department of Education ("DOE") and United Federation of Teachers ("UFT") entered into an Agreement (hereinafter *"The July 2008 Agreement")* related to The Temporary Reassignment Centers a/k/a Rubber Rooms, the 3020a hearing process and certain aspects of the Collective Bargaining Agreement. *See Exhibit 1.*

On July 4th, 2008 obtained a copy of *The Agreement* between Defendants DOE and the UFT. *See Exhibit 2. The July 2008 Agreement* was not provided to Plaintiffs, and to Plaintiffs' knowledge it may not have been provided to other affected NYC teachers who are UFT members, DOE employees and who are or may be in the midst of 3020a hearing process.

As the Court can see, *The July 2008 Agreement* addresses (i) certain issues related to the Rubber Rooms *(See Exhibit 2, pp. 1 -2)*, (ii) certain aspects of the 3020a Hearing Procedures *(See Exhibit 2, pp. 3 - 4)* and (iii) certain aspects of the Contract Arbitrations *(See Exhibit 2, pp. 4 -5)*.

*The July 2008 Agreement* relates to certain aspects of the factual allegations and claims, as set forth in Plaintiffs' Second Amended Complaint, against both the UFT and DOE Defendants.

Plaintiffs welcome the news of *The July 2008 Agreement* as it appears to be *"step in the right direction"* as it relates to the broader issues of the problems that exist with, among other things, (i) Article 21-g of the Collective Bargaining Agreement, (ii) ongoing constitutional due process and other violations related to NYS Education Law 3020a and disciplinary hearing procedures, (iii) ongoing problems related to Arbitration Panel, (iv) ongoing problems related to the Rubber Room confinements and (v) other issues affecting NYC public school teachers.

# EDWARD D. FAGAN ESQ.

-------------

*The July 2008 Agreement* reinforces allegations of Plaintiffs' Second Amended Complaint. For ease of reference, the twelve causes of action in Plaintiffs' Second Amended Complaint are

- *First Cause of Action - Violation/Interference with Constitutionally Protected Rights - pp. 26 - 32;*
- *Second Cause of Action – Harrassment & Hostile Work Environment – pp 32 - 36;*
- *Third Cause of Action – Retaliation – pp. 36 - 40;*
- *Fourth Cause of Action – Constructive Discharge – pp 40 - 41;*
- *Fifth Cause of Action - Breach of Contract – pp 41 - 43;*
- *Sixth Cause of Action – Breach of Fiduciary Duty and Duty of Fair Representation Violation of Labor-Management Reporting & Disclosure Act – pp. 43 - 46;*
- *Seventh Cause of Action – Aiding & Abetting Breach of Fiduciary Duty – pp. 47 – 49;*
- *Eighth Cause of Action – Negligent Hiring, Retention & Supervision (DOE) – pp. 49 – 51;*
- *Nineth Cause of Action – Negligent Hiring, Retention & Supervision (UFT) – pp. 51 – 52;*
- *Tenth Cause of Action – Misrepresentation, Fraud and Conspiracy to Violate Plaintiffs' Rights – pp. 52 – 60;*
- *Eleventh Cause of Action – False Confinement and Resulting Physical & Emotional Injuries – pp. 60 – 61; and*
- *Twelfth Cause of Action – Declaratory Judgment – pp. 61 – 63.*

Plaintiffs submit that *The July 2008 Agreement,* Defendants DOE and UFT confirms certain facts upon which one or more of the twelve causes of action in Plaintiffs' Second Amended Complaint are predicated. By way of example:

1. Defendants DOE and UFT admit inherent problems in the 3020a disciplinary process through which charges are proffered against teachers (in this case Plaintiffs) and which resulted in reassignments to Rubber Rooms *(See Exhibit 2 – p. 1 – highlighted section);*

2. Defendants DOE and UFT admit the inherent problems in removing certain teachers (in this case Plaintiffs) from their schools and improper assignment to Rubber Rooms *(See Exhibit 2 – p. 2 – highlighted section);*

3. Defendants DOE and UFT admit inherent problems through which the discipline and reassignment of certain teachers (in this case Plaintiffs) to Rubber Rooms, in some instances (in this case Plaintiffs) was used to retaliate against whistleblowers such as Plaintiffs *(See Exhibit 2 – p. 2 – highlighted section);*

4. Defendants DOE and UFT admit some of the inherent problems with the permanent arbitration panel as provided for in Article 21-(G)(2) as related to the 3020a Disciplinary hearing process related to teachers (in this case Plaintiffs), including but not limited to:

07 Jul 2008 17:09 Case 1:08-cv-00548-VM-AJP Document 74 Filed 07/07/2008 Page 3 of 11 P. 4

EDWARD D. FAGAN ESQ.

