UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TEACHERS4ACTION, et al.,

                              Plaintiffs,

                                              08 Civ. 548 (VM) (AJP)

             -against-

MICHAEL G. BLOOMBERG, et al.,

                              Defendants.

------------------------------------------------------------------------ x

## CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT.

### PRELIMINARY STATEMENT

Defendants Mayor Michael Bloomberg, Chancellor' Joel Klein, the City of New York, and the New York City Board of Education (sued herein and doing business as the "Department of Education") (hereinafter collectively referred to as "City defendants"), by their attorney, **MICHAEL A. CARDOZO**, Corporation Counsel of the City of New York, submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint. Although this is plaintiffs' third pleading in this action, filed after the Court has addressed on the record the procedural and substantive deficiencies of the two prior complaints, plaintiffs have nonetheless failed to plead any viable federal cause of action. Indeed, the Second Amended Complaint is nothing more than an amalgam of conclusory allegations and statements of law. Even more troubling at this late juncture is the fact that plaintiffs have ignored the fundamental direction provided by this Court on more than one occasion, that their complaint include the

factual predicate for each of the plaintiffs' claims, and that they research their claims before filing their amended pleadings.

City defendants respectfully submit that as this is plaintiffs' third attempt to fashion a viable complaint, their failure to do so warrants the issuance of an order dismissing the Second Amended Complaint in its entirety as against City defendants with prejudice.

## STATEMENT OF FACTS

### The Prior Complaints Filed in This Action

On or about January 21, 2008 a complaint ("the Complaint") was filed by Teachers4action and Jon and Jane Doe Teachers 1-50 against defendant Mayor Bloomberg, Joel Klein, the City of New York and unidentified Superintendents and Principals. The Complaint asserted fourteen causes of action. However, the Complaint did not contain any facts that allegedly gave rise to the causes of action asserted by plaintiffs. Exhibit "A[1]."

At a conference held on January 28, 2008, this Court, in addressing City defendants anticipated motion to dismiss the complaint, noted that the complaint has "lots of motions to be aimed at." Exhibit "B" at 12-13. For example, the Court observed that although the complaint asserted claims under Title VII and the ADEA plaintiffs did not allege that right to sue letters had been issued. Indeed, Plaintiffs' counsel conceded the jurisdictional infirmities of these claims when he advised the Court:

> What I am suggesting is that there are certain elements of the complaint that may be subject to a challenge of failing to go through the EEOC process. That is possible.

---

[1]    References to all exhibits are to those annexed to the Declaration of Assistant Corporation Counsel Blanche Greenfield, dated July 7, 2008, submitted by City defendants in support of their motion to dismiss.

Exhibit "B" at 14-15.

Further, when the Court noted that the complaint asserted a cause of action under 42 U.S.C Section 1981 which pertains to race discrimination, Plaintiffs' counsel responded "Your Honor, I can pull that out." Exhibit "B" at 38.

At the January 28, 2008 conference the Court addressed with plaintiffs' counsel the elements that should be included in the amended complaint. This Court advised plaintiffs that the amended complaint should include the "facts as to each plaintiff." Exhibit "B" at 37-38. Further, Magistrate Judge Peck stated:

> So please do your research. Get rid of the junk here. Get specific facts as to specific plaintiffs, if that is what you are challenging. Plaintiff Holmes has been in the rubber room for four months with no charges brought and the rubber room is miles away from his or her home. Whatever. Get rid of the boilerplate here. I mean, for a 20-something page complaint, it says very little.

Exhibit "B" at 39. Giving the impression that the Court's observations had been taken to heart, plaintiffs' counsel stated :

> . . . your Honor was so careful to explain to us about the way we should go forward in this case, and I am very mindful of that, and I am also mindful of the issue of the standing and the issue of whether or not it is even appropriate to include a challenge to the rubber room.

Exhibit "B" at 30. Moreover, plaintiffs' counsel agreed that the amended complaint "will include more specific allegations as to each plaintiff." Exhibit "B" at 49. The Court directed that the amended complaint be filed by February 4, 2008. Plaintiffs did not, however, file the amended complaint by the date set by the Court.

On February 8, 2008 a second conference was held before the Court. In discussing with plaintiffs' counsel the amount of time he needed to draft and file an amended complaint the Court stated as follows:

> OK. At the risk of repeating myself, that's [drafting an amended complaint that contains the factual allegations underlying the claims of each of the plaintiffs] a lot of work to do. If you're sure it's the [February] 13th that's fine.
>
> Just listen to me for a minute. I don't want you to make a commitment you can't keep, and I don't want a further amendment down the road saying, I only was able to get our act together for 10 of them [ plaintiffs] or 18 of them and now I want to add 17 more a week later. I don't care when you do this, but I want it done once, I want it done right, and I want you to tell me now, this is the last warning, the last issue, when you want to do it by. You want till the end of the week, you want another week, it's not going to matter other than we can't do much in this case till we see what the complaint looks like.

Exhibit "C" at 5. When plaintiffs' counsel offered that he was prepared to file an amended complaint that would have more factual detail as to some plaintiffs, but not to others, allegedly because the Department of Education was not permitting the plaintiffs to work on their lawsuits during the work day, the Court stated as follows:

> Stop, please. Mr. Fagan, please. That's why there are nights. That's why there are weekends. Either you're ready to bring a complaint for these people that meets Rule 11, that meets the pleading standard of the Bell Atlantic [Twombly] standard and all of these cases or you're not.

Exhibit "C" at 7.

On or about February 25, 2008 plaintiffs' served City defendants with their Amended Complaint. Exhibit "D". The Amended Complaint identified "Teachers4Action, On Behalf of its Members And By Florian Lewenstein, Its President and Spokesperson," and thirty individuals as plaintiffs. The Amended Complaint consisted of sixty paragraphs of "general

4

facts" and asserted thirteen causes of action. Repeating the infirmities of the original complaint, the Amended Complaint did not contain any factual allegations that supported the underlying claims of each of the identified plaintiffs. Id.

At a conference held before the Court on May 1, plaintiffs' counsel stated that he intended to further amend the complaint to include additional plaintiffs and causes of action. Exhibit "E" at 24-25. Although the Court had previously indicated that there would be no further amendments to the pleadings after the service of the Amended Complaint, the Court granted plaintiffs until June 2, 2008 to file their second amended complaint. Exhibit "E" at 26. The Court granted defendants until June 30, 2008 to serve their respective motions to dismiss. Exhibit "E" at 27. The Court subsequently granted defendants an extension of time, until July 7, 2008 to serve their respective motions to dismiss.

**The Second Amended Complaint**

The caption of the Second Amended Complaint identifies fifty two individuals and "Teachers4Action, Inc. on Behalf of its members and By Florian Lewenstein, Its President and Spokesperson" as plaintiffs in this action. The Second Amended Complaint does not, however, provide any description of Teachers4Action such as its purpose or any information about its membership. In fact, the Second Amended Complaint does not even aver that the individual plaintiffs are members of Teachers4action. The only information provided in the Second Amended Complaint regarding Teachers4actions is that "Teachers4Action Inc. Plaintiffs" are

> Teachers and guidance counselors, both tenured and untenured,
> who fall into certain categories, including but not limited to (i)
> teachers who are presently re-assigned to Temporary
> Reassignment Centers (hereinafter "Rubber Rooms'); (ii) teachers
> who are being targeted for re-assignment to Rubber Rooms; (iii)

teachers in the midst of the administrative disciplinary process and against whom charges have been brought; (iv) teachers who were previously re-assigned to Rubber Rooms and who were terminated, fined and/or suspended without pay, or forced, harassed, intimidated and/or coerced to accept onerous or unfair deals; (v) teachers who suffer loss of property, loss of pay and other monetary losses; (vi) teachers who suffer physical or emotional injuries from being forced into Rubber Rooms; (vii) teachers who cannot get other jobs; and (viii) teachers who are otherwise being targeted and victimized as part of the wrongful course of action.

Exhibit "F" at 5-6.

Remarkably, despite this Court's repeated urgings and admonishment that a viable complaint should contain the factual allegations concerning the claims of each of the plaintiffs, the Second Amended Complaint does not contain a single fact concerning the individual plaintiffs. The Second Amended Complaint does not even identify which of the above listed eight categories each of the individual plaintiffs claims to be applicable. Instead, the '"facts" of plaintiffs claims are found in a section under the heading "General Facts." However, this section does not address the factual predicate for each plaintiffs claim, but rather sets forth a litany of conclusory allegations of fact and conclusions of law.

