UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
:
TEACHERS4ACTION, et al.,          :   Index No. 08 Civ. 548 (VM) (AJP)
                                  :
                  Plaintiffs,     :   **DECLARATION OF**
       v.                         :   **ALAN M. KLINGER IN SUPPORT**
                                  :   **OF UFT DEFENDANTS' MOTION**
MICHAEL G. BLOOMBERG, et al.,     :   **TO DISMISS THE SECOND**
                                  :   **AMENDED COMPLAINT**
                  Defendants.     :
                                  :
------------------------------------- x

      ALAN M. KLINGER, under penalty of perjury, declares:

    1.    I am a member of the firm of Stroock & Stroock & Lavan LLP ("Stroock"), co-counsel for defendants Randi Weingarten, President of the United Federation of Teachers ("UFT"), the UFT, and Betsy Combier (collectively "UFT Defendants") in the above-captioned action. I have personal knowledge of the facts set forth below.

    2.    Annexed hereto as Exhibit A is a true and accurate copy of the July 15, 2008 letter sent by Defendant Randi Weingarten to local elected officials regarding the Temporary Reassignment Centers, described in Plaintiffs' Second Amended Complaint at paragraph 78 and previously annexed to Plaintiffs' February 22, 2008 Amended Complaint as Exhibit 14.

    3.    Annexed as Exhibit B is a true and accurate copy of Article 21 of the 2007-2009 Collective Bargaining Agreement between the UFT and the Board of Education of the City School District of the City of New York. Article 21 is referenced throughout Plaintiffs' Second

Amended Complaint and a portion of it is excerpted as Exhibit 5 to the Second Amended Complaint.

Dated: New York, New York
      July 7, 2008

                                                  _____
                                                  ALAN M. KLINGER

**Exhibit A**



United Federation of Teachers
*A Union of Professionals*

January 15, 2008

Dear Elected Official:

You may have received recently a letter from a group of teachers who have been placed into DOE's "Teacher Reassignment Centers" pending investigations into charges against them. I'd like to give you some background on this situation. Rest assured that the UFT takes very seriously its dual obligation to protect our members' due process rights and our moral responsibility to protect the children of the City of New York.

Accused members have always been initially reassigned to the district office. In the late 80's, in response to the Lisa Steinberg tragedy, the Board of Education required all allegations of corporal punishment to be reported to the central board without preliminary investigation. As a result the principal's ability to simply look into the matter and decide if there was substance to an allegation was curtailed. Still, until the 2002 elimination of operating community school district offices, the Community Superintendents served as gatekeepers and the number of allegations, restorations to service and removals remained essentially the same.

In the last few years, however, without those gate keepers, the number of pedagogues removed from school buildings has grown. There was no authority scrutinizing who was being removed from classrooms or checking the reason for each removal.

In response to the growing numbers and the long periods of time some members were spending in the TRCs, the UFT, believing "justice delayed was justice denied," entered into negotiations with the DOE. Those talks are still ongoing.

After several meetings and consultations with our reassigned members, the UFT put forth the following premises:

- All members must be treated as professionals and as people deserving respect;
- Placement in a TRC should be in close proximity to a member's home or district;
- All TRCs must be housed in safe and appropriate environments without PESH violations, and the UFT will vigorously pursue any violations of this requirement;

52 Broadway, New York, NY 10004   p. 212 777.7500   www.uft.org

Officers: Randi Weingarten President, Michael Mendel Secretary, Mel Aaronson Treasurer, Robert Astrowsky Assistant Secretary, Mona Romain Assistant Treasurer
Vice Presidents: Carmen Alvarez, Michelle Bodden, Leo Casey, Richard Farkas, Aminda Gentile, Michael Mulgrew

- All members must be informed of the charges, specifications, or allegations against them in a timely manner, and be informed of the identity of their accuser(s);
- Whatever the merits of the case, no one should be removed from his/her school unless he/she is a documented threat/danger to the students or staff;
- Every effort must be made to protect members from being re-assigned merely because of a disagreement with a principal, because they are whistleblowers, or because supervisors consider them too old to teach.

In light of these principles, we have presented the following demands to the DOE:

1. All members are to be presented with charges, including the name of the person making allegations, within 48 hours of removal from the school; allegations of criminal activity shall be an exception to this 48-hour rule.

2. No UFT member should be removed from his/her school or site unless there is reasonable, probable cause, as determined by an unbiased neutral party, that the member may present a danger to students or staff. A Special Master or a panel of three arbitrators should be appointed to determine, within 5 days after a re-assignment takes place, whether or not the educator is a threat to the safety of the school community, based upon the allegation/charges. If not, then the educator shall be returned to his/her school or site immediately.

3. The Department of Education has an obligation to give members the opportunity to do work related to their assignment, even while in a temporary re-assignment center. Chancellor's Regulation C-770 states that "During the period of suspension, all individuals are expected to perform duties appropriate to their assignments, insofar as possible..." A menu of meaningful pedagogical work should be jointly prepared by UFT and DOE. This work shall be conducted in an appropriate work setting as close to the member's original school as possible and may also include professional development courses.

