UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                   :

TEACHERS4ACTION, et al.,                          :

                                                   :

                      Plaintiffs,                :    Index No. 08 Civ. 548 (VM) (AJP)

     v.                                           :

MICHAEL G. BLOOMBERG, et al.,              :

                      Defendants.                :

                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF UFT DEFENDANTS' MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT**

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
(212) 806-5400

- and-

Adam S. Ross, Esq.
52 Broadway
New York, New York 10004
(212) 701- 9420

*Counsel for UFT Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................... 1

FACTS .......................................................................................................... 5

ARGUMENT ................................................................................................ 9

I.   First Cause of Action: Violation/Interference with 1st, 5th, and 14th
Amendment Rights.......................................................................... 10

    A.   The UFT Defendants Are Private Actors And May Not Be Held
Liable Under §1983 ................................................................ 11

    B.   21(G) Provides Adequate Due Process ................................... 16

    C.   Plaintiffs Have Failed To State A First Amendment Claim As To
The UFT Defendants ............................................................... 20

II.   Third Cause of Action:  Retaliation ............................................... 20

    A.   The Federal Whistleblower Protection Act Does Not Apply ... 20

    B.   The Title VII Anti-Retaliation Provision Does Not Apply ...... 21

       1.   Plaintiffs Cannot Even Satisfy The Jurisdictional Requirements of Title VII
..................................................................................... 21

       2.   Even if Plaintiffs Could Satisfy Jurisdictional Prerequisites, They Have
Failed To State A Claim Under Title VII ................... 22

    C.   The Labor Management Reporting and Disclosure Act (LMRDA)........................... 24

III.   Sixth Cause of Action:  Breach of Fiduciary Duty, the Duty of Fair
Representation and Violation of the Labor-Management Reporting And
Disclosure Act ................................................................................ 24

    A.   The UFT Has Satisfied And Continues To Satisfy Its Duty of Fair
Representation ......................................................................... 24

       1.   DFR Standard .............................................................. 26

       2.   Adoption of Article 21(G) ........................................... 27

       3.   NYSUT Attorneys' Conflict of Interest ....................... 28

    B.   Plaintiffs' Fiduciary Duty Claim is Duplicative of Their Duty of
Fair Representation Claim ...................................................... 32

    C.   Plaintiffs' LMRDA Claims Fail As A Matter Of Law.............. 33

       1.   LMRDA Criminal Provisions (29 U.S.C. § 439(b)) ...... 33

       2.   LMRDA Information as to the Act (29 U.S.C. § 415)..... 33

       3.   LMRDA Safeguards Against Improper Discipline (29 U.S.C. 411(a)(5)) .... 34

|   |   | 4. | LMRDA Retaliation (29 U.S.C. § 529) | 36 |
|   |   | 5. | LMRDA Freedom of Speech (29 U.S.C. 411(a)(2)) | 37 |
|   |   | 6. | LMRDA Protection of the Right to Sue (29 U.S.C. §411(a)(4)) | 39 |

IV.    Seventh Cause of Action: Aiding and Abetting Breach of Fiduciary Duty ......... 40

V.    Ninth Cause of Action: NegligenT Hiring, Retention and Supervision ................ 42

   A.    Plaintiffs Have Failed to State A Claim For The Negligent Hire or Retention of the NYSUT Attorneys ........................ 43

   B.    Negligent Hire Claim Is Inapplicable to Defendant Combier Because She Acted Within The Scope of Her UFT Employment .......... 45

VI.    Tenth Cause of Action: Misrepresentation, Fraud & Conspiracy to Violate Plaintiffs' Rights ........................ 46

VII.    Twelfth Cause of Action: Declaratory Judgment ................ 49

CONCLUSION ................ 50

# **TABLE OF AUTHORITIES**

Page

Abrams v. Carrier Corp.,
    434 F.2d 1234 (2d Cir. 1970) ............................................................................. 33

Ahrens v. New York State Public Employees Federation, AFL-CIO,
    203 A.D.2d 796 (3d Dep't 1994) ...................................................................... 25

Alston v. Transport Workers Union,
    225 A.D.2d  424 (1st Dep't 1996) .................................................................... 26

Arias-Zeballos v. Tan,
    No. 06 CV 1268, 2008 WL 833225 (S.D.N.Y. March 28, 2008) ..................... 44

Bell Atlantic Corp. v. Twombly,
    __ U.S. __, 127 S. Ct. 1955 (2007) ....................................................... 8, 26, 38

Breininger v. Sheet Metal Workers Int'l Assoc. Local Union 6,
    493 U.S. 67 (1989) ........................................................................................... 35

Brock v. So. Region, Region III of the CSEA,
    808 F.2d 22 (2d Cir. 1987) .............................................................................. 31

Burlington Industries, Inc. v. Ellerth,
    524 U.S. 742 (1998) ......................................................................................... 20

Butler v. McCarty,
    191 Misc. 2d 318 (Madison Cty. 2002) ........................................................... 28

Camporeale v.  Airborne Freight Co.,
    732 F. Supp. 358 (E.D.N.Y. 1990)................................................................... 35

Cardinale v. Golinello,
    43 N.Y.2d 288 (1977) ...................................................................................... 30

Chauffers, Teamsters and Helpers, Local No. 391 v. Terry,
    494 U.S. 558 (1990) ......................................................................................... 31

Chill v. General Electric Co.,
    101 F.3d 263 (2d Cir. 1996)............................................................................. 45

Ciambriello v. Cty. of Nassau,
    292 F.3d 307 (2d Cir. 2002) ............................................................................ 15

Civil Service Bar Associate, Local 237 v. New York,
    64 N.Y.2d 188 (1984) .................................................................................. 24, 26

Civil Service Bar Associate v. New York,
    472 N.Y.S.2d 925 (1st Dep't 1984) ................................................................... 24

Clark v. Department of Army,
    997 F.2d 1466 (Fed. Cir. 1993) ......................................................................... 20

Cleveland Board of Education v. Loudermill,
    470 U.S. 532 (1985) .......................................................................................... 14

Colodney v. Continuum Health Partners, Inc.,
    No. 03 CIV 7276, 2004 WL 829158 (S.D.N.Y. April 15, 2004) ...................... 43

Commer v. Keller,
    64 F. Supp. 2d 266 (S.D.N.Y. 1999) ........................................................... 36, 37

Computech International Inc. v. Compaq Computer Corp.,
    No. 02 Civ. 2628, 2004 WL 1126320 (S.D.N.Y. May 21, 2004) ..................... 47

Conradt ex rel. Estate of Conradt v. NBC Universal, Inc.,
    536 F. Supp. 2d 380 (S.D.N.Y. 2008) ............................................................ 3, 8, 9

Cuite v. Winthrop University Hospital,
    No. CV06-6140, 2007 WL 2582135 (E.D.N.Y. Sept. 4, 2007) ........................ 40

Davis v. City of New York,
    No. 06CV3323, 2007 WL 2973695 (E.D.N.Y. Sept. 28, 2007) .................. 14, 18

Dolce v. Bayport-Blue Point Union Free Sch. District,
    286 A.D.2d 316 (2d Dep't 2001) ........................................................................ 31

Dorcely v. Wyandanch Union Free School District,
    No. 06CV1265, 2007 WL 2815809 (E.D.N.Y. Feb. 7, 2007) ..................... 10, 12

Duane Reade v. Local 339,
    3 Misc. 3d 405 (Sup. Ct. N.Y. Cty. 2003) ......................................................... 25

Duane Reade Inc. v. Local 338 Retail, Wholesale, Department Store Union, UFCW, AFL-
CIO,
    6 Misc.3d 790 (Sup. Ct. N.Y. Cty. 2004) .......................................................... 45

DuBois v. State of New York,
    966 F. Supp. 144 (N.D.N.Y. 1997) ..................................................................... 21

Economic Opportunity Commiss'n, Inc. v. Cty. of Nassau,
    106 F. Supp. 2d 433 (E.D.N.Y. 2000) ................................................................. 48

Englehardt v. Consolidated Rail Corp.,
    594 F. Supp. 1157 (N.D.N.Y. 1984) ................................................................. 27

Ernest v. Charlton School,
    30 A.D.3d 649, 651 (3d Dep't 2006) ................................................................. 41

Feinstein v. Carl,
    791 N.Y.S.2d 869 (Sup. Ct. Nassau Cty. 2004) ............................................. 29

Ferrone v. Brown & Williamson Tobacco,
    No. 97CV5669, 1998 WL 846783 (E.D.N.Y. Sept. 25, 1998) ........................ 46

Field v. Mans,
    516 U.S. 59 (1995) ............................................................................................ 47

Finnegan v. Leu,
    456 U.S. 431 (1982) .......................................................................................... 36

Ford Motor Co. v. Huff,
    345 U.S. 330 (1953) .......................................................................................... 25

Gilmore v. Local 295, International Brotherhood of Teamsters,
    798 F. Supp. 1030 (S.D.N.Y. 1992) ........................................................... 34, 35

Gomez v. City of New York,
    304 A.D.2d 374 (1st Dep't 2003) ...................................................................... 41

Greene v. Greene,
    47 N.Y.2d 447 (1979) ....................................................................................... 30

Grogan v. Holland Patent Central Sch. District,
    2000 U.S. Dist. LEXIS 19127 (N.D.N.Y. Dec. 15, 2000) ................................ 34

Harmon v. Matarazzo,
    162 F.3d 1147 (2d. Cir. 1998) .......................................................................... 10

Herr v. Cineplex Odeon Corp and Union Local 306,
    1994 U.S. Dist. LEXIS 2539 (S.D.N.Y. Mar. 2, 1994) .................................... 38

Hunkins v. Lake Placid Vacation Corp., Inc.,
    120 A.D.2d 199 (3d Dep't 1986) ...................................................................... 30

Hussein v. Hotel Employees and Restaurant Union Local 6,
     1999 U.S. Dist. LEXIS 14876 (S.D.N.Y. Sept. 29, 1999) ................................. 32

International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and
     Helpers, AFL-CIO v. Hardeman,
     401 U.S. 233 (1971) ................................................................................ 33

Jessamy v. City of New Rochelle, New York,
     292 F. Supp. 2d 498 (S.D.N.Y. 2003) ............................................................ 12

In re Joint Eastern & Southern District Asbestos Litigation,
     14 F.3d 731 (2d Cir. 1993) ......................................................................... 47

Karoon  v. New York City Transit Authority,
     659 N.Y.S 2d 27 (1st Dep't 1997) ................................................................ 44

Kinsey v. Cendant Corp.,
     No. 04 CIV 0582, 2004 WL 2591946 (S.D.N.Y. Nov. 16, 2004) ..................................... 40

Koehler v. New York City,
     No. 04 CIV 6929, 2005 WL 1123758 (S.D.N.Y. May 11, 2005) .............................. 16, 17

Kogan ex rel. Kogan v. Musiker Discovery Programs, Inc.,
     No. 007226/00, 2000 WL 33249833 (Sup. Ct. N.Y. Cty. Oct. 30, 2000) ....................... 42

Kwok v. N.Y.C. Transit Authority,
     No. 99 Civ. 2281, 2001 WL 829876 (S.D.N.Y. July 23, 2001) ........................................ 31

Laird v. Tatum,
     408 U.S. 1 (1972) ................................................................................ 10

Lind v. Vanguard Offset Printers, Inc.,
     857 F. Supp. 1060 (S.D.N.Y. 1994) ............................................................... 40

London v. Polishook,
     189 F.3d 196 (2d Cir. 1999) ........................................................................ 31

Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS,
     78 F. Supp. 2d 162 (S.D.N.Y. 1999) .............................................................. 47

Martin v. Curran,
     303 N.Y. 276 (1951) ................................................................................ 45

McGovern v. Local 456, International Brotherhood Of Teamsters,
     107 F. Supp. 2d 311 (2d Cir. 2000) ............................................................ 11, 32

McNeil v. People of the City and State of New York,
    242 Fed. Appx. 777 (2d Cir. 2007) .................................................................... 9

Mehrhoff v. William Floyd Union Free School District,
    No. 04-CV-3850, 2005 WL 2077292 (E.D.N.Y. Aug. 22, 2005) ...................................... 11

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,
    7 F.3d 1085 (2d Cir. 1993) .................................................................... 9

Modeste v. Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU, AFL-
    CIO,
    850 F. Supp. 1156 (S.D.N.Y. 1994) .................................................................... 46

Morpurgo v. Incorporated Village of Sag Harbor,
    No. CV07-1149, 2007 WL 3375224 (E.D.N.Y. Oct. 11, 2007) ...................................... 11

Morris v. Local 819, International Brotherhood of Teamsters,
    169 F.3d 782 (2d Cir. 1999) .................................................................... 25

Morris-Hayes v. Board of Education Of Chester Union Free School District,
    423 F.3d 153 (2d Cir. 2005) .................................................................... 9

Munafo v. Metropolitan Transport Authority,
    285 F.3d 201 (2d Cir. 2002) .................................................................... 16

