UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
Teachers4Action et al.,                    :    Civil Action #
                Plaintiffs    :    08-cv-548 (VM)(AJP)

v.                                         :

                                   :

Bloomberg et al,                           :

                Defendants.   :
------------------------------------------------------------- X

RECEIVED 08 AUG 11 PM 7:39 U.S. DISTRICT COURT S.D.N.Y.

## PLAINTIFFS' MEMORANDUM OF LAW

## IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Edward D. Fagan Esq.

5 Penn Plaza, 23rd Floor

New York, NY 10001

Tel. (646) 378-2225

Plaintiffs' Counsel

# INTRODUCTION

Plaintiffs are tenured NYC public school teachers (i) who have been retaliated against and harassed, (ii) whose due process rights have been violated and (iii) who have been subjected to a dangerous and hostile work environment by Defendants Michael Bloomberg, City of New York, Joel Klein and New York City Department of Education (hereinafter collectively "NYC Defendants") and United Federation of Teachers, Randi Weingarten and Betsy Combier (hereinafter collectively "Union Defendants"). While Plaintiffs' Second Amended Complaint contains Twelve Causes of Action, Plaintiffs' claims can be characterized and/or grouped as:

- <u>Unlawful Retaliation</u> - (i) based upon age, race, ethic origin and/or religious beliefs, (ii) against Plaintiff as a Whistleblower, (iii) Interference with 1st, 5th & 14th Amendment Rights, (iv) Interference with My Right to Report and Challenge DOE & Union Policies, (v) Filing of Multiple, Outdated, Frivolous and/or Incremental Charges designed to get rid of me immediately or before I would normally retire and (vi) Unlawful Punishment through Unreasonable and Extended Confinement in Rubber Room;
- <u>Violation of Due Process, Constitutional and Contract Rights</u>; and
- <u>Creation of and Subjecting Plaintiffs to the Rubber Room Hostile Work Environment</u> and dangerous conditions that cause Plaintiffs to suffer Physical and Emotional Harm and conditions that warrant Injunctive Relief.

This is a case of first impression. There has been no case that has come before a New York State or Federal Court (i) that includes the issues presented in this case, (ii) that includes challenges the Collective Bargaining Agreement - Article 21-g - as being violative of due process, (iii) that includes Challenges the practice of keeping teachers confined in Rubber Rooms; (iv) that seeks a declaration that the Rubber Rooms dangerous and constitute a hostile work environment, (v) that include claims about how the NYC Teachers Union violated and

1

continues to violate its duties to members, (vi) that include claims related to the harassing and retaliatory polices that have been implemented against NYC School Teachers.

Plaintiffs claims go the heart of system-wide policies and practices (and a conspiracy) that were developed, planned and have been implemented by these Defendants, and which policies and practices infect and have undermined the NYC Public School System through discrimination, harassment and retaliation of tenured teachers. Plaintiffs' evidence will show that Defendants put a greater value on budget reductions than the value the place on the education of children in the New York City public school system. The facts will show that these Defendants actions have been carried out recklessly, carelessly, negligently and with utter disregard for the consequences including (i) violation of contracts, (ii) unlawful retaliation, (iii) violation of due process, (iv) punishment even before charges have been filed or proven, and (v) subjecting teachers to creation hostile work environment, through which they have been damaged financially, physically and emotionally.

The results of the trial of this case will have far reaching impact and will almost certainly improve the quality of education for the hundreds of thousands of students in the New York City public school system. And hopefully as a result of this claim, Defendants will be deter from future wrongful acts against Plaintiffs and other New York City public school teachers. Plaintiffs pray the Court deny the Motions and allow the cases to proceed through discovery and to a trial on the merits.

## RELEVANT FACTS

The facts are set forth in the Second Amended Complaint, in the Joint Declaration that is attached in support of this Motion, Exhibit 1 to the February 22, 2008 Amended Complaint, the May and June 2008 Declarations related to the dangerous conditions in the Rubber Rooms, the photographs and DVD related to the Rubber Rooms. Plaintiffs reserve the right to submit further

2

facts and documents as soon as the Court directs Plaintiff Lewenstein to produce the documents that were entrusted to him and which he continues to withhold from Plaintiffs and counsel.

