UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

TEACHERS4ACTION, et al.,

                          Plaintiffs,

      v.

MICHAEL G. BLOOMBERG, et al.,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. 08 Civ. 548 (VM) (AJP)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF UFT DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
(212) 806-5400

- and-

Adam S. Ross, Esq.
52 Broadway
New York, New York 10004
(212) 701- 9420

*Counsel for UFT Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I.     Plaintiffs' "Supplemental" Submissions Are Inappropriate On A
Motion To Dismiss ................................................................................................... 3

II.    Plaintiffs' Claims are Fundamentally Flawed ......................................................... 6

    A.    Plaintiffs Fail To Contest That The UFT Defendants Are
        Private Actors And May Not Be Held Liable Under §1983 ......................... 7

    B.    Plaintiffs Continue to Fail in Meeting the Jurisdictional
        Prerequisites to Their Title VII Claims ..................................................... 11

    C.    Plaintiffs Cannot Save Their Duty of Fair Representation and
        LMRDA Claims By Simply Declaring That They Are Timely .................. 15

    D.    Plaintiffs' Failure To Address The Remaining Claims
        Effectively Concedes That They Are Fatally Defective ............................. 19

III.    Plaintiffs Should Not Be Permitted Yet Another Bite At The Apple ....................... 20

CONCLUSION .................................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adams v. New York State Department of Education,
    08-cv-5996 ..................................................................................................5

Alston v. Transport Workers Union,
    225 A.D.2d 424 (1st Dep't 1996) ...............................................................19

Associated Credit Corp. v. Crossley Carpet Mills Ltd.,
    No. 97 Civ. 7405, 1998 WL 477719 (S.D.N.Y. Aug. 14, 1998) ................4

Baldwin Cty. Welcome Center v. Brown,
    466 U.S. 147 (1984) ...................................................................................13

Blouin v. Spitzer,
    356 F.3d 348 (2d Cir. 2004) .................................................................17, 19

Burlington N. & S.F.R. Co. v. White,
    548 U.S. 53 (2006) .....................................................................................15

Canty v. Wackenhut Corrections Corp.,
    255 F.Supp.2d 113 (E.D.N.Y. 2003) .........................................................14

Chill v. General Elec. Co.,
    101 F.3d 263 (2d Cir. 1996) .......................................................................20

Clark v. Dept. of Army,
    997 F.2d 1466 (Fed. Cir. 1993) ..................................................................19

Cohen v. Fed. Express Corp.,
    544 F.Supp.2d 334 (S.D.N.Y. 2008) .........................................................13

Colodney v. Continuum Health Partners Inc.,
    No. 03 Civ. 7276, 2004 WL 829158 (S.D.N.Y. April 15, 2004) ...............20

Commer v. Keller,
    64 F. Supp. 2d 266 (S.D.N.Y. 1999) .........................................................16

Coretec Industries, Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991) ......................................................................4, 5

Cornwell v. Robinson,
    23 F.3d 694 (2d Cir. 1994) .........................................................................13

Crossman v. Crosson,
    905 F. Supp. 90 (E.D.N.Y. 1995) ................................................................................15

Dawkins v. Williams,
    413 F. Supp. 2d 161 (N.D.N.Y. 2006) ..........................................................................3

DM Research, Inc. v. Coll. Of Am. Pathologists,
    170 F.3d 53 (1st Cir. 1999) ...........................................................................................1

Druschke v. Banana Republic, Inc.,
    359 F. Supp. 2d 308 (S.D.N.Y. 2005) ..........................................................................4

DuBois v. State of New York,
    966 F. Supp. 144 (N.D.N.Y. 1997) .............................................................................12

Electrical Workers v. Robbins & Myers, Inc.,
    429 U.S. 229 (1976) ....................................................................................................15

Ernest v. Charlton School,
    30 A.D.3d 649 (3d Dep't 2006) ...................................................................................20

Foman v. Davis,
    371 U.S. 178 (1962) ....................................................................................................20

Ford Motor Co. v. Huff,
    345 U.S. 330 (1953) ....................................................................................................18

Frank v. New York State Elec. & Gas,
    No. 91-CV-625A, 1994 U.S. Dist. LEXIS 18015 (W.D.N.Y. Sept. 27, 1994) ......................15

Gibson v. Berryhill,
    411 U.S. 564 (1973) ......................................................................................................8

Grygas v. New York State Ethics Com'n,
    147 Misc. 2d 312 (Sup. Ct. Albany County 1990) .....................................................10

Haberman v. Brown, Harris, Stevens,
    No. 93 Civ. 4348, 1994 U.S. Dist. LEXIS 14798 (S.D.N.Y Oct. 4, 1994) .......................14

Harrison v. Metropolitan Life Ins. Co.,
    417 F. Supp. 2d 424 (S.D.N.Y. 2006) ..........................................................................5

Heller v. Doe,
    509 U.S. 312 (1993) ....................................................................................................10

In re Sharp Int'l Corp. v. State St. Bank & Trust Co.,
    403 F.3d 43 (2d Cir. 2005) ..........................................................................................20

Int'l Bhd of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-
   CIO v. Hardeman,
   401 U.S. 233 (1971)..................................................................................................16

Keeny v. Kemper Nat'l Ins. Co.,
   No. 97-7683, 1998 U.S. App. LEXIS 1226 (2d Cir. 1998).....................................22

Krinsky v. Abrams,
   No. 01 Civ. 5052, 2007 WL 1541369......................................................................12

Kwok v. N.Y.C. Transit Authority,
   No. 00 Civ. 2281, 2001 WL 829876 (S.D.N.Y. July 23, 2001)...............................20

Lipton v. County of Orange,
   315 F. Supp. 2d 434 (S.D.N.Y. 2004)......................................................................16

Martin v. Curran,
   303 N.Y. 276 (1951)..................................................................................................20

Milanese v. Rust-Oleum Corp.,
   244 F.3d 104 (2d Cir. 2001)......................................................................................20

Morris v. Local 819, Int'l Brotherhood of Teamsters,
   169 F.3d 782 (2d Cir. 1999)......................................................................................19

Richardson v. City of New York, et al.,
   No. 87 CV 214, 1988 U.S. Dist. LEXIS 17749 (E.D.N.Y. Oct. 14, 1988) ..............14

Roth v. Jennings,
   489 F.3d 499 (2d Cir. 2007)........................................................................................4

Sanchez v. Nat'l Cleaning Co.,
   11 F. Supp.2d 453 (S.D.N.Y. 1998)..........................................................................13

Smith v. Planas,
   151 F.R.D. 547 (S.D.N.Y. 1993) ..............................................................................22

Smith v. Sipe,
   67 N.Y.2d 928 (1986) ................................................................................................17

Stone v. Williams,
   970 F.2d 1043 (2d Cir. 1992).....................................................................................20

Syquia v. Bd. of Educ. of the Harpursville Central School District,
   80 N.Y.2d 531 (1992) ..................................................................................................7

Twombly v. Bell Atlantic Corp.,
   --U.S.--, 127 S.Ct. 1955 (2007) ..................................................................................6

<u>U.S. v. Stewart,</u>
   433 F.3d 273 (2d Cir. 2006)................................................................9

<u>Vital v. Interfaith Medical Center and Local 1199,</u>
   168 F.3d 615 (2d Cir. 1999).............................................................13

<u>Ward v. Village of Monroeville,</u>
   409 U.S. 57 (1972)...........................................................................8

<u>Wilson v. Fairchild Republic Co., Inc.,</u>
   143 F.3d 733 (2d Cir. 1998).............................................................14


**STATUTES**

42 U.S.C. 2000e-5(f)(1).........................................................................14

42 U.S.C. 2000e-(F)(1).........................................................................13

42 U.S.C. §1983 and (2).........................................................................6

C.P.L.R Article 78................................................................................7

Education Law §3020(4)......................................................................2, 7

Education Law §3020-a.....................................................................*passim*

Education Law § 3020-a(3)(b)(i)..............................................................9

29 C.F.R. §1601.28(a)(2).......................................................................14

Fed. R. Civ. P. 12(b)(6)......................................................................6, 7

Fed. R. Civ. P. 15(a)...........................................................................20

Fed. R. Evid. 704.................................................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TEACHERS4ACTION, et al.,

                          Plaintiffs,

     v.