*Hon. Andrew J. Peck USMJ – July 7, 2008 Letter – Page 3*
*Re: Teachers4Action et al v. Bloomberg et al, 08-CV-548 (VM)(AJP)*

a. Time delays that violate NYS Education Law 3020a, 8 NYCRR 82-1 et seq which, as relate to Plaintiffs, should automatically nullify all ongoing efforts to discipline Plaintiffs or to enforce any discipline or agreements reached to settle disciplinary charges, since the time limitations as contained in the Arbitration Contract were violated and the arbitrations were therefore conducted without authority *(See Exhibit 2 – p. 3 – highlighted section)* ; [1]

b. Inadequacy with the Panel of Arbitrators, including the number and rotation of the arbitrators *(See Exhibit 2 – p. 3 – highlighted section);*

c. Inadequacy with due process in the 3020a hearings, related to access to letters purportedly in teachers' files, reports of investigations purportedly conducted by DOE agencies, witness statements purportedly in DOE possession, and timely production of evidence, discovery and exculpatory information in DOE possession *(See Exhibit 2 – p. 3 – highlighted section);*

d. Problems with DOE employees preservation of evidence related to the charges and efforts to discipline teachers, in this case Plaintiffs *(See Exhibit 2 – p. 4 – highlighted section);* and

e. Problems resulting from The Arbitrators failure to comply with the timing requirements (which are the functional equivalent of statutes of limitation) provided in NYS Education Law 3020a *(See Exhibit 2 – p. 4 – highlighted section).*

There are other aspects of *The July 2008 Agreement* that raise questions. For example, (i) the section dealing with timing issues related to certain charges where it states the "*. . . preceding sentences shall not be enforceable through either the grievance processes . . . (of) the collective bargaining agreement or other legal mechanism" (See Exhibit 2 – p. 4 – highlighted section)*; (ii) sections that attempt to change certain time requirements related to arbitration dates or attempt to relax or excuse the absolute timing or other provisions of NYS Education Law 3020a, 8 NYCRR 82-1 et seq. and the Arbitrators' (*(See Exhibit 2 – pp. 4 & 5 – highlighted section)*.

As indicated above, Plaintiffs submit that based upon the existence of *The July 2008 Agreement* entered into a few days ago by Defendants UFT and DOE, The Court should convene a Rule 16 Conference for the following purposes:

First – To consider a modification of the existing briefing schedule so the new facts and admissions as they are represented in *The July 2008 Agreement* can be considered ;

[1] Some problems Plaintiffs have suffered that addressed in *The July 2008 Agreement* formed the basis for the claims related to the 3020a hearings themselves as set forth in the recently filed case entitled *Adams et al v. New York State Department of Education 08-cv-5996 (UA) (,The Adams Case")*. At the time *The Adams Case* was filed Plaintiffs were unaware of *The July 2008 Agreement*. A separate letter will be sent regarding the impact of *The July 2008 Agreement* on the claims of *The Adams Case* plaintiffs.

# EDWARD D. FAGAN ESQ.

Second – To permit Plaintiffs to file a Third Amended Complaint to include certain additional facts that are confirmed and/or are supported by *The July 2008 Agreement*;

Third - To permit Plaintiffs to move for enforcement of, or to determine the enforceability of, certain aspects of The *The July 2008 Agreement*;

Fourth - To permit limited discovery related to *The July 2008 Agreement;* and

Fifth - To consider convening the parties for potential settlement discussions in light of *The July 2008 Agreement.*

In view of the foregoing, Plaintiffs pray the Court consider convening the Rule 16 Conference at the Court's earliest convenience.

As always, Plaintiffs thank the Court for its continued consideration in this regard.

Respectfully submitted,

Edward D. Fagan

EDF/lsf

*Attachment – Exhibit 1 – July 2, 2008 Daily News Article*
*Exhibit 2 – The July 2008 Agreement*

*Cc: Hon. Victor Marrero USDJ – By Hand*
*Blanche Greenfield Esq. – For NYC Defendants– Fax (212) 788-8877*
*Charles Moerdler Esq. – For Defendants UFT, Weingarten & Combier – Fax (212) 806-6006*

BY FAX

**MEMO ENDORSED** 7/7/08

[illegible]

SO ORDERED:

Hon. Andrew Jay Peck
United States Magistrate Judge

# City, union cut bad teachers' stretch in rubber room

BY CARRIE MELAGO
DAILY NEWS STAFF WRITER

Wednesday, July 2nd 2008, 8:38 PM

Teachers accused of misconduct will spend less time idling in "Rubber Rooms" on the taxpayer's dime under a deal hammered out between the teachers union and education officials.