**ARGUMENT**

**POINT I**

**THE SECOND AMENDED COMPLAINT CONTAINS ONLY CONCLUSORY ALLEGATIONS OF FACT AND CONCLUSIONS OF LAW WHICH ARE INSUFFICIENT TO MEET THE PLEADING REQUIREMENT OF RULE 8(A)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

Under Fed. R. Civ. P. 12(b)(6) of the Federal Rules of a Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A defendant may base such a motion on a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Although the Supreme Court has characterized this pleading requirement under Fed. R. Civil. P. 8(a)(2) as "simplified" and "liberal," this flexible standard is not without limits. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2003). See also In re Parmalat Sec. Litig., 375 F.Supp 2d 278, 286 (S.D.N.Y. 2005) (even under the liberal notice pleading standard of Fed. R. Civ. P. 8, conclusory assertions are inadequate). For example, in the recent decision of Bell Atlantic Corporation v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court, announced the "retirement" of the "no set of facts" standard articulated in Conley v. Gibson, 355 U.S. 41 (1957), and adopted in its place a "plausibility" requirement. Bell Atlantic, 127 S. Ct. at 1969. More specifically, the Court held that, in order for a plaintiff's complaint to satisfy the

requirements of Rule 8(a)(2), his "[f]actual allegations must be enough to raise a right to relief above the speculative level" and this obligation requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 1965.  Thus, the question is whether the pleading alleges "enough facts to state a claim for relief that is plausible on its face." Pantene v. Clark, 508 F.3d 106, 111-112 (2d Cir. 2007) quoting Bell Atlantic, 127 S.Ct. at 1974.

In interpreting and applying Bell Atlantic, the Second Circuit wrote "We believe the Supreme Court (in Bell Atlantic) is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in the original).

Since Bell Atlantic, courts in this Circuit have relied on its holding to dismiss a variety of claims where the plaintiff failed to satisfy the applicable "plausibility standard."  For example, in Seabrook v. City of New York, 509 F. Supp. 2d 393, 401 (S.D.N.Y. 2007), the court dismissed the plaintiffs' equal protection claims, brought pursuant to 42 U.S.C. § 1983, because the plaintiffs failed to specifically identify what actions defendants wrongfully took "with respect to each individual plaintiff." Similarly, in Watts v. Servs. For the Underserved, 2007 U.S. Dist. LEXIS 41209 *9 -11 (E.D.N.Y. June 6, 2007), the court dismissed the plaintiff's conclusory allegations of discrimination, in part, because she "fail[ed] to allege even one fact tending to show that . . . [the defendant ] took her color into account in making the decision to reassign her."

Given these pleading standards, plaintiffs' Second Amended Complaint fails to meet the requirements of Rule 8(a)(2). Even when read in a light most favorable to plaintiffs[2], Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 283 (2d Cir. 2005), the Second Amended Complaint provides absolutely no grounds supporting any of the causes of action the plaintiffs seek to assert. Plaintiffs' Second Amended Complaint merely asserts conclusory allegations of fact and conclusions of law and fails to plead a *single* fact as to any of the individual plaintiffs. Instead, the Second Amended Complaint is rife with "formulaic recitation[s]" of the elements of the causes of action, which is exactly what the Supreme Court warned against in Bell Atlantic. Bell Atlantic, 127 S. Ct. at 1965. Pleadings which omit facts upon which a cause or causes of action are based, cause needless conjecture and expenditures of resources in attempting to deal with such ill-defined claims. This imposes an extreme burden on defendants and prevents the City defendants from shaping a comprehensive defense.

Further, the pleading requirements for a §1983 federal due process claim control with respect to plaintiffs purported claims asserted to the First, Fifth and Fourteenth Amendment.

> It is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.

Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987). Dismissal of a complaint for failure to state a claim is warranted in such cases. Id. Dismissal with prejudice is particularly appropriate where as here, the Court has on more than one occasion discussed with plaintiffs the

---

[2] The Court does not have to accept as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (citations omitted.)

elements that should be included in their amended pleadings. At the first conference held before the Court on January 28, 2008, shortly after the original Complaint was filed, this Court noted the pleading deficiencies of the Complaint and advised plaintiffs that their amended complaint should include the facts as to each of the plaintiffs' claims. Exhibit "B" at pgs. 37-39. However, when plaintiffs filed their Amended Complaint, which the Court had indicated was to be their final pleading in this matter, Exhibit C at page 5, it was comprised solely of the most generalized and conclusory allegations. Even after the Court granted plaintiffs yet another opportunity to file a viable complaint, the Second Amended Complaint was drafted without regard to the instructions of this Court and the relevant law regarding pleading requirements.

Although the Court reserves the option to grant plaintiffs an opportunity to amend the complaint when a complaint is dismissed because of pleading deficiencies (see Fed. R. Civ. P. 15(a)), dismissal with prejudice is appropriate here because the deficiencies in plaintiffs' pleadings were called to their attention time and time again. This Court has gone to great lengths to accommodate and make allowances for the plaintiffs to properly present a claim(s) in this action. Denying leave to amend is appropriate where there is a "repeated failure to cure deficiencies by amendments previously allowed." Foman v. Davis, 371 U.S. 178, 182 (1962). See, e.g., In re American Express Co. Shareholder Litigation, 39 F.3d 395, 402 (2d Cir. 1994) (affirming dismissal with prejudice in part because plaintiffs had two opportunities to amend their complaint); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (noting that a court may dismiss an action with prejudice where "leave to amend has previously been given and the successive pleadings remain prolix and unintelligible"); Harris Lee v. Sony BMG Music, 2008 U.S. Dist. LEXIS 39975 at *20 (S.D.N.Y. May 15, 2008)(where amended complaint "reads as though drafted by a pro se litigant" when plaintiff was represented by counsel, plaintiff granted

leave to serve a second amended complaint, which will be the "last complaint."); <u>Denny v.</u> <u>Barber</u>, 576 F.2d 465, 471 (2d Cir. 1978) (finding dismissal with prejudice appropriate where the plaintiff received notice of deficiencies in complaint at time of first amendment, and therefore was not entitled to a "third go-around"); <u>Treppel v. Biovail Corp.</u>, 2005 U.S. Dist. LEXIS 18511 (S.D.N.Y. Aug. 30, 2005) (dismissing an action without leave to replead where "plaintiff has already had two bites at the apple and they have proven fruitless").

The record in this action clearly demonstrates that this Court has repeatedly addressed the deficiencies in plaintiffs' pleadings, advised plaintiffs to include the facts as to each plaintiff, and has specifically told the plaintiffs to research their claims before filing their pleading. The plaintiffs have had the opportunity to file three complaints, culminating in their Second Amended Complaint which also fails to plead any viable federal cause of action. Accordingly, because plaintiffs have ignored or otherwise failed to address any of the omissions in their pleadings after three attempts, the Second Amended Complaint should be dismissed with prejudice in its entirety as against City defendants.

## POINT II

### THE SECOND AMENDED COMPLAINT FAILS TO ALLEGE THAT THE PLAINTIFFS HAVE STANDING TO PURSUE THIS ACTION.

While plaintiffs seek to invoke the federal jurisdiction of this Court, they fail to allege that they have standing to pursue the claims asserted herein. To satisfy Article III of the Constitution, a plaintiff must show that (1) s/he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; and (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will be redresses by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-62 (1992). Article III standing may not be based on "general averments" and "conclusory allegations." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

Here, the Second Amended Complaint does not contain a single fact concerning the individual plaintiffs. Thus, while the Second Amended Complaint alleges that plaintiffs fall into eight categories, Exhibit "F" at 5-6, it cannot be determined from the pleadings, and plaintiffs do not allege, that each of the individual plaintiffs have standing to assert each of the causes of action asserted in this action.

Similarly, the Second Amended Complaint fails to allege much less establish that Teachers4Action has standing to sue on behalf of its members. An association has standing to sue on behalf of its members when: (1) at least one of its members has standing to sue in his or her own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). Here, the Second Amended Complaint fails to allege, much less provide any facts that would support that "one of more of [Teachers4Action] members has suffered a concrete and particularized injury" Bldg. & Constr. Trades Council, 448 F.3d 145 (2d Cir. 2006). With respect to the second prong of the Hunt test, the Second Amended Complaint does not provide any information regarding the alleged purpose of Teachers4Action. Further, associational standing is inappropriate where, has here, Teachers4Action seeks monetary damages, thus requiring 'individualized proof." Id. at 150.

## POINT III

## PLAINTIFFS DO NOT ALLEGE THAT THEY HAVE EACH FILED A CHARGE WITH THE EEOC AND THEREFORE DO NOT MEET THE JURISDICTIONAL PREREQUISITES NECESSARY TO ASSERT THEIR TITLE VII CLAIMS.