4. All arbitrators at 3020A and medical arbitrators must be required to submit their findings in a timely manner in accordance with contractual obligations.

5. Double moral jeopardy must end. Members who are acquitted on the facts in a criminal trial or other legal proceeding must not be tried again under 3020A.

6. Any member who has not been charged or has not yet begun a hearing within six months of his/her removal from the school setting must automatically be restored to service.

7. Members who are exonerated at a 3020A hearing will have the option of returning to the school from which they were reassigned and the teaching program (or other applicable responsibilities) that they held prior to removal.

8. Only licensed supervisors may be responsible for the administration and supervision of members assigned to the TRC.

The discussions with the employer have been active and ongoing but there is not yet agreement on all matters. However, new sites have been opened to alleviate overcrowding, health and safety standards are being jointly worked on, and arbitrators have been employed to bring the complement up to the contractual requirement.

Additionally, the union has asked members in each Temporary Reassignment Center to elect a representative to meet with the UFT Director of Staff on a regular basis both to bring problems that might arise and to receive and disseminate contractual information to reassigned members.

As to the question of the fairness of the arbitrators, they are jointly selected and either the employer or the UFT may refuse to keep an arbitrator on the panel if they believe the arbitrator is biased. These men and women depend on their neutrality and fairness for their continued employment.

The vast majority of our members use union lawyers during 3020a proceedings. Just as in any other proceeding, if the other side offers a settlement it is the attorney's obligation to inform the member of the offer. While counsel may offer advice, it is the member who decides whether or not to take the offer or go on with the case.

In short, you may assure any constituent who has contacted you that you have inquired and have been assured that the UFT is actively engaged with members in the TRCs and its legal department is advocating for them, making certain that members receive due process rights in a timely manner.

Sincerely,

Randi Weingarten
President

Exhibit B

5. The chapter leader shall have access to such school information as may be necessary to the performance of his/her duties, including teacher programs, room assignments, and allocation of non-teaching time.

6. A copy of teacher assignments shall be given to the chapter leader of the homebound teachers chapter upon request.

**K. Political Check-Off**

The Board will arrange for voluntary payroll deduction contributions for federal political contests in accordance with Title 2, Section 441b of the U.S. Code.

## ARTICLE TWENTY
## MATTERS NOT COVERED

With respect to matters not covered by this Agreement which are proper subjects for collective bargaining, the Board agrees that it will make no changes without appropriate prior consultation and negotiation with the Union.

The Board will continue its present policy with respect to sick leave, sabbatical leaves, vacations and holidays except insofar as change is commanded by law.

All existing determinations, authorizations, by-laws, regulations, rules, rulings, resolutions, certifications, orders, directives, and other actions, made, issued or entered into by the Board of Education governing or affecting salary and working conditions of the employees in the bargaining unit shall continue in force during the term of this Agreement, except insofar as change is commanded by law.

## ARTICLE TWENTY-ONE
## DUE PROCESS AND REVIEW PROCEDURES

**A. Teacher Files**

Official teacher files in a school shall be maintained under the following circumstances:

1. No material derogatory to a teacher's conduct, service, character or personality shall be placed in the files unless the teacher has had an opportunity to read the material. The teacher shall acknowledge that he/she has read such material by affixing his/her signature on the actual copy to be filed, with the understanding that such signature merely signifies that he/she has read the material to be filed and does not necessarily indicate agreement with its content. However, an incident which has not been reduced to writing within three months of its occurrence, exclusive of the summer vacation period, may not later be added to the file.

2. The teacher shall have the right to answer any material filed and his/her answer shall be attached to the file copy.

3. Upon appropriate request by the teacher, he/she shall be permitted to examine his/her files.

4. The teach er shall be permitted to reproduce any material in his/her file.

5. Members may not grieve material in file, except that if accusations of corporal punishment or verbal abuse against a UFT-represented employee are found to be unsubstantiated, all references to the allegations will be removed from the employee's personnel file.

However, the teacher shall have the right to append a response to any letter. If disciplinary charges do not follow, the letter and response shall be removed from the file three years from the date the original material is placed in the file.

6. The following issues shall not be the basis for discipline of pedagogues: a) the format of bulletin boards; b) the arrangement of classroom furniture; and c) the exact duration of lesson units.

**B. Counseling Memos**

Supervisors may issue counseling memos. Counseling memos are not disciplinary. Counseling memos provide the opportunity for supervisors, in a non-disciplinary setting, to point out to employees areas of work that the supervisor believes need improvement. Counseling memos should include the supervisor's proposals for how such improvement may be achieved. Any employee who receives a counseling memo may request from the supervisor either suggestions for how to improve or requests for the supervisor to model such improvement for the member. Counseling memos are a vehicle for supportive improvement.