Murray v. Con. Ed.,
    734 F. Supp. 655 (S.D.N.Y. 1990) .................................................................... 38

New York v. Limongelli,
    156 A.D.2d 473 (2d Dep't 1989) .................................................................... 29

New York v. Swanson,
    43 A.D.3d 1331 (4th Dep't 2007) .................................................................... 29

Newman v. Local 1101,
    570 F.2d 439 (2d Cir. 1978) .................................................................... 36

Obot v. New York State Department of Correctional Serv.,
    256 N.Y.S.2d 1089 (4th Dep't 1998) .................................................................... 31

Pangburn v. Culbertson,
    200 F.3d 65 (2d Cir. 1999) .................................................................... 12, 18

Patane v. Clark,
    508 F.3d 106 (2d Cir. 2007) .................................................................... 8

Patrick v. Local Union No. 282,
    No. 99-CV-8314, 2005 WL 2179415 (E.D.N.Y. Sept. 9, 2005)................................. 21, 22

Pearl v. City of Long Beach,
    296 F.3d 76 (2d Cir. 2002) ........................................................................................ 13

Perez v. Culminations Workers of America,
    210 Fed. Appx. 27 (2d Cir. 2006) ............................................................................. 25

Primeau v. Town of Amherst,
    303 A.D.2d 1035 (4th Dep't 2003) ........................................................................... 43

Richards v. Select Insurance Co., Inc.,
    40 F. Supp. 2d 163 (S.D.N.Y. 1999) ........................................................................ 47

Russian Samovar Inc. v. Transit Worker's Union of Am.,
    24 N.Y.L.J. 1 (col. 1) (Dec. 21, 2006) .................................................................... 45

Salemeh v. Toussaint,
    5 Misc.3d 1032(A) (Sup. Ct. N.Y. Cty. 2003) ........................................................ 45

Schulte, Roth& Zabel LLP v. Chammah,
    251 A.D.2d 132 (1st Dep't 1998) ............................................................................. 30

In re Sharp International Corp. v. State St. Bank & Trust Co.,
    403 F.3d 43 (2d Cir. 2005) ........................................................................................ 40

Sheet Metal Workers' International Association v. Lynn,
    488 U.S. 347 (1989) .................................................................................................. 36

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) ..................................................................................... 45

Smith v. Sipe,
    67 N.Y.2d 928 (1986) ............................................................................................... 25

Spear v. Town of West Hartford,
    954 F.2d 63 (2d Cir. 1992) ........................................................................................ 10

Stone v. Williams,
    970 F.2d 1043 (2d Cir. 1992) ................................................................................... 47

Straker v. Metropolitan Transit Authority,
    333 F. Supp. 2d 91 (E.D.N.Y. 2004) ........................................................................ 16

Thaler v. Jacoby & Meyers Law Offices,
    294 A.D.2d 230 (1st Dep't 2002) ............................................................... 29

Tomka v. Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1995) ..................................................................... 20

UCAR International Inc. v. Union Carbide Corp.,
    2004 U.S. Dist. LEXIS 914 (S.D.N.Y. Jan. 26, 2004) ....................................48

UFT v. Barnett,
    17 PERB ¶ 3113 (1984) .......................................................................... 28

U.S. ex rel. Anti-discrimination Ctr. of Metropolitan N.Y., Inc.,
    495 F. Supp. 2d 375 (S.D.N.Y. 2007) ......................................................... 39

United States v. District Council,
    2007 U.S. Dist. LEXIS 69852 (S.D.N.Y. Sept. 17, 2007) ................................ 40

Viruet v. Citizen Advice Bureau,
    No. 01 CIV. 4594, 2002 WL 1880731 (S.D.N.Y. Aug. 15, 2002) .................... 21

Waterbury v. Liberty Life Assurance Co.,
    2006 U.S. App. LEXIS 25614 (2d Cir. 2006) ................................................ 17

Waterman v. Transport Workers' Union Local 100,
    176 F.3d 150 (2d Cir. 1999) ..................................................................... 43

# STATUTES

29 C.F.R. 451.3(a)(4) (2002)...................................................................... 29

28 U.S.C. § 2001 *et seq* ........................................................................... 44

29 U.S.C. 411(a)(2) .............................................................................33, ii

29 U.S.C. § 411(a)(4) ...........................................................................36, ii

29 U.S.C. § 411(a)(5) ............................................................................ii, 31

29 U.S.C. § 415 ...................................................................................ii, 30

29 U.S.C. § 439(b) ...............................................................................ii, 29

29 U.S.C. § 440 ....................................................................................... 30

29 U.S.C. § 529 ...................................................................................ii, 33

42 U.S.C. § 1981 ................................................................................................ 8

42 U.S.C. §1983 ............................................................................................ 2, 8

42 U.S.C. § 2000e-2(c) ..................................................................................... 20

Fed. R. Civ. P. 9(b) .......................................................................................... 42

Fed. R. Civ. P. 11 ............................................................................................ 36

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 7

22 N.Y.C.R.R. § 1200.24(b) ......................................................................... 27, 28

NY Exec. Law § 296-1(c) ................................................................................. 20

NYC Admin. Code § 12-113 ......................................................................... 18, 20

NY Labor Law §740 ......................................................................................... 18

New York Civil Service Law § 200 *et seq* .................................................... 9, 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

TEACHERS4ACTION, et al.,                                  :
                                                          :
                              Plaintiffs,                 :     Index No. 08 Civ. 548 (VM) (AJP)
        v.                                                :
                                                          :
MICHAEL G. BLOOMBERG, et al.,                             :
                                                          :
                              Defendants.                 :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Defendants Randi Weingarten, President of the United Federation of Teachers ("UFT"),

the UFT and Betsy Combier (collectively, the "UFT Defendants"), by their counsel Stroock &

Stroock & Lavan LLP and Adam S. Ross, Esq., respectfully submit this Memorandum of Law in

support of their Motion to Dismiss the Second Amended Complaint as against them.

## PRELIMINARY STATEMENT

       This proceeding arises out of the so-called "rubber rooms" or, more formally, the

Temporary Reassignment Centers ("TRCs" or "Rubber Rooms"), facilities to which New York

City teachers, charged (rightly or wrongly) with various infractions are consigned to by the

Board of Education of the City School District of the City of New York ("BOE") [1] for the

interminable wait pending the trial of the charges leveled against them.  In and of themselves,

those "detentions" are punitive and that is why the UFT Defendants have labored long and hard

to achieve reforms as against the BOE, with some measure of success.

---

[1]    In conjunction with amendments to the State Education Law enacted in 2002, many of the powers previously
held by the BOE devolved to the Chancellor, with the administrative operations assigned to a body denominated by
the Mayor as the New York City Department of Education.  Nonetheless, the BOE retained the power to ratify
collective bargaining agreements and is the statutory employer of personnel for the City School District.  The BOE
and the Department of Education are herein referred to collectively as the "BOE."

Though the Rubber Rooms, the consignment to the Rubber Rooms and the maintenance of those facilities are solely the responsibility of the BOE, Plaintiffs' shotgun attack scatters their fury far and wide, including, inappropriately, those (specifically the UFT Defendants) who have worked and will continue to strive to remedy the conditions that engender that rage. And, as is so often the case, shotgun challenges miss their mark and, as in this case, fail, as a matter of law, to state cognizable claims.

To illustrate, Plaintiffs' repeated use of the word "whistleblower" and buried citation to the Federal Whistleblower Statue typifies the flaws in the pleading that require response even though the statute Plaintiffs rely upon makes clear on its face that it applies only to federal employees, and is thus inapplicable to any of the parties in this action. Likewise, Plaintiffs' Title VII claims, asserting purported retaliation, are directed to acts not even covered by that law; more importantly, despite the repeated cautions of Magistrate Judge Peck, Plaintiffs have again failed to satisfy the fundamental jurisdictional prerequisite of first filing a charge with the Equal Employment Opportunity Commission and having it act or issue a right to sue letter.

The defects that permeate Plaintiffs' 63-page, 253-paragraph (not including subparagraphs) pleading are similarly illustrated by Plaintiffs' conspiracy claims invoking 42 U.S.C. §1983. Section 1983's triggering element is that the conduct complained of be attributable to a state actor. Although the UFT's members are public employees, the UFT is plainly not a state actor. As an attempted end-run around this requirement, Plaintiffs invoke a familiar makeweight, contriving the notion that the UFT and its president, Weingarten, supposedly conspired with the BOE against its own members. Aside form the facial implausibility of the notion that these Plaintiffs, charged and "confined" by the BOE, not the UFT, would somehow be randomly singled out by the UFT for sanction, let alone conspiratorial

action between "natural" adversaries, Plaintiffs fail even to conjure up a reason or motivation for the UFT to take such self-destructive action by participating in the BOE's asserted scheme to improve its internal "bottom line." Indeed, the facts asserted by Plaintiffs in their complaint and incorporated therein by reference make this point. [2]

As described in UFT President Weingarten's January 15, 2008 letter, addressing matters raised by these Plaintiffs and referenced by the Plaintiffs in the Second Amended Complaint, the UFT formally advanced against the BOE a list of demands to improve the circumstances of teachers assigned to TRCs and has made meaningful strides in achieving those demands. (Second Amended Complaint at ¶ 78; a copy of the letter is annexed to the Amended Complaint as Exhibit 14 and, for the Court's convenience, is also annexed to the Declaration of Alan M. Klinger ("Klinger Decl."), dated July 7, 2008, as Exhibit A). As part of that effort, the UFT has been successful in, *inter alia*, (i) having the BOE open new TRC locations to alleviate overcrowding; (ii) negotiating acceptable health and safety standards; (iii) hiring additional arbitrators to speed resolution of charges with the hopes of shortening the length of time any teacher need remain assigned to a TRC; and (iv) creating the elected position of TRC Liaison. Even the act of issuing the January 15, 2008 letter itself was a step towards improving conditions by informing elected government officials and the public of the relevant issues and the UFT's demands. These facts make clear that the UFT, through its representatives, was vigilant and proactive with regard to protecting its members' rights. Dispositively, those continuing efforts

---

[2] "In deciding a motion to dismiss, a court may consider the challenged pleading, any documents incorporated by reference, and matters subject to judicial notice." Conradt ex rel. Estate of Conradt v. NBC Universal, Inc., 536 F. Supp. 2d 380, 388 (S.D.N.Y. 2008). Plaintiffs' Second Amended Complaint both references articles of the CBA and annexes an excerpt.

-3-

have now resulted in significant reforms respecting the underlying grievances, as noted in the footnote below.[3]

Repeated use of adjectives such as "conspire," "coerce," "intimidate," and "threaten" do not make for a cognizable claim.  Thus, while Plaintiffs admit that the UFT appointed a team to address and investigate TRC-related issues, they inexplicably, and without support, label it a "gimmick."  (Second Complaint ¶ 70).  Plaintiffs further concede that the UFT gathered evidence related to Rubber Room violations, but then summarily declare, absent any evidence or claimed basis, that the UFT "had no intention of taking action based on the facts they had amassed." (Second Complaint ¶ 72).

In sum, conduct negates any contrived inference of conspiracy.  And while this is a motion to dismiss, as contrasted with one for summary judgment, as addressed below, no plausible basis has been averred for conspiracy, a term readily bandied about but, on its face, implausible here.

Without these unfounded insinuations, the bare actions attributed to the UFT in the Second Amended Complaint show that the UFT has long been of the view and has manifested its challenge to TRC issues that needed to be corrected.  The UFT firmly believes that many educators reassigned to the TRCs could have and should have been permitted to continue working at their school pending resolution of the charges against them, or even that many such charges were improperly brought.  The UFT did not have a role in creating TRCs.  The BOE

---

[3]    As the Court is aware from Plaintiffs' recent letter request, dated July 7, 2008, the UFT was able to get the BOE to address many of the concerns raised in the January 15 letter by a written undertaking that, *inter alia*, will further expedite the processing of charges, deny principals the authority to transfer teachers based upon their own investigation, centralize review of improper transfers, and provide reassigned pedagogues the opportunity to perform appropriate tasks while in a TRC.

utilizes TRCs as alternative work locations so that they may monitor teachers awaiting or already

charged with discipline who, pursuant to §3020-a and the Collective Bargaining Agreement

between the UFT and the BOE ("CBA"), are entitled to receive full base compensation until and

unless the charges are substantiated.  (A copy of the relevant portion of the CBA is annexed to

the Klinger Decl. as Exhibit B).  However, when, as the UFT Defendants have long maintained,

the time to administrative trial is interminably long, monitoring becomes punitive and

inappropriate *per se*.  While the Plaintiffs may be dissatisfied with the progress of reform (as are

the UFT Defendants), that is no basis at law for suit.