Furthermore, additional facts as are relevant to the constitutional, procedural and due process problems that relate to NYS Education Law 3020a hearings as they relate to Plaintiffs are set forth in *Adams et al v New York State Education Department et al 08-cv-5996 (GEL)* ("The Adams Case") and to the extent they are relevant to this Motion, the facts and allegations set forth in The Adams Case are incorporated herein by reference.

## DISCUSSION

### Plaintiffs Provide Sufficient Evidence and Are Entitled to Offer Further Evidence in Support of Their Claims

Fed. R. Civ. P. Rule 8 requires that Plaintiffs set for a concise statement of facts so that the Defendants are aware of the claims being made against them. As noted below with there are specific factual allegations in the Second Amended Complaint that place Defendants on notice of the claims, on notice of the facts upon which the claims are based and on notice of the relief, both monetary and injunctive, that Plaintiffs seek.

*On a motion to dismiss, the issue is "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). In order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman, 220 F.3d at 88. See Patane v. Clark, 508 F.3d 106, 111 – 112 (2nd Cir. 2007)*

Plaintiffs' Second Amended Complaint contains the following facts and factual

3

allegation, not conclusions:

- ¶¶ 15 – 22 – Facts about Defendants' Plan and Scheme against Plaintiffs;
- ¶¶ 23 – 48 – Facts about Defendants Plan and Scheme to violate Plaintiffs Constitutional and Contract Rights;
- ¶¶ 49 – 54 – Facts about Hostile Work Environment in Schools,
- ¶¶ 55 – 61 – Facts related to Conditions in Rubber Rooms and how the Rubber Rooms are Hostile Work Environment;
- ¶¶ 64 – 76 – Facts about Union Defendants' wrongful acts from 2004 – 2007;
- ¶¶ 81 – 87 – Facts about Union Defendants' retaliation for filing complaint;
- ¶¶ 90 – 92 – Facts about NYC Defendants retaliation against Plaintiffs;
- ¶¶ 94 - 112 – 1st Cause of Action and Facts Related to Due Process Violations;
- ¶¶ 119 – 134 – 2nd Cause of Action and Facts related to Hostile Work Environment;
- ¶¶ 138 – 152 – 3rd Cause of Action and facts related to Retaliation and Violation of Due Process and Freedoms of Speech and Assembly;
- ¶¶ 157 – 160 – 4th Cause of Action and facts related to Constructive Discharge (applies to Plaintiff McLoughlin, Jaime Castro and George Zanatis;
- ¶¶ 164 – 169 – 5th Cause of Action and facts related to NYC Defendants' breach of contract;
- ¶¶ 173 – 189 – 6th Cause of Action and facts related to Union Defendants breach of fiduciary duties owed to Plaintiffs;
- ¶¶ 193 – 198 – 7th Cause of Action and Facts Related to Union Defendants Aiding and Abetting of NYC Defendants Due Process Violations;
- ¶¶ 201 – 208 – 8th Cause of Action and Facts related to Negligent Hiring, Supervision and Retention of Principals and Supervisors who created hostile work environment for

Plaintiffs;

- ¶¶ 211 – 214 – 9th Cause of Action and Facts related to Negligent Hiring by Union Defendants of Defendant Combier and others who failed to provide assistance to or for Plaintiffs;

- ¶¶ 217 – 239 – 10th Cause of Action and Facts related to Conspiracy to Violate Rights, including description of wrongful acts taken against Plaintiffs; and

- ¶¶ 242 – 250 – 11th Cause of Action and Facts related to Rubber Room Confinement, specific facts about the Rubber Rooms and Damages Plaintiffs Suffered.

In addition to the factual allegations in the Second Amended Complaint, Plaintiffs have (i) submitted their individual facts and the basis for their claims in Exhibit 1 to the Amended Complaint dated February 22, 2008, (ii) the accompanying joint factual declaration and exhibits attached thereto, (iii) the accompanying memorandum by Plaintiffs retained constitutional law and victims rights expert – Adj. Prof. Bruce Afran, (iv) the specific and detailed Affidavits in May and June 2008 about the conditions in the Rubber Rooms, and (v) certain photographic and independent an DVD about the conditions in the Rubber Rooms. Defendants have specific files on each of the Plaintiffs that include evidence about who each plaintiffs is, what has happened to each plaintiff, complaints made about the conditions in the Rubber Rooms, what actions taken through grievances and/or complaints to the Union Defendants, to the NYS Division of Human Rights and/or the EEOC [1] and ultimately the damages they have suffered. Defendants should produce those files now, however at a minimum during discovery, Defendants will be compelled to produce the documents within their files that Plaintiffs' submit will corroborate their claims. Finally, in the last few weeks, evidence has surfaced such as (i) the Union Defendants