MICHAEL G. BLOOMBERG, et al.,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. 08 Civ. 548 (VM) (AJP)

## PRELIMINARY STATEMENT

Plaintiffs seem to believe that if they start with extensive burdensome discovery that leads to a full blown trial, they will ultimately piece together the substantive requirements for an operative complaint. The Federal Rules of Civil Procedure do not work that way: "The price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." DM Research, Inc. v. Coll. Of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999). Plaintiffs fail to approach, let alone cross, that threshold.

Plaintiffs' opposition to Defendants' Motions to Dismiss is more noteworthy for what it omits than what it includes. At most, wholesale quotations throughout Plaintiffs' submission merely parrot the required elements for a handful of their claims. The lack of legal argument applying these elements to the allegations in the Second Amended Complaint and the utter failure to so much as address the most fundamental deficiencies exposed by Defendants' motions, makes Plaintiffs' Memorandum of Law and supporting submissions a futile attempt at drafting a third amended complaint rather than an effective opposition to Defendants' motion to dismiss.

Among Plaintiffs' most glaring omissions are the abject failure to advance: (1) any argument that the UFT Defendants satisfy the state actor requirement at the core of all of Plaintiffs' constitutional claims; and (2) any indication that Plaintiffs have satisfied the threshold jurisdictional requirement as to the UFT for their Title VII claims. Importantly, these omissions are compounded by Plaintiffs' apparent abandonment of no less than six other claims: (i) Federal Whistleblower Protection Act; (ii) Breach of Fiduciary Duty; (iii) Aiding and Abetting Breach of Fiduciary Duty; (iv) Negligent Hiring, Retention and Supervision; (v) Misrepresentation and Fraud to Violate Plaintiffs' Rights; and (vi) Declaratory Judgment.

Those few issues that Plaintiffs do speak to in their papers are plagued with the same non-specific conclusory defects as the Second Amended Complaint itself. Plaintiffs' unsupported insistence that the procedures contained in Education Law §3020-a are "mandatory" in the face of the alternative provided for in §3020(4) has no bearing on Defendants' argument that substantive constitutional due process requires only notice and opportunity to be heard, which are more than adequately provided for in the Collective Bargaining Agreement ("CBA"). Similarly, although Plaintiffs point to the recent letter agreement between the United Federation of Teachers ("UFT") and the Board of Education of the City School District of the City of New York ("BOE") and the affirmation of Carol Gerstl in support of their position on the claimed breach of the duty of fair representation, they fail to explain how such documents might support that claim when what they plainly show is that the UFT engaged in statutorily required collective bargaining with the BOE on the subject of teacher discipline and conditions surrounding the Temporary Reassignment Centers. Plaintiffs inconsistently point to the recent agreement as evidence of something nefarious, but simultaneously seek leave to move to enforce its provisions for their own benefit.

Based upon the patent insufficiency of their pleading, the Second Amended Complaint should be dismissed as to Defendants Randi Weingarten, President of the United Federation of Teachers ("UFT"), the UFT and Betsy Combier (collectively "UFT Defendants").

## ARGUMENT

Despite having three chances to set out their claims in this action (and now a request for a fourth opportunity), Plaintiffs continue to misunderstand the fundamental purpose of a complaint and the necessity of alleging facts *within* that complaint, not through every other available medium. Plaintiffs' ever-changing interpretation of what documents, filings, or facts they believe make up their complaint has no basis in law and cannot save them from dismissal.

## I.    PLAINTIFFS' "SUPPLEMENTAL" SUBMISSIONS ARE INAPPROPRIATE ON A MOTION TO DISMISS

Before addressing Plaintiffs' few (and faulty) legal arguments, the Court need determine what portions of Plaintiffs' opposition papers are properly before the Court and what portions should not be considered on a motion to dismiss.

First, as this Court has already reminded Plaintiffs, "[t]he second amended complaint supersedes in all respects all prior complaints." (Transcript of June 11, 2008 Conference, at 3:20-23). Defendants cannot be expected to guess what combination of allegations from three different complaints Plaintiffs intend to be operative at any given time. Plaintiffs may not revive abandoned claims or incorporate by reference in their opposition papers any assertions from previous versions of their Complaint. Therefore, any allegations other than those contained in the Second Amended Complaint are not properly before the Court (*e.g.*, Plaintiffs' reversion to claims of discrimination based upon age, gender and national origin). Dawkins v. Williams, 413 F. Supp. 2d 161, 164 (N.D.N.Y. 2006) (ignoring that portion of motion to dismiss that referenced

prior complaint); <u>Associated Credit Corp. v. Crossley Carpet Mills Ltd.</u>, No. 97 Civ. 7405, 1998

WL 477719, at *3 (S.D.N.Y. Aug. 14, 1998) (rejecting argument that factual allegations

contained in original complaint but omitted from the amended complaint are admissible on a

motion to dismiss).

Second, on a motion to dismiss, Plaintiffs may not supplement the facts alleged in the

Complaint by declaration or other evidentiary submission. The Court is limited to consideration

of "the factual allegations in the complaint, documents attached to the complaint as exhibits or

incorporated in it by reference, to matters of which judicial notice might be taken or to

documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in

bringing suit." <u>Roth v. Jennings</u>, 489 F.3d 499, 503 (2d Cir. 2007). It may not consider

"affidavits, depositions, or other extraneous documents not set forth in the complaint" unless it

converts the motion to dismiss to one for summary judgment, something inappropriate to the

current procedural posture. <u>Coretec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 46-47 (2d

Cir. 1991); <u>see also</u>, <u>Druschke v. Banana Republic, Inc.</u>, 359 F. Supp. 2d 308, 313 (S.D.N.Y.

2005) (Marrero, J.) (holding that plaintiff may not oppose a motion to dismiss based on a

declaration asserting facts outside the complaint).

While Plaintiffs reference the language quoted above in support of their various

submissions, they do so out of context, ascribing an unintended meaning to the words. The

portion of this rule that Plaintiffs primarily reply upon, providing for the consideration of

documents "either in plaintiff's possession or which plaintiff had knowledge and relied on," is

designed to prevent plaintiffs from avoiding dismissal by failing to incorporate or attach a

document that is "*integral* to the complaint," *not* to allow a plaintiff to submit any document in

opposition to such a motion. <u>Cortec</u>, 949 F.2d at 46-48 (emphasis added). The quintessential

-4-

case is where plaintiffs allege a securities violation but do not attach or incorporate the offering documents at the heart of the claim. See e.g., id. at 46-48. The rule allows defendant (not plaintiff) to present such "integral" document, like the offering document, in support of a motion to dismiss. Id. The requirement that plaintiff have notice of the document is meant to protect plaintiff from defendant's unexpected introduction of documents, not to permit plaintiff to submit a virtually endless array of documents of which defendants may have no notice. See id. at 48.