To ease the backlog of about 700 accused teachers pulled from the classroom with full salary, the Education Department will expand the number of arbitrators by 40% and follow stricter timelines for investigating.

"It's going to allow us to get these cases heard more quickly," said Dan Weisberg, the Education Department's chief executive for labor policy. "It also means they'll be less of a burden for taxpayers."

A recent Daily News analysis found that taxpayers spend about $65 million a year on the salaries of teachers accused of misconduct ranging from lateness to corporal punishment and sex abuse.

Under the agreement, the arbitration panel will be boosted from 20 to 28 members, with 14 devoted strictly to cases of alleged incompetence. Also, charges against teachers would be put in writing, and disciplinary action would be taken against staff who make false allegations.

Teachers Union President Randi Weingarten praised the agreement, saying she hopes it will make reassignment centers more "humane."

"We were focusing on fairness and timeliness because we know justice delayed is justice denied," she said.

Exhibit 1



UFT

United Federation of Teachers
*A Union of Professionals*

June 27, 2008

Joel I. Klein
Chancellor
Department of Education
52 Chambers Street
New York, NY 10007

Dear Chancellor Klein,

This letter will confirm certain mutual understandings and agreements between the Board of Education of the City School District of the City of New York (the "DOE") and the United Federation of Teachers ("UFT").

*Temporary Reassignment Centers ("TRCs")*

Effective immediately, the letter the DOE provides to each UFT-represented employee ("Employee") to inform the Employee that he or she has be reassigned to a TRC will indicate the general grounds for each reassignment (where an Employee is being investigated by the Office of the Special Commissioner of Investigation ("SCI"), just that information will be supplied). The DOE will provide all currently reassigned Employees who have not been arrested or charged under Education Law § 3020-a with written confirmation of the general grounds for the reassignment.

Effective with the end of 2007-08 school year, where a UFT-represented employee is reassigned, the amount of time for the Office of Special Investigations ("OSI") to conduct an investigation shall be 90 days; the amount of time to transfer criminal cases to the Administrative Trials Unit ("ATU") shall be 30 days; and the amount of time for the DOE to draft Education Law § 3020-a charges shall be 40 days. The DOE will diligently attempt to comply with these timeframes. The preceding two sentences shall not be enforceable through either the grievance processes set forth in the relevant collective bargaining agreements or any other legal mechanism. Each year, a labor-management committee composed, in equal parts, of UFT and DOE representatives shall meet to discuss whether these time frames are being complied with and, if not, to agree on further actions to be taken with respect to the time frames. This paragraph shall not constitute a waiver of any other rights an Employee may have.

52 Broadway, New York, NY 10004 p: 212.777.7500 www.uft.org

Officers: Randi Weingarten President, Michael Mendel Secretary, Mel Aaronson Treasurer, Robert Astrowsky Assistant Secretary, Mona Romain Assistant Treasurer
Vice Presidents: Carmen Alvarez, Michelle Bodden, Richard Farkas, Aminda Gentile, Michael Mulgrew, Frank Volpicella

Exhibit 2

The DOE has identified a unit within the Division of Human Resources that will be responsible for managing and tracking all reassignment cases, ensuring that all reassignments are made consistent with applicable policy, and working with the other DOE offices involved to make sure that the process is accelerated based on, among others, the initiatives set forth in this letter. This unit will be making regular quarterly reports that will be shared with the UFT.

Absent unusual circumstances, effective immediately, allegations being investigated by principals will not result in an Employee being removed from his or her school.

The DOE has conducted a central review of all investigations of currently reassigned Employees conducted by principals and, where appropriate, reassigned Employees back to their schools.

Any reassignments that are not authorized by the Office of Personnel Investigation or OSI will be reviewed by central DOE. The DOE will consult with the UFT within a week to explain this review process and seek to improve it. The DOE will provide the UFT with regular listings of reassigned pedagogues, no less frequently than on a weekly basis, and if the UFT disagrees with any reassignment decisions it can present its objections for consideration to the Office of Labor Relations. Should a principal reassign an Employee without proper approval pursuant to the central DOE process, the central DOE shall return the Employee to the school from which the Employee was reassigned and the principal's school-based budget shall be charged for the salary the Employee earned while reassigned (the agreement contained in this sentence shall not be a mandatory subject of bargaining).