A condition precedent to bringing an action under Title VII is filing an administrative charge with the EEOC within 300 days of the alleged discriminatory acts. Here, not one of the fifty two plaintiffs alleges that s/he has filed an EEOC charge. 42 U.S.C. § 20000e-5; Castellano v. City of New York, 142 F.3d 58, 72 (2d Cir. 1998) (absent such a filing, court lacks jurisdiction over plaintiff's claims); Butts v. City of New York Dep't of Hous. Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993). Accordingly, all of plaintiffs Title VII[3] claims as set forth in the Second Cause of Action must be dismissed.

---

[3] Equally fatal to plaintiffs' hostile work environment claim is their failure to allege that they were subjected to a hostile work environment based on some protected status. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). In fact, the only characteristic alleged to be shared by plaintiffs is that they are all tenured teachers. However, tenure is not a protected status under Title VII.

Moreover, although plaintiffs' fourth cause of action is a constructive discharge claim, they again do not claim that the hostile work environment which resulted in some unidentified plaintiff [s] constructive discharge was based on a protected status. Rather, plaintiffs claims that City defendants "use of Rubber Rooms and failure to provide Plaintiffs with the protections afforded by the provisions of NYS Education Law §§ 3020 and 3020-a was part of Defendants' deliberate and/or intentional creation of an intolerable workplace environment. Exhibit "F" at 160. To state a claim for constructive discharge, an employee must show that his employer deliberately made his working conditions so intolerable that the employee was forced into an involuntary resignation. Pena v. Brattleboro, 702 F.2d 322, 325 (2d. Cir. 1983) "Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Whidbee v. Garzarelli, 223 F.3d 62, 73 (2d Cir. 2000). Here, the Second Amended Complaint does identify those plaintiffs who allegedly resigned or left employment let alone any facts to support their claim. Thus, the allegations of the Second Amended Complaint are patently insufficient to establish a claim for constructive discharge. See Murray-Dahnir v. Loews Corp., 2001 U.S. Dist. LEXIS 4226, *3

## POINT IV

## THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RETALIATION.

Title VII and Section 1983 forbid retaliation against an employee for opposing any practice made unlawful by the statutes. Retaliation claims are evaluated under a three-step burden shifting analysis. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). Plaintiffs must allege (1) participation in a protected activity; (2) that the defendants knew of the protected activity; (3) an employer action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (4) a causal connection between the protected activity and the employer action. Kessler v. Westchester County Dept. of Soc. Servs., 461 F.3d 199, 204 (2d Cir. 2006).

In the Third Cause of Action asserted in the Second Amended Complaint, plaintiffs allege that they have been retaliated against for a January 15, 2008 letter sent by Plaintiffs Teachers4action, Inc. which protested "(i) Defendants' violation of Plaintiffs' due process rights, (ii) Defendants' violations of Plaintiffs' constitutional and contractual rights, and (iii) the other wrongful conduct and/or abuses that occur within the NYC public school system." Exhibit "F" at ¶¶ 142-143. Plaintiffs' claim that the retaliation was "designed to dissuade others from 'blowing the whistle' about wrong doing in the NYC public school system and the Rubber

---

(S.D.N.Y. Apr. 10, 2001) (complaint dismissed with prejudice because plaintiff failed to put forth sufficient allegations to show that employer created intolerable working conditions).

Rooms in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e et seq." Exhibit "F" at ¶ 152.

Here, however, the Second Amended Complaint does not aver that the January 15, 2008 letter constituted a protected activity. Rather, Plaintiffs allege that they sent the letter to assert their grievances regarding the 3020-a hearings and being placed in the temporary reassignment centers and to demand that "Defendant DOE comply with Plaintiffs' constitutional and contractual rights." Exhibit "F" at ¶77. As such, the Second Amended Complaint does not allege participation by each of the plaintiffs in an activity protected by the antidiscrimination statutes.

Further, the Second Amended Complaint does not allege that each of the plaintiffs participated in the January 15, 2008 letter. While plaintiffs allege that Teachers4action sent the January 15, 2008 letter, the Second Amended Complaint does not allege that each of the individual plaintiffs were identified in the letter. In fact, there are no allegations that the individual plaintiffs herein were even members of, or associated with, Teachers4action at the time the January 15, 2008 letter was sent. Moreover, the Second Amended Complaint does not plead that City defendants were aware of each of the individual plaintiffs' alleged association with that group or their respective participation with the letter. As such, plaintiffs have not alleged facts which would support their claim of retaliation.

Equally without merit is plaintiffs' claim that they have been subjected to retaliation in response to the filing of the original Complaint in this action on January 21, 2008. Plaintiffs have not alleged any facts, nor can they, to show that they participated in the Complaint. The Complaint did not identify a single individual plaintiff by name in either its caption or in the body of the Complaint. Exhibit "A." In fact, the only plaintiffs identified in the

caption of the January 21, 2008 Complaint were Teachers4Action and Jon and Jane Does. As such, the individual plaintiffs have failed to allege participation in the Complaint and that City defendants were aware of their respective participation in such activity.

Finally, the Second Amended Complaint fails to allege that each of the individual plaintiffs[4] have been subjected to an employer action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. As such, the Second Amended Complaint fails as a matter of law to state a claim for retaliation on behalf of each of the individual plaintiffs.

**First Amendment Retaliation**

The Supreme Court has established that while the First Amendment protects public employees' speech in certain instances, it does not empower employees to "constitutionalize the employee grievance." Garcetti v. Ceballos, 126 S.Ct. 1951, 1959 (2006) (quoting Connick v. Meyers, 461 U.S. 138, 154 (1980); See also, Benvenisiti v. City of New York, 2006 U.S. Dist. LEXIS 73373 (S.D.N.Y. September 23, 2006). As such, in order to establish a prima claim for First Amendment Retaliation, the employee must show that (1) his speech or associational conduct[5] was of public concern, Connick 461 U.S. at 147, rather than as

---

[4]    The Second Amended Complaint provides some facts pertaining to the claims of only one of the plaintiffs, the alleged President of Teachers4action, Florian Lewenstein. Plaintiff Lewenstein alleges that in retaliation for his January 15, 2008 letter City defendants filed new allegations against him and sent him back to the rubber room. However, as set forth herein, the Second Amended Complaint does not assert that the letter was a protected activity. As such, plaintiff Lewenstein, to the extent that he is attempting to assert an individual claim in this action, fails to state a claim for retaliation.

[5] While the Second Amended Complaint Asserts a claim for freedom of association, plaintiffs do not allege whether the associational conduct is their membership/association with the group Teachers4Action or the January 15, 2008 letter sent by Teachers4action. Under both theories, plaintiffs would still have to establish that a matter of public concern was implicated. Piscottano

an employee on a matter of personal interest (2) that plaintiff suffered an adverse employment action, and (3) that speech was a substantial or motivating factor in the adverse employment action. See Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004); Johnson v. Ganin, 342 F.3d 105, 112 (2d Cir. 2003).

As noted above, the Second Amended Complaint does not allege that the individual plaintiffs participated in the January 15, 2008 letter. Significantly, plaintiffs do not allege that the January 15, 2008 letter addressed a matter of public concern. To the contrary, the Second Amended Complaint quite specifically avers that the January 15, 2008 letter was sent to address the grievances and complaints of certain unidentified individuals as employees of the Department of Education. Specifically, the Second Amended Complaint alleges that the January 15, 2008 letter "protest[ed] (i) Defendants' violation of Plaintiffs' due process rights, (ii) Defendants violations of Plaintiffs' constitutional and contractual rights, and (iii) the other wrongful conduct and/or abuses that occur with the Rubber Rooms." Exhibit "F" at ¶¶ 142- 143. Given the Second Amended Complaint's description of the nature and purpose of the January 15, 2008 letter, to discuss and address the personal situations of certain unidentified individuals, it is clear that the letter concerned the private grievances of Department of Education employees rather than as presenting a matter of public concern. Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993) (plaintiff's speech not constitutionally protected where it was

---

v. Murphy, 511 F.3d 247, 274 (2d Cir. 2007); see also Cobb v. Pozzi, 363 F.3d 89, 102-107 (2d Cir. 2003). As noted above, the Second Amended Complaint does provide any information regarding Teachers4action. Moreover, the Second Amended Complaint does not allege that the January 15, 2008 letter was a matter of public concern. As such, plaintiffs have not pled a claim for violation of their First Amendment right of association. Cobb v. Pozzi, 363 F.3d.89, 102 (2d Cir. 2004); see also Morris v. Lindau, 196 F.3d 102, 110 (2d  Cir. 1999).

"motivated by and dealt with her individual employment situation"); McMahon v. New York City Bd. Of Educ., 2006 U.S. Dist. LEXIS 89627 at *25 (E.D.N.Y. December 12, 2006).