1. A counseling memo may only be written to an employee to make him/her aware of a rule, regulation, policy, procedure, practice or expectation. A counseling memo cannot include any disciplinary action or threat of disciplinary action.

    a. "Counseling Memo" must appear at the top of the memo in bold print and capital letters. At the conclusion of the memo the following must appear in bold print:

    "A counseling memo is not disciplinary in any manner and cannot be used in action against an employee except to prove notice if the employee denies notice." If the language required in (a) is not included in the memo, it must be added.

    b. A counseling memo must be presented to an employee within one (1) month of the latest incident recounted in the memo. The memo may only reference similar prior incidents that occurred no more than four (4) months from the date of the latest incident.

2. Counseling memos may not be used in any action or evaluation involving an employee in the bargaining unit ("U" rating, per session job, etc.) except to establish that the employee who denies knowledge of a rule, regulation, policy, procedure, practice or expectation was given prior notice of it, or to impeach factual testimony.

    a. Counseling memos may not be used in the rating of an employee in the bargaining unit.

    b. Counseling memos may not be referred to in, or attached to, any other letter sent to an employee for their official school file.

3. C ounseling memos may not be grieved.

Any employee who receives a counseling memo shall have the right to answer within one (1) month of receipt of the counseling memo and the answer shall be attached to the file copy of the counseling memo.

4. All counseling memos will be permanently removed from employee's official school files three (3) years after the latest incident referred to in the memo.

**C. Summons**

1. A teacher summoned by the principal to a conference which may lead to disciplinary action for reasons of misconduct may be accompanied, at his/her option, by the chapter leader or his/her designated alternate.

2. Teach ers summoned to the office of a community or high school superintendent or to the Division of Human Resources shall be given two days notice and a statement of

the reason for the summons, except where an emergency is present or where considerations of confidentiality are involved.

Whenever an employee is summoned for an interview for the record which may lead to disciplinary action, he/she shall be entitled to be accompanied by a representative who is employed by the city school system, or by an employee of the Union who is not a lawyer, and he/she shall be informed of this right. However, where the community or high school superintendent or the Division of Human Resources permits an attorney who is not a member of the city school system to represent any participant in the interview, the employee shall be entitled to be represented by an attorney. An interview which is not held in accordance with these conditions shall not be considered a part of the employee's personnel file or record and neither the fact of the interview nor any statements made at the interview may be used in any subsequent Board proceeding involving the employee. It is understood that informal conferences, such as those between a community or assistant superintendent and a teacher, or the Division of Human Resources and a teacher, for professional improvement, may be conducted off the record and shall not be included in the employee's personnel file or record.

    3. I ncidents investigated by the Chancellor or by a governmental investigatory agency must be reduced to writing by the appropriate supervisor within 6 months and 12 months respectively from the date the incident either occurred or should have been discovered by the appropriate school officials. Employees must receive a complete copy of any such writing and an opportunity to answer in writing and to have such response attached. The writing may not be incorporated into the employee's personnel file or record, unless this procedure is followed, and any such writing will be removed when an employee's claim that it is inaccurate or unfair is sustained.[10]

**D. Discontinuance of Probationary Service and Appeals of Unsatisfactory Ratings**

    1. Regula r substitutes and teachers on probation, except as provided in subparagraph 2 below, shall be entitled to the review procedures before the Chancellor as prescribed in Section 4.3.2 of the by-laws of the Board of Education.

By-law 4.3.2 procedures for the review of a recommendation by a superintendent for discontinuance of probationary service of a teacher shall be modified to provide for the following:

    a. The 4.3.2 committee shall be a tripartite committee of professional educators, one selected by the teacher, one by the Board and a third selected by the other two from a list agreed upon by the Board and the Union.

    b. The committee will make an advisory recommendation to the community school board or the Chancellor for central programs within 20 days after the hearing.

    c. The costs of the teacher's representative shall be paid by the teacher. The costs of the Board's representative shall be paid by the Board. The costs of the mutually selected member of the committee shall be shared by the Board and the teacher.

    2. Teach ers on probation who have completed at least three years of service on regular appointment in the school shall be entitled, with respect to the discontinuance of their probationary service, to the same review procedures as are established for tenured teachers under Section 3020-a of the Education Law.

    3. Teach ers who receive doubtful or unsatisfactory ratings may appeal under Section 4.3.1 of the by-laws of the Board of Education.

---

[10] The parties disagree as to the applicability of Section 10 of the October 2005 MOA to this Article 21C3.

**E. Suspension**

Any teacher who is suspended pending hearing and determination of charges shall receive full compensation pending such determination and imposition of any penalty except as set forth in Article 21G5 and 21G6.

**F. Rating "Not Applicable"**

A rating of "Not Applicable (NA)" is to be used only in situations where a pedagogical employee is reassigned out of his/her regular assignment for disciplinary reasons. The "NA" rating will apply only for the period of reassignment, cannot be used in any proceeding as evidence of wrongdoing and will not otherwise affect any other rights afforded in the Agreement where ratings are an issue.