## FACTS

The Second Amended Complaint, stripped of conclusory and *ad hominem* slurs,

essentially alleges that, pursuant to State law, the UFT and the BOE agreed, through statutorily

required collective bargaining, to certain procedures and rights with regard to teacher discipline

which Plaintiffs dislike.  (Second Amended Complaint, dated June 2, 2008, at ¶¶ 24-28, 34

("Second Complaint")).  Ignored entirely is the fundamental fact that collective bargaining

means precisely what its name implies—neither side gets precisely what it wants, and instead,

negotiation and compromise are the order of the day.

The UFT has long worked to promote a fair and timely process for the resolution of

disciplinary charges against teachers.  Education Law §3020(4) specifically permits the UFT to

agree to alternative processes to those provided for in Education Law §3020-a.  It provides that:

> this chapter *may be modified by agreements negotiated between*
> *the city school district of the City of New York and any employee*
> *organization representing employees or titles that are or were*
> *covered by any memorandum of agreement executed by such city*
> *school district and the united federation of teachers on or after*
> *June tenth, two thousand two.*  Where such procedures are so

> modified: (i) compliance with such modified procedures shall
> satisfy any provision of this chapter that requires compliance with
> section three thousand twenty-a of this article;

(Emphasis added). Utilizing this option, the UFT and the BOE have agreed to certain

modifications of the procedure provided for in §3020-a. Those modifications are contained in

Article 21(G) of the CBA. (Second Complaint ¶¶ 34, 36, and Complaint Exhibit 5; Klinger

Decl., Ex. B.). The modifications were aimed at both creating a fairer, more efficient and timely

disciplinary process, which should also have resulted in teachers spending less time languishing

in limbo when consigned by the BOE to a TRC. (Klinger Decl., Ex. B, at Article 21(G)(2)(d)).

These amendments were in the interest of the teachers, who were eager to be returned to their

classrooms, where appropriate, and to the taxpaying public (required to pay the salary of a

replacement teacher in addition to the salary of the teacher consigned to the TRC while

proceedings are ongoing), and to the BOE, which would have more teachers available to

ameliorate classroom overcrowding. To that end, *inter alia*, certain time periods were shortened,

a standing arbitration panel that would develop expertise with the applicable agreements and

practices was established, the discovery process was expanded, and arbitrators were required to

commit a certain number of days per month that were reserved for the processing of the so called

§3020-a (disciplinary) hearings. (Klinger Decl., Ex. B, at Article 21(G)(2),(3), (8), (10)). In

later agreements, the UFT and BOE also agreed to an expedited procedure for time and

attendance charges that sought discipline short of termination. (Klinger Decl., Ex. B, at Article

21(G)(1)).

Plaintiffs grievances herein turn upon collectively bargained changes emanating from the

June 2002 collective bargaining agreement. That agreement was ratified by the UFT

membership in a secret ballot – as it would have to have been in order to become binding. The

Second Amended Complaint is silent as to whether these Plaintiffs then voted for or against ratification of those changes.

In addition to the procedural protections provided in §3020-a and Article 21(G), and as part of the services the UFT provides its members in circumstances where disciplinary charges are pursued by the BOE, New York United Teachers ("NYSUT"), a Statewide umbrella organization, provides teachers charged with misconduct the option to have a NYSUT attorney represent them in their §3020-a proceeding free of charge or to seek their own counsel at their own expense. (Second Complaint ¶¶ 41, 147). Many, but not all, teachers finding themselves in such circumstances take advantage of NYSUT's free services. Plaintiffs in this action utilized these services until NYSUT's attorneys became ethically required to withdraw from such representation due to the conflicts of interest created by Plaintiffs' allegations in this action (*e.g.*, claims that such lawyers were acting improperly). (Second Complaint ¶ 84; see also discussion *infra* at Part III.A.3).

In the 2007-08 school year, after listening to its members who were reassigned to the TRCs, the UFT created the elected position of TRC Liaison. The UFT declined to establish "Chapters" at the TRC locations because they were not schools and should not be legitimized as appropriate permanent working locations. (See Second Complaint ¶ 65). The Liaison's duties are to serve as a conduit to and from the teachers assigned to the TRC and the UFT. As part of a stepped up effort to ensure that members in the TRCs were both appropriately represented and served, in or about September 2007, the UFT hired additional personnel, including Defendant Combier, and established a team to investigate issues arising in connection with the TRCs. (Second Complaint ¶¶ 66, 68).

-7-

Through the fall of 2007, UFT President Weingarten publicly criticized, on numerous occasions, the BOE's abuse of the power to temporarily reassign teachers and the conditions maintained at the TRCs. (Second Complaint ¶ 71). The latest amended pleading recognizes Weingarten's continuing efforts, through her visits to TRCs to meet with UFT members consigned there and her proffer of a series of demands to the BOE, as well as the continued negotiations based upon those demands. (Klinger Aff. Ex. A (stating that "[a]fter several meetings and consultations with [] reassigned members, the UFT put forth the following " demands to the BOE and referencing summarizing the demands contained in a November 2007 letter sent by Weingarten to the BOE)).

The January 15, 2008 Weingarten letter was one of the public steps the UFT took. (Second Complaint ¶ 78; Klinger Decl., Ex A). It described to government officials and the public the history of temporary reassignment in New York City and the recent actions taken by the UFT on behalf of its members. Id. However, as this action illustrates, no good or proper deed goes unpunished. Nonetheless, despite the commencement of this action, the UFT's efforts on behalf of all teachers assigned to the TRCs, of whom Plaintiffs are but a small portion, have continued.

Each of the actions described above was taken to further the UFT's efforts "to make sure teachers are treated with respect and dignity, have a voice in the education of their students and are given the resources they need to succeed in the classroom." (Available at, www.uft.org/about/bios/president/; Second Complaint ¶ 175). These efforts illustrate the utter implausibility of Plaintiffs' alleged conspiracy, as well as demonstrate that the Union complied fully with its duty of fair representation to the Plaintiff members.

## <u>ARGUMENT</u>

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is *plausible* on its face." <u>Patane v. Clark</u>, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, __ U.S. __, __, 127 S.Ct. 1955, 1974 (2007)) (emphasis added). Plaintiffs' allegations must contain sufficient factual detail "to nudge [their] claims across the line from conceivable to plausible." <u>Conradt ex rel. Estate of Conradt v. NBC Universal, Inc.</u>, 536 F. Supp. 2d 380, 388 (S.D.N.Y. 2008) (quoting <u>Twombly</u>, 127 S.Ct. at 1974).

Here, Plaintiffs, despite having three attempts at drafting a legally viable complaint (and notwithstanding the repeated suggestions by Magistrate Judge Peck as to the nature of facts required to support these types of claims), have nonetheless failed to cross that distance between conceivable and plausible. Although the complaint is prolix, it consists mostly of repeated conclusory allegations or irrelevant slurs, and contains few actual facts in support of those allegations.

While on a motion to dismiss the Court accepts Plaintiffs' factual allegations as true, "bald contentions, unsupported characterizations, and legal conclusions" will not defeat the motion. <u>Conradt</u>, 536 F. Supp. 2d at 388. As described below, Plaintiffs have so aggregated their claims and stripped them of any specifics that they amount to mere conclusions and fail to state a claim as against the UFT Defendants.

I.    **FIRST CAUSE OF ACTION: VIOLATION/INTERFERENCE WITH 1ST, 5TH, AND 14TH AMENDMENT RIGHTS**[4]

Although not properly framed, Plaintiffs' First Cause of Action can be viewed as asserting a supposed wrong under 42 U.S.C. §1983.[5] Section 1983 does not itself provide a substantive cause of action, but is merely the "mechanism for enforcing" a party's Constitutional rights as against a state actor. Morris-Hayes v. Bd. of Educ. Of Chester Union Free School Dist., 423 F.3d 153, 159 (2d Cir. 2005). Specifically, Plaintiffs allege violations of their First and Fifth Amendment rights under the U.S. Constitution, as applied to the states by the Fourteenth Amendment. (Second Complaint ¶ 94).

To state a claim under §1983, plaintiffs must allege facts showing that "(1) the defendant acted under color of state law, and (2) the defendant's actions deprived plaintiff of her constitutional rights or privileged." Conradt, 536 F. Supp. 2d at 388. Furthermore,

> [i]t is well settled that in the context of a §1983 claim a 'plaintiff must make specific allegations of fact that indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient.'

Spear v. Town of West Hartford, 954 F.2d 63, 67 (2d Cir. 1992) (quoting Laird v. Tatum, 408 U.S. 1, 10 (1972)). Plaintiffs fail to meet this standard.

---

[4]    The Second, Fourth, Fifth, Eight and Eleventh causes of action in the Second Amended Complaint are not addressed to any of the UFT Defendants and are therefore not addressed herein. Those causes of action purport to allege (i) harassment and hostile work environment; (ii) constructive discharge; (iii) breach of contract; (iv) negligent hiring, retention and supervision; and (v) false confinement against City Defendants, respectively.

[5]    Although nowhere included in a cause of action, Plaintiffs list 42 U.S.C. §1981 as a basis for jurisdiction. To the extent Plaintiffs intended to assert a claim under §1981 it would fail for the same reason as their Title VII claim, discussed herein. In order to state a claim pursuant to §1981, Plaintiffs would have to have shown: (1) that they are members of a racial minority; (2) that Defendants intended to discriminate on the basis of race; and (3) that such discrimination impaired Plaintiffs' ability to make and enforce contracts, sue, be party to a suit, give evidence, or fully and equally enjoy the benefit of all laws and proceedings for the security of persons and property. McNeil v. People of the City and State of New York, 242 Fed. Appx. 777 (2d Cir. 2007); Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). Plaintiffs have failed to even make the most basic of those allegations – that they belong to a protected class.

A.    **The UFT Defendants Are Private Actors And May Not Be Held Liable Under**
**§1983**

The first requirement for a claim pursuant to §1983 is that the defendant have acted under

"color of state law."  It is plain from the face of the Seconded Amended Complaint that none of

the UFT Defendants satisfy this requirement and, therefore, they may not be sued pursuant to

§1983.

Defendant UFT is a public employee labor organization (New York Civil Service Law §

200 *et seq*.), and Weingarten is a private individual who is its elected president.  "[L]abor unions

generally are not state actors."  Dorcely v. Wyandanch Union Free School District, No.

06CV1265, 2007 WL 2815809, at * 4 (E.D.N.Y. Feb. 7, 2007) (internal quotations omitted).

That a union represents public employees also does not make it a state actor.  Id.; Harmon v.

Matarazzo, 162 F.3d 1147 (2d. Cir. 1998) (Table) (dismissing plaintiff's §1983 claim and noting

that the Patrolmen's Benevolent Association is an independent private entity that is in no way

intertwined with the police department, except to the extent that its members are policemen).

In their attempt to bring Defendants Weingarten and the UFT within the umbrella of

§1983, Plaintiffs allege that the UFT conspired with City Defendants in what Plaintiffs have

dubbed "The Plan," which consists of the BOE abusing existing disciplinary processes for the

purpose of forcing certain categories of UFT members out of their tenured teaching positions.

No reason is given as to why the UFT would conspire with the City Defendants nor is there a

single fact alleged to support such a specious, implausible and unprincipled position.  What is

offered, instead, is a bald *ipse dixit*; but such conclusions cannot constitute a viable claim.

A union's role in relation to a school district is "inherently advers[ar]ial," (Mehrhoff v.

William Floyd Union Free School District, No. 04-CV-3850, 2005 WL 2077292, at * 4

-11-

(E.D.N.Y. Aug. 22, 2005) (citing McGovern v. Local 456, Int'l Bhd. Of Teamsters, 107 F. Supp.

2d 311, 317 (2d Cir. 2000)), particularly as it pertains to defending its members in disciplinary

proceedings.  Plaintiffs' pleading offers no allegations – factual or otherwise – as to show this is

not the case here.

    While Plaintiffs use all the "buzz" words that might describe a conspiracy, such bald

assertions fall short of what is required to hold a private actor liable under §1983:

> To state a claim against a private entity based upon §1983
> conspiracy theory, the complaint must allege facts demonstrating
> that the private entity acted in concert with the state actor to
> commit an unconstitutional act.  In the final analysis the question is
> whether 'the conduct allegedly causing the deprivation of a federal
> right [can] be fairly attributable to the State.

Morpurgo v. Incorporated Village of Sag Harbor, No. 07 Civ. 1149, 2007 WL 3375224, at *12

(E.D.N.Y. Oct. 11, 2007) (internal citations omitted).  The application of this standard, as is plain

on its face, generally arises when a private person or entity has committed an act and a plaintiff

wishes to hold that private person liable under §1983.  Here, there is no act alleged by the UFT

Defendants.  To the contrary, the UFT and Weingarten are accused of complicity because they

supposedly could not stop the BOE from committing assertedly bad acts, or did not act as

quickly as Plaintiffs wanted to address the consequences of those bad acts. Even these

allegations are made in an entirely conclusory fashion.