---

[1] Plaintiffs pray the Court allow them to produce those documents separately and to the extent necessary provide the Court with an updated list of which Plaintiffs (such as Plaintiff Batyreva, Castro, Chavez, Cruz, Saunders and Westbay) have filed grievances with the Union and/or complaints with the Division of Human Rights and/or the EEOC against the NYC Defendants and have right to sue letters.

Declaration by Carol Gerstl (attached to the Joint Declaration) in which she confirms the conspiracy between the NYC Defendants and the Union Defendants to deprive Plaintiffs of their right to a three person panel of arbitrators – however no such contract or document exists and Plaintiffs were never notified of or agreed to this act and (ii) the July 2008 Agreement between the NYC Defendants and Union Defendants that confirmed some of Plaintiffs allegations about due process violations in the 3020a hearings, improper / wrongful and extended confinement in the Rubber Rooms and the hostile work environment and damages that the Plaintiffs and others suffer during and as a result of the Rubber Room confinement.

Plaintiffs submit that based on this evidence, Defendants should be compelled to produce evidence related to Plaintiffs claims.

### Plaintiffs Met Standards for Due Process Claims Related to 3020a Hearings

The issue of due process standards and the statutory provisions of NYS Education Law 3020a was discussed in *Matter of Syquia v Board of Education, 80 N.Y.2d 531, 535-537 (1992)*

> The statutory provisions in 3020a are mandatory. The statute was designed to provide, according to a legislative memorandum, "uniform, impartial hearing procedures for the handling of disciplinary matters for teachers who have acquired tenure" (see, 1977 N.Y. Legis Ann, at 94). "[A]ll such hearings shall be held before a hearing panel composed of three members not resident, nor employed, in the territory under the jurisdiction of the employing board" (subd [3] [c] [emphasis added]). To be compared with this mandatory language is that found elsewhere within the statute, where the Legislature chose to authorize discretion, e.g., "Such rules [promulgated by the Commissioner to govern hearings] shall not require compliance with technical rules of evidence" (subd [3] [c]). The procedural safeguards written into the law regarding panel members, are prophylactic, concerned not merely with preventing the possibility of bias but also with preventing the appearance of bias (see, Matter of Conley v Ambach, 61 N.Y.2d 685; see also, Matter of Board of Educ. [Conley], 21 Ed Dept Rep 255, 256 [Commissioner's ruling that panel members must disclose "all facts known to them which might * * * create even the appearance of partiality or bias"]). The Legislature intended to eliminate even the appearance of financial influence. That legislative intent can be given effect only if the provisions are mandatory.

The requirements are mandatory and as Plaintiffs have already alleged in this case and in

6

The Adams Case (and as is set forth in Exh. 3 to The Adams Case) the 3020a mandatory procedures and timing requirements have been and continue to be violated by NYC Defendants, with the help of the Union Defendants.

Also, the Permanent Panel of Arbitrators who conduct Plaintiffs' 3020a hearings violate the standards for due process and impartial hearing officers established by the US Supreme Court. *See Gibson et al v. Berryhill et al 411 US 564, 571 (1973)* (prejudgment of the facts or personal interest sufficient to disqualify hearing officer . . . financial interest need not be direct or positive . . . law governing disqualification because of interest applies with equal force to administrative adjudicators), *Ward v Village of Monroeville 409 US 57, 60-61* (petitioner entitled to a neutral and detached judge in the first instance . . . procedure may not be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication . . . situation in which official perforce occupies two practical and seriously inconsistent positions, one partisan and the other judicial (and) necessarily involves a lack of due process), and *Marshall v Jerrico Inc 446 US 240 242-243* (due process clause entitles a person to an impartial and disinterested tribunal in all civil and criminal cases . . . justice must satisfy the appearance of justice . . . (due process related to disqualification) is a stringent rule (that) may sometimes bar (those) who have no actual bias and who would do their very best to weigh the scales of justice equally)