Plaintiffs have taken this provision and turned it on its head by seeking to introduce documents of which Defendants had no notice (such as their supposed expert memorandum on constitutional law) in an attempt to rewrite their Complaint. Plaintiffs cite no case law in support of this type of inversion of the rule. Furthermore, even if the rule were applicable to Plaintiffs in this way, they have failed to satisfy its requirements. The documents sought to be introduced must have been *relied* upon by Plaintiffs in framing the Complaint. Harrison v. Metropolitan Life Ins. Co., 417 F. Supp. 2d 424, 431 (S.D.N.Y. 2006) (Marrero, J.) (declining to consider documents not "relied upon...in commencing th[e] action"). Here, Plaintiffs could not have relied upon the documents they seek to introduce in commencing the action as Plaintiffs' receipt of such documents post-date the filing of the Second Amended Complaint.[1]

Finally, Plaintiffs may not submit a declaration purporting to assert facts on behalf of all individual Plaintiffs (numbering 50) by submitting disembodied signature pages for 19 Plaintiffs (one consisting of an email without a signature). This Court has already cautioned Plaintiffs that

---

[1] The Affirmation of Carol Gerstl and the UFT's recent letter agreement with the BOE, both exhibits to Plaintiffs' "Joint Declaration," came into Plaintiffs' possession after that the Second Amended Complaint was filed on June 2, 2008. Similarly, Plaintiffs' "expert" memorandum from Adjunct Professor Bruce L. Afran ("Afran Memorandum") on constitutional law, although undated, was clearly prepared in response to Defendants' motions. The same is true of Plaintiffs' references to their complaint in the "Adams case" (Adams v. New York State Department of Education, 08-cv-5996 (GEL)) and exhibits thereto.

"affidavits cannot be signed by somebody on behalf of the affiant." (June 11, 2008 Tr. at 10:3-7). Disregarding this instruction, Plaintiffs' Declaration, submitted on behalf of all "Plaintiffs," sets out individual facts not contained within the Second Amended Complaint. Indeed, several of the individuals for whom specific facts are alleged have not signed the Declaration. As discussed above, even assuming the propriety of Plaintiffs' Joint Declaration, the newly alleged facts are inadmissible on the instant motion.[2]

## II.  PLAINTIFFS' CLAIMS ARE FUNDAMENTALLY FLAWED

Plaintiffs do not even attempt to refute certain key legal deficiencies identified by Defendants, the most glaring of which are (1) that the UFT is not a state actor and cannot be held liable under 42 U.S.C. §1983 and (2) that Plaintiffs have failed to meet the jurisdictional requirements for their Title VII claims as to the UFT. Certain claims, such as misrepresentation, fraud, aiding and abetting breach of fiduciary duty and negligent hire are not addressed at all.[3]

As the Supreme Court made clear in Twombly v. Bell Atlantic Corp., --U.S.--, --, 127 S.Ct. 1955, 1964 (2007), a motion to dismiss under Fed. R. Civ. P. 12(b)(6) polices the gateway between the pleadings stage and what is often costly litigation. Before a plaintiff may be allowed to burden a defendant with such litigation he or she must meet the minimum

---

[2]    Plaintiffs' inclusion of two DVD discs containing unidentified pictures of a stairwell (presumably at one of the Temporary Reassignment Centers ("TRC")) and a short video showing commentary from teachers, citizens and students generally about the TRCs barely merits response. In addition to being improper factual evidence outside the pleadings, Plaintiffs provide no authentication as to either the pictures or the video, neither of which were part of the sole TRC inspection permitted by the Court. Indeed, the video appears to have been copied from the website of the group that created it, Five Boroughs Productions (www.rubberroomvideo.com).

[3]    As the Court is aware, the Second, Fourth, Fifth, Eight and Eleventh causes of action in the Second Amended Complaint are not addressed to any of the UFT Defendants and, therefore Plaintiffs' argument in opposition as they relate to those claims are not addressed herein. Those causes of action purport to allege (i) harassment and hostile work environment; (ii) constructive discharge; (iii) breach of contract; (iv) negligent hiring, retention and supervision; and (v) false confinement.

requirement of pleading facts sufficient to support an entitlement to relief. Id. Plaintiffs have failed to plead such facts here.

A.    **Plaintiffs Fail To Contest That The UFT Defendants Are Private Actors And May Not Be Held Liable Under §1983**

As set out in the UFT Defendants' moving papers (at 11-16), the first requirement for a claim pursuant to §1983 is that the defendants have acted under "color of state law." By their failure to refute this argument, Plaintiffs essentially concede that the UFT Defendants have not acted under "color of state law."

To the extent Plaintiffs address the viability of their due process claims at all, they argue that the provisions of Education Law §3020-a are "mandatory" and that the arbitrators assigned to their hearings are biased "because they have a financial interest in extending the hearings." (Opp. Br. 6-7). These assertions are insufficient to maintain a claim for violation of due process as against the UFT Defendants.

First, Plaintiffs themselves admit in the Seconded Amended Complaint (¶¶24-25) that Education Law §3020(4) expressly permits the BOE and the UFT to agree to a modification of Education Law §3020-a procedures as part of their collective bargaining agreement. The sole case cited by Plaintiffs is not inapposite. Syquia v. Bd. of Educ. of the Harpursville Central School District, 80 N.Y.2d 531 (1992), does not address the issue at all, nor could it as it was decided prior to the adoption of §3020(4). Moreover, the Syquia Court explicitly declined to consider the constitutional issues raised and instead determined the case pursuant to C.P.L.R Article 78 of the CPLR, holding that the department's payment of fees in *excess* of those provided for by statute to one member of a panel of arbitrators constituted error entitling the plaintiff to relief. Id. at 535. That holding has no applicability here.

The remainder of the cases cited by Plaintiffs present the unastonishing proposition that individuals are entitled to unbiased hearing officers who do not have a financial interest in the outcome of the proceedings. (Opp. Br. at 7). UFT Defendants agree. That contributed to the UFT's negotiation for joint labor-management approval of each arbitrator on the panel and the requirement that arbitrators be reevaluated and re-selected each year. (CBA annexed as Ex. B to the moving Declaration of Alan M. Klinger at Art. 21(G)(2)). What Plaintiffs fail to allege however, is that any §3020-a arbitrator has any interest in the *outcome* of any proceeding. Plaintiffs only allege that because arbitrators are compensated *per diem*, they have an incentive to extend the hearings. (Opp. Br. at 7). Arbitrators typically are paid for their work; under Plaintiffs' theory, this would mean that all arbitrators that are paid based upon time spent on a matter are biased. This does not constitute the sort of pecuniary interest in the outcome of a proceeding described in Plaintiffs' cases, much less rise to the level of bias necessary for a due process violation.[4] See Gibson v. Berryhill, 411 U.S. 564, 578 (1973) (holding that members of state licensure board stood to personally gain from revocation of optometry license as they compete with plaintiff for patients); Ward v. Village of Monroeville, 409 U.S. 57, 60 (1972) (holding that mayor could not sit in judgment over fines and levies where adjudged fines made up the bulk of the mayor's executive budget incentivizing him to increase amounts of fines).[5]

Plaintiffs' general allegation of bias is contradicted by their own submissions which describe several instances of arbitrators exonerating a teacher and dismissing charges. See

---

[4]    Indeed, the Supreme Court of the State of New York, New York County recently dismissed Plaintiffs' state actions against a group of §3020-a arbitrators alleging the same bias alleged here as well as prejudice, conflict of interest and concealment of evidence. Teachers4Action v. Gaines, et al., Index No. 105845/08 (August 6, 2008) (Kibbie F. Payne, J.). In dismissing the claims, Justice Payne held that "petitioners ha[d] not established, with facts, a 'clearly apparent' bias on the part of the arbitrators." Id. at 3.