Wherever possible, Employees reassigned to a TRC will be reassigned in the borough in which such Employee works. Employees who wish to perform duties or activities while assigned to a TRC shall be permitted to do so, with the proposed duty or activity subject to the appropriate supervisor's approval. This paragraph shall not be construed as a modification to Chancellor's Regulation C-770.

The DOE will review issues raised by the UFT with respect to the TRC facilities and work space provided to reassigned Employees. In order to help ensure a safe working environment, the UFT and DOE will work together to develop a facilities protocol for building concerns consistent with the Public Employee Safety and Health Act.

The DOE will continue to submit cases through the expedited time and attendance procedures if the DOE deems the particular case appropriate for that procedure. The DOE will evaluate cases of tenured Employees receiving unsatisfactory rating(s) for poor performance and, where it deems it appropriate, will refer the case to PIP Plus.

The disciplinary process should never be used to retaliate against whistleblowers or for any other illegal reasons. All employees who make a knowingly false allegation shall be subject to discipline, but decisions relating to the imposition of such discipline on non-UFT bargaining unit members shall not be subject to the grievance processes set forth in the relevant collective bargaining agreements.

The UFT and the DOE are committed to exploring innovative settlement approaches that would permit the parties to Education Law § 3020-a proceedings to reach settlement in a greater number of cases brought under Education Law § 3020-a .

*Education Law § 3020-a Hearing Procedures*

The UFT and the DOE, in addition to those agreements set forth in the relevant collective bargaining agreements, have also agreed to the following Education Law § 3020-a hearing procedures:



The permanent arbitration panel provided for in Article 21(G)(2) of the Collective Bargaining Agreement governing Teachers (and the corresponding provisions in the other UFT-DOE collective bargaining agreements) will be expanded from 20 panel members to 28 panel members. A sub-panel of up to 14 individual arbitrators on the permanent arbitration panel will hear cases based predominantly on charges of incompetence (the actual number of arbitrators hearing cases based predominantly on charges of incompetence, up to 14, being determined by the DOE in consultation with the UFT). Arbitrators selected for the permanent panel will be randomly assigned to the sub-panel on a rotational basis each year prior to the deadline for both parties to mutually agree to have arbitrators serve on the permanent panel for an additional one-year term. A labor-management committee composed, in equal parts, of UFT and DOE representatives shall meet as needed to discuss any issues regarding the 3020-a panel or process.



The UFT and DOE will jointly explore the feasibility of expediting the receipt of Education Law § 3020-a hearing transcripts by the UFT and DOE jointly paying the court reporters' fees and then seeking reimbursement from the New York State Education Department.



Without waiver or limitation of any other materials and information that the respondent Employee ("Respondent") is entitled to under Education Law §3020-a and the relevant collective bargaining agreements ("Discovery"), or the timing for providing such other Discovery, at least one week prior to the Pre-Hearing Conference, the DOE's attorney will supply the Respondent (or Respondent's attorney) with the following:



a. Copies of all letters in the Respondent's personnel file(s) related to the Education Law § 3020-a charges;
b. Copies of the final report regarding the investigation conducted by either the Special Commissioner of Investigations ("SCI"), the Office of Special Investigations ("OSI") or by a principal; and

c. Copies of all witness statements related to the charges in the DOE's possession at that time. (The DOE will diligently attempt to obtain all witness statements prior to providing copies to Respondent or Respondent's attorney pursuant to this provision "c" though failure to do so will not be grounds for exclusion of evidence from an Education Law § 3020-a hearing.)

Without waiver or limitation of any other materials and information that the DOE may be entitled to from Respondent, or the timing for providing such other Discovery, at least one week prior to the Pre-Hearing Conference, the Respondent (or Respondent's attorney) will provide a witness list to the DOE's attorney if the Respondent (or Respondent's attorney) has possession of such. Otherwise, a witness list will be provided to the DOE's attorney by Respondent (or Respondent's attorney) whenever practicable one week prior to the presentation of Respondent's defense.

This letter shall not constitute a waiver of either the Respondent's or the DOE's right to object to the admissibility of documents obtained in the regular course of discovery pursuant to the Education Law and/or the relevant collective bargaining agreements.