Further, the Second Amended Complaint does not allege that the plaintiffs have suffered an adverse employment action. "In the context of a First Amendment retaliation claim . . . only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Zelnik v. Fashion Inst. Of Tec., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks omitted). Plaintiffs' need not demonstrate a material change in the terms or conditions of their employment. Rather, the Court must focus on the "effect of the [employer's actions] on the exercise of free speech rights of a 'person of ordinary firmness.'" Zelnik, 464 F.3d at 227. Here, plaintiffs allege that after the original Complaint in this action was filed, defendants:

> direct[ed] that administrators and security personnel in the Rubber Rooms restrict Plaintiffs' ability to speak and otherwise communicate with one another, and to meet and associate with one another, to respond to the increased inquiries by other teachers who sought to join plaintiff Teachers4action, Inc., and to prepare their claims in this case.

Exhibit "F" at ¶ 81. Similarly, Plaintiffs allege that from April 2008 to the present:

> Defendants have retaliated against Plaintiffs by arbitrarily and capriciously abridging their rights to assemble, to discuss, and otherwise communicate in the Rubber Rooms, for the purpose of defending their rights and prosecuting their lawsuits.

Exhibit "F" at ¶ 88.

At bottom, the adverse employment actions allegedly suffered by some unidentified plaintiff[s] is that City defendants are not permitting him/her/them to work on the instant lawsuit during business hours. City defendants submit that, even accepting plaintiffs allegations as true, no individual of ordinary firmness similarly situated to plaintiff(s) would be

reasonably deterred from filing a lawsuit if they knew they could be limited to preparing their defense and soliciting potential plaintiffs to join their lawsuit on their own private time and not during business hours when they are being paid by the City of New York.  Accordingly, the Second Amended Complaint fails to state a claim for First Amendment retaliation and must be dismissed.

## POINT V

### PLAINTIFFS' CLAIM UNDER 42 U.S.C. 1981 MUST BE DISMISSED.

To survive a motion to dismiss a claim under § 1981, a plaintiff "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf v. Vassar Coll., 35 F.3d 709. 713 (2d Cir. 1994). As the Second Amended Complaint does not identify the race of a single plaintiff or otherwise allege racial discrimination, the §1981 claims must be dismissed.

POINT VI

**PLAINTIFFS' FOURTEENTH AMENDMENT CLAIM FOR DEPRIVATION OF LIBERTY AND PROPERTY WITHOUT DUE PROCESS OF LAW MUST BE DISMISSED.**

**Liberty Interest**

The Fourteenth Amendment protects an individual's liberty interest from a government employer who disseminates false and stigmatizing information in the course of dismissing or refusing to hire an individual or during termination or alteration of some other legal rights or status. Patterson v. City of Utica, 370 F.3d 322, 328 (2d Cir. 2004). Here, the Second Amended Complaint is devoid of a single allegation that City defendants published stigmatizing information concerning even one of the plaintiffs. Indeed, while the Second Amended Complaint alleges that some of the plaintiffs are "teachers who cannot get other jobs" Exhibit "F" at ¶ 7, it neither identifies the plaintiffs at issue nor attributes the failure to secure other employment to the alleged dissemination of false and stigmatizing information by City defendants.

Further, plaintiffs' contention that assignment to a Temporary Reassignment Centers ("TRC") is punitive and causes them emotional injury-stigma, is patently insufficient to establish a liberty interest violation. Boland v. Police Department of the City of New York, 2007 U.S. Dist. LEXIS 8844 at *6 (S.D.N.Y. November 29, 2007) (Plaintiff's allegation that on-the-job monitoring made him "feel like a criminal" does not constitute a protected liberty interest). Plaintiffs have not alleged that the stigma is "coupled with some other tangible element in order to rise to the level of a protectible liberty interest. " Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1999). As such, plaintiffs' Fourteenth Amendment Liberty Interest claim must be dismissed.

Cassidy v. Scoppetta, 365 F. Supp. 2d 283, 288-89 (E.D.N.Y. 2005) (allegations of injury to reputation, honor and emotional well being without any additional allegation regarding alteration of status insufficient to implicate liberty interest).

**Property Interest**

      In order to allege a violation of due process[6], a plaintiff must demonstrate that he or she had a constitutionally protected property interest. See Rivera v. City of New York, 392 F.Supp.2d 644, 652 (S.D.N.Y. 2005), citing New York State N.O.W. v. Pataki, 261 F.3d 156, 163 (2d Cir. 2001); Rivera v. Community School District Nine, et. al., 145 F.Supp.2d 302, 306 (S.D.N.Y. 2001), citing Board of Regents v. Roth, 408 U.S. 564, 570-571 (1972). As the Supreme Court has stated, property rights

> are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules and understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents, 408 U.S. at 577.

      City defendants do not dispute that only the plaintiffs who are tenured[7] teachers have a property interest in their positions. However, the Second Amended Complaint fails to

---

[6]   The Second Amended Complaint attempts to assert a claim under the Fifth Amendment. However, the Fifth Amendment applies only to actions by the federal government. Sylla v. City of New York, No. 04-cv-5692, 2005 U.S. Dist. LEXIS 31817, at *2 (E.D.N.Y. Dec. 8, 2005)(citing Public Utilities Commission of District of Columbia v. Pollak, 343 U.S. 451, 461(1952)) ("Where, as here, defendants are municipal, rather than federal entities and officials, a due process Plaintiffs claim under the Fifth Amendment must be dismissed.")

[7]   In paragraph 7 of the Second Amended Complaint plaintiffs allege that they are "teachers and guidance counselors, both tenured and untenured." City defendants submit that any of the plaintiffs' who did not have tenure in their positions do not have a property interest in their positions and as such their due process claims fail as a matter of law. McDonald v. Bd. Of Educ., 2001 U.S. Dist. LEXIS 10325 at *15 (S.D.N.Y. July 25, 2001)

identify a single plaintiff who has suffered a deprivation of a constitutionally protected property interest. Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972); Gomez v. Toledo, 446 U.S. 635, 640 (1980); Finley v. Giacobbe, 79 F.3d 1285, 1296 (2d Cir. 1996); Federico v. Board of Educ., 955 F.Supp. 194, 198-99 (S.D.N.Y. 1997). Rather, Plaintiffs allege generally that some of the plaintiffs are "teachers who suffer loss of property, loss of pay and other monetary losses." Plaintiffs claim that they suffer these monetary losses as a result of being excluded "from applying for per session jobs and summer school jobs to which they would otherwise be entitled." Exhibit "F" at ¶ 40. However, the plaintiffs herein who remain employed by the Department of Education and receive their base salary have not been deprived of a constitutionally protected interest. Caniello v. City of New York, 2001 U.S. Dist. LEXIS 20 at *1 (S.D.N.Y. January 4, 2001) (where an employee retains his rank and base pay after an administrative action there is no unconstitutional deprivation of property).

In order to determine whether plaintiffs' allegation that they lost the opportunity to work per session or summer work establishes a constitutionally recognized property interest in an employment benefit, the collective bargaining agreement must be examined. Perry v. Sindermann, 408 U.S. 593, 601 (1972). The United States Supreme Court has "recognize[d] that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion". Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 462-463 (1989). An "abstract need, desire, or unilateral expectation is not enough." Abramson v. Pataki, 278 F.3d 98, 99 (2d Cir. 2002) (quoting Board Of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Here, Article Fifteen of the collective bargaining agreement[8] ("CBA") between the City of New York and the United Federation of Teachers does not guarantee plaintiffs per session work or summer work. Rather, the selection of new per session teachers is "in order to seniority" "based on a specified order of "priority." Exhibit "G" at page 91. As such, plaintiffs had "at best an expectation rather than an entitlement" to being assigned as new per session teachers. Caniello, 2001 U.S. Dist. LEXIS 20 at * 3 (S.D.N.Y. January 4, 2001); Arteta v. County of Orange, 2005 U.S. App. LEXIS 10428 at *10 (2d Cir. 2005) (collective bargaining agreement provided at most that an employee has a property interest in receiving over time when he or she qualified to do so based on his or her seniority). Thus, plaintiffs claims regarding the alleged loss of per session and summer work does not rise to the level of a constitutionally protected property interest. Grunberg v. Bd. Of Educ., 2006 U.S. Dist. LEXIS 22424 at *23-24 (E.D.N.Y. March 30, 2006) (plaintiff does not have a property interest in per session work); Cassidy v. Scoppetta, 365 F. Supp. 2d 283, 287 (E.D.N.Y. 2005) (finding no property interest where plaintiffs claim that they were transferred to less desirable locations where they would earn less overtime and would require that they travel greater distances at increased costs of tolls and gas); Boyd v. Schembri, 1997 U.S. Dist LEXIS 11965 (S.D.N.Y. Aug. 13, 1997) (finding that the denial of overtime work did not trigger procedural due process).