**G. Education Law §3020-a Procedures**

Tenured teachers facing disciplinary charges filed, or in the case of Section 1 "Time and Attendance", discipline pursuant to that Section, will be subject to Section 3020-a of the Education Law as modified by paragraphs 1-10 below.

**1. Time and Attendance**

If the Board seeks to discipline a tenured pedagogue regarding absences and/or lateness but seeks a penalty short of termination, the following expedited procedure will apply:

The Board will notify the employee that it intends to bring disciplinary action against the employee pursuant to this section. The Board will include in this notice the employee's attendance record and any other documentation it intends to introduce at the hearing and a statement that pursuant to this section the arbitrator may award any penalty, or take other action, short of termination.

Within 15 calendar days following this notice, the employee must notify the Board in writing of the nature of his\her defense and submit any documentation s\he intends to submit into evidence as well as a medical release for any medical documents related to such defense.

If either party believes that it requires additional documents, it may request a telephonic conference with the arbitrator.

The expedited hearing will occur within one month of the Board's notification to the employee mentioned above. The hearing will be informal and the normal rules of trial procedure and evidence shall not apply. The arbitrator will issue an award and short decision within 15 calendar days of the hearing. The arbitrator's award will be final and binding on all parties. The award may be introduced in another Education Law §3020-a hearing and any findings shall be binding on the §3020-a arbitrator.

One arbitrator, agreed upon between the parties, will hear all absence and lateness cases hereunder. The parties may expand the number of arbitrators if necessary. The arbitrator will hear 4 cases per hearing date on a staggered schedule, but in no situation will one case take more than ½ a day. The parties may expand the number of cases heard in a day if they deem it practical.

**2. Rotational Panel**

As discussed and agreed upon, all parties would be served better by the implementation of a permanent arbitration panel. The panel members must be agreeable to both sides, however, if the parties cannot agree to a full complement of 20 panel members, additional impartial arbitrators shall be selected by the parties in accordance with the American Arbitration Association (AAA) procedures (strike and rank method)

113

from list(s) provided by the AAA until the desired number (20) is reached to establish such permanent panel.

Panel members shall serve for a maximum of a one-year term. At the expiration of such term, the parties must agree to have arbitrators continue to serve on the panel, and if not, replacement members will be elected by the method outlined above. Removal prior to the end of the one-year term must be for good and sufficient cause upon mutual agreement of the parties.

Any arbitrator who agrees to serve on the rotational panel must agree to the following terms:

a. Each arbitrator selected to serve on this rotational panel must agree to provide five (5) consecutive hearing dates per month for the months of September through June and two (2) hearing dates for the months of July and August. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless otherwise agreed.

b. Arbitrators must provide three (3) dates, within ten (10) to fifteen (15) calendar days from the date the case was assigned to him or her, for a pre-hearing conference. One of the dates shall be at 9:00 a.m. Advocates must accept one (1) of the three (3) dates offered or it will be assumed that the date or dates offered at 9:00 a.m. is (or are) acceptable. Said dates must be in compliance with Education Law §3020-a (within 10 to 15 days from the date selected to serve).

c. At the pre-hearing conference, arbitrators must provide and parties must accept five (5) consecutive hearing dates within the statutory timeframe as delineated in Education Law §3020-a. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless mutually agreed.

d. The parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normally attorney or party scheduling conflicts are not extraordinary circumstances.

e. In all cases, as delineated in Education Law §3020-a the final hearing shall be completed no later than 60 days from the pre-hearing conference and the written decision must be rendered within 30 days from the final hearing date.

f. There is a presumption that charges against the same employee will be consolidated unless the arbitrator finds that to do so would deny a fair hearing. Additionally, in routine matters, any motions must be made and responded to orally. Thereafter, a decision shall be rendered on the issue the same date the motion was made. Should the arbitrator find that written motion practice is necessary, either party reserves the right to respond orally but in no case shall motion practice take place outside the scope of the timelines as outlined in Education Law §3020-a.

Failure to abide by these rules shall be "good and sufficient" grounds for removal of an arbitrator.

### 3. Expedited Hearings

Prior to the pre-hearing conference, the Board shall determine whether the nature of the case would permit offering Respondent expedited arbitration rather than regular arbitration of the case. If the Respondent accepts the offer of expedited arbitration, the hearing shall proceed in accordance with the expedited procedure set forth below and the Board may not seek a penalty to exceed six (6) months suspension or the equivalent monetary penalty. Should the Respondent reject the offer of expedited arbitration, the

case shall proceed in accordance with the regular arbitration proceeding and the Board may seek any penalty including termination.

Where the offer of expedited arbitration was rejected, the arbitrator (or the arbitration panel) shall not be informed of the offer of expedited arbitration nor that the offer was rejected.

Cases heard under the expedited arbitration procedure shall be completed in three (3) consecutive days. Each advocate shall be provided equal time to present his or her respective case. Cross-examination usually will not go beyond the scope or duration of the direct examination.