    Conclusory allegations are insufficient to state a claim that a private entity acted in

concert with a state actor.  Dorcely, 2007 WL 281509, at *4.  "What would be required are

examples of specific instance[s] of misconduct."  Id.  No such "specific instances" are alleged

here.  "It is well settled that…on a motion to dismiss, a conclusory allegation that defendant, a

private entity, was acting under color of state law, *without supporting facts*, does not suffice to

state a claim under §1983." Id. (emphasis in original).  "[D]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  Jessamy v. City of New Rochelle, New York, 292 F. Supp. 2d 498, 513 (S.D.N.Y. 2003) (citing Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999)).

Aside from attributing malevolent intentions to certain actions taken by the UFT, there is not one supporting *fact* alleged – as opposed to conclusory assertions – from which it could be plausibly concluded that the UFT conspired with City Defendants.  Plaintiffs attempt to ascribe ill intent to the few general facts alleged results in, at best, inconsistent assertions.  The essential conspiracy allegations are two fold—first, that City Defendants would have liked the UFT's assistance in executing "The Plan" and second, the UFT did not stop City Defendants from implementing their plan.  For example, ¶ 30 alleges that:

> to carry out The Plan, [City Defendants] communicated their goals and intentions to, and sought the assistance and/or cooperation of, Defendants Weingarten and UFT, who at times actively cooperated in furtherance of The Plan, and at other times did nothing to protect teachers being targeted and victimized by The Plan.

Similarly, ¶ 42 alleges that

> City Defendants further sought assistance from Defendants Weingarten and UFT, that they in essence do nothing and sit idle as [City Defendants] subject Plaintiffs to harassment, discrimination and violation of their constitutional, statutory and contractual rights.

Moreover, most of what is offered to support this alleged conspiracy does not even involve the UFT Defendants.  Instead, what is alleged simply describes actions taken by City Defendants or the arbitrators who preside over §3020-a hearings themselves (who are not parties

to this suit), *not the UFT Defendants*. (Second Complaint ¶¶ 37, 40). This is patently insufficient to state a claim.

As to the UFT, it is essentially alleged to have done two things in furtherance of the conspiracy: (1) "nothing," which is an assertion contradicted by other portions of the Second Amended Complaint, and (2) enter into the 2002 CBA some six years previously. (Second Complaint ¶¶ 30, 32). Ignoring for the moment that negotiating a collective bargaining agreement is a fundamental part of labor relations, any claim arising out of the adoption of Article 21(G) six years prior, would be barred by the three year statute of limitations applicable to §1983 claims. Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (holding that in New York, §1983 three year statute of limitations accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action"). As to the contract itself, which forms the basis of Plaintiffs' claim, the Second Amended Complaint and its annexed Exhibits (which provide the excerpts of the CBA), show that Plaintiffs, like all UFT members, had access to the agreement as part of the ratification vote by the membership in 2002.[6] The Second Amended Complaint is devoid of any claim that the Plaintiffs failed to receive that agreement, that they voted against it, or that they in any way shape or form timely complained in the ensuing six years. Therefore, the claim is time barred.

Moreover, something more than a collective bargaining or other relationship between the parties is required to allege improper concerted action. Davis v. City of New York, No. 06 Civ. 3323, 2007 WL 2973695, at *3 (E.D.N.Y. Sept. 28, 2007) ("Mere contracting or business

---

[6]  The 2002 CBA was ratified by an overwhelming vote of 94 percent in a secret ballot ratification conducted by the American Arbitration Association. See Thomas J. Lueck, *Metro Briefing/New York: Manhattan: Teachers Approve Contract*, THE NEW YORK TIMES (June 26, 2002).

referrals cannot support a claim of state action."). It cannot be that simply engaging in collective bargaining, as is required of both parties by State law (The Taylor Law, Civil Service Law §200, *et seq.*), is sufficient to allege a conspiracy. Were it otherwise, every collective bargaining agreement or negotiation in the State of New York (and with it the Taylor Law) would be subject to challenge and expose a public sector union to liability under §1983 for doing that which State law mandates.

The bulk of the allegations in the Second Amended Complaint attempting to support this claim take the form of the City Defendants intending to commit an unconstitutional act and the UFT "allow[ing]" it to happen. (See e.g., Second Complaint ¶¶ 56, 58-61). This is not an allegation of conspiracy. As discussed above, the Second Amended Complaint itself alleges various actions taken by the UFT in opposition to the BOE's practices. The UFT cannot simply will the BOE not to violate the rights of its members – indeed, the very reason for unions are the often divergent desires of employees and employers. As described in the complaint, the UFT utilized appropriate and powerful tools that are part of a labor union's arsenal on behalf of its members: the UFT investigated claims and conditions and assigned a team to examine those issues. (Second Complaint ¶¶ 68, 71). Defendant Weingarten made public statements criticizing the BOE's use of TRCs, placing political pressure on the BOE and the Mayor. (Second Complaint ¶ 78; Klinger Aff. Ex. A). The UFT entered into negotiations with the BOE regarding its identified demands for improvements in the TRCs. How can Plaintiffs' assertion of "tacit complicity" by the UFT be plausible where Plaintiffs themselves admit that that the UFT has been publicly opposed to the actions of the BOE with regard to the TRCs. (Second Complaint ¶ 63).

Plaintiffs have alleged nothing more than belated assertions that there is an ongoing dispute between their employer and their union as to certain working conditions. Any attribution of ill intent to the Union or conspiratorial agreements is contrary to the facts alleged and entirely conclusory. Therefore, Plaintiffs' §1983 claim as against Weingarten and the UFT should be dismissed for want of state action. Ciambriello v. Cty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) (affirming dismissal of § 1983 conspiracy claim on the basis that plaintiff did not provide "any details of time and place" and "failed to specify in detail the factual basis necessary to enable defendants intelligently to prepare their defense").

B.    **21(G) Provides Adequate Due Process**

Even assuming Plaintiffs could adequately allege state action and overcome the statute of limitations, Plaintiffs' claim that Article 21(G) falls below the minimum level of due process fails as a matter of law.

Plaintiffs' due process claim takes the form of three theories: (1) Article 21(G) of the CBA is unconstitutional because it strips teachers of their §§3020 and 3020-a rights; (2) it is unconstitutional because the process it provides falls below the minimum required by the Fourteenth Amendment; and (3) the arbitrators (who are not sued here) have acted in bad faith during some §3020-a proceedings. Courts have to date declined to interpret the Constitution to require the level of due process Plaintiffs seek; moreover, Plaintiffs under-appreciate the process they are entitled to by virtue of §3020-a and the efforts of the UFT as evidenced in the CBA.

In the context of government employment, Constitutional due process requires only that an employee receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before being

-16-

terminated. <u>Koehler v. New York City</u>, No. 04 CIV 6929, 2005 WL 1123758, at * 6 (S.D.N.Y.

May 11, 2005) (quoting <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985));

<u>Straker v. Metropolitan Transit Authority</u>, 333 F. Supp. 2d 91, 97 (E.D.N.Y. 2004) (citing

<u>Munafo v. Metro. Transp. Auth.</u>, 285 F.3d 201, 212 (2d Cir. 2002)).  Article 21(G) of the CBA

on its face provides this minimum amount of process and far more.  Indeed, although no specific

facts are alleged as to any particular Plaintiff, all Plaintiffs are alleged to be assigned to a TRC

pending the conclusion of a hearing before an arbitrator where the DOE will present its evidence

and Plaintiffs have been or will be permitted to present their side of the story.  <u>Straker</u>, 333 F.

Supp. 2d at 97 (dismissing due process claim where pleading itself demonstrated that plaintiff

was advised of the charges against him and allowed to testify on his own behalf).

    Contrary to Plaintiffs' assertions, there is no Constitutional entitlement to each and every

procedural element contained in Education Law §3020-a.  Both §3020-a and Article 21(G),

although somewhat different, provide more than the minimal Constitutional level of due process.

The facts of <u>Koehler</u> are instructive.  In <u>Koehler</u>, a New York City teacher was terminated after

being charged with corporal punishment.  The teacher sued the BOE under §1983 alleging a

violation of her due process rights.  The teacher, who was probationary at the time she was

terminated, argued that the procedure she received was inadequate because, although she

received a hearing, she was (i) not permitted to have an attorney represent her; (ii) not permitted

to take discovery; and (iii) there was no provision for an award of damages.  This Court granted

defendant's motion to dismiss, noting that the basic elements of due process are notice and an

opportunity to be heard and that, despite the teacher's complaints, she had received several

opportunities that satisfied that minimal requirement.  The Court explained further that in

addition to the pre-deprivation hearing, the teacher also had post-deprivation process available to

-17-

her in the form of a grievance filed by the UFT and an Article 78 proceeding to review her termination. Either or both of these options satisfy due process as well. Koehler, 2005 WL 1123758, at * 7-8.

While the UFT (like Plaintiffs) believes that tenured teachers should be entitled to substantially more process, and has bargained for certain measure to improve §3020-a and continues to work to make sure that process is fair and meaningful, the Koehler analysis applies here. Like the teacher in Koehler, Plaintiffs have no constitutional entitlement to any particular process. There is no constitutional due process requirement, for example, that the "normal rules of trial procedures and evidence" be applied in disciplining an employee for lateness or absence. (Second Complaint ¶ 36(b)). Unlike the teacher in Koehler, Plaintiffs do have the opportunity to be represented by an attorney (although not the right to be)[7] in their §3020-a proceedings. They also have a right to some discovery. As a result of these two indisputable rights, Plaintiffs here already have more process than the teacher in Koehler. While the UFT agrees that teachers should have more protection than mere notice and an opportunity to be heard, this entitlement has been fought for and won through a contractual and statutory mechanism, not because of the Constitution.

Although Plaintiffs repeatedly decry their loss of certain specific § 3020-a procedures, they articulate no legal entitlement to them as opposed to some variation on those processes. As noted above, §3020(4) of the State Education Law specifically authorizes the UFT and the BOE

---

[7]    To the extent Plaintiffs allege a constitutional right to "adequate legal representation," (Second Complaint ¶ 96(b)), there is no such right. The Sixth Amendment right to counsel only applies to criminal proceedings. Waterbury v. Liberty Life Assurance Co., 2006 U.S. App. LEXIS 25614 (2d Cir. 2006) ("It is settled law that the Sixth Amendment right to counsel does not apply in civil cases."). Plaintiffs have not even alleged a violation of the Sixth Amendment. While not a constitutional requirement, Plaintiffs do have the contractual right to have counsel represent them in their §3020-a proceedings. That right, however, is limited to the *opportunity* to have counsel, not to counsel. It certainly does not include counsel provided by the Union.

to enter into a collective bargaining agreement that provides an alternative process for §3020-a charges. The CBA does just that by providing a fairer and more streamlined procedure that attempts to protect members from improper action by the BOE, provides discovery and sets forth time constraints in an effort to try to stop procedural delays. Again, the UFT Defendants continue to work for greater protections, but the Constitution does not grant them and the collective bargaining process is an ongoing one. Thus, it is *pursuant* to State law, not in contravention of State law, that Plaintiffs have the rights provided for in the CBA. If Plaintiffs here seek to challenge the constitutionality of § 3020(4), authorizing such alternative process, then their complaint is against the State Legislature and the Governor, not the UFT.

Finally, to the extent Plaintiffs' due process claim is based on the arbitrators' allegedly improper acts in failing to adhere to Article 21(G) and §3020-a or exhibiting bias in their decision-making, courts have consistently held that a post-deprivation remedy suffices for purposes of due process. See Pangburn, 200 F.3d at 71 (distinguishing claim that established process violates due process from claim that a government officer acted in an unauthorized or capricious manner and holding that in the latter, post deprivation remedy is sufficient to satisfy due process); Davis, 2007 WL 2973695, at * 5 (internal citations omitted) ("when a plaintiff has access to an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty" there is no constitutional violation). "[I]t is well established that an Article 78 proceeding is a perfectly adequate post-deprivation remedy in the context of employment termination." Id. Importantly, those remedies have not to date been availed of by Plaintiffs because premature.

C.     **Plaintiffs Have Failed To State A First Amendment Claim As To The UFT Defendants**

It is not entirely clear that Plaintiffs are even making a First Amendment claim against the UFT Defendants. All of the allegations in the First Cause of Action asserting a violation of the First Amendment are addressed to actions of the City Defendants. (Second Complaint ¶¶ 100-102, 114-116). There is no allegation that the UFT restrained Plaintiffs, or even had the power to restrain Plaintiffs from exercising free speech or freedom of association rights. Indeed, quite the opposite is true. On the face of Plaintiffs pleading it is apparent that the UFT had sought to have the issues publicly heard. (Second Complaint ¶¶ 68, 71, 78(b)).

II.     **THIRD CAUSE OF ACTION:  RETALIATION**

There is no cause of action for retaliation *per se* that exists independent of an underlying statute. A retaliatory act must be in response to activity that is protected and cannot be loosely alleged for any freestanding wrong.