As Plaintiffs have already explained, the Arbitrators assigned to their cases, regularly and systematically violate the 3020a hearing requirements and the facts will show that the Arbitrators do so because they have financial interests in extending the hearings – the longer the hearing take the more money the arbitrators make. And, it is Plaintiffs belief – which will be the subject of discovery – that NYC Defendants pay or advance monies to the Arbitrators thereby creating a further financial impropriety. *See The Adams Case and Exhibit 3.*

7

## Plaintiffs Met Standards for Retaliation Claims

As to what needs to be pleaded to satisfy the basic elements in a retaliation claims, the standards are set forth in *Kessler v Westchester Cty. Dept. of Soc. Serv. 461 F.3d 199, 205 – 207 (2nd Cir. 2006)*:

> *It is an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a). The ADEA contains a nearly identical provision prohibiting retaliation for complaining of employment discrimination on the basis of age, see 29 U.S.C. § 623(d), and the same standards and burdens apply to claims under both statutes, see, e.g., Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003).*
>
> *In order to present a prima facie case of retaliation under Title VII or the ADEA, a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that he engaged in protected participation or opposition under Title VII [or the ADEA], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001) ("Cifra") (internal quotation marks omitted); see, e.g., Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005); Terry v. Ashcroft, 336 F.3d at 141; Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998).*
>
> *Title VII's core substantive anti-discrimination provision makes it an unlawful employment practice (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify . . . employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). The ADEA sets forth similar prohibitions with respect to discrimination on the basis of age. See 29 U.S.C. §§ 623(a)(1) and (2).*

As set forth in the accompanying Joint Plaintiffs' Declaration, as well as in some of the descriptions attached as Exh. 1 to the Amended Complaint and in the documents in Defendants own files, Defendants are on notice that they retaliated against (i) some Plaintiffs because of age, (ii) other Plaintiffs because of race, (iii) other Plaintiffs because of ethnic background, (iv) other

8

Plaintiffs because of religious beliefs, (v) still other Plaintiffs because they spoke out against certain of Defendants' policies and practices and (vi) all Plaintiffs because they joined this case. As such Plaintiffs have met the basic standards and the Defendants are aware of Plaintiffs claims.

### Plaintiffs Met Standards for Hostile Work Environment Claim

> *With respect to claims that an employer has violated these core provisions by taking an adverse employment action for discriminatory reasons against a member of a protected class, see generally de la Cruz v. New York City Human Resources Administration Department of Social Services, 82 F.3d 16, 20 (2d Cir. 1996) ("de la Cruz") . . . "a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career," Galabya v. New York City Board of Education, 202 F.3d 636, 641 (2d Cir. 2000) ("Galabya"). (A)n adverse employment action may be found where the plaintiff was transferred . . . to a position . . . that was "less prestigious," de la Cruz, 82 F.3d at 21, or where the transfer effected a "radical change in nature of the [plaintiff's] work," Rodriguez v. Board of Education of Eastchester Union Free School District, 620 F.2d 362, 366 (2d Cir. 1980) and . . . whether plaintiff has suffered "a materially adverse change in h[is] employment status" or in the terms and conditions of his employment, Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) ("Williams"):*
>
> *Employment actions that have been deemed sufficiently disadvantageous to constitute an adverse employment action include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (ellipsis in original) (citations omitted) . . . "[t]o be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (citation and internal quotation marks omitted) . . . an involuntary transfer may constitute an adverse employment action if the plaintiff "show[s] that the transfer created a materially significant disadvantage" with respect to the terms of her employment. Id. at 641 (citation and internal quotation marks omitted). Williams, 368 F.3d at 128 (emphases added).*
>
> *. . . "a plaintiff may suffer an adverse employment action if she endures a materially adverse change in the terms and conditions of employment." Richardson v. New York State Department of Correctional Service, 180 F.3d 426, 446 (2d Cir. 1999) (internal quotation marks omitted).*
>
> *See Kessler v Westchester Cty. Dept. Soc. Serv. 461 F.3d supra at pp 206 – 207.*

As set forth in the accompanying Joint Plaintiffs' Declaration, as well as in some of the descriptions attached as Exh. 1 to the Amended Complaint and in the documents in Defendants own files, Defendants are on notice that certain Plaintiffs have been transferred out of their

9

workplace into Rubber Rooms (sometimes such as in the case of Plaintiffs Castro, McLoughlin, Saunders, Berkowitz and others) and the Rubber Rooms themselves are being used as a form of punishment even before any of the charges against Plaintiffs were made or proven.