[5]    To the extent Plaintiffs also cite these cases for the proposition that bias provides some exception from the requirement of exhaustion of remedies, the strictures of the anti-injunction act, or federal abstention doctrines, such claim would fail for the same reason – Plaintiffs can point to no pecuniary interest in the *outcome* of the §3020-a proceedings.

Plaintiffs' Joint Declaration at 10-12 (¶21(e)) (asserting that Jaime Castro, who did not sign the declaration, "was repeatedly brought up on frivolous charges and exonerated").

Moreover, what Plaintiffs neglect to advise the Court is that §3020-a arbitrators (including those on the UFT-BOE panel) are compensated by the State Department of Education pursuant to statute (the very same statute hailed by Plaintiffs as a model are fairness), Education Law § 3020-a(3)(b)(i). That section provides, in relevant part, that "the hearing officer shall be compensated by the [state] department [of education] with the customary fee paid for service as an arbitrator under the auspices of the association for each day of actual service plus necessary travel and other reasonable expenses." The modifications of §3020-a procedure provided for in Article 21(G) of the CBA, are just that, modifications. Much of §3020-a is left as is by the CBA, including the arbitrator compensation provision.

Plaintiffs further ignore UFT Defendants' argument that §3020-a, as modified by Article 21(G) of the Collective Bargaining Agreement, amply satisfies the minimum level of constitutional due process. (Mov. Br. at 16-19). Instead, Plaintiffs attempt to improperly raise for the first time, through an "expert" memorandum, an equal protection claim. In addition to the "expert" memorandum being inadmissible on a motion to dismiss and the claim itself being improperly raised at this late date, such claim fails for the same reason as Plaintiffs' other constitutional claims – they have failed to allege that UFT Defendants acted under color of state law.[6]

---

[6]    Plaintiffs' proffer of the Afran Memorandum is doubly inappropriate because Fed. R. Evid. 704 does not allow experts to offer opinion embodying legal conclusions. U.S. v. Stewart, 433 F.3d 273, 311-12 (2d Cir. 2006) (affirming exclusion of securities law expert testimony and holding that "an opinion that purports to explain the law to the jury trespasses on the trial judge's exclusive territory").

Even if the Court were to entertain the equal protection claim on the merits, it would fail. Plaintiffs improperly assert that the legislature needs to have made a "finding" supporting its classification. (Afran at 13). It is black letter law that "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity," and "a legislature that creates these categories need not 'actually articulate at any time the purpose or rationale supporting its classification'" so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Heller v. Doe, 509 U.S. 312, 319-20 (1993).[7]

Here, the complexities inherent in being the largest school district in the country covering a spectrum of communities provide a myriad of reasons for amply supporting the geographical classification. Indeed, the reasons supporting the geographic distinction are the same as those underlying the UFT's and BOE's agreement to an alternative process. Section 3020(4)(a) aims to permit the UFT and BOE to agree to measures that would alleviate some of the burden placed on the §3020-a system by the sheer volume of proceedings while, at the same time, providing for a panel of arbitrators who can develop expertise in the issues facing City schools and a process that provides both fair and timely determinations with procedures that are tailored to the different types of charges most commonly preferred within the City School District.

Finally, Plaintiffs' First Amendment retaliation claim suffers the same infirmity as the other §1983 claims in that it fails to assert that UFT Defendants acted under color of state law. It

---

[7]    The passing reference to the "delegation of lawmaking power" in Plaintiffs' "expert" memorandum, is similarly unavailing. (Afran at 14). Plaintiffs incorrectly characterize the language of §3020(4)(a),which merely affords the BOE the opportunity to contract for modified procedures. The resulting agreement can only be effected with the consent of all sides and is limited to governing only those parties. Such an outcome can hardly be deemed the "delegation of lawmaking power." See Grygas v. New York State Ethics Com'n, 147 Misc. 2d 312, 316 (Sup. Ct. Albany County 1990) ("The improper delegation of legislative power doctrine is primarily a substantive concept prohibiting an administrative agency from 'making law.'").

also appears to be directed to City Defendants, not the UFT.  Nonetheless, Plaintiffs' conclusory statement that they have "met the basic standards and Defendants are aware of how they violated Plaintiffs' …rights," is wholly insufficient to survive dismissal.

### B.    Plaintiffs Continue to Fail in Meeting the Jurisdictional Prerequisites to Their Title VII Claims

Plaintiffs may not revive abandoned claims for discrimination on a variety of unconnected grounds simply by summarizing them in their opposition papers and making reference to prior complaints.  As discussed above, the Second Amended Complaint supersedes any prior complaint and cuts off any allegations not included therein.  Thus, although Plaintiffs dub such claims as "Retaliation," any allegation of discrimination based upon age, race, ethnic background, religion, or the like are not properly before the Court.  (Opp. Br. at 8-9).  Even if those claims were to be considered, they would fail as a matter of law against the UFT Defendants as it is undisputed that the UFT Defendants do not employ Plaintiffs.  Moreover, despite Plaintiffs' most recent submissions, they still have not satisfied the jurisdictional prerequisite for the claims they allege against the UFT Defendants in the Second Amended Complaint, much less these resurrected claims.

With regard to Plaintiffs' retaliation claim under Title VII, they have failed to overcome the dispositive flaws enumerated in the UFT Defendants' motion.  Plaintiffs' submissions still fail to satisfy the prerequisite of Title VII as to the UFT and have failed to allege protected activity.  (Mov. Br. at 21-23).  As the Court set out in its Order of August 13, 2008, Plaintiffs have been on notice of the need to satisfy the Title VII jurisdictional requirements from the beginning of this case.  At the very first conference held in this case on January 28, 2008, prior to the UFT Defendants becoming parties, the Court inquired whether Plaintiffs had obtained right-

to-sue letters on behalf of Teachers4Action or any other plaintiff. (Transcript of Jan. 28, 2008

Conf., at 12:25-15:6). At that time Plaintiffs' counsel admitted that neither Mr. Lewenstein (then

the only named plaintiff) nor Teachers4Action had filed with the EEOC and that Plaintiffs were

relying on some letter issued to the UFT. While Plaintiffs' counsel said he would produce such

letter to the Court, the described letter never materialized. (Jan. 28, 2008 Tr. at 13:20-22, 14:7-