In addition to any other obligations the DOE may have to preserve potential Discovery material, at the time the DOE prefers Education Law § 3020-a charges against an Employee, the Office of Legal Services will send a letter to the relevant principal or school leader requiring the principal or school leader to direct all DOE employees and agents under his/her supervision to preserve (i) any relevant records related to students who may be called to testify and (ii) all relevant class rosters.

At the Pre-Hearing Conference, the DOE's attorney and the Respondent (or Respondent's attorney), along with the Hearing Officer, will attempt to: (i) pre-mark exhibits; (ii) stipulate to any facts which are not in dispute; and (iii) stipulate to the admission of any documents to which there is not a dispute about admissibility.

Every effort should be made for a Respondent to attend the Pre-Hearing Conference as well as for the DOE to have a person available who has authority to approve a settlement of the case.

The DOE will provide the student records for testifying students to the Hearing Officer for in camera inspection by the Hearing Officer prior to the hearing date at which the student testifies. It will continue to be the Hearing Officer's decision, within the requirements of Education Law § 3020-a and the relevant collective bargaining agreements, as to whether, and when, these student records are provided to Respondent or Respondent's attorney. This provision remains subject to the Family Educational Rights and Privacy Act.

The UFT and the DOE shall jointly hold meetings with the Hearing Officers and instruct them with respect to the applicable time limitations in Education Law § 3020-a and the relevant collective bargaining agreements.

*Contract Arbitrations*

The 140 arbitration dates that are permitted to be scheduled per year for all UFT grievances shall be increased to 175.

The UFT agrees principals may testify at arbitrations by telephone subject to the following conditions: (i) the principal may not look at any written material or be aided by anyone in the room during his/her testimony except as authorized or directed by the arbitrator; (ii) the principal may not be joined in the room by anyone without notifying the arbitrator, all parties and their representatives; (iii) the UFT district representative, or the UFT district representative's designee, may be present in the room with the principal; and (iv) the principal's testimony shall still be under oath. The sole role of the UFT district representative, or the UFT district representative's designee, shall be to verify the principal's compliance with these conditions; the UFT district representative or designee may not participate in the proceedings except to notify the arbitrator and/or the parties' representatives if he or she believes these conditions are being violated. The UFT district representative, or the UFT district representative's designee, shall not be released from his/her classroom responsibilities for this purpose. Nothing in this agreement

shall in any way limit the right of the UFT arbitration advocate to cross-examine the principal. If the arbitrator orders the principal to testify or be cross-examined in person, the principal shall not be allowed to testify or be cross-examined by telephone.

Nothing in this agreement shall in any way limit the currently existing rights of Employees to attend arbitrations.

The use of the 175 days will be governed in all respects by the rules in the relevant collective bargaining agreements governing the use of the 140 arbitration days, including, but not limited to, rules that exclude certain arbitrations from the 140 day limit. Pursuant to the procedures set forth in Article 22C of the collective bargaining agreement governing teachers (and corresponding provisions of other UFT-DOE collective bargaining agreements) for the selection of arbitrators, the number of arbitrators hearing arbitrations may be increased from seven.

Sincerely,

Randi Weingarten
President
United Federation of Teachers

Agreed and Accepted By:

Joel I. Klein
Chancellor
Board of Education of the City School District of the City of New York

Date

# FAX TRANSMITTAL SHEET

**ANDREW J. PECK**
**UNITED STATES MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.: (212) 805-7933
Telephone No.: (212) 805-0036

**Dated:** July 7, 2008 **Total Number of Pages:** 11

| TO | FAX NUMBER |
|---|---|
| Edward D. Fagan, Esq. | 646-304-6446 or 646-417-5558 |
| Blanche Greenfield, Esq. | 212-788-8877 |
| Charles G. Moerdler, Esq. | 212-806-2647 |
| Dina Kolker, Esq. | 212-806-2606 |
| Alan M. Klinger, Esq. | 212-806-7818 |

## TRANSCRIPTION:

**MEMO ENDORSED 7/7/08**

1. Plaintiffs have already filed a 2d Amended Complaint and defendants' motions to dismiss are due today. It would be unfair to defendants to have to scrap their motions and redraft after a 3d Amended Complaint is filed. Moreover, under Rule 8, evidence need not be pleaded.
2. Plaintiffs would appear to lack standing – certainly in federal court – to move to enforce the Agreement.
3. As to settlement, the Cout is all for it. Plaintiffs' counsel should make a proposal to defendants and defendants should respond. If the parties then believe a settlement conf. would be useful, it can be scheduled for mid to late July.

**Copy to:** Judge Victor Marrero