---

[8] This Court may consider the provisions of the CBA that are not annexed to the Second Amended Complaint in deciding a motion to dismiss. Under Rule 12(b), the complaint includes . . . any statements or documents incorporated into it by reference." Paulemon v. Tobin, 30 F.3d 307, 308-09(2d Cir. 1994). Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Further, while plaintiffs clearly object to their assignment to the TRCs, they do not have a constitutionally protected right to specific duties in a specific location. Boland v. Police Dep't of the City Of New York, 2007 U.S. Dist. LEXIS 88444 at * 5 (S.D.N.Y. November 29, 2007). See also Guida v. Police Dep't, 1997 U.S. Dist LEXIS 7053 at *3-7 (S.D.N.Y. May 20, 1997) (transferred detective retaining same salary and rank not deprived of a constitutionally protected property right); Perez v. City of New York, 1997 U.S. Dist. LEXIS 19093 at *5 (S.D.N.Y. December 2, 1997) (public employee does not have a right to be free from transfer, suspension, or other changes in work environment or status). As plaintiffs do not allege that they are not being paid while assigned to the TRC's they cannot establish that their mere assignment to a TRC implicates a property interest.  See e.g., O' Connor v. Pierson, 426 F.3d 187, 199 (2d Cir. 2005) (observing that "no court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties.") Moreover, to the extent that the Second Amended Complaint attempts to allege that the TRC's are unsafe work locations, the due process clause "does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security in the work-place." Collins v. City of Harbor Heights, 503 U.S. 115, 130 (1992); See also Perez, 1997 U.S. Dist LEXIS 19093 at *5-6.

Moreover, plaintiffs' allegations that they have been harassed and threatened with disciplinary charges and termination by unidentified individuals fail to state a due process violation. Plaintiffs' allegations are "essentially claiming that defendants committed wrongful acts, but not that defendants failed to follow proper procedure." Deal v. Seneca County, 2008 U.S. Dist. LEXIS 37846 at *12 (W.D.N.Y. May 8, 2008) (plaintiffs claims that they were threatened with termination, filing of disciplinary charges, refused overtime, and subjected to

excessive scrutiny and surveillance as well as threats to their future careers are not cognizable under theory of procedural due process).

Even assuming *arguendo* that any of the unidentified plaintiffs has been terminated or suspended without pay following a disciplinary hearing[9], "the question remains what process [was] due." Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (citation and internal quote omitted); Narumanchi v. Board of Trustees, 850 F.2d. 70, 72 (2d Cir. 1988).

In Loudermill, the Supreme Court set forth general guidelines as to the minimum amount of process due in employment deprivation cases. See Loudermill, 470 U.S. at 542-46. Thus, deprivations of property must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Id. "[S]ome kind of hearing" must be held prior to the termination of an employee who has a property right in his continued employment. See Matthews v. Eldrige, 424 U.S. 319 (1976); Cleveland v. Bd of Educ. v. Loudermill, 470 U.S. 532 (985) (due process requires only that a tenured public employee receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.")  A "full evidentiary hearing" is not required. Loudermill, 470 U.S. at 545.

---

[9] The Second Amended Complaint does not allege that any tenured teacher was denied a disciplinary hearing.  Rather, it appears that plaintiffs complain of penalties that were imposed as a result of negotiated agreements in settlement of disciplinary charges that were allegedly coerced.  However, because plaintiffs could avail themselves of Article 78 proceeding in New York State supreme court challenging the alleged voluntariness of the settlements, their allegations fail to support a due process claim.  Giglio v. Dunn, 732 F.2d 1133, 1134 (2d Cir, 1984) cert. denied, 469 U.S. 932 (1984). See also, Semorile v. City of New York, 407 F. Supp. 2d 579, 582-83 (S.D.N.Y. 2006).

Here, the Second Amended Complaint does not allege that plaintiffs were denied the essential due process elements of notice and the opportunity to be heard. Plaintiffs do not allege that as tenured teachers they were denied hearings in connection with the service of disciplinary charges. Rather, plaintiffs allege that Article 21G of the CBA denies them due process and is constitutionally infirm because it does not provide them with the identical procedures set forth in Education Law Section 3020-a. Thus, plaintiffs allege that City defendants:

> violate, failed to comply with, or chose to attempt to implement in an unlawful manner, the provisions of NYS Education Law §§ 3020 and 3020-a that were designed and/or enacted to provide Plaintiffs and others with due process and other constitutional safeguards.

Exhibit "F" at ¶ 28.

However, notwithstanding their contentions in this regard, plaintiffs acknowledge that Education law § 3020(4) "contains a special provision for Defendants Bloomberg, City, DOE and Klein to enter into a Collective Bargaining Agreement with Defendant UFT to modify the disciplinary proceedings for tenured teachers as set out in NYS Education Law § 3020-a. Exhibit "F" at ¶ 25. Plaintiffs further acknowledge that Education Law §3020(4) places only one limitation on the scope of the parties agreement regarding any modification to the procedures- that the modification must comply with the requirement in Education Law §3020-a that tenured teachers only be disciplined or removed for "just cause." Exhibit "F" at ¶27. Thus, because the statute leaves to the discretion of the school board and the union to decide on the particular procedures that will be used to assure that the discipline of tenured teachers is for "just cause" plaintiffs can not plead any set of facts to support their claim that they have a property interest in receiving the exact procedures set forth in Education Law Section 3020-a.

The issue for the Court's consideration is therefore whether the modified procedures as set forth in Article 21G of the CBA afford the plaintiffs due process.

Article 21G of the CBA "Education Law § 3020a Procedures" provides:

> Tenured teachers facing disciplinary charges filed, or in the case of Section 1 "Time and Attendance," discipline pursuant to that Section, will be subject to Sections 3020-a of the Education Law as modified by paragraphs 1-10 below.

Exhibit "H" at page 113.

The modified procedures agreed to by the DOE and the UFT, as set forth in paragraphs 1-10 of the CBA, vary according to the nature of the property interest implicated by the discipline. For example, where the discipline arises out of absences and/or lateness[10] and the penalty sought by the DOE is "short of termination," the employee is entitled to (i) notice of the charges (ii) a copy of the employee's attendance record and any other documentation the DOE intends to introduce at the hearing, (iii) a statement that the arbitrator may award any penalty or take any other action short of termination, (iv) an expedited informal hearing and (v) a written award with a short decision. Id.

For discipline arising out of conduct other than time and attendance, the CBA provides for the offer of expedited arbitration,[11] rather than regular arbitration. Exhibit "H" at page 114. The employee has the right to accept or reject the offer of expedited arbitration. If the

---

[10] The Second Amended Complaint does not aver that the DOE has sought to discipline any of the individual plaintiffs for time and attendance issues. As such, plaintiffs do not have standing to challenge this section of the CBA. `

[11] The Second Amended Complaint does not identify which of the plaintiffs' if any, have been offered expedited hearings under this provision. Further, while the Second Amended Complaint refers to the section of the CBA pertaining to "serious misconduct" plaintiffs do not allege that the DOE has sought to discipline and/or suspend any of the plaintiffs under that provision.

offer of expedited arbitration is accepted the DOE may not seek a penalty to exceed 6 months suspension or the equivalent monetary penalty.  If the employee rejects the offer of expedited arbitration "the case shall proceed in accordance with the regular arbitration proceeding and the Board may seek any penalty including termination."   However, in a non-expedited case, in addition to the regular arbitration procedures of §3020-a, the CBA provides for additional discovery procedures in advance of the hearing to "[t]o effectuate the purpose of the statute." Exhibit "H " at page 117.

Article 21G of the CBA leaves unchanged the provision of Education Law § 3020-a (3)(c) that provides the tenured employee at a disciplinary hearing with the reasonable opportunity to defend him/herself at the disciplinary hearing; to testify at the hearing; to be represented by counsel; to subpoena witnesses; to cross examine witnesses; and to have all testimony taken under oath.   The employee also can appeal the arbitrator's decision in a proceeding is New York state supreme court pursuant to Section 7511 of Civil Practice law and Rules.