During the course of the hearings, should the evidence reveal more serious misconduct than originally charged, the arbitrator, upon his or her initiative, or upon the Board's motion, is empowered for good cause to end the expedited proceeding and order a new, regular arbitration proceeding before a different arbitrator. At the regular arbitration, the Board may seek any penalty including termination. Upon a showing of unavailability during the regular arbitration, the prior record of a completed witness who testified in the expedited arbitration shall be admissible.

### 4. Investigations

Where the Board conducts an investigation of an employee and the employee has been reassigned to administrative duties pending the outcome of such investigation, the parties agree that the employee will be restored to service no later than 6 months from the date of his or her removal unless Education Law §3020-a charges have been preferred against the employee. Should the employee be restored to service, this event does not preclude the Board from subsequently preferring Education Law §3020-a charges against the employee. If charges are preferred, the employee shall remain reassigned, at the Board's discretion, pending the outcome of the disciplinary process. This requirement to restore an employee to service after 6 months does not include investigations conducted by the Special Commissioner of Investigation or investigations that are related to criminal prosecutions.

### 5. Serious Misconduct

The parties agree that certain types of alleged misconduct are so serious that the employee should be suspended without pay pending the outcome of the disciplinary process. Serious misconduct shall be defined as actions that would constitute:

- the felony sale, possession, or use of marijuana, a controlled substance, or a precursor of a controlled substance or drug paraphernalia as defined in Article 220 or 221 of the Penal Law, or
- any crime involving physical abuse of a minor or student (crimes involving sexual abuse of a minor or student are addressed in paragraph 6 below.), or
- any felony committed either on school property or while in the performance of teaching duties, or
- any felony involving firearms as defined in Article 265 of the Penal Law.

If an employee is accused of committing serious misconduct, the employee shall be removed from payroll for a term not to exceed two (2) months after a finding by the "probable cause arbitrator" that there is probable cause to believe that the actions alleged were committed by the employee and that they constitute "serious misconduct" as defined above. Probable cause exists when evidence or information which appears reliable discloses facts or circumstances making it likely that such conduct occurred and

115

that such person committed the conduct. To establish probable cause, the investigator assigned to the matter must be present and testify under oath before the arbitrator. The Board may also be required to produce signed statements from the victim or witnesses, if any. Thereafter, the Respondent shall have an opportunity to respond orally to the offer of proof. The arbitrator may ask relevant questions or may make further inquiry at the request of Respondent. The hearing shall not require testimony of witnesses nor shall cross-examination be permitted.

Said probable cause hearing usually shall not exceed one half of a hearing day.

One arbitrator, agreed to by both parties, shall be assigned to hear all probable cause matters for a period of one year. If the parties cannot agree upon one arbitrator, each party shall select one arbitrator who together will select the probable cause arbitrator.

Should the Board meet its burden of establishing probable cause of serious misconduct, the employee shall remain suspended without pay during the pendency of the disciplinary action, but in no event shall such period exceed two months except as set forth herein.

The parties expect that these cases shall be completed within two (2) months. However, where it is not possible to complete the hearing within the two (2) month period despite the best efforts of all parties, and where the arbitrator believes that the evidence already presented tends to support the charges of serious misconduct, the arbitrator may extend the period of suspension without pay for up to thirty (30) days in order to complete the proceedings.

If the Respondent requests not to have the case proceed for a period of thirty (30) days or more and that request is granted, during the period of this adjournment, the Respondent shall remain in non-paid status. As noted above, however, the parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates.

While suspended without pay pending the arbitration hearing on serious misconduct charges, the Respondent may continue his or her existing health coverage, except that in no event shall the Respondent be entitled to continue his or her existing health coverage for more than six (6) months while on non-paid status except at the absolute discretion of the Chancellor. In the event that the Respondent is exonerated of all serious misconduct charges, the employee shall be restored to his or her position and be entitled to receive back pay and be made whole for the amount of time he or she remained off payroll. In the event that the arbitrator finds the employee guilty of the serious misconduct and imposes a penalty less than termination, the arbitrator shall decide whether and to what extent a reinstated employee shall be entitled to receive any back pay for the time the employee was suspended without pay.

The parties agree that these types of cases shall receive the highest priority, and, upon the Board's request, hearings may be held on such matters during any days previously committed by a rotational panel to other employees, as set forth above. In other words, hearings for serious misconduct take precedence over other disciplinary matters, and the Board may require adjourning other cases previously scheduled before the assigned arbitrator during that time frame in order for that arbitrator to hear serious misconduct cases within the two-month time frame.

### 6. Sexual Offenses Involving Students or Minors

A tenured pedagogue who has been charged under the criminal law or under §3020-a of the New York State Education Law with an act or acts constituting sexual misconduct (defined below) shall be suspended without pay upon a finding by a hearing officer of probable cause that sexual misconduct was committed.