Reading Plaintiffs' complaint liberally, it may be understood to allege claims for retaliation pursuant to: (A) the Federal Whistleblower Protection Act; (B) Title VII; and (C) the Labor Management Reporting and Disclosure Act. Each of these claims should be dismissed, as Plaintiffs have failed to state any cognizable claim for retaliation under any of these laws or their State analogues.

A.     **The Federal Whistleblower Protection Act Does Not Apply**

Plaintiffs erroneously cite the Federal Whistleblower Protection Act in their complaint. (Second Complaint, Twelfth Cause of Action, "Wherefore" clause). Any claim asserted under this statute must be dismissed because the statute applies only to adverse personnel actions *by the*

-20-

*federal government against federal government employees* in reprisal for certain protected activities. Clark v. Dept. of Army, 997 F.2d 1466, 1469 (Fed. Cir. 1993).

Not only are Plaintiffs, plainly, not federal employees, but neither the UFT nor Weingarten employ any of the Plaintiffs. Nor could any of the UFT Defendants qualify as a federal employer.

Simply using the word "whistleblower," as Plaintiffs do throughout the complaint, does not invoke any particular law and is insufficient to state a claim.[8]

### B.    **The Title VII Anti-Retaliation Provision Does Not Apply**

#### 1.    Plaintiffs Cannot Even Satisfy The Jurisdictional Requirements of Title VII

As an initial matter, the Title VII retaliation claims should be dismissed in their entirety against Defendant Weingarten because individual defendants are not subject to personal liability under Title VII. Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

Similarly, the Title VII claims against the UFT are equally fundamentally deficient. Even if Plaintiffs were able to allege facts supporting their substantive claim under Title VII, such claim would be unavailable because Plaintiffs failed to file a claim with the Equal Employment Opportunity Commission ("EEOC") (or the equivalent state or local agency).

---

[8]    Plaintiffs' "whistleblower" retaliation claim would similarly fail had they invoked the corresponding New York State or New York City "whistleblower" statutes. NY Labor Law §740 prohibits an "employer" from taking "retaliatory personnel action against an employee" who threatens to speak out. NY Labor Law §740-2. Similarly, NYC Admin. Code § 12-113 makes it unlawful for an "officer or employee of an agency of the city" from taking adverse personnel action against another "officer or employee" in retaliation for reporting improper agency or city conduct. NYC Admin. Code § 12-113. Again, because there is no employer-employee relationship between either the UFT or Weingarten and Plaintiffs and because the UFT Defendants are, plainly, not employees of an agency of the City of New York, a claim pursuant to these two statutes fails as well.

Filing a charge with the EEOC and receiving a "right to sue" letter are jurisdictional prerequisites for any claim under Title VII. DuBois v. State of New York, 966 F.Supp. 144,147 (N.D.N.Y. 1997). A plaintiff may only bring a retaliation action under Title VII *after* timely filing a charge with the EEOC and may only raise claims in a district court that were included or reasonably related to the charges in that EEOC claim. Viruet v. Citizen Advice Bureau, No. 01 Civ. 4594, 2002 WL 1880731, at *21-22, (S.D.N.Y. Aug. 15, 2002) (holding that plaintiff was precluded from bringing a Title VII retaliation claim in federal court because plaintiff did not file a retaliation claim with the EEOC).

Despite Magistrate Judge Peck pointing out this same deficiency in the original complaint at the very first conference in this case, the Second Amended Complaint is completely devoid of any allegation that an EEOC or equivalent charge has been filed on behalf of any Plaintiff, let alone all Plaintiffs. Without more, the Title VII retaliation claim is fatally flawed and should be dismissed.

> 2.   Even if Plaintiffs Could Satisfy Jurisdictional Prerequisites,
>      They Have Failed To State A Claim Under Title VII

Assuming, *arguendo*, Plaintiffs met the jurisdictional requirements, the claim would still fail because the Second Amended Complaint neglects to allege any "protected activity" within the meaning of Title VII.

The retaliation provision of Title VII shields certain classes of individuals from discriminatory acts committed against them in retaliation for engaging in certain protected activities. Patrick v. Local Union No. 282, No. 99 Civ 8314, 2005 WL 2179415, at *4 (E.D.N.Y. Sept. 9, 2005). Plaintiffs have failed to allege that they have engaged in protected activities or are members of any protected classes.

To establish a Title VII retaliation claim, Plaintiffs must allege that they engaged in protected activity and that such activity was known to the UFT. Patrick, 2005 WL 2179415, at *4. Protected activity within the meaning of Title VII "include[s] the filing of a discrimination complaint with the EEOC and informal opposition by employee to an employer's discriminatory practice." Id. The "discriminatory practice" must be one within the scope of Title VII's protection. Unlawful discrimination or retaliation under Title VII is that which is "on the basis of an individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(c). Plaintiffs have not alleged either that they engaged in protected activity or that the UFT knew of such action, let alone that it acted in retaliation. Retaliation for other activity (should that have occurred) is simply not encompassed within the protections of Title VII.

Plaintiffs' claim would suffer the same flaws if it had been made under the State or Local equivalents to Title VII. As with the Title VII claims, the New York State Human Rights Law and the New York City Human Rights Law provide protection for discrimination on the basis of membership in a protected class and for retaliation related to such discrimination. Plaintiffs have not alleged any protected activity related to such protected classes.[9]

As a whole, Plaintiffs' reliance on the body of anti-discrimination statutes under various Civil Rights laws, the purpose of which is to protect individuals from discrimination based on their membership in a protected class, is misplaced. Plaintiffs erroneously rely on this body of

_____

[9]    New York State Human Rights Law makes it unlawful for a "labor organization, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to exclude or to expel from its membership such individual or to discriminate in any way against any of its members or against any employer or any individual employed by an employer." NY Exec. Law § 296-1(c). New York City Human Rights Law makes it unlawful for a "labor organization or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to exclude or to expel from its membership such person or to discriminate in any way against any of its members or against any employer or any person employed by an employer." NYC Admin. Code § 8-107(c).

law to support an already attenuated and unsupported "conspiracy" theory which, among its many shortcomings, has nothing to do with race, gender, creed, national origin, or any of the other protected classes which Civil Rights laws seek to protect.  Therefore, all such claims should be dismissed as to Defendants UFT and Weingarten.

     C.     **The Labor Management Reporting and Disclosure Act (LMRDA)**

Plaintiffs' Labor Management Reporting and Disclosure Act ("LMRDA") retaliation claim is encompassed within their Sixth Cause of Action, alleging broader LMRDA claims and is addressed fully in Part III *infra* under that cause of action.

**III.     SIXTH CAUSE OF ACTION:  BREACH OF FIDUCIARY DUTY, THE DUTY OF FAIR REPRESENTATION AND VIOLATION OF THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT**

     A.     **The UFT Has Satisfied And Continues To Satisfy Its Duty of Fair Representation**

As an initial matter, most of Plaintiffs' allegations as to the UFT's duty of fair representation, are so vague and undifferentiated as to be a conclusory nullity.  Allegations that "[d]espite their knowledge of [City Defendants'] wrongful acts, Defendants UFT and Weingarten did nothing" are not supported by any averments of fact; indeed, in the very same complaint they are contradicted by other pleadings which admit the UFT actions to assist, but characterize them as "gimmicks," or not effective.  (Second Complaint ¶ 182).  It is not sufficient to say the Union breached its duty, there must be some allegation as to how it did so with regard to each Plaintiff.  Allegations that the §3020-a proceedings were the "equivalent of 'Kangaroo Courts'" or that the UFT "colluded with [the DOE] to coerce Plaintiffs into onerous stipulations," provide no facts on which the claim can rest.  (Second Complaint ¶ 39).  Epithets are not a substitute for the requisite factual allegations.  There are no specifics given (let alone an

allegation for each Plaintiff) as to how they were "coerced" and what the UFT did in connection

with that coercion that breached its duty. "Plaintiffs" are not a single entity. There are 52

individual plaintiffs. Nor is this a class action. Moreover, Teachers4Action, Inc. cannot itself

have a claim for breach of the duty of fair representation, as the duty is owed to individual union

members.

Much of the Second Amended Complaint suffers from the same deficiency. Plaintiffs'

allegation that their NYSUT attorneys "were given instructions" not to represent Plaintiffs to

their fullest ability, in addition to being incorrect, fail to allege who gave the instruction, when it

was given or to whom. (Second Complaint ¶ 45). Not a single example is provided of an

instance where a NYSUT attorney failed to assert a claim that he or she ought to have asserted

on behalf of any Plaintiffs. Neither is any allegation of fact advanced showing or even tending to

show that a NYSUT attorney acted in contravention of elementary standards governing the

conduct of lawyers.

The purpose of requiring plaintiffs to plead facts upon which relief can be granted is to

"give the defendant fair notice of what the. . .claim is and the grounds upon which it rests." Bell

Atl. Corp. v. Twombly, __ U.S. __, __, 127 S. Ct. 1955, 1965 (2007). The failure to provide

facts in the breach of fair representation context is particularly egregious since a breach of that

duty is an intensely factual claim. Civil Service Bar Assoc., Local 237 v. New York, 64 N.Y.2d

188, 196 (1984) ("Ascertaining whether, in any particular instance, the duty of fair representation

has been violated is essentially a factual determination.").

Amid the hullabaloo of pleadings, Plaintiffs advances only two specific bases for

Plaintiffs' breach of the duty of fair representation ("DFR"): (1) the negotiation and adoption of

-25-

Article 21(G), and (2) the withdrawal of the NYSUT attorneys.  As shown below, both of these claims are substantively insufficient and the first is also time barred.

        1.    <u>DFR Standard</u>

The standard for duty of fair representation claims in New York is well settled.  The duty is breached only when a union's conduct toward a member is "arbitrary, discriminatory or in bad faith and [when] this conduct seriously undermine[s] the arbitral process." <u>Perez v. Culminations Workers of America</u>, 210 Fed. Appx. 27, 31 (2d Cir. 2006); <u>Smith v. Sipe</u>, 67 N.Y.2d 928 (1986).  Indeed, it is axiomatic that mere neglect or refusal to arbitrate or pursue a particular grievance cannot, by itself, constitute a breach of the duty of fair representation.  Instead, a complaint claiming a breach of the duty must allege "invidious, hostile treatment." <u>Ahrens v. New York State Pub. Employees Fed'n, AFL-CIO</u>, 203 A.D.2d 796 (3d Dep't 1994).  In sum, to satisfy its duty of fair representation, a union must only act reasonably.  As the Supreme Court has instructed "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents." <u>Ford Motor Co. v. Huff</u>, 345 U.S. 330, 338 (1953).

Furthermore, even if Plaintiffs had stated a fair representation claim against the Union, there is no such claim against its president.  "Case law provides a shield of immunity for individual union members in suits for breach of the duty of fair representation." <u>Morris v. Local 819, Int'l Brotherhood of Teamsters</u>, 169 F.3d 782 (2d Cir. 1999); <u>see also</u> <u>Duane Reade v. Local 339</u>, 3 Misc. 3d 405 (Sup. Ct. N.Y. Cty. 2003) ("union officers and employees are not individually liable for acts performed as representatives of the union").  Therefore, all claims for breach of the duty of fair representation alleged against Defendant Weingarten must be dismissed as a matter of law.

-26-

2.    Adoption of Article 21(G)

Stripped of its self-serving conclusions, Plaintiffs' Second Amended Complaint shows that the UFT Defendants acted well within the acceptable range of reasonableness in representing its members.  The UFT negotiated the 2002 CBA in accordance with governing New York law, permitting modification of the procedures set forth in Education Law § 3020-a. See Education Law § 3020(4).  Indeed, Article 21(G) expanded the discovery process and streamlined the grievance process, meant to result in a shorter wait time for reassigned teachers while their disciplinary charges are delayed by a morass of procedure.  Article 21(G) strikes an appropriate, and certainly reasonable, balance between efficiency and process.  That some 52 of the over 100,000 UFT-represented BOE employees would have preferred a different balance be struck hardly means that the UFT's bargain with the BOE was in bad faith.  See Civil Service Bar Assoc. v. New York, 472 N.Y.S.2d 925 (1st Dep't 1984) (ruling that while the agreement reached between the union and the city was, perhaps, not equally favorable or unfavorable to each employee, the union did not breach its duty of fair representation).

Like most of the allegations throughout the Second Amended Complaint, Plaintiffs' unsupported and inflammatory description of UFT Defendants' conduct as in "bad faith," "arbitrary" or "capricious[]" (Second Complaint at ¶ 88, 190), will not save the fair representation claims from dismissal.  See Twombly, 127 S.Ct. at 1965 (a "formulaic recitation of the elements of a cause of action" is not sufficient to survive a motion to dismiss").  Aspersions are no substitution for facts.

Moreover, aside from the reasonableness of the UFT Defendants' negotiation, Plaintiffs' duty of fair representation claim should be dismissed because it is time-barred.  Under New York law, the statute of limitations for a duty of fair representation cause of action is four months,

commencing on the date the union member "knew or should have known that the breach occurred" or when the member suffers actual harm, whichever is later.  Alston v. Transport Workers Union, 225 A.D.2d 424 (1st Dep't 1996).  Because Plaintiffs' Second Amended Complaint naming the UFT Defendants was filed on February 22, 2008, any duty of fair representation claim reflecting conduct occurring before November 22, 2007 is untimely.