> *To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive — that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex." See Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001) (internal citations and punctuation omitted). Because Plaintiff has pled facts sufficient to satisfy each prong of this test, the district court erred in dismissing her hostile work environment-related claims.*
> *The Supreme Court has held that a work environment's hostility should be assessed based on the "totality of the circumstances." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) "whether it unreasonably interferes with an employee's work performance." Id.*
> *Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with "harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse," and "we have repeatedly cautioned against setting the bar too high" in this context. Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (emphasis omitted).*
> *. . . whether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry, we conclude that Plaintiff has alleged sufficient facts to be "entitled to offer evidence to support [her] claim." See Scheuer, 416 U.S. at 236, 94 S.Ct. 1683.*
>
> See Patane v. Clark, 508 F.3d supra at 113 – 114.

Harassment is actionable "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Quinn v. Green Tree Credit Corporation 159 F.3d 759 (2nd Cir. 1998)*

Such is the case here and the factual allegations are set forth above, as well as in the Plaintiffs Joint Declaration and Exh. 1 to the Amended Complaint.

## Plaintiffs Have Standing to Make Claims, Plaintiffs Have Exhausted Administrative Remedies And Plaintiffs' Claims Are Timely

> *Title VII requires a claimant to file a discrimination charge with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged act of discrimination. See 42 U.S.C. § 2000e-5(e)(1); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996).*
>
> *A cause of action under New York's Human Rights Law is governed by a three-year statute of limitations, measured from the filing of the action in court. See N.Y. CPLR § 214(2); Van Zant, 80 F.3d at 714. The continuing-violation exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." Annis v. County of Westchester, 136 F.3d 239, 246 (2d Cir. 1998) (emphasis added; internal quotation marks, citation, and bracketing omitted) . . . and . . . a continuing violation may be found "where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994).*
>
> *See Quinn v. Green Tree Credit Corporation 159 F.3d 759 (2nd Cir. 1998)*

As Plaintiffs noted above, certain Plaintiffs (such as Plaintiff Batyreva, Castro, Chavez, Cruz, Saunders and Westbay) have filed grievances with the Union and/or complaints with the Division of Human Rights and/or the EEOC against the NYC Defendants and have right to sue letters. In addition, Plaintiffs claims were filed on January 21, 2008 well within the 300-day Statute of Limitations or the 3 three NYS Statutes of Limitations or even the 4-month Statute of Limitations for claims against the Union Defendants. Further, as the facts and evidence shows, Plaintiffs claims related to retaliation, harassment, hostile work environment are continuing violations and therefore the Statute could not have expired.

## Plaintiffs Met Standards for Retaliation Claims and Constructive Discharge Claims

The Supreme Court's analysis and reasoning in *Burlington N. & S.F.R. Co. v. White, 126 S. Ct. 2405 (2006)* is particularly relevant here.

> *The language of the substantive provision (of Title VII) differs from that of the anti-retaliation provision in important ways. Section 703(a) sets forth Title*

11

*VII's core anti-discrimination provision in the following terms:*

"*It shall be an unlawful employment practice for an employer — "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or "(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." § 2000e-2(a) (emphasis added).*

*Section 704(a) sets forth Title VII's anti-retaliation provision in the following terms: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e-3(a) (emphasis added).*

*The underscored words in the substantive provision — "hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee" — explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace. No such limiting words appear in the anti-retaliation provision. Given these linguistic differences, the question here is not whether identical or similar words should be read in pari materia to mean the same thing. See, e.g., Pasquantino v. United States, 544 U.S. 349, 355, n. 2 (2005); McFarland v. Scott, 512 U.S. 849, 858 (1994); Sullivan v. Everhart, 494 U.S. 83, 92 (1990).*

*. . . (w)here words differ as they differ here, "'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Russello v. United States, 464 U.S. 16, 23 (1983).*

*There is strong reason to believe that Congress intended the differences that its language suggests, for the two provisions differ not only in language but in purpose as well. The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-801 (1973). The anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct.*