9). (Nor, for that matter, would a letter issued to other UFT members satisfy the requirement for

the instant Plaintiffs.)  Some seven months and three complaints later, after failing to address this

issue in their opposition and being given an opportunity to make additional submission by the

Court, plaintiffs have produced only two timely right-to-sue letters, neither of which can support

a claim against the UFT.  Because obtaining a right to sue letter is a jurisdictional requirement to

any Title VII claim, this Court should not consider Plaintiffs' claim without it. <u>DuBois v. State</u>

<u>of New York</u>, 966 F. Supp. 144, 147 (N.D.N.Y. 1997).[8]

Plaintiffs' Court ordered submission, made late on Friday and then (improperly)

supplemented over the weekend, continues Plaintiffs' pattern of misconstruing the law.  For the

Court's convenience, annexed as an Appendix is a table organizing Plaintiffs' submissions by

named Plaintiff mentioned, the documents provided by such Plaintiff (if any) and the UFT

Defendants' points of law as to such submissions.  Setting aside for the moment authentication,

hearsay and credibility issues, generally, Plaintiffs' submissions fall into three categories: (1)

four right-to-sue letters, two of which are untimely and two that appears to only name the BOE

---

[8]    Plaintiffs' attempt to extend their time to obtain a right to sue letter by reference to "continuing violations"
cannot save their claims as to the UFT Defendants.  That Plaintiffs may still be able to seek a right to sue letter from
the EEOC does not change the reality that they have not and therefore have not satisfied the jurisdictional
prerequisites for their retaliation claim.  Moreover, the applicability of the "continuing violation" doctrine has been
limited. <u>Krinsky v. Abrams</u>, No. 01 Civ. 5052, 2007 WL 1541369, *5 (E.D.N.Y. May 25, 2007).  A "discrete
retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" <u>Id.</u> (quoting <u>Nat'l R.R. Passenger Corp.</u>
<u>v. Morgan</u>, 536 U.S. 101 (2002)).  Examples of discrete acts include "termination, failure to promote, denial of
transfer, or refusal to hire." <u>Id.</u>  While the Court recognized that hostile work environment may present a different
situation, Plaintiffs have not alleged such claim as against the UFT Defendants.

and not the UFT; (2) thirteen Plaintiffs who, reading the submissions generously, may have filed complaints at some point with either the EEOC or the relevant local agency, none of which appear to name the UFT and one of which was voluntarily withdrawn; (3) the remainder of the more than 50 named Plaintiffs who did not even file a complaint with any agency. Each category is addressed below.

To maintain a Title VII claim a plaintiff is required to obtain a right-to-sue letter and commence an action within 90 days of receipt of such letter. <u>See</u> 42 US.C. §2000e-5(f)(1); <u>Cornwell v. Robinson</u>, 23 F.3d 694, 706 (2d Cir. 1994). Failure to comply with the 90-day limitations period will result in dismissal. <u>Cohen v. Fed. Express Corp.</u>, 544 F.Supp.2d 334, 342 (S.D.N.Y. 2008) (dismissing Title VII complaint filed four days after the 90-day period). Here, of the four right-to-sue letters submitted, two expired in 2007, well before this action was commenced.

The remaining two right-to-sue letters (one of which was received after this action was commenced), have no authority as to the UFT Defendants as they appear to pertain only to the BOE. The purpose of requiring the filing of an EEOC complaint is to notify the party charged of the alleged violation and to bring that party before the EEOC, making possible Title VII's ultimate goal of voluntary compliance and conciliation. <u>Vital v. Interfaith Medical Center and Local 1199</u>, 168 F.3d 615, 619 (2d Cir. 1999). A right-to-sue letter only empowers a plaintiff to sue the respondent named in the agency charge. 42 U.S.C. 2000e-(F)(1); <u>Baldwin Cty. Welcome Center v. Brown</u>, 466 U.S. 147, 149 (1984). Therefore, where, as here, a charge names the employer but fails to name the union, the claim as against the union should be dismissed. <u>Vital</u>, 168 F.3d at 619 (dismissing Title VII claim against union because plaintiff failed to name union

-13-

in EEOC charge).[9]  Moreover, the EEOC regulations require a right-to-sue letter to be copied to "all parties" 29 C.F.R. §1601.28(a)(2).  Since the face of the letters themselves copy only the BOE (with the UFT unaware of any such filings), Plaintiffs have failed to demonstrate that their Title VII claims as to the UFT meet the prerequisites.

Furthermore, that a handful of Plaintiffs may have at some time filed complaints with the EEOC or a local agency does not suffice.  A plaintiff must exhaust administrative remedies *before* bringing suit in federal court.  There are two basic prerequisites: (1) filing a timely discrimination charge with the EEOC and (2) receiving a right-to-sue letter.  See 42 U.S.C. 2000e-5(f)(1); Haberman v. Brown, Harris, Stevens, No. 93 Civ. 4348, 1994 U.S. Dist. LEXIS 14798, at *2 (S.D.N.Y Oct. 4, 1994).  A plaintiff who has filed a charge but failed to receive a right-to-sue letter does not state a cognizable claim under Title VII.  See Canty v. Wackenhut Corrections Corp., 255 F.Supp.2d 113, 117 (E.D.N.Y. 2003) (dismissing Title VII claims where plaintiff filed a charge with the EEOC but failed to obtain a right-to-sue letter).

The third group consists of three sub-groupings: (i) those Plaintiffs for whom counsel has made no submissions, (ii) those which admit they did not file charges with the relevant agencies, and (iii) those for whom counsel has submitted union grievances.  The first two sub-groupings speak for themselves.  The last also fails to state a claim.  An internal union grievance is insufficient to satisfy the statutorily mandated preconditions for bringing a Title VII claim.  See

---

[9]    Beyond failing to name the UFT in the underlying charges, a Title VII claim must be reasonably related to the charges alleged before the EEOC.  Wilson v. Fairchild Republic Co., Inc., 143 F.3d 733, 739 (2d Cir. 1998) ("[i]n this circuit, the clear rule is that a district court only has jurisdiction to hear Title VII claims that either are included in the EEOC charge or are based on conduct…reasonably related to that alleged in the EEOC charge") (internal citations omitted).  Because the charge against the UFT is one for retaliation, and is distinct from alleged discrimination by the BOE, none of Plaintiffs' complaints alleging such discrimination against the BOE could form the basis of a Title VII claim as to the UFT Defendants.  Richardson v. City of New York, et al., No. 87 CV 214, 1988 U.S. Dist. LEXIS 17749, at *14 (E.D.N.Y. Oct. 14, 1988) (recommending dismissal of retaliation claim against UFT where only the Board of Education of the City of New York was named in the EEOC harassment and retaliation charge), *adopted by*, 1988 U.S. Dist. LEXIS 16740 (E.D.N.Y Nov. 14, 1988).

Electrical Workers v. Robbins & Myers, Inc., 429 U.S. 229 (1976); Crossman v. Crosson, 905 F.
Supp. 90 (E.D.N.Y. 1995) (Title VII claim dismissed despite plaintiffs' mistaken belief that
filing an internal grievance satisfied the requirements for instituting an action in federal court
under Title VII); Frank v. New York State Elec. & Gas, No. 91-CV-625A, 1994 U.S. Dist.
LEXIS 18015, at *10 (W.D.N.Y. Sept. 27, 1994) ("pendency of arbitration or grievance
procedures pursuant to a collective bargaining agreement…does not toll the running of the
period for filing a discrimination charge with the administrative remedy, or waive the filing
requirements"), *recommendation adopted by,* 871 F. Supp. 167 (W.D.N.Y. 1994).