As summarized above, the modified procedures of Article 21G of the CBA and those provisions of Education Law § 3020-a that remain operative provide plaintiffs with significantly more than the constitutional minimum of notice, an explanation of the charges and a opportunity to present his/her side.  At all hearings, whether conducted on an expedited or regular schedule, and regardless of whether the penalty is suspension/fine up to 6 months or up to and including termination, the tenured teacher is entitled to time to prepare a defense, documentation that is to be used to support the charges against him, representation by counsel, and the right of confrontation and cross-examination.  While plaintiffs clearly prefer the process provided for in Education Law § 3020-a, their subjective dissatisfaction with the modified

procedures in Article 21G is not sufficient to state a due process violation. There can be no dispute that the modified procedures set forth in Article 21G coupled with the provisions of § 3020-a that remain in effect, provide the plaintiffs with constitutional requirements of due process as a matter of law. Arteta v. County of Orange, 2005 U.S. App. LEXIS 10428 at *10-11 (2d Cir. June 6, 2005) (plaintiff provided with due process when he received notice of disciplinary charges which he disputed at an arbitration hearings); Verri v. Nanna, 20 F. Supp. 2d 616, 622-623 (S.D.N.Y 1998) (due process provided where plaintiff received notice of the charges against him, time to prepare a defense, representation by counsel, a right of confrontation and cross-examination, application of rules of evidence and the opportunity for legal argument); Henderson v. State of New York, 423 F. Supp. 2d 129, 145-146 (S.D.N.Y. 2006) (due process satisfied where plaintiff received notice of charges and arbitration hearing where he was represented by counsel, permitted to cross examine witnesses, call witnesses in his own defense, and challenge decision of arbitrator in state court.)

Finally, plaintiffs' claims regarding the arbitrators alleged failure to comply with the timing requirements of the CBA ("arbitrators routinely violate the rules of arbitration and the requirements of Article 21G and NYS Education Law §§ 3020 and 3020-a," Exhibit "F" at ¶36(j)) and are biased are not challenges to established state procedures but rather the arbitrators alleged failure to comply with those procedures. New York Civil Practice Law and Rules Article 75 afford plaintiffs the opportunity for judicial review of any alleged misconduct or errors that are alleged to have been conducted at the disciplinary hearings. See Whiting v. Old Brookville Bd. Of Police Commissioner, 2001 U.S. App. LEXIS 1690 at *3-4 (2d Cir. February 2, 2001) Marino v. Ameruso, 837 F.2d 45, 47 (2d Cir. 1988); see also Hellenic American Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996).

29

## POINT VII

**THE SECOND AMENDED COMPLAINT
FAILS TO PLEAD AN EQUAL PROTECTION
CLAIM AS A MATTER OF LAW.**

Although not specifically pled, it appears that plaintiffs' equal protection claim is based on a theory of selective enforcement. To establish such a claim, a plaintiffs must show (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Skehan v. Vill of Mamaroneck, 465 F.3d 96, 110 (2d Cir. 2006). Plaintiffs so not allege that they were treated differently than similarly situated individuals. Further, as plaintiffs have not alleged, nor can they establish that their constitutional rights were violated, the Second Amended Complaint does not state an equal protection claim.

## POINT VIII

**THE SECOND AMENDED COMPLAINT
FAILS TO STATE A CONSPIRACY CLAIM.**

In order to survive a motion to dismiss with respect to plaintiffs §1983 conspiracy claim, plaintiffs must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[C]omplaints containing only conclusory, vague or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation

marks omitted). Here, the Second Amended Complaint fails to specify the factual basis of plaintiffs conspiracy claim. <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 324-325 (2d Cir. 2002) (Plaintiff' factual allegations are inadequate to state a §1983 conspiracy claim where he failed to specify in detail the factual basis of his claim). Further, as set forth herein, plaintiffs' cannot establish a violation of their constitutional rights. As such, dismissal of this claim is warranted.

**POINT IX**

**THE SECOND AMENDED COMPLAINT FAILS TO PLEAD A VIABLE CAUSE OF ACTION FOR NEGLIGENT RETENTION AGAINST CITY DEFENDANTS.[12]**

In their Eight Cause of Action, Plaintiffs assert that "[d]efendants Bloomberg, City, Klein and DOE hired and retained principals and other administrators who they know, or should have known, had a hatred and/or dislike of tenured teachers, were envious of tenured teachers' positions, status and privileges, and who had a propensity for the type of harassment, retaliation and conduct that were designed to cause plaintiffs to be charges and sent to Rubber Room." Exhibit " " at page 49. Plaintiffs further allege that City defendants "knew or should have known that the Plaintiffs supervisors had a propensity for anger, belligerence, violence, jealousy, discrimination, hostility and retaliation." Exhibit "F" at   The law is well settled that an employer has a duty to use reasonable care and refrain from knowingly retaining in its employ a person with known dangerous propensities. <u>Haddock v. City of New York</u>, 140 A.D. 2d 91, 94; 532 N.Y.S.2d 379, 380 (App. Div. 1988), aff'd 75 N.Y.2d 478, 554 N.Y.S.2d 439, 553 N.E.2d

---

[12] Should this Court dismiss plaintiffs' federal claims, City defendants respectfully request that this Court decline to exercise supplemental jurisdiction of their state law claims.

987 (1990). However, in order to establish a claim of negligent retention, the plaintiff must prove that the employer knew or should have known of the employee's propensity for the conduct that caused the injury. Brannon v. Tarlov, 986 F. Supp. 146, 150 (E.D.N.Y. 1997).

Here, the Second Amended Complaint offers nothing more than conclusory generalized accusations without identifying a single principal, supervisor or administrator that allegedly had the propensity for the conduct that caused any alleged injury to the plaintiffs. The Second Amended Complaint also fails to allege any facts to support plaintiffs' conclusory allegations that City defendants knew of this alleged propensity by these unidentified individuals. See Wahlstrom v. Metro North Commuter R. Co., 89 F. Supp. 2d 506, 515 (S.D.N.Y. 2000). Accordingly, plaintiffs' claim of negligent hiring, retention and supervision should be dismissed as a matter of law.

## POINT X

### THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR FALSE CONFINEMENT.

Plaintiffs assert that their assignment to Temporary Reassignment Center which they are "guarded and their movements restricted" and for which they are not permitted to "come and go . . . as they please" constitutes false confinement. Exhibit "F" at ¶¶ 215, 216. Plaintiffs' cause of action is premised on their contention that an employer cannot restrict the movement of its employees during the hours that they are on the employers' premises and being paid. Thus, plaintiffs equate their restriction of movement and/or or assignment to a TRC as tantamount to an unlawful imprisonment claim. The allegations of the Second Amended Complaint utterly fail to establish a claim for false imprisonment and such claim therefore must be dismissed Cellamare v. Millbank, Tweed, Hadley & McCoy, LLP, et al., 2003 U.S. Dist LEXIS 22336 at

*6 (E.D.N.Y. December 2, 2003) (holding that plaintiff's allegations that her employer brought her to a small room, interrogated her for hours, called her names, and induced her to sign a statement with a promise that she would then be able to leave, did not do not arise to anything more than a lengthy interview by an employer); Lee v. Bankers Trust Co., 1998 U.S. Dist. LEXIS 2784 at *5 (S.D.N.Y. March 6, 1998) (no unlawful imprisonment where employee was questioned by security personnel who passed themselves off as former FBI agents and prepared a confession to sign).

## POINT XI

### THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT ARE WOEFULLY INSUFFICIENT TO PLEAD A VIABLE CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To state a claim for intentional infliction of emotion distress plaintiff must plead (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; and (3) causal connection between the conduct and the injury; and (4) sever emotional distress. Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121 (1993); Bender v. City of New York, 78 F.3d 787, 789 (2d Cir. 1996). To plead a viable cause of action a plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency ad to be regarded as atrocious, and utterly intolerable in a civilized community. Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303(1983). The types of conduct that have been held to meet this high threshold have involved direct and constant sexual or other physical threats. Nunez v. A-T Financial Information Inc., 957 F. Supp. 438, 441-43 (S.D.N.Y. 1997). The

Second Amended Complaint does not and cannot allege that the conduct of City defendants[13] was so outrageous as to be utterly intolerable in a civilized society. As such, plaintiffs' allegations are insufficient as a matter of law and must be dismissed.

## POINT XII

## THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

The fifth cause of action asserted in the Second Amended Complaint is labeled a "breach of contract claim." Exhibit "F" at page 40. In support of this claim plaintiffs allege:

> The terms of the contract guaranteed Plaintiffs rights to a safe and non-hostile work environment, a salary, rights to per session work and summer school work, benefits, other rights related to their work status as tenured teachers, as well as limited due process rights relate to the NYS Education Law §§ 3020 and 3020a hearing procedures.

Exhibit "F" at ¶ 165. The Second Amended does not cite to any provision(s) of the CBA that allegedly guarantees these rights. In any event, because plaintiffs cannot establish breach of the duty of fair representation for the reasons set forth in the UFT defendants memorandum of law, plaintiffs do not have standing to pursue a breach of contract claim against City Defendants. See Board of Education v. Ambach, 70 N.Y.2d 501, 512 (Ct. of Appeals 1987).