A rebuttable presumption of probable cause shall exist where the Special Commissioner of Investigations ("SCI") substantiates allegations of sexual misconduct, or a tenured pedagogue has been charged with criminal conduct based on act(s) of sexual misconduct.

A report from the Chancellor's Office of Special Investigations ("OSI") substantiating allegations of sexual misconduct is relevant evidence of probable cause but does not create a rebuttable presumption of probable cause.

In §3020-a proceedings, a mandatory penalty of discharge shall apply to any tenured pedagogue a) found by a hearing officer to have engaged in sexual misconduct, or b) who has pleaded guilty to or been found guilty of criminal charges for such conduct.

The §3020-a hearing should be completed within two months, but the suspension without pay shall be extended one additional month if the hearing has not been completed, unless the Board has received an adjournment or otherwise delayed the proceeding. The suspension without pay shall also be extended until a criminal action is resolved and any §3020-a proceeding is also completed.

If the §3020-a hearing results in a dismissal of the charges or if the criminal proceeding ends in an acquittal or dismissal (and the Board has decided not to prefer charges), the pedagogue shall be entitled to back pay with interest for the entire period of the suspension without pay.

For purposes of this section, sexual misconduct shall include the following conduct involving a student or a minor who is not a student: sexual touching, serious or repeated verbal abuse (as defined in Chancellor's Regulations) of a sexual nature, action that could reasonably be interpreted as soliciting a sexual relationship, possession or use of illegal child pornography, and/or actions that would constitute criminal conduct under Article 130 of the Penal Law against a student or minor who is not a student.

A letter of agreement dated October 2, 2005 regarding sexual misconduct is attached as Appendix G.

### 7. Other Felony Offenses

Tenured pedagogues who have been convicted of, or who have pled guilty to, any felony not addressed in paragraph 5, above shall be suspended without pay pending the final outcome of the Education Law §3020-a disciplinary proceeding. The §3020-a hearing should be completed within two months, but the suspension without pay shall be extended one additional month if the hearing has not been completed, unless the Board has received an adjournment or otherwise delayed the case.

### 8. Discovery Procedures

To effectuate the purpose of the statute, the parties agree that Education Law §3020-a authorizes the following in advance of the hearing:

Both sides will exchange witness lists, witness statements, and physical evidence (e.g., photographs) at least before the presentation of their direct case and earlier upon motion to the arbitrator.

The Respondent shall receive copies of investigatory statements, notes, other exculpatory evidence, and relevant student records after in camera review.

The Board shall receive evidence and documents from the Respondent upon a showing during the hearing that it is relevant.

Additionally, if the case has stemmed from an investigation conducted by the Special Commissioner of Investigation (SCI), the Board will provide the entire SCI file to Respondent, including exculpatory evidence, during the discovery phase of the §3020-a hearing unless such information is privileged. Failure to do so shall form the basis of such evidence being precluded from introduction in the §3020-a proceedings. This provision remains subject to the Family Educational Rights and Privacy Act.

### 9. Incompetence Cases

The parties agree that in the spirit of progressive discipline, rather than necessarily charge an employee with incompetence, an employee who receives an unsatisfactory rating for the first time may be offered the opportunity to enroll in the Peer Intervention Program ("PIP") for a term of one year. Refusal to enter the PIP program is admissible in any future disciplinary proceedings. The parties further agree that during the first school term of the intervention, no formal observations will be made. During the second school term, although the employee will still be in the PIP, the administration is free to conduct observations and to rate the employee accordingly. Since the end-of-year rating will be based on these observations, a minimum of two (2) observations shall be conducted during the second school term. PIP may not be invoked by the employee once the disciplinary process has commenced.

Pursuant to, and as further described in section J "Peer Intervention Plus Program" below, during their participation in the Peer Intervention Plus Program ("PIP Plus"), participating teachers shall not be charged with incompetence pursuant to Education Law §3020-a. The fact that an employee has declined to participate or that the BOE has denied a request to participate or has not offered the teacher an opportunity to participate in the programs will be admissible in §3020-a proceedings. Observation reports of the consulting teachers will be admissible in §3020-a proceedings.

### 10. Attorney Teams

Each Board attorney will be paired with a Union attorney for four (4) consecutive cases. Should one case settle, another case between the same attorneys shall be substituted for the case settled in an effort to utilize the dates set by the parties with the arbitrator.

### H. False Accusations

Knowingly false accusations of misconduct against employees will not be tolerated.

If an accusation of sexual misconduct or physical abuse against an employee is found by the Board or Special Commissioner of Investigation to have been knowingly false when made, the Board will take the following actions to restore the falsely accused employee's reputation: removing all references to the charges from the employee's personnel file(s) and adding evidence of the unfounded nature of the charge to departmental files that may have to be maintained to satisfy other legal requirements, if any; and restoring any back pay owed with interest and, at the employee's request, confirming to any regulatory agency the finding that the employee was falsely accused. In addition, where the knowingly false accusation was made by a student of the

employee, absent compelling and extraordinary circumstances the student will be permanently reassigned from the employee's class.