According to the Second Amended Complaint, in 2002, Article 21 of the CBA was "rewritten in its entirety in such a way as to strip tenured teachers of virtually all their due process rights protections."  (Second Complaint ¶ 33).  Plaintiffs' Amended Complaint was filed six years after Article 21(G) was negotiated, ratified by the UFT's membership and implemented.  The claim that the UFT Defendants breached their duty of fair representation in negotiating Article 21(G) is clearly barred by the four-month statute of limitations.  Plaintiffs cannot revive it here by simply complaining of the continuing application of that provision.  Cf. Englehardt v. Consolidated Rail Corp., 594 F. Supp. 1157 (N.D.N.Y. 1984) (considering a DFR claim under the Railway Labor Act and holding that "[t]he mere fact that the unions have continued to apply the agreements since their inception does not render them a continuing violation. The agreements were entirely negotiated over fifteen years ago").

### 3.    NYSUT Attorneys' Conflict of Interest

As a preliminary matter, while not firmly settled that the UFT can be held liable for the actions of the separate NYSUT attorneys in connection with the §3020-a proceedings, even if the UFT could be held liable, Plaintiffs have failed to allege sufficient facts to state a claim for any possible breach of that duty.

Plaintiffs, by alleging that their NYSUT-provided §3020-a attorneys were acting improperly in those proceedings and questioning their loyalty to their clients, made it ethically improper for those attorneys to continue representing Plaintiffs. See New York Code of Professional Responsibility ("NYCRR" or the "Code") §§ 1200.19(c)(4), 1200.20(a), 1200.24(b), and 1200.21(b). The attorneys withdrew *not* in retaliation for Plaintiffs' commencement of the instant suit, but directly in response thereto. Plaintiffs' Amended Complaint, much like the Second Amended Complaint, alleged that the NYSUT attorneys, *inter alia*, purposefully refused to represent Plaintiffs to the fullest extent of their abilities. It is eminently reasonable (and perhaps compelled) for an attorney to discontinue representation of a client that has made a claim of unethical conduct in connection with the very same representation. If NYSUT attorneys were, in fact, committing the acts alleged in Plaintiffs' various complaints (which the UFT vigorously disputes), the real question is why Plaintiffs would wish them to continue in that representation.

The tangled web of ethical issues created by Plaintiffs' claims raises numerous and serious conflicts of interest. The UFT, through its relationship with NYSUT, an umbrella organization for New York State teachers' unions, provides attorneys, if they choose to accept, to its members for their §3020-a hearings. Therefore, to the extent the UFT may be held liable for the actions of NYSUT's attorneys, such liability would be measured under the duty of fair representation. See Butler v. McCarty, 191 Misc. 2d 318, 326 (Madison Cty. 2002), aff'd on different grounds, 306 A.D.2d 607 (3d Dep't 2003) (holding that for the purposes of their representation of plaintiff in disciplinary proceedings, NYSUT fell within the local's duty of fair representation); UFT v. Barnett, 17 PERB ¶ 3113 (1984), aff'd, 19 PERB ¶ 7020 (1st Dep't 1986) (same). In addition to being Union representatives for purposes of the duty of fair

representation as to § 3020-a proceedings, NYSUT attorneys also often represent the UFT itself in legal proceedings, though not in this case. Thus, if NYSUT had continued representing Plaintiffs in their §3020-a proceedings, they would have had an attorney-client relationship with parties on both sides of the caption in a case that is based, in part, on allegations of misconduct by the attorneys themselves.

This complex scenario gives rise to several ethical dilemmas for NYSUT. First, the attorneys may not concurrently represent two clients – the UFT and Plaintiffs – with adverse interest. The Code forbids conflicts of this type. 22 NYCRR §1200.24(b). This prohibition is complicated here as the very nature and quality of the representation provided by NYSUT to Plaintiffs is at issue in the instant litigation, against another of NYSUT's clients. Thaler v. Jacoby & Meyers Law Offices, 294 A.D.2d 230, 231 (1st Dep't 2002), is instructive. There, the court found that a law firm that was currently being sued by its former attorney-employee for legal fees could not simultaneously represent that former employee in a malpractice action against other counsel.

Second, Plaintiffs' allegations also raise the possibility that NYSUT attorneys would be called upon to testify in this action, should this action proceed to discovery or trial. The Code typically forbids an attorney from taking on a representation where there is a likelihood that the attorney could be called as a witness on a significant issue. 22 NYCRR. §1200.21(b); see New York v. Swanson, 43 A.D.3d 1331 (4th Dep't 2007) (same). This rule not only addresses the potential impeachment of an advocate before a fact-finder where the attorney is both advocate and witness in a single case, but also the potential breakdown of the attorney-client relationship where an attorney provides testimony in any proceeding that is "detrimental to the interest of his client." See, e.g., New York v. Limongelli, 156 A.D.2d 473, 475 (2d Dep't 1989) (holding that

-30-

attorney's "effectiveness as trial counsel could be seriously undermined if called as a witness");
see, e.g., Feinstein v. Carl, 791 N.Y.S.2d 869, 869 (Sup. Ct. Nassau Cty. 2004) (disqualifying an attorney where he was likely to be called upon to give testimony "detrimental to the interest of his client"). Because NYSUT's two clients are adverse in this action, any testimony would invariably be detrimental to one or the other.

Third, the possibility that the NYSUT attorneys may be necessary witnesses for Plaintiffs' case also implicates the Attorney-Client Privilege as well as DR 4-101 in another context. While normally the client holds the privilege, an attorney may reveal "[c]onfidences or secrets necessary to...defend the lawyer...against an accusation of wrongful conduct." 22 NYCRR §1200.19(c)(4); Schulte Rothe & Zabel LLP v. Chammah, 251 A.D.2d 132, 132 (1st Dep't 1998) (holding that, generally, a client will waive the attorney-client privilege by placing the subject matter of the attorneys' representation at issue). Thus, NYSUT's continued representation of Plaintiffs could compromise open communication between the attorneys and Plaintiffs as every act by the NYSUT attorney in the §3020-a proceeding would later be scrutinized in this action.

Finally, and perhaps most importantly, an attorney has a duty of loyalty that does not permit a posture "where a conflict of interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship." Cardinale v. Golinello, 43 N.Y.2d 288, 296 (1977). Accordingly, the Code forbids an attorney to have a "a personal...interest at odds with that of his client." See Greene v. Greene, 47 N.Y.2d 447, 452 (1979); see also 22 NYCRR §1200.20(a). NYSUT's attorneys have a clear professional interest in the outcome, given that the allegations accuse them of malpractice. Indeed, courts have confirmed that accusations made regarding an attorney's level of professionalism are sufficient

to justify withdrawal.  See, e.g., Hunkins v. Lake Placid Vacation Corp., Inc., 120 A.D.2d 199.

201 (3d Dep't 1986).

Taken individually and certainly taken collectively, these conflicts form a more than

reasonable basis for the NYSUT attorneys' withdrawal from representing Plaintiffs in their

§3020-a proceedings.  The duty of fair representation does not require any more of the UFT.

### B.  Plaintiffs' Fiduciary Duty Claim is Duplicative of Their Duty of Fair Representation Claim

A claim for breach of the fiduciary duty asserted against a union in its representative

capacity is analogous to a claim for breach of the duty of fair representation.  Chauffers,

Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558 (1990).  A union's duty of fair

representation arising from its status as the exclusive bargaining representative is, by definition,

its fiduciary duty.  Accordingly, under New York law, a union's alleged breach of fiduciary duty

and breach of the duty of fair representation are tested under the same standard.  See Kwok v.

N.Y.C. Transit Authority, No. 99 Civ. 2281, 2001 WL 829876 (S.D.N.Y. July 23, 2001).

Moreover, because the breach of fiduciary duty claim is inextricably intertwined with the

duty fair representation claim, it too, is governed by the four-month statute of limitations in

CPLR 217(2)(B) and thus, as explained above, is time-barred.  Dolce v. Bayport-Blue Point

Union Free Sch. Dist., 286 A.D.2d 316 (2d Dep't 2001); see also Obot v. New York State Dep't

of Correctional Serv., 256 N.Y.S.2d 1089 (4th Dep't 1998) (ruling that because plaintiffs' breach

of the collective bargaining agreement claim was inextricably intertwined with the duty of fair

representation claim, the former was governed by the four-month fair representation statute of

limitations).

C.   **Plaintiffs' LMRDA Claims Fail As A Matter Of Law**

While allegations in the Second Amended Complaint under the LMRDA are numerous, they are all deficient as a matter of law.[10]

1.   LMRDA Criminal Provisions (29 U.S.C. § 439(b))

Taking the language of the LMRDA entirely out of context, Plaintiff allege (at ¶ 189 of the Second Amended Complaint), that the UFT Defendants violated § 439(b) of the LMRDA by making "repeated and knowing false statements regarding the true nature and intent of Article 21G, and regarding their purported efforts to help teachers in the Rubber Rooms."

Not only is § 439(b) applicable *only* to the submission of false information required to be maintained under the LMRDA *to the Secretary of Labor,* not to union members, there is no private right of action under that provision. See 29 U.S.C. § 440; see also Hussein v. Hotel Employees and Restaurant Union Local 6, 1999 U.S. Dist. LEXIS 14876 (S.D.N.Y. Sept. 29, 1999) (no private right of action under §439).

Therefore, the allegation that UFT Defendants violated the criminal reporting provisions are dismissable as a matter of law.

2.   LMRDA Information as to the Act (29 U.S.C. § 415)

Plaintiffs' claim under the "Information as to the Act" provision of the LMRDA is similarly misplaced.

---

[10] Generally, the LMRDA does not apply to public employee unions. Brock v. So. Region, Region III of the CSEA, 808 F.2d 22, 330 (2d Cir. 1987). However, courts have held that where a public employee union has some private sector members, as the UFT does, the reporting provisions apply to that union. London v. Polishook, 189 F.3d 196, 198 (2d Cir. 1999); see also 29 C.F.R. 451.3(a)(4) (2002). However, it is unclear whether a public employee can sue under the provisions discussed here. Moreover, as demonstrated, the claims are otherwise deficient on a myriad of grounds.

To state a claim under §415, Plaintiffs must allege that the UFT Defendants failed to advise them of their rights under the LMRDA when they became members of the Union or that the Plaintiffs requested, and did not receive, information regarding the LMRDA's provisions. McGovern v. Local 456, Int'l Brotherhood of Teamsters Chauffeurs and Warehousemen and Helpers of America, 107 F. Supp. 2d 311, 324 (S.D.N.Y. 2000). Plaintiffs fail to so allege.

Plaintiffs allege only that the UFT Defendants failed to sufficiently emphasize the changes to Article 21(G) of the CBA in 2002. (Second Complaint ¶ 38). Even if one disregards the fact that these selfsame provisions were necessarily ratified by the UFT membership, nowhere in the Plaintiffs' sixty-five page Second Amended Complaint do they allege that the UFT Defendants failed to apprise them of their rights under the LMRDA. Therefore, this claim should be dismissed.

### 3.    LMRDA Safeguards Against Improper Discipline (29 U.S.C. 411(a)(5))

Plaintiffs have further alleged that the UFT Defendants violated §411(a)(5) of the LMRDA for improper disciplinary action. Under that section, "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined" without being afforded a "full and fair hearing." 29 U.S.C. § 411(a)(5).

The improper discipline allegation in the Second Amended Complaint reflects a fundamental misunderstanding of the scope of the LMRDA. The LMRDA "is addressed to the regulation of the internal affairs of the Union." Accordingly, §411(a)(5) protects "due process in [union] disciplinary proceedings," not discipline imposed by an employer. Abrams v. Carrier Corp., 434 F.2d 1234, 1250 (2d Cir. 1970).

Plaintiffs allege that they were not afforded a full and fair hearing in their §3020-a disciplinary proceedings, *initiated by the BOE*, not in any internal union disciplinary hearings. Consequently, Plaintiffs' allegations fall outside the ambit of the LMRDA and cannot survive a motion to dismiss.  See also Int'l Bhd.of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Hardeman, 401 U.S. 233 (1971) (ruling that where the employer and not the union disciplines a member for exercising certain rights, the member had no cause of action against the union under the LMRDA).

Moreover, Plaintiffs fail to assert that the UFT Defendants took any affirmative action to deny Plaintiffs their due process rights with regard to Union procedures.  Instead, the gravamen of Plaintiffs' claim is that the UFT Defendants "remained silent and did nothing to support Plaintiffs' rights or to stop the violation of their rights" while the City Defendants conducted improper and unconstitutional disciplinary hearings.  (Second Complaint ¶ 82).  This allegation, too, is misplaced.  Even assuming this utterly conclusory claim to be true, it cannot support an improper discipline cause of action under the LMRDA.