*To secure the first objective, Congress did not need to prohibit anything other than employment-related discrimination. The substantive provision's basic objective of "equality of employment opportunities" and the elimination of practices that tend to bring about "stratified job environments," id., at 800, would be achieved were all employment-related discrimination miraculously eliminated.*

*But one cannot secure the second objective by focusing only upon employer actions and harm that concern employment and the workplace. Were all such actions and harms eliminated, the anti-retaliation provision's objective*

12

*would not be achieved.*

Thus, purpose reinforces what language already indicates, namely, that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment. *Cf. Wachovia Bank, N.A. v. Schmidt,* 546 U.S. ___ (2006) (slip op., at 14) (rejecting statutory construction that would "trea[t] venue and subject-matter jurisdiction prescriptions as in pari materia" because doing so would "overloo[k] the discrete offices of those concepts").

The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm . . . A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Rochon,* 438 F. 3d, at 1219 (quoting *Washington,* 420 F. 3d, at 662).

An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a)). The anti-retaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. *Robinson,* 519 U.S., at 346. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. *Ibid.* And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *See* 2 EEOC 1998 Manual § 8, p. 8-13.

. . . the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.

. . .The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. *Oncale, supra,* at 81-82. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. *Cf., e.g., Washington, supra,* at 662 (finding flex-time schedule critical to employee with disabled child). A legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others." *Washington, supra,* at 661.

. . .this standard does not require a reviewing court or jury to consider "the nature of the discrimination that led to the filing of the charge." *Post,* at 6 (ALITO, J., concurring in judgment). Rather, the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints

13

*about discrimination.*

In this case, as noted above, Plaintiffs have provided facts in Exh. 1 to their Amended Complaint in their Second Amended Complaint, in the Joint Declaration and supporting photographs and independent evidence being filed with this Memorandum and the additional declarations filed in this case in May and June 2008 related to the retaliation and horrific conditions / hostile work environment in the Rubber Rooms. With that evidence, the *"reviewing court or jury (can) consider "the nature of the discrimination that led to the filing of the charges (and focus) . . . on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position.* When that review is conducted, Plaintiffs are confident that their claims will be upheld, injunctive relief can be ordered and damages can be awarded.

### Plaintiffs Met Standards for 1st Amendment

*"To prevail on a First Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff must prove by a preponderance of the evidence that (1) the expression at issue was constitutionally protected, (2) the alleged retaliatory action adversely affected his constitutionally protected expression, and (3) a causal relationship existed between the constitutionally protected expression and the retaliatory action." Camacho v. Brandon, 317 F.3d 153, 160 (2d Cir. 2003).*

*Government employees who are not policymakers have the right not to affiliate with or support a particular party or faction as a condition of employment. See Rutan v. Republican Party of Illinois, 497 U.S. 62, 69 (1990)*

*("[C]onditioning public employment on the provision of support for the favored political party 'unquestionably inhibits protected belief and association.'" (quoting Elrod v. Burns, 427 U.S. 347, 359 (1976) (plurality opinion))).*

*In a recent case, Zelnik v. Fashion Institute of Technology, 464 F.3d 217 (2d Cir. 2006), we explained that "actionable retaliation" in the First Amendment context "was that which 'well might have dissuaded a reasonable worker [from asserting First Amendment-protected rights].'" Id. at 227 (quoting Burlington Northern and Santa Fe Ry. Co. v. White, __ U.S. __, 126 S. Ct. 2405, 2415 (2006)).*

These facts are contained in the accompanying Joint Plaintiffs' Declaration, as well as in some of the descriptions attached as Exh. 1 to the Amended Complaint, in the Second Amended Complaint and in the multiple Declarations filed in this Court by Plaintiffs since this action was commenced. All of which are incorporated herein by reference. As such Plaintiffs have met the

14

basic standards and Defendants are aware of how they violated Plaintiffs' 1st Amendment rights.