Finally, Plaintiffs' multi-page block quote from Burlington N. & S.F.R. Co. v. White,
548 U.S. 53 (2006), fails to advance their claim.  Burlington holds that Title VII's anti-retaliation
protection applies to activity opposing practices made unlawful under Title VII, *i.e.*
discrimination based on a protected category. Id. at 63.  But Plaintiffs here allege that they were
retaliated against for raising concerns about their reassignment and the application of Education
Law §3020-a.  Plaintiffs also wrongfully assert they were retaliated against for alleging the UFT
Defendants conspired with City defendants.  None of these constitutes protected activity under
Title VII.  As discussed in UFT Defendants' Motion to Dismiss, much as Plaintiffs' might prefer,
Title VII is not a general anti-retaliation statute.

C.    **Plaintiffs Cannot Save Their Duty of Fair Representation and
LMRDA Claims By Simply Declaring That They Are Timely**

As an initial matter, by their failure to even mention certain claims, Plaintiffs appear to
have abandoned three of the six Labor Management Reporting and Disclosure Act ("LMRDA")
claims alleged in the Second Amended Complaint, specifically, §§ 439(b) (Criminal Provision),
415 (Information as to the Act), and 411(a)(4) (Protection of the Right to Sue) of the LMRDA.

See Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (deeming claim abandoned where plaintiff failed to respond to a defendant's arguments for dismissal).

The balance of the LMRDA claims, which Plaintiffs have now conflated with the duty of fair representation claim, likewise receive little treatment in Plaintiffs' opposition and remain equally deficient as a matter of law. Plaintiffs do not dispute that to meet the relevant minimum pleading threshold under the LMRDA, Plaintiffs must allege that the UFT, not the BOE, "fired, expelled, suspended or otherwise disciplined" the individual Plaintiffs and that the union failed to provide adequate process in internal union disciplinary proceedings. Int'l Bhd of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Hardeman, 401 U.S. 233 (1971); Grogan v. Holland Patent Central Sch. Dist., 00 CV 0399, 2000 U.S. Dist. LEXIS 19127 (N.D.N.Y Dec. 15, 2000) (dismissing member's LMRDA claim because amounted to a claim that the union failed to adequately represent her in a grievance).

Nor do Plaintiffs dispute that to state a claim under the LMRDA freedom of speech provision, Plaintiffs must allege facts that support the conclusion that the individual Plaintiffs' "membership rights have been directly infringed" or that "there is a real threat to the democratic integrity of the union." Commer v. Keller, 64 F. Supp. 2d 266, 271 (S.D.N.Y. 1999). As explained in UFT Defendants' moving papers (at 34-39), the Second Complaint misconstrues the scope and purpose of the LMRDA and misapplies its provisions. Plaintiffs allege in the Complaint that they were not afforded a full and fair hearing in their § 3020(a) proceedings, not internal union proceedings. The gravamen of the (baseless) allegations against the UFT Defendants is that the union "remained silent and did nothing to support Plaintiffs' rights or to stop the violation of the their rights" while the City Defendants conducted improper and

-16-

unconstitutional hearings. (Second Complaint ¶82). Plaintiffs fail to allege improper discipline by the Union or that membership interests in the Union were adversely affected.

Implicitly acknowledging the Second Amended Complaint's failure to properly allege a violation of the LMRDA, Plaintiffs, transparently, now add new allegations to their opposition papers, stating that the Union Defendants assisted "in terminating Plaintiffs Union Membership as a result of termination through the 3020a hearings." (Opp. Br. at 15 n.2). Putting aside the wholly conclusory nature of the allegation, given the 50 named individuals in the Second Complaint, Plaintiffs' statement is errant speculation. Plaintiffs have not alleged that any of the individual Plaintiffs have been terminated.

Plaintiffs quote extensively from Maddalone v. Local 17, United Bhd. of Carpenters and Jointers - outlining the general purposes behind the LMRDA - but do not elaborate on how the allegations in the Complaint satisfy the statute. 152 F.3d 178 (2d Cir. 1998) (upholding plaintiff's LMRDA free speech claim where hiring hall union leader first threatened to and then induced plaintiff's termination for publicly protesting against union leadership). The Maddalone citation offers no arguments. See Blouin v. Spitzer, 356 F.3d 348, 363 n.3 (2d Cir. 2004) (deeming plaintiff's claims abandoned because, although mentioning the claims, plaintiff provided no argument concerning them).

UFT Defendants' legal arguments addressing Plaintiffs' duty of fair representation claim are similarly met with conclusory assertions and reiterations rather than specific facts or legal argument. Responding to Defendants' position that Plaintiffs have failed to identify a single fact suggesting that the Union's conduct was "arbitrary, discriminatory, or in bad faith," Smith v. Sipe, 67 N.Y.2d 928 (1986), as is required, Plaintiffs dismissively state "[t]here are sufficient facts upon which to support Plaintiffs claims against the Union Defendants...for violation of the

duty of good faith and fair dealings." (Opp. Br. at 15). This unedifying explanation does not save the duty of fair representation claims. See U.S. ex rel. Anti-Discrimination Ctr. of Metro N.Y. Inc., 495 F. Supp. 2d 375 (S.D.N.Y. 2007) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss") (internal citations omitted).

As shown in UFT Defendants' moving papers, UFT Defendants' conduct in negotiating the 2002 CBA and the NYSUT lawyers' conduct in their decision to withdraw from representing Plaintiffs in the § 3020-a proceedings, particularly in light of their ethical obligations, was reasonable, certainly well within the "wide range of reasonableness" that must "be allowed a statutory bargaining unit in serving the unit it represents." Ford Motor Co. v. Huff, 345 U.S. 330, 338 (1953). Far from the "arbitrary," "discriminatory" and "bad faith" standard Plaintiffs must satisfy, UFT Defendants, though its representatives, have acted proactively in processing grievances and achieving reforms for its members. To illustrate, as the Court is aware from Plaintiffs' frequent communications, the UFT, continuing its long-standing efforts to address conditions in the TRCs, recently succeeded in reaching agreement with the BOE to significantly improve the circumstances of teachers assigned to the TRCs. (A copy of the letter agreement is annexed to Plaintiffs' Notice of Filing in opposition to Defendants' motions to dismiss.)

Aside from the self-serving declaration that "Plaintiffs' claims were filed on January 21, 2008 well within…the 4-month Statute of Limitations for claims against the Union Defendants," Plaintiffs have also failed to explain why the individual Plaintiffs' duty of fair representation claims are not time-barred. Indeed, despite Plaintiffs' repeated protestations, (e.g., Opp. Br. at 8), UFT Defendants are still left to guess when the alleged breach of fair representation occurred.

The statute of limitations for a duty of fair representation claim is four months, commencing on the date the union member "knew or should have known that the breach occurred" or when the member suffers actual harm, whichever is later.  Alston v. Transport Workers Union, 225 A.D.2d 424 (1st Dep't 1996).  Plaintiffs have failed, in three complaints, to provide the most basic facts necessary to determine when the statute of limitations accrued – *i.e.*, when and how the duty of fair representation was breached.  Plaintiffs have provided no specifics (let alone allegations for each individual Plaintiff) to demonstrate that the statute of limitations has not run on any fair representation claims.