---

[13] All of plaintiffs claim in the Second Amended Complaint are asserted against Mayor Bloomberg and Chancellor Klein apparently in their alleged capacitates as decision makers for the Department of Education. The Second Amended Complaint does not identify a single individual who allegedly was personally involved in the alleged violations of their federal and state rights.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, City defendants respectfully request that this Court issue an order dismissing all claims asserted against them in the Second Amended Complaint in its entirety, with prejudice, and with costs and for such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            July 7 , 2008

                **MICHAEL A. CARDOZO**
                Corporation Counsel of the
                City of New York
                Attorney for City Defendants
                100 Church Street, Room 2-142
                New York, N.Y. 10007-2601
                212-788-0872

By: _____
                BLANCHE GREENFIELD
                Assistant Corporation Counsel
                bgreenfi@law.nyc.gov

*Shakera Khandakar
  Summer Legal  Intern on Brief

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iv

PRELIMINARY STATEMENT .............................................................................1

STATEMENT OF FACTS ................................................................................... 2

      The Prior Complaints Filed in This Action ......................................... 2

      The Second Amended Complaint....................................................... 5

ARGUMENT

      POINT I

            THE SECOND AMENDED COMPLAINT
            CONTAINS ONLY CONCLUSORY
            ALLEGATIONS OF FACT AND CONCLUSIONS
            OF LAW WHICH ARE INSUFFICIENT TO
            MEET THE PLEADING REQUIREMENT OF
            RULE 8(A)(2) OF THE FEDERAL RULES OF
            CIVIL PROCEDURE. ............................................................. 7

      POINT II

            THE SECOND AMENDED COMPLAINT FAILS
            TO ALLEGE THAT THE PLAINTIFFS HAVE
            STANDING TO PURSUE THIS ACTION. ........................................... 11

      POINT III

            PLAINTIFFS DO NOT ALLEGE THAT THEY
            HAVE EACH FILED A CHARGE WITH THE
            EEOC AND THEREFORE DO NOT MEET THE
            JURISDICTIONAL PREREQUISITES
            NECESSARY TO ASSERT THEIR TITLE VII
            CLAIMS. ............................................................................. 13

      POINT IV

            THE SECOND AMENDED COMPLAINT FAILS
            TO STATE A CLAIM FOR RETALIATION......................................... 14

               First Amendment Retaliation ........................................... 16

**Page**

POINT V

    PLAINTIFFS' CLAIM UNDER 42 U.S.C. 1981
    MUST BE DISMISSED. ........................................................................ 19

POINT VI

    PLAINTIFFS' FOURTEENTH AMENDMENT
    CLAIM FOR DEPRIVATION OF LIBERTY AND
    PROPERTY WITHOUT DUE PROCESS OF LAW
    MUST BE DISMISSED. ........................................................................ 20

        Liberty Interest ............................................................. 20

        Property Interest ........................................................... 21

POINT VII

    THE SECOND AMENDED COMPLAINT FAILS
    TO PLEAD AN EQUAL PROTECTION CLAIM
    AS A MATTER OF LAW. .................................................................... 30

POINT VIII

    THE SECOND AMENDED COMPLAINT FAILS
    TO STATE A CONSPIRACY CLAIM. .................................................. 30

POINT IX

    THE SECOND AMENDED COMPLAINT FAILS
    TO PLEAD A VIABLE CAUSE OF ACTION FOR
    NEGLIGENT RETENTION AGAINST CITY
    DEFENDANTS. ................................................................................... 31

POINT X

    THE SECOND AMENDED COMPLAINT FAILS
    TO STATE A CLAIM FOR FALSE
    CONFINEMENT. .................................................................................. 32

POINT XI

    THE ALLEGATIONS OF THE SECOND
    AMENDED COMPLAINT ARE WOEFULLY
    INSUFFICIENT TO PLEAD A VIABLE CAUSE
    OF ACTION FOR INTENTIONAL INFLICTION
    OF EMOTIONAL DISTRESS. .............................................................. 33

**Page**

POINT XII

    THE COMPLAINT FAILS TO STATE A CLAIM
    FOR BREACH OF CONTRACT.............................................................. 34

CONCLUSION........................................................................................................... 35

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                    <u>**Pages**</u>

<u>Abramson v. Pataki</u>,
   278 F.3d 98 (2d Cir. 2002)..................................................................................22

<u>Alfano v. Costello</u>,
   294 F.3d 365 (2d Cir. 2002)...............................................................................13

<u>Alfaro Motors, Inc. v. Ward</u>,
   814 F.2d 883 (2d Cir. 1987).................................................................................9

<u>In re American Express Co. Shareholder Litigation</u>,
   39 F.3d 395 (2d Cir. 1994).................................................................................10

<u>Arteta v. County of Orange</u>,
   2005 U.S. App. LEXIS 10428 (2d Cir. 2005) ..............................................23, 29

<u>Bell Atlantic Corporation v. Twombly</u>,
   127 S. Ct. 1955 (2007).................................................................................7, 8, 9

<u>Bender v. City of New York</u>,
   78 F.3d 787 (2d Cir. 1996).................................................................................33

<u>Benvenisti v. City of New York</u>,
   2006 U.S. Dist. LEXIS 73373 (S.D.N.Y. September 23, 2006)...........................16

<u>Board of Education v. Ambach</u>,
   70 N.Y.2d 501 (Ct. of Appeals, 1987) ...............................................................34

<u>Building & Construction Trades Council</u>,
   448 F.3d 145 (2d Cir. 2006)...............................................................................12

<u>Board of Regents v. Roth</u>,
   408 U.S. 564 (1972)..................................................................................... 21, 22

<u>Boland v. Police Department of the City Of New York</u>,
   2007 U.S. Dist. LEXIS 88444 (S.D.N.Y. November 29, 2007)...........................23

<u>Boland v. Police Department of the City of New York</u>,
   2007 U.S. Dist. LEXIS 8844 (S.D.N.Y. November 29, 2007).............................20

<u>Boyd v. Schembri</u>,
   1997 U.S. Dist. LEXIS 11965 (S.D.N.Y. Aug. 13, 1997).................................23

**<u>Cases</u>**                                                                                          **<u>Pages</u>**

<u>Brannon v. Tarlov</u>,
    986 F. Supp. 146 (E.D.N.Y. 1997) ................................................................32

<u>Butts v. City of New York Department of Housing Preservation and Development</u>,
    990 F.2d 1397 (2d Cir. 1993)......................................................................13

<u>Caniello v. City of New York</u>,
    2001 U.S. Dist. LEXIS 20 (S.D.N.Y. January 4, 2001) ....................................22, 23

<u>Cassidy v. Scoppetta</u>,
    365 F. Supp. 2d 283 (E.D.N.Y. 2005) ........................................................ 21, 23

<u>Castellano v. City of New York</u>,
    142 F.3d 58 (2d Cir. 1998).........................................................................13

<u>Cellamare v. Millbank, Tweed, Hadley & McCoy, LLP, et al.</u>,
    2003 U.S. Dist. LEXIS 22336 (E.D.N.Y. December 2, 2003) ...............................32

<u>Chambers v. Time Warner, Inc.</u>,
    282 F.3d 147 (2d Cir. 2002).........................................................................23

<u>Ciambriello v. County of Nassau</u>,
    292 F.3d 307 (2d Cir. 2002).........................................................................31

<u>Cleveland Board Of Education v. Loudermill</u>,
    470 U.S. 532 (1985)................................................................................ 25

<u>Cobb v. Pozzi</u>,
    363 F.3d 89 (2d Cir. 2003)......................................................................... 17

<u>Collins v. City of Harbor Heights</u>,
    503 U.S. 115 (1992).................................................................................24

<u>Conley v. Gibson</u>,
    355 U.S. 41 (1957)....................................................................................7

<u>Connick v. Meyers</u>,
    461 U.S. 138 (1980)................................................................................16

<u>Deal v. Seneca County</u>,
    2008 U.S. Dist. LEXIS 37846 (W.D.N.Y. May 8, 2008) ....................................24

<u>Denny v. Barber</u>,
    576 F.2d 465 (2d Cir. 1978)........................................................................11

**Cases**                                                                                                   **Pages**

Dwares v. City of New York,
    985 F.2d 94 (2d Cir. 1993)..................................................................................30

Federico v. Board of Education,
    955 F. Supp. 194 (S.D.N.Y. 1997) ......................................................................22

Finley v. Giacobbe,
    79 F.3d 1285 (2d Cir. 1996)................................................................................22