**I. Peer Intervention Program (PIP)**

The Board and the Union recognize that instructional services should be delivered by a highly qualified and motivated staff, accorded the respect and professional treatment to which they are entitled. Towards that end the Board and the Union have agreed to provide resources and peer assistance on a voluntary confidential basis to staff who have completed probation and who believe that their teaching competence will benefit from that assistance in the manner provided below:

1. The Peer Intervention Panel shall be composed of nine members, six of whom shall be selected by the Union and three of whom shall be administrators selected by the Board.

2. This Panel will set qualifications and procedures for the selection of intervenors, an alternative careers liaison and a coordinator of the program. The Panel shall advertise, as needed, the intervenor, coordinator and alternative careers liaison positions on a Citywide basis, posting the qualifications and procedures previously developed. The program's professional staff shall be selected in accordance with the posted procedure.

3. The Panel will also design and continually monitor a professional development program that enables the selected staff to meet the goals set forth above.

4. The intervenors sh all serve for four year renewable terms.

5. An y teacher who has a reasonable basis for needing such assistance and/or receives a U-rating or formal warning may request assistance from the Peer Intervention Program, in writing on a form promulgated by the Panel. The Panel will review requests and promptly notify the teacher of its determination as to whether assistance will be provided in that case. Such communications will be kept completely confidential.

6. The interveno r will develop a plan to assist the participating teacher tailored to the specific needs of that teacher and will work with the teacher directly for not more than one year.

7. For three months following the start of the intervention period, supervisors will not evaluate or observe the participating teacher. However, supervisors will otherwise continue to exercise their responsibilities.

8. The Board, the Union, and the participating teacher agree that for any disciplinary action other than an appeal of a previous U-rating, all time limitations within which to bring such actions will be tolled for the three month period in which the supervisor does not evaluate or observe the participating teacher. For such U-rating appeals, the parties agree that the time limitations are tolled for the entire period of intervention.

9. All communications between the intervenor and the participating teacher shall be completely confidential. As a condition of involvement in the program, all participants in the program, including the intervenor and the participating teacher, must consent to the confidentiality provisions set forth in this paragraph. The Board and Union agree that the intervenor, or any other person involved in the peer intervention program shall not be subpoenaed by the Board or the Union or called to testify, produce documents or participate in any other way concerning the intervention in any proceedings under §3020-a of the Education Law as modified by Article 21G above (hereinafter "§3020-a proceeding"). No arbitrator, in any proceeding under the parties' control, shall accept evidence regarding such communications. If PIP is used as a remedy in a §3020-a

119

proceeding or if the parties agree to use it as a settlement to such a proceeding, this paragraph continues to apply except that if the intervention was not successful a statement from the program saying "PIP was attempted and was not successful" may be submitted into evidence in any subsequent §3020-a proceeding with respect to charges concerning teaching competence.

    10. Except as otherwise herein provided, the Union, the Board or any participating teacher may exercise any constitutional, statutory, regulatory or contractual right otherwise provided by law, regulation or contract.

    11. The Board agrees to make available on a best efforts basis alternative career opportunities in the Board and/or the City for teachers who decide to leave the teaching profession in the course of or following intervention through access to other employment alternatives within the system and/or the City; and/or retraining/redeployment through the Board of Education or New York City.

    12. Administrative procedures for effectuation of these provisions will be formulated by the Panel in consultation with the Board and the Union and thereafter distributed by the Panel.

    13. These procedures relate solely to issues of competency and no other grounds of discipline.

    14. The acts of the panel, intervenor, coordinator, Union and Board shall be final.

**J. Peer Intervention Plus Program ("PIP Plus")**

    1. The existing Peer Intervention Program (PIP) will work with any teachers who would like assistance (as capacity permits) except those in danger of receiving charges pursuant to Education Law §3020-a for incompetence who have been recommended for the new program established below.

    2. A new program (PIP Plus) will be created for tenured teachers in danger of receiving charges pursuant to §3020-a for incompetence, which will be staffed by independent consulting teachers. These consulting teachers will not be employed by the Board of Education and will not be active members of the UFT, and instead will be provided by an independent third party vendor, mutually agreed to by the parties, pursuant to a contract in a form developed by the Board and approved by the UFT.

    3. Consulting teachers in the PIP Plus will develop plans to assist the participating U-rated tenured teachers, tailored to the specific needs of the teachers. During their participation in the PIP Plus, participating teachers will not be charged with incompetence pursuant to §3020-a. Observation reports of the consulting teachers will be provided to the participating teachers, and will be admissible in §3020-a proceedings. Participation in the program is voluntary. A principal may recommend participation or a teacher may volunteer to participate. The fact that an employee has declined to participate or that the Board has denied a request to participate or has not offered the teacher an opportunity to participate in the programs will be admissible in §3020-a proceedings.

    4. A labor/management committee will review the PIP Plus program annually and agree on necessary changes, if any.

    5. The existing Peer Intervention Program will not be decreased in size because of the establishment of this new PIP Plus program.