The failure of a union to, assertedly, provide adequate representation does not constitute a violation of the LMRDA.  Gilmore v. Local 295, Int'l Bhd. of Teamsters, 798 F.Supp. 1030 (S.D.N.Y. 1992); Grogan v. Holland Patent Central Sch. Dist., 2000 U.S. Dist. LEXIS 19127 (N.D.N.Y. Dec. 15, 2000) (dismissing plaintiff union member's LMRDA claim because "it appears that the entire substance of her complaint…is that [the union] did not adequately represent her in her grievance").

Gilmore is instructive.  There, the plaintiff, an employee and union member, brought an improper discipline LMRDA claim, alleging that his union purposefully inadequately

-35-

represented him at his arbitration hearings. 798 F. Supp. at 1042. In a strikingly similar factual allegation to the Plaintiffs' Second Amended Complaint, Gilmore alleged that by "purposefully failing to give him adequate representation at the arbitration hearings, the Union conspired with [the company] to use the company's disciplinary system to terminate his employment." Id. at 1041.

Judge Goettel dismissed Gilmore's LMRDA claims against the union, ruling that "this type of [alleged] concerted action by the union and the employer [is] not encompassed by LMRDA." Because "the union itself" did not impose any discipline or expel the plaintiff from membership, the plaintiff failed to state a claim under LMRDA section 411(a)(5). Id.; see also Camporeale v. Airborne Freight Co., 732 F.Supp. 358, 365 (E.D.N.Y. 1990) (the LMRDA "simply does not offer protection to a union member from actions taken by the employer").

Like the plaintiff in Gilmore, Plaintiffs allege that the UFT Defendants conspired with the City Defendants to discipline the Plaintiffs. As this Court ruled in Gilmore, such allegations even if true (which they are not) fail to state a claim under the LMRDA.

### 4.    LMRDA Retaliation (29 U.S.C. § 529)

The Second Amended Complaint also invokes the LMRDA's anti-retaliation provision. Section 529 states that it shall be "unlawful for any labor organization,…or any employee thereof to fire, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter." 29 U.S.C. § 529. The phrase "otherwise discipline' has the same meaning in this section as section 101(a)(5), discussed *supra*, and denotes punishment authorized by a union, as a collective entity, to enforce its rules, not

discipline by an employer.  Breininger v. Sheet Metal Workers Int'l Assoc. Local Union 6, 493 U.S. 67 (1989).

Plaintiffs' LMRDA retaliation claim fails for the same reason as the improper discipline one.  Plaintiffs have not been "fired, expelled, suspended, or otherwise disciplined" by the UFT Defendants and therefore cannot sustain a claim for retaliation under the LMRDA.  See Camporeale, 732 F. Supp. at 358 (holding that defendant union's action on plaintiff's grievance, and its failure to pursue arbitration on his behalf, did not constitute discipline).

5.    LMRDA Freedom of Speech (29 U.S.C. 411(a)(2))

Plaintiffs' claim under §411(a)(2) is unavailing and reflects a similarly misguided construction of the LMRDA.   Whether alleged interference with free speech rights gives rise to a cause of action under the LMRDA must be judged in light of the fundamental purpose of the Act: "ensuring that unions are democratically governed and responsive to the will of the membership."  See Sheet Metal Workers' Int'l Assn. v. Lynn, 488 U.S. 347 (1989) (quoting Finnegan v. Leu, 456 U.S. 431, 435, n. 4 (1982)).  Thus, in the Second Circuit, to state a claim, Plaintiffs must allege facts that can support the conclusion that their "membership rights have been directly infringed" or that "there is a real threat to the democratic integrity of the union." Commer v. Keller, 64 F. Supp. 2d 266, 271 (S.D.N.Y. 1999); see also Newman v. Local 1101, 570 F.2d 439, 448 (2d Cir. 1978) (ruling that the union had not violated the LMRDA's free speech provision by infringing plaintiff's membership rights because plaintiff had not been expelled, fined, suspended or disciplined).  The LMRDA free speech provision provides protection for union members when union leadership has despotically attempted to undermine the basic democratic functioning of the union.

-37-

That is not the case here and Plaintiffs' conclusory allegations in the Complaint fall far short of the free speech pleading threshold. Plaintiffs have not alleged that their membership interests in the Union were adversely affected or that the UFT Defendants' conduct threatens to undermine union democracy.

The minimal factual allegations contained within the Second Amended Complaint are comparable to the facts considered by this Court in Commer v. Keller, *supra*. In Commer, defendants, members of the union executive board, asserted a counterclaim against the union president under the free speech provision of the LMRDA, alleging that the president had "undertaken to mail literature and make speeches to union members that strongly criticize[d] defendants" in retaliation for their exercising free speech and voicing their displeasure with the president's leadership. Id.

In dismissing the counterclaim, Judge Schwartz noted that criticism of one union official by another is not a "retaliation serious or threatening enough to support a conclusion that the speaker is unlawfully suppressing dissent in a manner that threatens union democracy." Id. Because the speech amounted to "critical language" rather than direct threats of union punishment by the speaker, the defendants' counterclaims were dismissed. According to the court, far from violating §101(a)(2), the critical speech was precisely the type of speech that should be protected by the LMRDA. Id.

Like the defendants in Commer, Plaintiffs allege that once they expressed their dissatisfaction with the UFT's Defendant's representation, "Defendant Weingarten wrote a letter to the media and area politicians refuting Teachers4Action, Inc's allegations and claiming that Defendant UFT was in negotiations with Defendant DOE to resolve the Rubber Room problem."

(Second Complaint ¶ 78). As <u>Commer</u> illustrates, the allegation that UFT Defendants' "critical speech" (if it is even that) violates the LMRDA is entirely without merit. As Plaintiffs concede, the statements of the UFT Defendants were meant to refute the allegations publically made by Plaintiffs that the UFT Defendants believed were false. Plaintiffs would have this Court believe that union defendants can say nothing other than "member, you are right" without risking a charge that the union violated the LMRDA or some precept of union democracy. That position defies both logic and the well-settled case law of New York. To suggest, as Plaintiffs do, that the UFT Defendants' attempt through assertion of their free speech rights, somehow threatens the democratic integrity of the Union is utterly without basis.

The balance of Plaintiffs' free speech allegations lack sufficient specificity to make them understandable, much less actionable. The self-serving, conclusory allegation that Plaintiffs were "prevented from speaking out against the abuses," and the repeated unsupported claim that when Plaintiffs spoke out Defendants Weingarten and UFT "remained silent and did nothing to support Plaintiffs' rights," cannot support a cognizable section 101(a)(2) LMRDA claim. (Second Complaint ¶ 82). These allegations, utterly devoid of any specific factual basis, fail to meet even the most basic pleading standards. <u>Twombly</u>, 127 S. Ct. at 1965 (plaintiffs must plead specific facts to "give the defendant fair notice of what the. . .claim is and the grounds upon which it rests"). Therefore, Plaintiffs' freedom of speech claim should be dismissed.

### 6.     <u>LMRDA Protection of the Right to Sue (29 U.S.C. §411(a)(4))</u>

Section 411(a)(4) of the LMRDA prohibits unions from limiting a union member's right to initiate or participate in a legal proceeding. To survive a motion to dismiss, a complaint asserting a §411(a)(4) claim must allege that the plaintiff was chilled or limited in some way from instituting an action. <u>Murray v. Con. Ed.</u>, 734 F. Supp. 655 (S.D.N.Y. 1990).

In Murray, the plaintiff alleged that his union violated §411(a)(4) by sending a letter to his attorney threatening to seek sanctions under Fed. R. Civ. P. 11 if he proceeded against the union. Id. The court dismissed the LMRDA right to sue claim, holding that the plaintiff had alleged no facts indicating that the union had, in any way, actually hindered the plaintiff's ability to file suit. See also Herr v. Cineplex Odeon Corp and Union Local 306, 1994 U.S. Dist. LEXIS 2539 (S.D.N.Y. Mar. 2, 1994) (ruling that the plaintiff did not sufficiently plead a violation of §411(a)(4) because plaintiff was not prevented from bringing his LMRDA claim or from filing timely grievances).

Plaintiffs' wholly conclusory allegations are analogous to the facts of Murray. Plaintiffs have alleged, without any detail, that the UFT Defendants "interfered with…Plaintiffs' rights to prosecute this action" and "looked for ways to interfere with Plaintiffs' ability to prosecute this action." These allegations are insufficient to survive dismissal. See U.S. ex rel. Anti-discrimination Ctr. of Metropolitan N.Y., Inc., 495 F. Supp. 2d 375 (S.D.N.Y. 2007) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss"). Like the plaintiffs in Murray, Plaintiffs have not been prevented from bringing this lawsuit or any lawsuit by the UFT Defendants.[11] Therefore, the right to sue claim is legally deficient and should be dismissed.

## IV.    SEVENTH CAUSE OF ACTION: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Plaintiffs' Seventh Cause of action is just a rehashing of their completely conclusory conspiracy allegations, dressed up as an aiding an abetting claim. Plaintiffs staccato averments

---

[11]    To the extent Plaintiffs allege that they were prevented from communicating and assembling in the Rubber Rooms, which, in turn, prevented their ability to prepare their claim in this case (Second Complaint ¶ 81), the UFT Defendants, plainly, have no authority to take such action.

assert that the UFT Defendants "were aware of their contractual and fiduciary duties to

Plaintiffs" – where the "their" could appears to refer to the UFT Defendants, but logically should

refer to the City Defendants (as UFT Defendants cannot aid and abet themselves). (Second

Complaint ¶ 193). Next, Plaintiffs allege that the UFT Defendants were aware of the BOE's

asserted bad acts and, without any factual basis, that the UFT Defendants assisted the BOE in

committing those acts. (Second Complaint ¶ 194-96). Just as these assertions failed to support a

claim of conspiracy, they likewise are insufficient to state a claim for the aiding and abetting of a

breach of fiduciary duty.

To state a claim for aiding and abetting breach of fiduciary duty, a plaintiff must plead

three elements: (i) a breach by a person owing a fiduciary duty to plaintiff (by definition, not the

alleged aider and abettor), which the alleged aider and abettor had actual knowledge of; (ii) that

the aider and abettor knowingly induced or participated in such breach; and (iii) that plaintiff

suffered damages as a result. In re Sharp Int'l Corp. v. State St. Bank & Trust Co., 403 F.3d 43

(2d Cir. 2005). Plaintiffs' allegations fail because they have not, and cannot, satisfy even the

first element; a primary breach of fiduciary duty in which the UFT Defendants are alleged to

have aided and abetted. See United States v. Dist. Council, 2007 U.S. Dist LEXIS 69852

(S.D.N.Y. Sept. 17, 2007) (ruling that aiding and abetting breach of fiduciary duty requires first

"the existence of a legal violation by the primary [as opposed to the aiding and abetting] party").

As shown below, the City Defendants do not owe a fiduciary duty to the Plaintiffs. Accordingly,

the UFT Defendants cannot be held liable for aiding and abetting a breach of fiduciary duty.

Despite Plaintiffs' allegations to the contrary, "Under New York Law, an employer-

employee relationship is not fiduciary in nature." Kinsey v. Cendant Corp., 04 CIV 0582, 2004

WL 2591946, at *14 (S.D.N.Y. Nov. 16, 2004) (quoting Lind v. Vanguard Offset Printers, Inc.,

857 F.Supp. 1060, 1067 (S.D.N.Y. 1994) (dismissing a breach of fiduciary duty claim where the purported fiduciary relationship was based on the plaintiff's status as an employee); Cuite v. Winthrop University Hosp., No. CV06-6140, 2007 WL 2582135, at *4 (E.D.N.Y. Sept. 4, 2007) (same). The duties owed by the BOE are encompassed within the CBA and various laws. A violation of those duties would amount to a breach of contract (as alleged in the Fifth Cause of Action) or a violation of State or local laws. They do not constitute a fiduciary duty and thus there is nothing cognizable in which the UFT Defendants improperly aided and abetted.

Because Plaintiffs have failed to allege an underlying breach of fiduciary duty, see Lind, 857 F. Supp., at 1067 (dismissing breach of fiduciary duty claim where relationship based on employment relationship), there can be no aiding and abetting claim associated with it.

Moreover, as discussed in detail in connection with Plaintiffs' fraud claim (Tenth Cause of Action), a union may not be held liable for a tort unless its members ratify the allegedly tortuous action. Plaintiffs have made no such assertions here.

## V.    NINTH CAUSE OF ACTION: NEGLIGENT HIRING, RETENTION AND SUPERVISION

Plaintiffs fail to state a cognizable claim for negligent hiring, retention and supervision against Defendants UFT and Weingarten for the alleged failures of the NYSUT lawyers and of Betsy Combier. Plaintiffs allegations as to the NYSUT attorneys are deficient because Plaintiffs have failed to allege facts supporting the knowledge component of the claim and because the NYSUT attorneys cannot, as a matter of law, be held individually liable for an underlying tort. The claim is equally insufficient regarding Betsy Combier because she is an employee of the UFT and acted within the scope of that employment in connection with the allegations against her.