### **Plaintiffs Met Standards for Breach of Duty of Fair Representation Claim**

The Court should note that as to the Union Defendants, in light of the July 2008 Agreement between the Union Defendants and the NYC Defendants, the Plaintiffs may apply in their Cross Motion for a stay of their claims and/or a tolling provision related to the Statute of Limitations and/or for permission to amend their claims. There are sufficient facts upon which to support Plaintiffs claims against the Union Defendants and their agents for violation of the duty of good faith and fair dealings and conspiracy with the NYC Defendants to deprive Plaintiffs of certain due process rights and other acts.[2]

The standards for complaints related to Union Defendants alleged Breach of Duty of Fair Dealings are set forth in *Maddalone v. Local 17, United Broth. Of Carp.*, 152 F.3d 178 (2nd Cir. 1998)

> *Section 101(a)(2) of Title I of the LMRDA, the "Bill of Rights of Members of Labor Organizations," guarantees to union members "the right to meet and assemble freely . . . and to express any views, arguments, or opinions" concerning candidates and union policies. 29 U.S.C. § 411(a)(2) (1994). Section 609 protects a member from being fined, suspended, expelled or "otherwise disciplined" for exercising any right guaranteed by Title I, and I § 101(a)(5) states that a member may not be disciplined without notice or a hearing. 29 U.S.C. §§ 529, 411(a)(5) (1994). Section 102 of the LMRDA provides that "[a]ny person whose rights secured [by Title I] have been infringed . . . may bring a civil action in a [federal] district court . . . for such relief . . . as may be appropriate." 29 U.S.C. § 1 § 412 (1994). This is because "the rights of union members to belong to an open democratic labor organization are infringed" when a "dominant group strives to stifle dissent and efforts at reform" through removal of a political opponent from office. Adams-Lundy v. Association of Professional Flight Attendants, 731 F.2d 1154, 1158 (5th Cir. 1984). To fall within this exception, a plaintiff must present*

---

[2] The facts that (i) the Union Defendants refused to waive the conflict of interest between the NYSUT lawyers who formerly represented Plaintiffs, (ii) the Union Defendants refused to honor agreements to provide alternate counsel (of Plaintiffs choice) to assist Plaintiffs with their defense in the ongoing 3020a hearings, (iii) the Union Defendants discriminate against this group of Plaintiffs – as assist in terminating Plaintiffs Union Membership as a result of termination through the 3020a hearings- based on their joining this action and their speaking out against Union Management and policies and (iv) the Union Defendants have assisted the NYC Defendants change certain Plaintiffs' status from tenured teacher to ATR.

15

*"clear and convincing proof" that . . . dismissal was "part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out." Cotter, 753 F.2d at 229; see also Schonfeld, 477 F.2d at 904 (holding that to state a cause of action, the alleged scheme to suppress dissent must be evident either in the established history or articulated policy of the union).*

The facts as set forth in Plaintiffs Second Amended Complaint related to the Union Defendants are at ¶¶ 15 – 22 – Facts about Defendants' Plan and Scheme against Plaintiffs; ¶¶ 23 – 48 – Facts about Defendants Plan and Scheme to violate Plaintiffs Constitutional and Contract Rights; ¶¶ 64 – 76 – Facts about Union Defendants' wrongful acts from 2004 – 2007; ¶¶ 81 – 87 – Facts about Union Defendants' retaliation for filing complaint; ¶¶ 173 – 189 – 6th Cause of Action and facts related to Union Defendants breach of fiduciary duties owed to Plaintiffs; ¶¶ 193 – 198 – 7th Cause of Action and Facts Related to Union Defendants Aiding and Abetting of NYC Defendants Due Process Violations; ¶¶ 211 – 214 – 9th Cause of Action and Facts related to Negligent Hiring by Union Defendants of Defendant Combier and others who failed to provide assistance to or for Plaintiffs; and ¶¶ 217 – 239 – 10th Cause of Action and Facts related to Conspiracy to Violate Rights, including description of wrongful acts taken against Plaintiffs.

## Plaintiffs Should be Permitted to Amend Their Complaint Pursuant to FRCP 15 to Reflect the Facts that Continue to Develop

As the Court knows, Plaintiffs and counsel do not have and have not had access to their own documents that are being held by Florian Lewenstein. Also, as a result of recent events, including the concealment of claims, confirmation of due process violations and issues raised by the July 2008 Agreement, Plaintiffs request that they should be permitted to file a 3rd Amended Complaint to incorporate these facts. *See Fed. R. Civ. P 15.*

## Conclusion

In view of the foregoing, Plaintiffs pray the Court deny the Defendants Motions to Dismiss and allow this case to proceed to a trial on the merits.

Dated: August 11, 2008                    *[signature]*

16