Finally, Plaintiffs have still not explained how the Second Amended Complaint states a claim for breach of the duty of fair representation as against the individual UFT Defendants.  Morris v. Local 819, Int'l Brotherhood of Teamsters, 169 F.3d 782 (2d Cir. 1999) (individual union members immune from suit for breach of duty of fair representation).

D.    **Plaintiffs' Failure To Address The Remaining Claims Effectively Concedes That They Are Fatally Defective**

In addition to the legal infirmities noted above, Plaintiffs have also studiously failed to address several other claims and some entire causes of action in their submissions, thereby abandoning those claims in the face of this dismissal motion.  See Blouin, 356 F.3d at 363 n.3.  The claims Plaintiffs have ignored, as well the most salient reasons they are not cognizable, are summarized below:

1. *Federal Whistleblower Protection Act* (part of Third Cause of Action) (Moving Br. at 20):  The Federal Whistleblower Act applies only to adverse personnel actions by the federal government against federal government employees in reprisal for certain protected activities.  Clark v. Dept. of Army, 997 F.2d 1466, 1469 (Fed. Cir. 1993).

2. *Breach of Fiduciary Duty* (part of Sixth Cause of Action) (Moving Br. at 32): The claim is breach of fiduciary duty claim is duplicative of the duty of fair representation

claim and should be dismissed for the same reasons. See Kwok v. N.Y.C. Transit Authority, No. 00 Civ. 2281, 2001 WL 829876 (S.D.N.Y. July 23, 2001)

3. *Aiding and Abetting Breach of Fiduciary Duty* (Seventh Cause of Action) (Moving Br. at 40-42): The aiding and abetting breach of fiduciary duty claim fails both because Plaintiffs have failed to satisfy the first element; a primary breach of fiduciary duty [owed from the NYC Defendants to the Plaintiffs] and because, as discussed below, a union cannot be held liable for an intentional tort unless all its members ratify the allegedly tortious action. See In re Sharp Int'l Corp. v. State St. Bank & Trust Co., 403 F.3d 43 (2d Cir. 2005); Martin v. Curran, 303 N.Y. 276, 280 (1951).

4. *Negligent Hiring, Retention and Supervision* (Ninth Cause of Action) (Moving Br. at 42-46): The negligent hiring, retention and supervision claim with respect to the NYSUT lawyers fails since, most basically, Plaintiffs have failed to allege that the UFT Defendants had notice of any unlawful propensity or knowledge of any underlying tortious act. Ernest v. Charlton School, 30 A.D.3d 649, 651 (3d Dep't 2006). This claim with respect to Defendant Combier fails because it generally applies to the acts of subcontractors and only applies to employee acts that fall outside the scope of employment. Colodney v. Continuum Health Partners Inc., No. 03 Civ. 7276, 2004 WL 829158, at *8 (S.D.N.Y. April 15, 2004).

5. *Misrepresentation and Fraud to Violate Plaintiffs Rights* (Tenth Cause of Action) (Moving Br. at 46-49): The fraud and misrepresentation causes of action fail both because Plaintiffs have failed to state the claims with sufficient particularity and because a union cannot be liable for an intentional tort unless such action is ratified by every member of the union. Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996); Martin v. Curran, 303 N.Y. 276, 280 (1951).

6. *Declaratory Judgment* (Twelfth Cause of Action) (Moving Br. at 49): The declaratory judgment cause of action is without merit because the viability of the claim is contingent upon the success of the underlying substantive causes of action, which themselves are meritless. Stone v. Williams, 970 F.2d 1043 (2d Cir. 1992).

## III.  PLAINTIFFS SHOULD NOT BE PERMITTED YET ANOTHER BITE AT THE APPLE

Federal law is clear that leave to amend pursuant to Fed. R. Civ. P. 15(a) may be denied where (1) plaintiff has repeatedly failed to cure deficiencies in previously allowed amendments; or (2) such amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (denying leave to amend where there was "repeated failure to cure deficiencies by amendments previously allowed"); see also Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (leave to

amend should be denied as futile if the proposed new claim cannot withstand another 12(b)(6) motion). The instant action is the paradigmatic case for denying further leave to amend.

Plaintiffs have failed to cure pleading deficiencies in the two previously allowed amendments and have given no indication, at this late date, that they can cure the glaring legal infirmities in the claims directed towards the UFT Defendants. As described, *infra*, Plaintiffs have had three opportunities – four including extraneous materials included in Plaintiffs' supporting Joint Declaration - yet have still failed to, *inter alia*: (1) explain how UFT Defendants are state actors and therefore subject to § 1983 liability; (2) articulate one fact (aside from state law mandated collective bargaining) that supports the conclusory allegation that the UFT Defendants conspired with the City Defendants; (3) demonstrate that they have met the basic jurisdictional prerequisites for asserting a claim under Title VII; (4) allege any facts allowing the application of the LMRDA; (5) allege any facts indicating how the UFT failed to act reasonably in its representation of each individual Plaintiffs; and (6) assert that each member of the UFT ratified the intentional torts (fraud, misrepresentation, and conspiracy) of which Plaintiffs complain.

The inadmissible and lengthy declaration submitted in support of Plaintiffs' opposition, discussed *supra* at 5-7, underscores the futility of any further amendment. Even if the Declaration could supplement the allegations in the Second Amended Complaint, the Declaration still fails to assert the basic legal allegations necessary to state the claims asserted against the UFT Defendants.

In addition to its substantive inadequacy, Plaintiffs' motion to amend is also procedurally defective. To make a motion to amend, "a complete copy of the proposed amended complaint

must accompany the motion so that both the Court and the opposing parties can understand the exact changes sought." Smith v. Planas, 151 F.R.D. 547, 550 (S.D.N.Y. 1993).

The Second Circuit's decision in Keeny v. Kemper Nat'l Ins. Co., No. 97-7683, 1998 U.S. App. LEXIS 1226 (2d Cir. 1998), is illustrative in this regard. In Keeny, plaintiff alleged 15 causes of action and requested, in its opposition to defendants' motion to dismiss, that the court grant leave to amend the complaint if the court dismissed the complaint. Id. at *6. As here, the plaintiff did not proffer a proposed amended complaint or otherwise provide the district court with any indication of how the complaint would be amended. Id. In affirming the district court's decision to deny leave to amend, the Second Circuit held that the denial seemed "sound in light of the fact that the original complaint asserted 15 causes of action without stating a claim on which relief could be granted and contained no factual allegations that suggested that any viable cause of action could be pleaded." Id.

Like plaintiffs in Keeny, Plaintiffs, here, have asserted 12 causes of action without stating a claim on which relief can be granted and have failed to proffer a third amended complaint or otherwise given the Court any indication that a viable cause of action can be pleaded. Against the background of Plaintiffs' repeated failures to meet the same objections, it is appropriate to enforce the Second Circuit's amended pleading predicate requirement.

Finally, allowing Plaintiffs to amend the Second Amended Complaint yet again, after Plaintiffs have repeatedly failed to cure the deficiencies in previous versions, would unfairly prejudice UFT Defendants, who, like the Court, have expended considerable time, energy and resources in reaching and briefing this dispositive motion. Since the commencement of this action, Plaintiffs' claims have been a moving target for both the Court and Defendants. It has taken considerable resources and several tries to reach the motion stage. To allow Plaintiffs to

continue reshuffling the same flawed claims into facially different but not substantively changed configurations would be to simply permit Plaintiffs to engage in harassment by means of litigation.