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994)....................................................................................9

Foman v. Davis,
    371 U.S. 178 (1962)............................................................................................10

Garcetti v. Ceballos,
    126 S. Ct. 1951 (2006)........................................................................................16

Giglio v. Dunn,
    732 F.2d 1133 (2d Cir, 1984)
    cert. denied, 469 U.S. 932 (1984) .......................................................................25

Gomez v. Toledo,
    446 U.S. 635 (1980)............................................................................................22

Gonzales v. Wing,
    167 F.R.D. 352 (N.D.N.Y. 1996) .........................................................................7

Grunberg v. Board Of Education,
    2006 U.S. Dist. LEXIS 22424 (E.D.N.Y. March 30, 2006) ..................................23

Guida v. Police Department,
    1997 U.S. Dist. LEXIS 7053 (S.D.N.Y. May 20, 1997).......................................24

Haddock v. City of New York,
    140 A.D. 2d 91, 94; 532 N.Y.S.2d 379, 380 (App. Div. 1988),
    aff'd 75 N.Y.2d 478, 554 N.Y.S.2d 439, 553 N.E.2d 987 (1990) ..........................31

Harris Lee v. Sony BMG Music,
    2008 U.S. Dist. LEXIS 39975 (S.D.N.Y. May 15, 2008)......................................10

Hellenic American Neighborhood Action Committee v. City of New York,
    101 F.3d 877 (2d Cir. 1996)................................................................................29

Henderson v. State of New York,

| Cases | Pages |
|---|---|

423 F. Supp. 2d 129 (S.D.N.Y. 2006)..................................................29

Howell v. New York Post Co., Inc.,
   81 N.Y.2d 115 (1993) .............................................................33

Hunt v. Wash. State Apple Adver. Commission,
   432 U.S. 333 (1977)...............................................................12

Iqbal v. Hasty,
   490 F.3d 143 (2d Cir. 2007)........................................................8

Johnson v. Ganin,
   342 F.3d 105 (2d Cir. 2003).......................................................17

Jute v. Hamilton Sundstrand Corp.,
   420 F.3d 166 (2d Cir. 2005).......................................................14

Kentucky Department of Corrections v. Thompson,
   490 U.S. 454 (1989)...............................................................22

Kessler v. Westchester County Department of Social Services,
   461 F.3d 199 (2d Cir. 2006).......................................................14

Lee v. Bankers Trust Co.,
   1998 U.S. Dist. LEXIS 2784 (S.D.N.Y. March 6, 1998) ...........................33

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992)...............................................................12

Lujan v. National Wildlife Federation,
   497 U.S. 871 (1990)...............................................................12

Marino v. Ameruso,
   837 F.2d 45 (2d Cir. 1988).........................................................29

Matthews v. Eldrige,
   424 U.S. 319 (1976)...............................................................25

McDonald v. Board Of Education,
   2001 U.S. Dist. LEXIS 10325 (S.D.N.Y. July 25, 2001) ...........................21

McMahon v. New York City Board Of Education,
   2006 U.S. Dist. LEXIS 89627 (E.D.N.Y. December 12, 2006) .......................18
Morris v. Lindau,
   196 F.3d 102 (2d Cir. 1999).......................................................17

**Cases**                                                                                                          **Pages**


Murphy v. American Home Products Corp.,
    58 N.Y.2d 293 (1983) .........................................................................................................33

Murray-Dahnir v. Loews Corp.,
    2001 U.S. Dist. LEXIS 4226 (S.D.N.Y. Apr. 10, 2001).........................................................13

Narumanchi v. Board of Trustees,
    850 F.2d 70 (2d Cir. 1988)....................................................................................................25

New York State N.O.W. v. Pataki,
    261 F.3d 156 (2d Cir. 2001)..................................................................................................21

Nunez v. A-T Financial Information Inc.,
    957 F. Supp. 438 (S.D.N.Y. 1997) .......................................................................................33

O'Connor v. Pierson,
    426 F.3d 187 (2d Cir. 2005)..................................................................................................24

Pangburn v. Culbertson,
    200 F.3d 65 (2d Cir. 1999)....................................................................................................30

Pantene v. Clark,
    508 F.3d 106 (2d Cir. 2007)....................................................................................................8

In re Parmalat Sec. Litigation,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005).....................................................................................7

Patterson v. City of Utica,
    370 F.3d 322 (2d Cir. 2004)..................................................................................................20

Paulemon v. Tobin,
    30 F.3d 307 (2d Cir. 1994)....................................................................................................23

Pena v. Brattleboro,
    702 F.2d 322 (2d. Cir. 1983).................................................................................................13

Perez v. City of New York,
    1997 U.S. Dist. LEXIS 19093 (S.D.N.Y. December 2, 1997) ...............................................24

Perry v. Sindermann,
    408 U.S. 593 (1972)..............................................................................................................22

Piscottano v. Murphy,
    511 F.3d 247 (2d Cir. 2007)..................................................................................................16

Public Utilities Commission of District of Columbia v. Pollak,

**Cases**                                                                                                      **Pages**

    343 U.S. 451 (1952)................................................................................................21

Rivera v. City of New York,
    392 F. Supp. 2d 644 (S.D.N.Y. 2005)........................................................................21
Rivera v. Community School District Nine, et. al.,
    145 F. Supp. 2d 302 (S.D.N.Y. 2001)........................................................................21

Salahuddin v. Cuomo,
    861 F.2d 40 (2d Cir. 1988)......................................................................................10

Saulpaugh v. Monroe Community Hospital,
    4 F.3d 134 (2d Cir. 1993)........................................................................................17

Seabrook v. City of New York,
    509 F. Supp. 2d 393 (S.D.N.Y. 2007)........................................................................8

Semorile v. City of New York,
    407 F. Supp. 2d 579 (S.D.N.Y. 2006)......................................................................25

Skehan v. Village of Mamaroneck,
    465 F.3d 96 (2d Cir. 2006)......................................................................................30

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2003)..................................................................................................7

Sylla v. City of New York,
    No. 04-cv-5692, 2005 U.S. Dist. LEXIS 31817 (E.D.N.Y. Dec. 8, 2005)..............21

Tindall v. Poultney High Sch. District,
    414 F.3d 281 (2d Cir. 2005)......................................................................................9

Town of Castle Rock v. Gonzales,
    545 U.S. 748 (2005)................................................................................................22

Treppel v. Biovail Corp.,
    2005 U.S. Dist. LEXIS 18511 (S.D.N.Y. Aug. 30, 2005)......................................11

Valmonte v. Bane,
    18 F.3d 992 (2d Cir. 1999)......................................................................................20

Verri v. Nanna,
    20 F. Supp. 2d 616 (S.D.N.Y 1998)........................................................................29

Wahlstrom v. Metropolitan North Commuter R. Co.,
    89 F. Supp. 2d 506 (S.D.N.Y. 2000)........................................................................32

**Cases**                                                                 **Pages**


Watts v. Services For the Underserved,
    2007 U.S. Dist. LEXIS 41209 (E.D.N.Y. June 6, 2007) .........................................8

Whidbee v. Garzarelli,
    223 F.3d 62 (2d Cir. 2000)....................................................................................13

Whiting v. Old Brookville Board Of Police Commissioner,
    2001 U.S. App. LEXIS 1690 (2d Cir. February 2, 2001) ....................................29

Yusuf v. Vassar College,
    35 F.3d 709 ...........................................................................................................19

Zelnik v. Fashion Institute Of Tec.,
    464 F.3d 217 (2d Cir. 2006)..................................................................................18

**Statutes**

42 U.S.C. 1981 ...............................................................................................................19

42 U.S.C. § 1983 ............................................................................................... 9, 14, 30

42 U.S.C. § 20000e-5.....................................................................................................13

42 U.S.C. §2000e et seq.................................................................................................15

42 U.S.C. Section 1981 ...........................................................................................3, 19

Fed. R. Civ. P. 8..............................................................................................................7

Fed. R. Civ. P. 8(a)(2).............................................................................................7, 8, 9

Fed. R. Civ. P. 12(b)(6)...................................................................................................7

Fed. R. Civ. P. 15(a) .....................................................................................................10

N.Y.S. Education Law § 3020 ......................................................13, 25, 26, 27, 29, 34

N.Y.S. Education Law § 3020(4).....................................................................................26

**Statutes**                                                                **Pages**

N.Y.S. Education Law § 3020-a ................................................................... 26, 27, 28

N.Y.S. Education Law § 3020-a (3) .......................................................................27

Article 21G................................................................................................ 26, 27, 28, 29

Article 75 ...............................................................................................................29

Article 78 ...............................................................................................................25

Article III ...............................................................................................................11