K. **Medical Review Procedures**
   1. **Requests for Medical Examination of Teachers**

   The report of the immediate supervisor requesting examination of a teacher pursuant to Education Law §2568 shall be made in duplicate. A copy of the report shall be forwarded to the teacher.

   2. **Skin Test**

   The Board and the Union shall seek legislation to permit employees a choice of skin test or X-Ray. Until such legislation is enacted teachers in this system will be given a skin test. The skin test will be administered by the Department of Health. Where a skin test result proves to be positive, the Board may require an X-Ray test. An enabling resolution to this effect was adopted by the Department of Health on May 6, 1962.

   3. **Injury In the Line of Duty**

   In order to provide for an expeditious handling of injury in the line of duty claims, the following is provided:

   a. Within five school days of a claim of injury in the line of duty requiring an employee to be absent, the superintendent shall make a determination as to whether the accident occurred in the line of duty.

   b. Where the employee is in a non-pay status pending a determination by the Medical Bureau of the duration of absence attributable to injury in the line of duty, the Medical Bureau will make its determination within ten days of the employee's submitting himself or herself for the required physical examination.

   4. **Medical Report and Review**

   a. The report of the Medical Bureau on a teacher who was called for medical evaluation shall, upon written request of the teacher, be sent to the teacher's physician within 25 days after the evaluation.

   b. Upon the teacher's request to the Medical Bureau, his/her physician shall have the right to examine his/her medical file.

   c. A regular teacher shall have the right to an independent evaluation by a medical arbitrator selected from rotating panels of doctors to be selected by mutual agreement of the Board and the Union if the finding of the Medical Bureau to the Chancellor has resulted in:

   (1) Placement of the teacher on a leave of absence without pay for more than one month; or
   (2) Termination of the teacher's services; or
   (3) A recommendation for disability retirement; or
   (4) A denial of a leave with or without pay for more than one month.

   A request for an independent evaluation of the finding of the Medical Bureau shall be submitted in writing by the teacher to the Division of Human Resources within 10 school days of receipt of notice from the Division of Human Resources that he/she has been placed on leave of absence without pay for more than one month, or that his/her services have been terminated, or that he/she has been recommended for disability retirement, or that he/she has been denied a leave with or without pay for more than one month. The Board and the Union may agree on a case by case basis to permit, in special circumstances, an independent medical evaluation to teachers who do not otherwise qualify for one under this Agreement.

The medical arbitrator shall examine the teacher and consult with the teacher's physician and the Board's physician. The arbitrator's authority shall be limited to determining the medical aspects of the teacher's claim. The arbitrator's decision shall be rendered within 10 days after he/she has completed the evaluation of the teacher, and if made within his/her authority under this Agreement shall be accepted as final and binding by the Board and the teacher.

The fee of the medical arbitrator shall be shared equally by the Board and the teacher.

## ARTICLE TWENTY-TWO
## GRIEVANCE PROCEDURE

It is the declared objective of the parties to encourage the prompt and informal resolution of employee complaints as they arise and to provide recourse to orderly procedures for the satisfactory adjustment of complaints. A resolution should occur at the earliest possible step in every case that can reasonably be resolved.

In order to accomplish its stated purpose, a grievance conference must be attended by those individuals who may be able to promote resolution or, if resolution is not possible in a particular case, to provide the necessary information for a fair determination of the grievance. At the Chancellor's level, principals will be expected to attend or to have a suitable representative present at the conference. Failure to attend may result in sustaining the grievance on procedural grounds.

**A. Definition**

A "grievance" shall mean a complaint by an employee in the bargaining unit (1) that there has been as to him/her a violation, misinterpretation or inequitable application of any of the provisions of this Agreement or (2) that he/she has been treated unfairly or inequitably by reason of any act or condition which is contrary to established policy or practice governing or affecting employees, except that the term "grievance" shall not apply to any matter as to which (1) a method of review is prescribed by law, or by any rule or regulation of the State Commissioner of Education having the force and effect of law, or by any bylaw of the Board of Education or (2) the Board of Education is without authority to act.

In the case of per session employees, a "grievance" shall mean a complaint by a per session employee that there has been as to him/her a violation, misinterpretation or inequitable application of any of the provisions of this Agreement covering his/her particular per session employment.

In the case of teachers assigned, education administrators, education officers, education analysts, adult education teachers covered by this Agreement, lead teachers, math and literacy coaches, mentors, substitute vocational assistants, and teacher's assistants, a "grievance" shall mean a complaint by such an employee that there has been as to him/her a violation, misinterpretation or inequitable application of any of the provisions of this Agreement covering his/her employment as a teacher assigned, an education administrator, an education officer, an education analyst, a WNYE teacher, an adult education teacher covered by this Agreement, a lead teacher, a math and literacy coach, a mentor, a substitute vocational assistant or a teacher's assistant.

As used in this article, the term "employee" shall mean also a group of employees having the same grievance.