A.    **Plaintiffs Have Failed to State A Claim For The Negligent Hire or Retention of the NYSUT Attorneys**

Under New York law, a claim based on negligent hiring and retention requires a showing that (1) an employee acting outside the scope of employment (or a subcontractor) committed an underlying tortious act for which he or she might be liable to plaintiff, and (2) the defendant employer knew, or should have known, of the employee's propensity to commit such acts, had it conducted an adequate hiring procedure.  Gomez v. City of New York, 304 A.D.2d 374, 375 (1st Dep't 2003).  Specifically, a plaintiff must prove the defendant's "prior knowledge or notice" of the employee's likelihood or propensity to engage in the specific conduct such that the employee's acts "could be anticipated or were foreseeable."  Ernest v. Charlton School, 30 A.D.3d 649, 651 (3d Dep't 2006).

Here, Plaintiffs failed to sufficiently allege both "notice" of any propensity or an underlying tortious act for which any NYSUT attorney might be held liable.

With regard to the first element, Kogan v. Musiker Discovery Programs, Inc., No. 007226/00, 2000 WL 33249833, at *5 (Sup. Ct. N.Y. Cty. Oct. 30, 2000), is instructive.  There, the court dismissed the plaintiff's negligent hiring claim, finding it legally deficient because the plaintiff had failed to allege facts demonstrating actual or constructive prior knowledge by the employer of facts suggesting any prior proclivities of the employees in question with regard to the alleged underlying tortious conduct.  Id.

In much the same way, Plaintiffs have baldly asserted that the UFT Defendants "knew or should have known that the lawyers they paid for had a propensity and personality that they would intimidate or frighten Plaintiffs into believing that instead of fighting the charges, they should make deals to accept as little punishment as possible…" (Second Complaint ¶ 212).

-43-

Plaintiffs have failed to allege *any* facts from which it can be inferred that the UFT Defendants had any actual or constructive knowledge of these alleged proclivities (assuming for the purposes of this motion that they even exist or can be the basis of tortious action) on the part of the NYSUT attorneys as a group.  Indeed, Plaintiffs have failed to allege any information whatsoever regarding the lawyers and their purported tendency to force unwitting teachers into unfavorable settlements.  Nor has a single such "unfavorable" settlement been described.  Thus, the negligent hiring and retention cause of action should be dismissed for failure to allege either any actionable propensity or any notice on the part of the UFT.

Moreover, a prerequisite for a negligent hiring or retention claim is that the employee be individually liable for some primary tort, which the employer is alleged to have been able to foresee.  Primeau v. Town of Amherst, 303 A.D.2d 1035, 1036 (4th Dep't 2003).  Here, there is no such underlying act for which the NYSUT attorneys could be held individually liable.  While Plaintiffs fail to identify the underlying tort they impute to the NYSUT attorneys, a liberal reading of the facts alleged would, at most, assert a claim for breach of the duty of fair representation or unethical conduct.

However, it is well settled that an attorney hired or provided for by the union, like any other union representative, may not be held individually liable, where the services performed constitute part of the collective bargaining process.  Waterman v. Transport Workers' Union Local 100, 176 F.3d 150 (2d Cir. 1999) ("a union member's attorney may not be sued by an individual union member for actions taken pursuant to a collective bargaining agreement").

Plaintiffs' assertions relate to the representation provided by attorneys employed by NYSUT, a separate umbrella organization, not the UFT.  The NYSUT attorneys' action in that

representation are judged under the duty of fair representation standard (see discussion *supra*, at III(A)(3)), and thus Plaintiffs' recourse for alleged failings in that representation is, if anything, in the form of a breach of the duty of fair representation claim.  However, like the instant claim, a duty of fair representation claim is also unsupportable and legally deficient.  Because the NYSUT attorneys may not be held individually liable for an underlying tort, the UFT Defendants may not be held liable for failing to foresee such tort.  Accordingly, no claim for negligent hire or retention is stated.

B.   **Negligent Hire Claim Is Inapplicable to Defendant Combier Because She Acted Within The Scope of Her UFT Employment**

A claim for negligent hiring or supervision can proceed against an employer only for an employee acting outside the scope of her employment.  Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276, 2004 WL 829158, at *8 (S.D.N.Y. April 15, 2004).  When an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence under a theory of *respondeat superior*, and no claim may proceed against the employer for negligent hiring or retention.  Id. (citing Karoon v. New York City Transit Authority, 659 N.Y.S.2d 27, 29 (1st Dep't 1997)).

In connection with the instant pleading, Combier acted within the scope of her employment with regard to the actions she undertook as a participant in the UFT's team investigating TRC-related issues.  To the extent Plaintiffs alleges acts outside of that role, they are not related to her limited employment by the UFT.  Defendant UFT hired Ms. Combier to staff the team investigating TRC-related issues.  In their complaint, Plaintiffs fail to identify any specific act Combier committed, instead only alleging cryptic accusations such as that Combier

"allowed her ego and emotions to guide whatever actions she took as [the UFT's]

representative." (Second Complaint ¶214).[12]

As a union employee and member of the team investigating TRC-related issues, any

failure committed by Combier within that role should be measured by the duty of fair

representation. Moreover, as discussed above, a union representative cannot be held individually

liable for a breach of that duty. Therefore, as with the NYSUT attorneys, Plaintiffs have failed to

allege an underlying tort for which Combier could be held liable. Also as with the NYSUT

attorneys, Plaintiffs have failed to allege any knowledge on the part of the UFT as to any

tortuous proclivity on the part of Combier. As such, a cause of action for negligent hiring,

supervision and retention cannot be sustained as to Combier.

## VI.    TENTH CAUSE OF ACTION: MISREPRESENTATION, FRAUD & CONSPIRACY TO VIOLATE PLAINTIFFS' RIGHTS

Preliminarily, where a complaint contains allegations of fraud, Fed. R. Civ. P. 9(b)

requires that "the circumstances constituting fraud … be stated with particularity." Chill v.

General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996). A complaint making such allegations of

fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the

speaker, (3) state where and when the statements were made, and (4) explain why the statements

---

[12]    To the extent that Plaintiffs' allegations relate to Combier's "use of her websites to further her personal goals",
Plaintiffs' allegations seemingly do not even relate to her employment by the UFT and are too vague to allow a
determination of what the actions were and whether they would be considered within the scope of employment.
Plaintiffs have not provided any details as to which website they refer or the content alleged to be therein. (Second
Complaint ¶ 214). Furthermore, to the extent that Plaintiffs are attempting to advance a libel claim (although they
erroneously and vaguely refer to "slanderous" material at Complaint ¶ 144), Plaintiffs have not sufficiently
advanced such a claim. Libel has five elements under New York law: (1) defamatory statement of fact concerning
the plaintiff; (2) falsity; (3) publication to a third party; (4) fault of the defendant; (5) special damages or per se
actionability. Arias-Zeballos v. Tan, No. 06 CV 1268, 2008 WL 833225, at *9 (S.D.N.Y. March 28, 2008).
Plaintiffs have not alleged these requisite elements.

were fraudulent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation marks omitted). Plaintiffs fail to do so here.

Moreover, the UFT is an unincorporated association and it is a long-established principle of New York jurisprudence that an unincorporated association, or the President of such an association, in his or her representative capacity, cannot be held liable for a tort unless each and every member of the association ratified the tortuous act. Martin v. Curran, 303 N.Y. 276, 280 (1951); Salemeh v. Toussaint, 5 Misc.3d 1032(A) (Sup. Ct. N.Y. Cty. 2003), aff'd, 25 A.D.3d 411 (1st Dep't 2006) (confirming the continuing applicability of Martin to tort claims against unions); Russian Samovar Inc. v. Transit Worker's Union of Am., 24 N.Y.L.J. 1 (col. 1) (Dec. 21, 2006)(York, J.) (dismissing claims against union and its president because plaintiff failed to allege that every member had approved and or ratified the unlawful conduct); Duane Reade Inc. v. Local 338 Retail, Wholesale, Department Store Union, UFCW, AFL-CIO, 6 Misc.3d 790, 792 (Sup. Ct. N.Y. Cty. 2004), ("for better or for worse,…the Legislature has limited such suits against association whether for breaches of agreements or for tortious wrongs, to cases [where] the individual liability of every single member can be alleged and proven"). As the Court of Appeals concluded in Martin, "a voluntary, unincorporated membership association…has no existence independent of its members," (303 N.Y. at 280), with the result that "[a] part of the members of a voluntary organization cannot bind the others without their consent." Id.

In Martin, the plaintiff was seeking to overturn a lower court's dismissal of a libel suit against officers of the National Maritime Union in their representative capacity. Id. at 279. The plaintiff sought damages for allegedly libelous statements that were printed in the union's official newspaper. However, because the National Maritime Union was a voluntary, unincorporated association, the Court of Appeals upheld the decision of the lower court because

-47-

there was no allegation in the complaint "that the individual members of the union authorized or ratified the tort complained of." Id. at 280. The Court of Appeals held that the New York Legislature "has limited such suits against association officers…for tortious wrongs, to cases where the individual liability of every single member can be alleged and proven."

This rule applies with equal force when state tort claims are alleged against a union in federal court. In Modeste v. Local 1199, Drug, Hosp. and Health Care Employees Union, RWDSU, AFL-CIO, the Second Circuit held that under New York law a plaintiff must plead the liability of each member before a union can be held liable for the unlawful acts of its members in a federal court adjudication of pendent New York State claims. 850 F. Supp. 1156 (S.D.N.Y. 1994), aff'd, 38 F.3d 626, 627 (2d Cir. 1994).

Fraud, misrepresentation and civil conspiracy are unquestionably intentional torts. See e.g. Ferrone v. Brown & Williamson Tobacco, No. 97CV5669, 1998 WL 846783, at *5 (E.D.N.Y. Sept. 25, 1998) (finding Plaintiffs failed to plead the "intentional tort of fraud and misrepresentation"); Field v. Mans, 516 U.S. 59, 71 (1995) (contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort); Computech Int'l Inc. v. Compaq Computer Corp., No. 02 Civ. 2628, 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004) (addressing the applicability of the economic loss doctrine to the "intentional torts, such as fraud."); Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS, 78 F. Supp. 2d 162, 171 (S.D.N.Y. 1999) (addressing "intentional torts, such as fraud, misrepresentation, and fraudulent inducement" in the admiralty context).

It follows that Plaintiffs' failure to allege the requisite ratification by the members of the UFT negates any claim under this cause of action. Therefore, the fraud, misrepresentation and civil conspiracy claims should be dismissed.

## VII.    TWELFTH CAUSE OF ACTION: DECLARATORY JUDGMENT

The Declaratory Judgment Act, 28 U.S.C. §§ 2001 *et seq.*, does not provide an "independent cause of action;" rather, its "operation is procedural only—to provide a form of relief previously unavailable." In re Joint Eastern & Southern District Asbestos Litig., 14 F.3d 731 (2d Cir. 1993); see also Richards v. Select Ins. Co., Inc., 40 F. Supp. 2d 163, 169 (S.D.N.Y. 1999) ("A declaratory judgment is a remedy.  Its availability does not create an additional cause of action…").

The Court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief.  In re Joint Eastern & Southern Asbestos Litig., 14 F.3d at 731.  In short, the legal viability of Plaintiffs' claim for declaratory judgment is contingent on the success of Plaintiffs' underlying causes of action.  Stone v. Williams, 970 F.2d 1043 (2d Cir. 1992) (declaratory judgment is a procedural device used to vindicate substantive rights); UCAR Int'l Inc. v. Union Carbide Corp., 2004 U.S. Dist. LEXIS 914 (S.D.N.Y. Jan. 26, 2004).

Plaintiffs have asked for a litany of declarations from this Court.  (Second Complaint ¶ 253(e)).  As discussed, *supra*, all of Plaintiffs' claims with respect to the UFT Defendants are without merit.  Therefore, Plaintiffs' twelfth cause of action for declaratory judgment should be dismissed.  Economic Opportunity Commiss'n, Inc. v. Cty. of Nassau, 106 F. Supp. 2d 433, 444 (E.D.N.Y. 2000) ("a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief").

## CONCLUSION

For all the reasons stated above, the motion to dismiss should be granted and Plaintiffs'

claims as to the UFT Defendants should be dismissed.

Dated: New York, New York
      July 7, 2008

STROOCK & STROOCK & LAVAN LLP

By:                                        
Charles G. Moerdler
Alan M. Klinger
(A Member of The Firm)
180 Maiden Lane
New York, New York 10038
(212) 806-5400

- and-

Adam S. Ross, Esq.
52 Broadway
New York, New York 10004
(212) 701-9420

*Counsel for UFT Defendants*

Of Counsel:
 Dina Kolker
 David J. Kahne