## **CONCLUSION**

For all the reasons stated above, the motion to dismiss should be granted and Plaintiffs' claims as to the UFT Defendants should be dismissed.

Dated: New York, New York
      August 25, 2008

                  STROOCK & STROOCK & LAVAN LLP

                  By: _____
                        Charles G. Moerdler
                        Alan M. Klinger
                        (A Member of The Firm)
                        180 Maiden Lane
                        New York, New York 10038
                        (212) 806-5400

                        - and-

                        Adam S. Ross, Esq.
                        52 Broadway
                        New York, New York 10004
                        (212) 701-9420

                        *Counsel for UFT Defendants*

Of Counsel:
  Dina Kolker
  David J. Kahne

**Appendix**

## Table of Right-to-Sue Submissions

| Plaintiff | Submitted Documents | Points of Law |
|---|---|---|
| Twana Adams | April 25, 2007 EEOC Notice acknowledging filing of charge with New York State Division of Human Rights ("NYSDHR"). | No right-to-sue letter provided and no indication that the UFT was named in the charge. |
| Olga V. Batyreva | March 7, 2007 right-to-sue letter. | The 90-day period in which suit must have been brought expired in June 2007, well before the commencement of the instant action. There is no indication that the UFT was named in the charge. |
| David Berkowitz | No submission. | Plaintiffs have had ample opportunity to submit any right-to-sue letters. Failure to produce amounts to a concession that Plaintiffs have failed to satisfy this prerequisite. |
| Ming Bell | NYSDHR complaint form executed on Aug. 21, 2008. | No right-to-sue letter. There is also no indication that this complaint was actually filed with the NYSDHR. Even if it were filed, the complaint makes no mention of the UFT and does not name the UFT as a respondent. |
| Jonathan Berlyne | Aug. 22, 2008 email from Berlyne to Plaintiffs' counsel providing an "EEOC confirmation number." | No right-to-sue letter. Assuming an EEOC charge was filed, there is no indication if the UFT was named in the charge. |
| Jaime Castro | May 23, 2008 NYSDHR letter. | No right-to-sue letter. There is no indication that the underlying charge named the UFT as a respondent. |
| Anthony Caminiti | Aug. 22, 2008 email from Caminiti to Plaintiffs' counsel. | The email admits that Caminiti never filed a charge with the EEOC. |
| Gloria Chavez | Aug. 1, 2007 EEOC letter. | No right-to-sue letter. There is no indication from the EEOC's letter that the UFT was named as a respondent in the underlying charge. |
| Josefina Cruz | No submission. | See points of law for Berkowitz. |
| Jimmy Cullen | No submission. | See points of law for Berkowitz. |

(i)

| Plaintiff | Submitted Documents | Points of Law |
|---|---|---|
| Louisa Ganis | No submission. | See points of law for Berkowitz. |
| Roselyne Gisors | Aug. 23, 2006 verified complaint to the NYSDHR. | No right-to-sue letter. The complaint does not name the UFT as a respondent and makes no mention of claims as against the UFT. |
| Joanne Hart | Aug. 21, 2008 email from Hart to Plaintiffs' counsel | The email admits that Hart never filed a charge with the EEOC or any equivalent agency. |
| Arnulfo Hinestraza | Aug. 21, 2008 email from Hinestraza to Plaintiffs' counsel. | No right-to-sue letter. The email asserts that Hinestraza filed a charge with the EEOC in 1999. There is no indication that the UFT was named as a respondent in the charge. |
| Eleanor Johnson | May 29, 2008 right-to-sue letter. | No indication that the UFT is named in the underlying charge. The letter is only copied to the BOE. |
| Jane Levine | - Feb. 26, 2008 letter from BOE Office of Civil Rights.<br>- Email trail providing text of complaint.<br>- March 6, 2008 letter from BOE Office of Civil Rights.<br>- March 27, 2008 letter from BOE Office of Civil Rights.<br>- Acknowledgement of filing of complaint | No right-to-sue letter. The complaint was not filed with an appropriate agency. Two of the letters indicate that the Office of Civil Rights forwarded the complaint to the EEOC. There is no indication that a formal charge resulted. The complaint does not allege any claim as against the UFT. |
| Julianne Polito | Aug. 22, 2008 email from Polito to Plaintiffs' counsel. | No right-to-sue letter. There is no indication that any complaint filed with the NYSDHR named the UFT as a respondent. |
| Alena Radtke-Gabriel | - Aug. 16, 2008 email from Radtke-Gabriel to Plaintiffs' counsel.<br>- Nov. 2, 2007 NYSDHR complaint form and related documents.<br>- Jan. 12, 2006 UFT letter advising Radtke-Gabriel that her grievance would not be pursued.<br>- Oct. 19, 2006 UFT letter indication intention to file a "special complaint." | No right-to-sue letter. The NYSDHR complaint makes no claims against the UFT and does not name the UFT as a respondent. The grievance letters are irrelevant as they neither reveal a claim against the UFT nor could they substitute for an appropriate filing under Title VII. |

(ii)

| Plaintiff | Submitted Documents | Points of Law |
|---|---|---|
| Thomasina Robinson | Aug. 22, 2008 email from Robinson to Plaintiffs' counsel. | The email admits that Robinson never filed a charge with the EEOC or any equivalent agency. |
| Denise Russo | EEOC online printout. | No right-to-sue letter. There charge only alleges claims against the BOE, not the UFT. |
| Paul Santucci | Aug. 21, 2008 email from Santucci to Plaintiffs' counsel. | No right-to-sue-letter. The email does not assert that Santucci filed a claim with the EEOC or equivalent local agency. It only asserts that Santucci filed grievances in 2005. Union grievances cannot satisfy the Title VII requirement. There is no indication that the grievances alleged a claim against the UFT. |
| Jennifer Saunders | - April 2, 2007 right-to-sue letter<br>- underlying charge<br>- service receipt | The 90-day period in which a claim must have been brought expired in July 2007, well before this action was commenced. There is no indication from the charge that the UFT was named as a respondent. |
| Brandi Dawn Scheiner | - Aug. 22, 2008 email from Robinson to Plaintiffs' counsel.<br>- March 17, 2008 letter from Scheiner to NYSDHR. | No right-to-sue letter. The email was not sent by Scheiner. The letter clearly states that Scheiner voluntarily withdrew her complaint. There is no indication that the complaint had named the UFT as a respondent. |
| Linda Seiffert | No submission | See points of law for Berkowitz. |
| Dan Smith | No submission | See points of law for Berkowitz. |
| Gilda Teel | Aug. 22, 2008 email from Robinson to Plaintiffs' counsel. | No right-to-sue letter. The email was not sent by Teel, but nonetheless admits that Teel did not file a complaint with the EEOC or other appropriate agency. |
| Michael Westbay | - Feb. 12, 2008 Right-to-sue letter.<br>- Email chain discussing Wetbay's union grievances. | No indication that the UFT is named in the underlying charge. The letter is only copied to the BOE. The emails regarding union grievances are irrelevant to the issue of Title VII jurisdiction. |

(iii)